United States District Court<br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff(s),<br>    v.<br><br>SMALL BUSINESS CAPITAL CORP., et. al.,<br><br>        Defendant(s). | CASE NO. 5:12-cv-03237 EJD<br><br>**ORDER DENYING DEFENDANT'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**<br><br>[Docket Item No(s). 195, 203, 206] |

## I. INTRODUCTION

Presently before the court is *pro se* Defendant Mark Feathers' ("Feathers") *ex parte* request for a temporary restraining order ("TRO") and order to show cause for preliminary injunction. See Docket Item No. 195. As he did in a prior request, Defendant seeks an order restraining Plaintiff Securities and Exchange Commission ("SEC") from using the term "Ponzi" in disclosures describing this action alleging violations of federal securities laws.

The court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b). Having carefully reviewed Feather's current request, the court has determined that this application fares no better than its predecessor. Accordingly, it will be denied for the reasons described below.

## II. LEGAL STANDARD

The standards for issuing a TRO and preliminary injunction are the same. See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009).

As a corollary to this test, the Ninth Circuit has also found a preliminary injunction appropriate if "serious questions going to the merits were raised and the balance of the hardships tips sharply in the plaintiff's favor," thereby allowing preservation of the status quo where complex legal questions require further inspection or deliberation. Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1049 (9th Cir. 2010).

"These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases." Big Country Foods, Inc. v Board of Educ. of the Anchorage Sch. Dist., 868 F.2d 1085, 1088 (9th Cir. 1989). But "[u]nder either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." See id.

## III. DISCUSSION

In denying the prior TRO application, the court determined that Feathers had not sufficiently demonstrated an entitlement to injunctive relief. See Docket Item No. 143. Specifically, Feathers had not demonstrated a likelihood of succeeding on the merits of this action or on any related free-speech issue. In addition, Feathers had not connected the SEC's use of the term "Ponzi" with any actual or imminent damage.

Feathers makes new arguments in this application. He contends that the SEC has admitted to miscalculating member returns in the Complaint, and that this concession means he is now likely to

1  succeed on the merits. As to the issue of irreparable harm, Feathers cites to the possibility of
2  physical and economic injury. He believes he has been threatened through postings on the internet
3  and has lost out on economic opportunities he would have otherwise obtained.

4  At this point, the court believes it helpful to describe the significant burden Feathers must
5  overcome for a TRO or injunction to issue under these circumstances. Here, Feathers is requesting
6  an order preventing the SEC from speaking freely, otherwise known as a prior restraint. "The term
7  'prior restraint' is used 'to describe administrative and judicial orders forbidding certain
8  communications when issued in advance of the time that such communications are to occur.'"
9  Alexander v. United States, 509 U.S. 544, 550 (quoting M. Nimmer, Nimmer on Freedom of Speech
10 § 4.03, p. 4-14 (1984)). "Temporary restraining orders and permanent injunctions - i.e., court orders
11 that actually forbid speech activities - are classic examples of prior restraints." Id. They are the
12 "most serious and the least tolerable infringement on First Amendment rights." Nebraska Press
13 Ass'n v. Stuart, 427 U.S. 539, 559 (1976). As such, a party seeking to impose a prior restraint must
14 establish that: (1) the activity it seeks to restrain poses either a clear and present danger or a serious
15 and imminent threat to a protected competing interest, (United States v. Sherman, 581 F.2d 1358,
16 1361 (9th Cir. 1978)); (2) the restraint is narrowly drawn, (Carroll v. President and Commr's of
17 Princess Anne, 393 U.S. 175, 183-84 (1968)); and (3) less restrictive alternatives are not available,
18 (Nebraska Press Ass'n, 427 U.S. at 563).

19 Added to this is the fact that Feathers initiated this application without notice to the SEC.
20 "[C]ircumstances justifying the issuance of an *ex parte* order are extremely limited." Reno Air
21 Racing Ass'n v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). Thus, Feathers must also justify his
22 use of the *ex parte* process while simultaneously providing the necessary support for a prior restraint
23 on speech.

24 Feathers has done neither here. Although he argues, for a second time, that the challenged
25 speech is not subject to First Amendment protection under the "fighting words" doctrine, the court
26 must again disagree. "Fighting words" are those that "that by their very utterance inflict injury or
27 tend to incite an immediate breach of the peace." City of Houston v. Hill, 482 U.S. 451, 461-62

3
CASE NO. 5:12-cv-03237 EJD
ORDER DENYING DEFENDANT'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION

1  (1987).  Here, while the term "Ponzi" has attracted greater public significance in the wake of certain
2  high-profile cases, it still does not fall within the universe of those "personally abusive epithets
3  which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently
4  likely to provoke violent reaction."  Cohen v. California, 403 U.S. 15, 20 (1971).  In addition, there
5  is no indication that the SEC has used the term "Ponzi" with an intent to harm anyone or anything.
6  Indeed, Feather's application reveals only that "Ponzi" has been used when describing this litigation.
7  Thus, without a reason to classify the speech as "fighting words," Feathers has not established the
8  type of "clear and present danger" required for a prior restraint.

9  Nor has Feathers established that an order from this court is the only means of protection of
10 available.  The concern over the internet postings presented in the application is better addressed to
11 the state courts, which are available to issue orders relating to an individual's personal safety.  See
12 Cal. Civ. Proc. Code § 527.6.

13 Furthermore, it does not appear that the order requested here would change anything.  Even
14 if "Ponzi" has never been used, Feathers cannot escape the association of his name with this case.
15 Thus, it seems any financial loss is better attributed to the existence of this litigation in general
16 rather than to the use of any particular word.  Such are the unfortunate consequences which befall
17 anyone involved in this type of lawsuit.  Restricting the use of "Ponzi" cannot alleviate that
18 inevitable result.

19 As to this application's presentation *ex parte*, Feathers does not explain why providing notice
20 to the SEC would have been detrimental despite the requirement of Federal Rule of Civil Procedure
21 65(b).[1]  This procedural shortcoming coupled with the discussion above requires that this application

---

[1] This raises an issue related to Feathers overuse, and potential abuse, of the *ex parte* process.  Not every motion is an ex parte motion.  In fact, most are not, including motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Since the court has already informed Feathers of his obligation to observe all procedural rules, including this court's requirement that hearing dates be obtained from the Courtroom Deputy *before* a motion is filed (see Docket Item No. 106), the "Ex Parte Application to modify a prior court order, Motion to Dismiss with FRCP12(b)(6)" (Docket Item Nos. 203, 206) is TERMINATED.  Although prior improper filings have been tolerated, Feathers is advised that all future motions filed improperly as *ex parte* applications as well as all motions filed without obtaining a hearing date will be summarily terminated.

4
CASE NO. 5:12-cv-03237 EJD
ORDER DENYING DEFENDANT'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

be denied even if the SEC's use of an incorrect formula raises Feathers' chances of success.

## IV.   ORDER

Feathers' *ex parte* request for a TRO and order to show cause for preliminary injunction (Docket Item No. 195) is DENIED.

**IT IS SO ORDERED.**

Dated:  February 11, 2013


EDWARD J. DAVILA
United States District Judge

CASE NO. 5:12-cv-03237 EJD
ORDER DENYING DEFENDANT'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION