UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 5:12-CV-03237 EJD |
| Plaintiff, | **ORDER PARTIALLY GRANTING INTERIM FEE APPLICATIONS** |
| v. | |
| SMALL BUSINESS CAPITAL CORP. et al., | **[Docket Item Nos. 134, 135, 136]** |
| Defendants. | |

The Securities and Exchange Commission ("S.E.C.") has brought this lawsuit alleging violations of the antifraud provisions of federal securities law. Complaint 1, ("Compl."), Docket Item No. 1. Receiver Thomas Seaman and the law firm of Allen Matkins, Leck, Gamble, Mallory & Natsis, LLP seek interim payment of fees and expenses for services performed between June 1, 2012 through September 30, 2012 in connection with the receivership of Small Business Capital Corp. and related companies.

**I.   Background**

    **A.  The Filing of this Action**

This civil action was filed on June 21, 2012 by the S.E.C. against Defendants Mark Feathers ("Feathers"), Small Business Capital Corporation ("SB Capital"), Investors Prime Fund, LLC ("IPF"), and SBC Portfolio Fund, LCC ("SBCPF"). Compl. 1. Defendant Feathers is the

1

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING INTERIM FEE APPLICATIONS

founder, CEO, and director of SB Capital which manages IPF and SBCPF. Id. at 3–4. The Complaint filed by the S.E.C. alleges that the Defendants Feathers and SB Capital engaged in a "Ponzi-like scheme" where returns to investors were "partially funded with money from new investors." Id. at 1.

### B. The Appointment of the Receiver

Receiver Thomas A. Seaman ("the Receiver") was appointed as temporary receiver of the defendant companies and their subsidiaries and affiliates on June 26, 2012. Order Appointing Temporary Receiver 5, ("Temp. Receiver Order"), Docket Item No. 16. After appointing him as permanent receiver on July 10, 2012, the Court granted him "full power over all funds, assets, collateral, premises" as equity receiver of the defendant companies SB Capital, IPF, and SBCPF. Order Appointing Permanent Receiver 5 ("Perm. Receiver App't Order"), Docket Item No. 34.

### C. The Appointment of Counsel to the Receiver

The Receiver was authorized to employ the law firm of Allen Matkins, Leck, Gamble, Mallory & Natsis, LLP as his general counsel on July 10, 2012. See Approval of Allen Matkins as General Counsel 2, ("Allen Matkins Approval"), Docket Item No. 36. The law firm has extensive experience assisting court appointed receivers while the S.E.C. investigates companies that engaged in fraudulent activity. See Receiver's Application to Employ Allen Matkins as General Counsel 5–6.

## II. Fee Applications

### A. The Receiver

The Receiver submitted his first interim fee application on December 6, 2012. Receiver's First Interim Fee Application, ("Receiver Application"), Docket Item No. 134. In that application, the Receiver averred that he had incurred $241,927 in fees from June 1, 2012 through September 30, 2012. Id. at 1. The Receiver requests that the Court withhold 10% of the fees and immediately

2

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING INTERIM FEE APPLICATIONS

approve dispersal of the remaining fees from the receivership estate, $217,734.30 in total. Id. at 1, 7. The Receiver is not requesting compensation for any expenses incurred during this period. Id. at 1. The Receiver's request reflects compensation for 1,072.7 hours of work during this period at a blended hourly rate of $226 per hour. Id.

### B. Allen Matkins

The Receiver's counsel, Allen Matkins, avers that it has incurred $135,864.40 in fees and $5,740.70 in expenses. First Interim Fee Application of Allen Matkins, Leck Gamble, Mallory & Natis LLP 1, ("First Application AM"), Docket Item No. 135. This total reflects a blended hourly rate of $454.10 (299.19 hours total). See id. Allen Matkins requests that the Court authorize the receivership estate to pay 90% of the request, or $122,277.96 immediately, and withhold the remaining 10%. Id. Allen Matkins also requests approval of 100% of its expenses totaling $5,740.70. Id. Allen Matkins has reduced its request for fees by 10%, and in addition to that reduction, has written off $24,987.15 in "professional time" and $816.65 in costs. Id. at 1, 6.

### C. Summary of Fee Requests

The chart below summarizes the fees requested by the Receiver and Allen Matkins:

| Fee and Expenses Requests | | | |
|---|---|---|---|
| **Applicant** | **Fees Requested** | **Expenses Requested** | **Total Requested** |
| Receiver | $217,734.30 | N/A | $217,734.30 |
| Allen Matkins | $122,277.96 | $5,740.70 | $128,018.66 |

### III. Discussion

#### A. Applicable Law

The court appointing the Receiver is responsible for compensating the Receiver and his attorneys. See In re Alpha Telcom, Inc., 03:01-CV-1283-PA, 2013 WL 840065, at *16 (D. Or. Mar. 6, 2013). The court may use its discretion to fashion a "fee award that is appropriate under the circumstances." Id. at *17. "The court appointing the receiver has the power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys." Drilling & Exploration Corp. v. Webster, 69 F.2d 416, 418 (9th Cir. 1934). The Receiver and the attorneys assisting the Receiver will be "reasonably, but not excessively" compensated for their efforts to benefit the receivership estate. Alpha Telcom, 03:01-CV-1283-PA, 2013 WL 840065, at *17. "[I]n receivership situations, lawyers should be awarded moderate fees and not extravagant ones." S.E.C. v. Byers, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008). The Receiver and any professionals assisting the Receiver should charge a reduced rate to reflect the public interest involved in preserving funds held in the receivership estate. See id. at 646-47. The Receiver and his counsel should be moderately compensated for their services because investors who were promised large returns on investments by the defendants may stand to recover "only a fraction of their losses." See id. at 645.

An award of interim fees is appropriate "where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services to the estate." Alpha Telcom, 2013 WL 840065, at *3. The court should also consider the "economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services provided to the estate." In re Imperial "'400'" Nat., Inc., 432 F.2d 232, 238 (3rd Cir. 1970). Frequently courts will withhold a portion of the requested interim fees because "until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim compensation is sought." In re Alpha Telcom, Inc., CV 01-1283-PA, 2006 WL 3085616, at *3 (D. Or. Oct. 27, 2006). The factors listed above, and others, may persuade the court to award the

entirety of the requested interim fees or some amount less than requested. See <u>Byers</u>, 590 F. Supp. 2d at 648. Lastly, "courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application" and courts endorse "percentage cuts as a practical means of trimming fat from a fee application." <u>Id.</u> (quoting <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1146 (2nd Cir. 1983)).

The Court has consistently reminded the Receiver and the Receiver's attorneys that it is concerned with the keeping the fees and costs down. Ultimately, the goal of the Receiver and the attorneys is to preserve the status quo among the receivership estate as best they can for the benefit of the investors. In awarding fees and costs, courts exercise their discretion carefully, recognizing the circumstances of the particular situation. With that in mind, the Court will apply the factors outlined above in making a determination about the award of fees and costs to the Receiver and Allen Matkins.

### B. The Receiver

The Receiver has made great efforts to reduce the operating costs of the defendant companies and in so doing has hired professionals to assist in the management of the receivership estate. See Receiver Application 4. During this period the Receiver and the professionals assisting him were engaged in reducing the cost of operating the receivership entities, managing assets, servicing loans, and "working towards resolution of non-performing and other impaired loans." <u>Id.</u> at 1. Improving the bookkeeping activities was one of the primary goals of the Receiver. <u>Id.</u> at 6. He was able to develop a "Quickbooks model which is essentially a relational database designed to accumulate all cash receipts and disbursements," improving on the receivership estate's previous model, which the receiver described as "incomplete." <u>Id.</u> at 6. Through his efforts, the Receiver has reduced the operating costs of the receivership estate by $24,000 per month. <u>Id.</u> at 3.

In consideration of these efforts, the Court partially grants the Receiver's request for fees. The Court grants 75% of the Receiver's request for interim compensation and withholds the remainder for future determination of the reasonable value of the Receiver's services. The Court

does not discount the efficacy and importance of the Receiver's efforts to date, but it awards moderate fees in this instance because ensuring that the Receiver's efforts benefit the investors and the receivership estate is this Court's primary concern when awarding interim compensation in the early stages of this litigation.

A similar approach to awarding interim compensation was taken in S.E.C. v. Byers. See 590 F. Supp. 2d at 646–48. In that case, the S.E.C. alleged that the defendants had "defrauded more than one thousand investors of approximately $255 million," and the court responded by appointing a receiver and law firm to manage the defendant companies allegedly violating federal securities laws. Id. at 639. When the law firm assisting the receiver first requested interim compensation, it received a fraction of what it requested because, in part, it was "simply too early to tell the extent to which its efforts will benefit the receivership estate." Id. at 648. This Court may use Byers's example because the Receiver and his counsel are compensated under the same analysis, which is subject to the Court's broad discretion. See id. at 645 (quoting In re New York Investors, Inc., 79 F.2d 182, 185 (2nd Cir. 1935)) ("'[R]eceivers and attorneys engaged in the administration of estates in the courts of the United States . . . should be awarded only moderate compensation'"); In re Alpha Telcom, Inc., 2013 WL 840065, at *16 ("The court appointing the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys.").

### C. Allen Matkins

The Court also recognizes the services provided by Allen Matkins during the interim fee period. See First Application AM 3–6. The law firm assisted the Receiver in complying with the requirements of 28 U.S.C. § 754, which requires that notice of the appointments of the Receiver and counsel be given to the counties where the receivership estate holds properties and collateral funds. Id. at 3. The Receiver also requested Allen Matkins' assistance in seizing assets for the receivership estate, working with the Small Business Administration on various legal issues,

investigating claims against third parties, servicing legacy loans, addressing loan defaults, and minimizing losses. Id. at 4.

Having reviewed Allen Matkins' application for fees and costs, the Court awards 66% of the requested fees and 100% of the request expenses for the interim period. The primary rationale for this determination is that the Court objects to Allen Matkins' charging a blended hourly rate of $454.10. As general counsel to the Receiver, Allen Matkins must assist the Receiver in the fulfillment of his duties, one of which is to ensure that the receivership estate is able to compensate investors while the S.E.C. pursues civil charges against the defendants. See Receiver App't Order 5–6 ("[S]uch receiver is immediately authorized, empowered and directed . . . to take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any assets of or managed by SB Capital, IPF, and SPF, and their subsidiaries and affiliates."); Allen Matkins Approval ("The Receiver is authorized to employ Allen Matkins as his general counsel."). Given that the S.E.C. has alleged that the defendants have violated antifraud provisions of the federal securities laws, the Court has a strong interest in ensuring that the receivership estate is able to compensate investors until the case is resolved. Compl. 1. The high hourly rate of $451.10 charged by Allen Matkins runs contrary to that objective; and as such, a reduction is proper.

This approach was taken in a similar case involving allegations of violations of federal securities laws in awarding fees to the receiver's attorneys. See Byers, 590 F. Supp. 2d at 646–48. In Byers, the law firm assisting the receiver requested a blended hourly rate of $478. Id. The Byers court determined that the rate was "too high for a securities receivership case" and reduced the firm's blended hourly rate to just over $300 for the interim period. Id. The court explained that the receiver's counsel should receive only a modest fee because the victims of the defendants' alleged fraudulent activities "are likely to recover only a fraction of their losses." Id. at 645. The law firm assisting the receiver could not request its standard rates for legal services when the investors stand to lose so much if the S.EC.'s allegations are affirmed. See id. Additionally, the depressed legal market at the time of the case made the firm's hourly rates appear even more unreasonable. See id.

7

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING INTERIM FEE APPLICATIONS

at 647–48. Numerous law firms would have been willing the assist the receiver at a much lower hourly rate to avoid laying off attorneys or closing their doors for good. See id. at 647.

## IV. Conclusion and Order

For the foregoing reasons, the applications for interim fees and expenses (Docket Item Nos. 134, 135, 136) are GRANTED IN PART. The fees and expenses shall be disbursed as follows:

| **Fee Distribution** | | | | |
|---|---|---|---|---|
| **Applicant** | **Fees Allowed** | **% of Fee Request** | **Expenses Allowed** | **% of Expenses Request** |
| Receiver | $163,300.73 | 75% | N/A | N/A |
| Allen Matkins | $80,703.45 | 66% | $5,740.70 | 100% |

**IT IS SO ORDERED.**

Dated: May 15, 2013



_____
EDWARD J. DAVILA
United States District Judge

8
Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING INTERIM FEE APPLICATIONS