UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISION, <br><br> Plaintiff, <br><br> v. <br><br> SMALL BUSINESS CAPITAL CORP., MARK FEATHERS, INVESTORS PRIME FUND, LLC, AND SBC PORTFOLIO FUND, LLC <br><br> Defendants. | Case No.: 12-cv-3237-EJD (PSG) <br><br> **ORDER RE: DISCOVERY MOTIONS** <br><br> **(Re: Docket Nos. 405, 414, 446, 450, 464, 499, 506)** |

In this securities fraud case, both Plaintiff Securities and Exchange Commission ("SEC") and Defendant Mark Feathers ("Feathers") bring motions seeking relief from the court. The parties appeared for hearing on the motions on June 11, 2013.

**DISCUSSION**

Given the rapidly approaching hearing on Feathers' motion for summary judgment and the number of motions at issue, the court dispenses with a detailed history of this case. Suffice it to say, in June 2012, the SEC brought an action against Feathers and three corporate entities that he controls, Small Business Capital Corp. ("SB Capital"), Investors Prime Fund, LLC ("IPF"), and SBC Portfolio Fund LLC ("SPF"), and alleged that they violated the antifraud provisions of the

1

Case No.: 12-3237 EJD (PSG)
ORDER

federal securities laws.[1]  Following the filing of the complaint, Judge Davila issued a temporary restraining order requiring in part the appointment of a temporary receiver to manage the corporate defendants.[2]  Feathers is proceeding pro se.

The parties now are engaged in discovery, which, as will be explained below, has resulted in several disputes between them regarding their respective obligations in terms of document production and deposition appearances.  Feathers filed a motion for summary judgment on May 13, 2013, which Judge Davila will hear on June 28, 2013.[3]

In addressing the six motions currently before it, the court keeps in mind the rules governing discovery.  Fed. R. Civ. P. 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[4]

With these principles in mind, the court rules as follows:

- **Docket No. 405**: Feathers seeks documents relating to two properties owned by the corporate entities.  The Receiver has indicated he has produced the documents Feathers requests.  Given this representation, the court DENIES AS MOOT Feather's motion.  The court also notes that for future discovery motions, Feathers must engage in meet-and-confer attempts as required under Civil L.R. 37-1(a).

- **Docket No. 414**: Feathers wants documents from the Receiver describing the financial status of the corporate entities.  As the Receiver rightly observes, its obligations to produce quarterly reports to the court (and thereby to all interested parties) provides Feathers with ongoing information about the status of the entities.  Feathers furthermore has failed to show how information about the current status of the corporate entities is relevant to his case.  He no longer manages the corporate entities as a result of Judge Davila's TRO order,

---

[1] *See* Docket No. 1 ¶ 1.

[2] *See* Docket No. 16.

[3] *See* Docket No. 459.

[4] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

2

Case No.: 12-3237 EJD (PSG)
ORDER

and so he does not have any greater relationship with the entities than any of the other interested parties. The interim reports provide sufficient information to Feathers. His request is DENIED.

- **Docket No. 446**: Feathers seeks to depose a Rule 30(b)(6) witness from the SEC regarding ten topics for which he believes he is entitled to discovery. He specifically wants an SEC attorney to sit for a deposition regarding the pre-filing investigation and the decision to pursue the case. He has not actually served a notice of deposition to the SEC nor has he attempted other methods of discovery from the SEC regarding its case. Feathers' request appears to seek from the SEC a deponent who will testify regarding information that is protected by the work-product privilege. Because the person whom the SEC should designate as most knowledgeable of Feathers' topics is an attorney working on the case, Feathers essentially seeks to depose opposing counsel, a request courts regularly reject.[5] Feathers' request for a 30(b)(6) witness from the SEC is DENIED.

- **Docket Nos. 450, 506**: The SEC and Feathers are at odds regarding the deposition of Feathers' wife Natalie Feathers ("N. Feathers"). Feathers maintains that the spousal privileges prevent the SEC from deposing her; the SEC asserts that she has waived any privilege and that it does not apply to testimony she may offer in her role as an officer of SB Capital. As an initial matter, neither the confidential marital privilege nor the adverse spousal testimony privilege precludes N. Feathers from sitting for a deposition.[6] She may assert the privilege – if applicable – during the course of her testimony.

The court also clarifies the two privileges. The confidential marital communications privilege permits either Feathers or N. Feathers to prevent testimony regarding private communications between them.[7] To the extent N. Feathers has offered testimony in the form of declarations regarding confidential communications with Feathers, those communications are no longer confidential and the privilege no longer applies.[8]

The second privilege, the adverse spousal testimony privilege, allows a spouse to avoid testifying against her marital partner.[9] In *Trammel v. United States*, the Supreme Court noted that the privilege should be limited as it allows broad swaths of evidence not to enter the record.[10] Interpreting *Trammel*, some courts have suggested it applies only to criminal matters,[11] but the Ninth Circuit appears not to have spoken yet on the issue. At least one

---

[5] *See, e.g.*, *SEC v. Buntrock*, 217 F.R.D. 441, 445 (N.D. Ill. 2003); *Mass. Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 482 (N.D. Cal. 1998).

[6] *See* Fed. R. Civ. P. 30 (describing how objections regarding privilege should occur).

[7] *See United States v. Montgomery*, 384 F.3d 1050, 1057 (9th Cir. 2004).

[8] *See id.*

[9] *See id.*

[10] *See* 445 U.S. 40, 45-46, 52-53 (1980).

[11] *See, e.g., United States v. Yerardi*, 192 F.3d 14, 19, 19 n.3 (1st Cir. 1999) (listing cases); *Knepp v. United Stone Veneer, LLC*, Case No. 4:06-cv-1018, 2007 U.S. Dist. LEXIS 65423, at *8-9 (M.D.

3

Case No.: 12-3237 EJD (PSG)
ORDER

court, however, has interpreted the privilege to apply to a civil matter in parallel with a criminal matter when the Government failed to ensure that the adverse testimony would not be used in the criminal matter.[12]  And the First Circuit has suggested that it may apply in situations such as this, "a government civil fraud case where a criminal prosecution might plausibly follow."[13]  N. Feathers asserts that the SEC has provided information to the Department of Justice ("DOJ"), although she provides no evidence of that communication. But she did attach a letter from the Federal Bureau of Investigation to investors indicating that the agency was investigating the matter.[14]

The court finds the reasoning of those courts persuasive and applicable to this case.  Given that criminal charges could apply to the underlying factual allegations and that the SEC can make recommendations to the DOJ regarding criminal prosecution,[15] the court finds that N. Feathers may assert the adverse spousal testimony privilege unless there is a guarantee that her testimony will not be used in any possible criminal case arising from the SEC's allegations.[16]  Without that guarantee, the Government could use her adverse testimony against Feathers in a subsequent criminal proceeding and thereby circumvent her privilege.

As noted above, the privilege does not affect whether N. Feathers should sit for a deposition.  In that regard, the SEC's motion is GRANTED and Feathers' motion for protective order DENIED.  Within seven days, N. Feathers shall sit for a video-taped deposition and she shall, at a minimum, answer questions as to her role at SB Capital and as to any factual matter on which she has filed a declaration.  If the SEC attempts to question her about confidential communications between her and Feathers that have not yet been disclosed, either she or Feathers can assert the confidential communications privilege.  Absent a guarantee that testimony adverse to Feathers will only be used in this civil proceeding, she may also assert the adverse spousal testimony privilege for questions that require testimony adverse to Feathers.

- **Docket No. 464**:  Feathers seeks a protective order requiring the SEC and the Receiver to file certain documents under seal.  As a preliminary matter, a protective order limiting the disclosure of confidential information is distinct from a motion to seal documents.  Parties may agree to the designation of certain materials as confidential and thereby limit further dissemination but the burden to seal those documents once they are submitted to the court is higher.  Nevertheless, given Feathers' pro se status, the court interprets his request as a request for a protective order in which he may designate certain material as confidential and presumably require the SEC to at least request that the documents be filed under seal.

---

Pa. Sept. 5, 2007); *United States v. Sriram*, Case No. 00 C 4988, 2001 WL 59055, at *4 (N.D. Ill. Jan. 23, 2001).

[12] *See Sriram*, 2001 WL 59055, at *4.

[13] *Yerardi*, 192 F.3d at 19.

[14] *See* Docket No. 522 Ex. 3.

[15] *See* 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d).

[16] *See Yerardi*, 192 F.3d at 21 (holding that privilege dissolves if government filed affidavit guaranteeing no use of the adverse spousal testimony in likely future criminal case).

4

Case No.: 12-3237 EJD (PSG)
ORDER

Feathers asserts that SB Capital's financial information, notably its compensation packages, is a trade secret. Feathers also objects to the SEC's references to Ponzi schemes or fraud. To the extent that Feathers seeks to seal documents already filed in support of the SEC's motion for summary judgment, the court does not address that issue because it is properly directed toward Judge Davila. The court advises Feathers, however, that the starting point with respect to documents filed with the court is transparency and so he must meet the stringent "compelling reasons" standard to seal documents filed in support of a dispositive motion.[17] If Feathers seeks a protective order going forward, he may designate confidential information that he turns over to the SEC as such, but he must be prepared to show that the information in fact is confidential and would be harmful if disclosed. The court also refers him to Civil L.R. 79-5 for the proper procedure regarding requests to seal documents.

- **Docket No. 499**: The SEC seeks to compel Feathers to produce documents responsive to its requests for production. According to the SEC, Feathers admitted he possessed documents responsive to its requests and in fact attached responsive (but unproduced) documents to a reply to a motion to dismiss that he filed. Feathers maintains that the Receiver confiscated and now possesses any responsive documents. To the extent that Feathers possesses documents that fall within the requests for production the SEC has served, he has an obligation under the Federal Rules of Civil Procedure to turn them over to the SEC.[18] As a pro se litigant, Feathers may be unfamiliar with the role discovery plays in civil litigation and why he seemingly must aid his opponent. Discovery is a collaborative process in which parties must work together to exchange information and to streamline the investigation. The purpose of a civil suit and the discovery pursued therein is to determine the merits of a case and so the Federal Rules instruct parties to cooperate so that a meritorious decision results. Discovery at its core prevents unfair surprises. In line with this policy, the SEC's motion is GRANTED, and Feathers shall produce the relevant documents within seven days from this order.

**IT IS SO ORDERED.**

Dated: June 13, 2013

PAUL S. GREWAL
United States Magistrate Judge

---

[17] *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).

[18] *See* Fed. R. Civ. P. 34.

5

Case No.: 12-3237 EJD (PSG)
ORDER