DAVID R. ZARO (BAR NO. 124334)
TED FATES (BAR NO. 227809)
KIM A. BUI (BAR NO. 274113)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
515 South Figueroa Street, Ninth Floor
Los Angeles, California 90071-3309
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
          tfates@allenmatkins.com
          kbui@allenmatkins.com

Attorneys for Receiver
THOMAS A. SEAMAN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV12-03237 |
| Plaintiff, | **RECEIVER'S FORENSIC ACCOUNTING REPORT** |
| v. | Ctrm:  4 - 5th Floor<br>Judge:  Hon. Edward J. Davila |
| SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LCC; and SBC PORTFOLIO FUND, LLC, | |
| Defendants. | |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.      PROCEDURAL BACKGROUND ....................................................................... 1

II.     CORPORATE STRUCTURE ............................................................................. 1

III.    EXECUTIVE SUMMARY .................................................................................. 2

IV.     OBJECTIVES, SCOPE, AND METHODOLOGY ............................................ 3

V.      FUND ASSETS vs. STATED BALANCES IN MEMBER ACCOUNTS ......... 4

VI.     SOURCES AND USES OF FUNDS ................................................................... 6

        A.      Money Raising Activities .................................................................... 7

        B.      Money Lending Activities .................................................................... 8

        C.      Intercompany Uses of Cash ................................................................ 11

                1.      Fund to Fund Cash Transfers .................................................. 11

                2.      Fund to Fund Loan Transfers .................................................. 13

                3.      Fund to Fund Member Account Transfers ............................... 15

                4.      Fund to Manager Transfers ..................................................... 16

                5.      Manager to Fund Transfers ..................................................... 18

VII.    SBCC SOURCES AND USES OF FUNDS ....................................................... 18

VIII.   PAYMENTS TO OR ON BEHALF OF MR. FEATHERS ............................... 21

IX.     TEST OF ESTIMATE OF LOSSES .................................................................. 22

X.      CONCLUSION .................................................................................................. 22

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

(i)

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

# TABLE OF EXHIBITS

**Page**

TABLE 1    RECEIVERSHIP ENTITIES - CASH BASIS ADJUSTED
           BALANCE SHEET ................................................................................. 5

TABLE 2    RECEIVERSHIP ENTITIES - CASH BASIS ADJUSTED
           BALANCE SHEET ................................................................................. 6

TABLE 3    MONEY RAISING ACTIVITY SUMMARY BY FUND ....................... 7

TABLE 4    RETURNS REINVESTED BY FUND ................................................... 8

TABLE 5    SOURCES AND USES OF THE FUNDS' LENDING ACTIVITIES ................... 8

TABLE 6    OPERATING REVENUE FROM LENDING ACTIVITY BY FUND ................ 9

TABLE 7    OPERATING EXPENSES PAID DIRECTLY BY FUNDS ................................ 10

TABLE 8    CASH SHORTFALL OF THE FUNDS ................................................... 11

TABLE 9    INTER-FUND CASH TRANSFERS .......................................................... 12

TABLE 10   CASH TRANSFERS BETWEEN FUNDS BY YEAR ......................... 12

TABLE 11   ANALYSIS OF INTER-FUND CASH TRANSFERS ........................... 13

TABLE 12   INTER-FUND LOAN TRANSFERS .......................................................... 13

TABLE 13   INTER-FUND LOAN TRANSFERS BY YEAR .................................. 14

TABLE 14   MANAGEMENT FEES TAKEN FROM LOAN PREMIUMS ............. 15

TABLE 15   INTER-FUND MEMBER ACCOUNT TRANSFERS ......................... 15

TABLE 16   NET EFFECT OF ALL INTER-FUND TRANSFERS ........................... 16

TABLE 17   CASH TRANSFERS FROM FUNDS TO MANAGER BY FUND ...................... 16

TABLE 18   CASH TRANSFERS FROM FUNDS TO MANAGER BY YEAR ...................... 17

TABLE 19   SBCC - SOURCES AND USES OF FUNDS ...................................... 19

TABLE 20   SBCC - OPERATING EXPENSES ............................................................ 20

TABLE 21   PAYMENTS TO FEATHERS AND IMMEDIATE FAMILY ............................ 21

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

1   Thomas A. Seaman ("Receiver") Court-appointed permanent receiver for Small Business
2   Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and their subsidiaries and
3   affiliates (collectively, "Receivership Entities"), submits this forensic accounting report covering
4   the period from January 1, 2007 through the time of the Receiver's appointment on June 26, 2012.

5   ## I.        PROCEDURAL BACKGROUND

6   The Preliminary Injunction Order directs the Receiver to "make an accounting, as soon as
7   practicable, to this Court and the Commission of the assets and financial condition of SB Capital,
8   IPF and SPF, and to file the accounting with the Court and deliver copies thereof to all parties."
9   Preliminary Injunction Order, Docket No. 34, Part VII.E.  Pursuant to this order, the Receiver
10  analyzed the books and records of the companies and determined certain important aspects of the
11  accounting data to be unreliable.  The Receiver, therefore, began an analysis of cash receipts,
12  disbursements and intercompany transfers and filed a Preliminary Forensic Accounting Report on
13  January 16, 2013, recommending that further reconciliation and analysis be done to complete the
14  forensic accounting.  Docket No. 171.  On January 18, 2013, the Court authorized the Receiver to
15  perform the necessary work to complete the forensic accounting.  Docket No. 178.

16  The Preliminary Forensic Accounting report was based on the best information available at
17  the time with certain conclusions arrived at by estimation and deduction, particularly regarding the
18  amounts transferred to the Manager by the Funds.  Now that the forensic accounting is complete,
19  the Receiver is able quantify all categories of cash flows, including intercompany uses of member
20  funds, and produce discrete listings of each deposit, disbursement or transfer made.

21  ## II.       CORPORATE STRUCTURE

22  Small Business Capital Corp. ("SBCC" or "Manager") is the managing member of three
23  investment funds, each of which is a California limited liability company ("Funds").  Mark
24  Feathers was the founder and Chief Executive Officer of SBCC.  The three Funds are Investors
25  Prime Fund, LLC ("IPF"), SBC Portfolio Fund, LLC ("SPF"), and SBC Senior Commercial
26  Mortgage Fund, LLC ("SCMF").  Individuals who made investments in the Funds became
27  members of the respective LLCs.  IPF was the managing member of a subsidiary company, Small
28  Business Capital, LLC ("SBC LLC"), which was established to hold the U.S. Small Business

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

Administration ("SBA") lending authority and make SBA 7-A loans.  Collectively, the Funds, the Manager, and SBC LLC are referred to as the Receivership Entities.

### III.     EXECUTIVE SUMMARY

The forensic accounting of the Receivership Entities demonstrates that the revenue generated from the Funds' lending activities was insufficient to pay the amounts posted in member statements as mortgage pool distributions ("Member Returns").  More specifically, the Funds generated net income from lending activities of $3.97 million, which is substantially less than the $6.584 million in Member Returns paid or credited to members.

Despite the inability to meet Member Returns from their cash basis net income, the Funds also transferred substantial amounts to the Manager to pay the Manager's operating expenses. Transfers from the Funds to the Manager totaled $9.24 million.  Of this amount, $1.773 million was returned by the Manager to the Funds, and therefore a net of $7.467 million was transferred from the Funds to the Manager.  As discussed in further detail below, these funds were transferred in various ways to the Manager to cover payroll and other operating expenses.

There was no source of money to pay Member Returns and operating expenses of the Manager other than lending profits and member capital.  As discussed above, the lending profits were only $3.97 million.  Therefore, member capital was used to pay Member Returns and operating expenses of the Manager.  As a result, at the time of the Receiver's appointment, the aggregate stated balance of member accounts exceeded the total combined assets of the Funds and the Manager by approximately $13.1 million.

The fact that revenue from lending activities was insufficient to pay Member Returns and cover operating expenses of the Manager resulted in the Receivership Entities constantly being short on cash.  In order to meet their cash needs, the Receivership Entities used several types of transactions to create liquidity.  These transactions include:

- Transfers of cash between Funds;
- Loans by the Funds to the Manager
- Payment of management fees
- Payments by the Manager back to the Funds

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-2-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

- Payment of loan premiums on inter-Fund loan transfers
- Reimbursement of expenses
- Payment of syndication costs
- Transfers of loans between funds
- Transfers of member accounts between Funds
- Investments by one Fund in another and subsequent transfers back to the original Fund
- "Reinvesting" of Member Returns in lieu of cash payments.

If all the Receivership Entities are consolidated and treated as a single entity, the Funds and Manager operated at substantial losses; expenses of $15,457,185 exceeded revenue of $11,065,467 by $4,391,718.

The financial behavior of the Receivership Entities was driven by competing liquidity needs of paying Member Returns and covering the expenses of the Manager.  The constant illiquidity experienced by the Funds and the Manager, and addressed via the numerous kinds of transactions listed above, resulted in a very high volume and complex web of transactions to unravel and analyze.

## IV.   OBJECTIVES, SCOPE, AND METHODOLOGY

The objective of the forensic accounting is to determine the assets and financial condition of the Receivership Entities and how money raised from members was used.  The Receiver created a QuickBooks model, which is essentially a relational database, designed to accumulate all cash receipts and disbursements in a dual entry system that is reconciled to the banking records of the Receivership Entities from January 1, 2007, through the time of the Receiver's appointment.[1]  The data is organized into money raising, money lending and intercompany activities and is designed to provide the Court and the parties with the following information:

- A reconciled sources and uses of funds analysis;
- The amount invested by and distributed to members;

---

[1]   The Receiver used January 1, 2007, as the start date of the forensic accounting because that is the date on which the companies' ABS system begins to track member investment accounts and borrower accounting.  The ABS system was more fully described in the Preliminary Forensic Accounting Report.  Docket No. 171.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

-3-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

- The amount owed to members;

- The amount lent to and collected from borrowers and the profitability of the Funds' lending activities;

- The amount the Funds transferred to the Manager;

- An accounting of the uses of funds transferred to the Manager from the Funds;

- The amount paid to Mark Feathers, or on his behalf, and paid to his immediate family members;

- The amount paid to shareholders;

- An analysis of intercompany transfers and how they were used to create liquidity to meet the cash needs of the Funds and the Manager;

- The value of the Funds' assets compared to stated balances in member capital accounts;

- A functioning database of all financial transactions for purposes of determining potential sources of recovery, including disgorgement and damages, and analyzing member and creditor claims;

- The financial position and cash balances of the Funds and the Manager at any given time during the accounting period; and

- Information necessary for analyzing tax issues and preparing tax returns of the Receivership Entities.

The Receivership Entities used 45 bank accounts over the 66-month forensic accounting time period.  Over 21,200 transactions with a dollar value of over $635,000,000 were entered into the Receiver's database from approximately 700 bank statements and reconciled to the cash taken into the possession of the Receiver at the time of his appointment.  Only cash entries representing either a deposit, withdrawal, or transfer between accounts were included in the database.  Book entries that did not tie to cash transactions and other non-cash transactions were not used.  Credit card charges were also entered.  As a result of the very high volume of transactions, the forensic accounting was more labor-intensive and time consuming than initially anticipated.

## V.    FUND ASSETS vs. STATED BALANCES IN MEMBER ACCOUNTS

The table below presents the net assets of the Funds as compared to stated balances in member capital accounts as of the date of the Receiver's appointment.  All loan balances are valued at the unpaid principal owed by the borrowers and have been reduced for expected losses

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-4-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

on certain loans in the amount of $2,284,109.[2]  Other assets have been adjusted to their current value, if that is known.  The California Business Bank ("CBB") stock is valued at $42,900 based on its current price per share of $0.13 (as opposed to $990,000, the value based on the $3.00 per share price paid by IPF), and no provisions for potential recoveries from the Receiver's litigation against CBB have been included.  Performing loans are carried at par with no adjustments for any premiums or discounts that may occur if and when they are sold.[3]  Based on these valuations and information, the total loss of member capital is approximately $13.1 million as illustrated in the following table:

| TABLE 1 | | | | | | |
|---|---|---|---|---|---|---|
| RECEIVERSHIP ENTITIES - CASH BASIS ADJUSTED BALANCE SHEET | | | | | | |
| Entity | IPF | SBC LLC | SPF | SCMF | SBCC | Total |
| Cash | 4,353,316 | 2,996,649 | 2,734,612 | 244,962 | 203,424 | 10,532,962 |
| Loan Book Value | 7,758,339 | 7,466,004 | 6,089,883 | 2,782,031 | - | 24,096,256 |
| Adj. for Expected Losses | 1,953,214 | 195,000 | 95,895 | 40,000 | - | 2,284,109 |
| Net Loan Value | 5,805,125 | 7,271,004 | 5,993,988 | 2,742,031 | - | 21,812,147 |
| California Business Bank Stock | 42,900 | | | | | 42,900 |
| Cash Value Life Insurance | 30,235 | | | | | 30,235 |
| SBA License | | 750,000 | | | | 750,000 |
| Sweet Fingers REO | 290,000 | | | | | 290,000 |
| Natoma REO | | | 300,860[4] | | | 300,860 |
| Total Assets | 10,521,576 | 11,017,652 | 9,029,460 | 2,986,993 | 203,424 | 33,759,104 |
| Member Capital[5] | 32,417,562 | | 10,664,851 | 3,784,168 | | 46,866,582 |
| Surplus/(Shortage) | (21,895,987) | 11,017,652 | (1,635,392) | (797,176) | 203,424 | (13,107,478) |

---

[2]  The specific expected loss on each loan is not included herein so as not to impair the Receiver's efforts to collect on the applicable loans.

[3]  It should be noted that the SBA has submitted a claim to the Receiver in the amount of $24,181,665.20, representing what it contends is a contingent right to recover from the Receivership Entities due to alleged defects and deficiencies in the pre-receivership origination and servicing of loans involving SBA guarantees.

[4]  This value is net of the $400,000 first trust deed subsequently paid off by the Receiver.

[5]  This amount represents principal invested, less principal returned, plus reinvested returns, plus referral fees paid by the Manager.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

-5-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

1  Note, Whiskey Junction is included in the loan total and not separately listed as an REO

2  because at the time of the Receiver's appointment, it was still a loan.  The Receiver took the

3  property back via foreclosure on March 8, 2013.

## VI.    SOURCES AND USES OF FUNDS

5  In order to shed light on the approximately $13.1 million loss of member capital, the

6  Receiver has prepared a sources and uses of funds analysis based on the cash flows to and from

7  the Funds.  The analysis is provided by financial activity, *i.e.*, money raising, money lending, and

8  intercompany transfers (payments among SBCC and the Funds).  Exhibit A provides a worksheet

9  used to arrive at the sources and uses by activity for the Funds and summarizes the cash flows set

10  used to arrive at the Profit and Loss statements by Fund and Balance Sheets by Fund, which are

11  attached as Exhibits B and C, respectively.

12  At the start of the forensic accounting period (January 1, 2007), IPF was the only Fund in

13  operation.  The IPF balance sheet as of December 31, 2006 shows a cash balance of approximately

14  $56,289, loans of $2.228 million and an investment in Coast Capital Income Fund, LLC, an entity

15  previously owned in part by Mr. Feathers.  Members of IPF had invested $3,608,212.66 as of that

16  time.  SBCC, the Manager, had cash assets of $146,571 and an unpaid line of credit for $600,000.

17  Therefore, the Receivership Entities began the forensic accounting period in an illiquid state.

18  From that point in time, the primary source of funding for the Receivership Entities was new

19  investments by members and revenue from lending activities.  Cash flows by activity for the

20  accounting period are summarized as follows:

| TABLE 2 | | | | |
|---|---|---|---|---|
| CASH FLOW BY FINANCIAL ACTIVITY | | | | |
| 1/1/2007 - 6/26/2012 ($ millions) | | | | |
|  | IPF | SBC LLC | SPF | SCMF | Total |
| Beginning Cash Balance | 0.056 | 0.000 | 0.000 | 0.000 | .056 |
| Money Raising | 26.074 | - | 7.553 | 2.877 | 36.504 |
| Money Lending | 5.109 | (6.505) | (14.016) | .718 | (14.694) |
| Intercompany | (26.886) | 9.502 | 9.198 | (3.350) | (11.536) |
| Ending Cash Balance | 4.353 | 2.997 | 2.735 | .245 | 10.330 |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-6-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

Note, the ending cash balance in this table is approximately $200,000 less than the ending cash balance shown in Table 1 because this table shows only the Funds and excludes SBCC.

## A. Money Raising Activities

Money raising activities are comprised solely of: (1) the total cash invested by members less: (a) cash distributions to members, and (b) principal returned to members. The table below provides the total cash raised from members by Fund ($57.299 million), the total returns members received in the form of cash payments ($3.668 million), and the total principal returned to members ($13.518 million). The net sum raised after returns paid to members is $40.112 million. Of this amount, $3.608 million was raised prior to January 1, 2007, the start date of the forensic accounting, thus the total amount of cash generated by money raising activities during the forensic accounting period is $36.504 million as reflected in Table 2 above. The $40.112 million in net cash generated by money raising activities (including the $3.608 million raised prior to the forensic accounting period) is summarized as follows:

| TABLE 3 | | | |
|---|---|---|---|
| MONEY RAISING ACTIVITY SUMMARY BY FUND[6]<br>($ millions) | | | |
| | IPF | SPF | SCMF | Total |
| Principal Invested | 43.117 | 11.272 | 2.910 | 57.299 |
| Member Returns Paid in Cash | (2.669) | (0.967) | (0.033) | (3.669) |
| Principal Returned | (10.767) | (2.751) | - | (13.518) |
| Total Money Raising | 29.681 | 7.554 | 2.877 | 40.112 |

These aggregate money raising cash flows are distinct from and do not reflect the amount owing to members showing in the company's ABS system or the proper amount of member claims against the receivership estate. The ABS system includes non-cash entries that increase member account balances for (a) interest they "reinvested," and (b) referral fees,[7] (either for referring their

[6] These cash flows do not include the intercompany transfer of member accounts between Funds in the aggregate amount of $6.911 million which have been accounted for herein as intercompany member distributions and contributions and are discussed below under Intercompany Uses of Cash.

[7] As discussed in the Manager to Funds Transfers section below, $170,549.17 of referral fees were paid by the Manager to the Funds in cash.

own investment, referring other members, or agreeing to transfer their investment from one Fund to another.)  Members were allowed to reinvest their monthly returns, which reduced the cash needs of the Funds.  The following table provides a summary of returns reinvested by Fund.  The practice of reinvesting returns ended with the June 1, 2012 payment, the final payment of Member Returns prior to the Receiver's appointment on June 26, 2012.

| TABLE 4 | | | |
|---|---|---|---|
| RETURNS REINVESTED BY FUND | | | |
| FUND | MEMBER RETURNS PAID | MEMBER RETURNS PAID IN CASH | MEMBER RETURNS REINVESTED |
| IPF | 4,920,229 | 2,668,447 | 2,251,782 |
| SPF | 1,550,436 | 967,054 | 583,382 |
| SCMF | 113,190 | 33,453 | 79,737 |
| Total | 6,583,855 | 3,668,954 | 2,914,901 |

B.      **Money Lending Activities**

The Funds' lending activities resulted in a net use of cash in the amount of $14,694,141 as of the date of the Receiver's appointment.  The Funds made loans to borrowers in the gross amount of $92,280,729.  Borrowers repaid principal of $24,252,028.  The sources and uses of the Funds' lending activities are summarized as follows:

| TABLE 5 | | | | | |
|---|---|---|---|---|---|
| SOURCES AND USES OF THE FUNDS' LENDING ACTIVITIES ($ millions) | | | | | |
| | IPF | SBC LLC | SPF | SCMF | Total |
| Loans Made to Borrowers | (21.089) | (43.375) | (26.951) | (.866) | (92.281) |
| Loan Sales to Third Parties | 10.706 | 35.085 | 3.667 | 1.310 | 50.768 |
| Principal Repaid | 15.036 | .823 | 8.137 | .256 | 24.252 |
| Lending Revenue | 3.104 | 3.762 | 1.692 | .163 | 8.721 |
| Operating Expenses | (1.622) | (2.423) | (.561) | (.145) | (4.751) |
| SBA License Investment | | (.750) | | | (.750) |
| CBB Stock | (.990) | | | | (.990) |
| Other Lending Cash Flows[8] | (.034) | .372 | (.003) | -0- | .335 |

---

[8]      This is primarily comprised of borrower deposits and cash on hand in loan payment holding accounts for loans the Funds were servicing.  These amounts had not yet been paid over to loan owners or participants at the time of the Receiver's appointment.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**
806668.01/SD
-8-
Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 5 | | | | |
| --- | --- | --- | --- | --- |
| SOURCES AND USES OF THE FUNDS' LENDING ACTIVITIES ($ millions) | | | | |
| | IPF | SBC LLC | SPF | SCMF | Total |
| Total Money Lending | 5.110 | (6.506) | (14.017) | .718 | (14.694) |

Note, this does not mean that the Funds lost $14.694 million from lending activities. Instead, it shows that $14.694 million of cash raised from members had been "used" on lending activities as of the date of the Receiver's appointment.  The "use" of cash includes for purposes of making outstanding loans, and therefore does not represent a loss of capital.  As discussed below, the net revenue from the Funds' lending activities was $3.97 million.

The loans made by the Funds generated operating revenues.  Specifically, the loans generated loan interest income of $3,786,054, loan servicing income of $578,557, loan origination income of $600,328, and other loan income of $123,746.  In addition, SBC LLC, a subsidiary of IPF, sold the SBA guaranteed portions of SBA 7-A loans in the total amount of $35,085,905, and retained the servicing rights for these loans.  The sales of these loans to unrelated third parties generated profits of $3,633,194 to the Funds.  The foregoing operating revenue of the Funds' lending activities may be summarized by Fund as follows:

| TABLE 6 | | | | |
| --- | --- | --- | --- | --- |
| OPERATING REVENUE FROM LENDING ACTIVITY BY FUND ($ millions) | | | | |
| | IPF | SBC LLC | SPF | SCMF | Total |
| Loan Interest Income | 2.205 | .476 | 1.051 | .054 | 3.786 |
| Loan Servicing Income | .068 | .384 | .089 | .037 | .578 |
| Loan Origination Income | -0- | .072 | .478 | .050 | .600 |
| Loan Premium Income | .819 | 2.801 | -0- | .013 | 3.633 |
| Other Loan Income | .010 | .029 | .075 | .009 | .124 |
| Total Income | 3.104 | 3.762 | 1.692 | .163 | 8.721 |

Operating expenses of $4,751,482.19 were paid directly from the Funds.  These operating expenses are in addition to the payments the Funds made to the Manager for management fees, syndication costs, consulting fees and other payments discussed in the Intercompany Uses of Cash

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

-9-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

section below.  The following is a list of categories comprising the operating expenses of the Funds paid by them directly:

| TABLE 7 | |
|---|---|
| **OPERATING EXPENSES PAID DIRECTLY BY FUNDS** | |
| Advertising | 249,018.36 |
| Bank Service Fees (less int.) | (9,878.28) |
| Collection Expense | 10,212.28 |
| Commissions and Referral Fees | 945,904.91 |
| Consulting Fees | 586,686.08 |
| Fees Paid to ECI | 25,817.92 |
| Insurance | 125,428.57 |
| Member Events/Dinners | 32,583.93 |
| IRA Account Fees | 495.00 |
| License and Permit Fees | 114,709.98 |
| Office Expenses | 86,598.12 |
| Other Operating Expenses | 31,446.29 |
| Outside Service Fees | 224,501.76 |
| Payroll & Payroll Related | 1,339,787.27 |
| Postage & Delivery | 3,131.06 |
| Accounting Fees | 246,795.64 |
| Legal Fees | 654,148.71 |
| Rent Expense | 7,395.40 |
| Travel & Entertainment | 27,475.00 |
| Utilities | 0.00 |
| Taxes | 49,224.19 |
| **Total Operating Expenses** | 4,751,482.19 |

The operating revenue from lending activities set forth above is $8.721 million, less operating expenses paid directly by the Funds of $4.751 million, results in net income of $3.97 million.  As discussed above, this amount was insufficient to cover Member Returns of $6.584 million and the amount transferred to the Manager from the Funds.  The following table illustrates the shortfall:

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-10-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 8 | | | | |
|---|---|---|---|---|
| **CASH SHORTFALL OF THE FUNDS** | | | | |
| ($ millions) | | | | |
| | **IPF** | **SPF** | **SCMF** | **TOTAL** |
| Total Revenue Lending Activities | 6.866 | 1.692 | .163 | 8.721 |
| Operating Expense Paid by Funds | (4.045) | (.561) | (.145) | (4.751) |
| Net Income From Lending | 2.821 | 1.131 | .018 | 3.970 |
| Member Returns[9] | (4.920) | (1.551) | (.113) | (6.584) |
| Payments by Funds to Manager[10] | (5.341) | (1.850) | (.276) | (7.467) |
| Surplus/(Shortfall) | (7.440) | (2.270) | (.371) | (10.081) |
| Expected Loan Losses | | | | (2.284) |
| Loss From CBB Stock | | | | (.942) |
| Total | | | | (13.307) |

It was economically impossible for the Funds to both pay Member Returns and cover the expenses of the Manager. Yet, the Funds continued to do so, and as a result, $10.081 million of member capital was lost. Including the expected losses from existing loans and the loss from the CBB stock purchase, the total is $13.307 million, which closely approximates the $13.1 million shortfall shown on the Receivership Entities' adjusted balance sheet as of the date of the Receiver's appointment (Table 1). Given the shortfall, the Receivership Entities used numerous types of intercompany transactions to create liquidity to meet their cash needs. These transactions are discussed further below.

**C.    Intercompany Uses of Cash**

       1.    Fund to Fund Cash Transfers

The Funds were chronically short of cash needed to make new loans, make interest payments to members, and meet redemption requests. In order to provide liquidity to meet these cash needs, the Manager caused the Funds to transfer cash and loans back and forth to one another. $19,294,650.42 in cash was transferred among IPF, its subsidiary SBC LLC, and SPF. The inter-Fund transfers can be summarized as follows:

---

[9]   Includes returns paid in cash and reinvested.

[10]   This amount is net of the amount the Manager returned to the Funds.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

-11-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 9 | | | | |
| :--- | :---: | :---: | :---: | :---: |
| INTER-FUND CASH TRANSFERS | | | | |
| | **IPF** | **SBC LLC** | **SPF** | **Total** |
| Payments to Other Funds | (13,773,089) | (2,803,882) | (2,717,679) | (19,294,650) |
| Received From Other Funds | 5,446,933 | 12,701,750 | 1,145,967 | 19,294,650 |
| Net to and (From) Other Funds | (8,326,156) | 9,897,868 | (1,571,712) | -0- |

Of the foregoing transfers, $12,701,750 was transferred from IPF to SBC LLC, the holder of the SBA license.  These funds were used to make SBA 7-A loans and pay the SBC LLC payroll and other operating expenses.[11]  The balance of $6,592,900 was transferred between IPF and SPF to meet their cash needs at various points in time.

The transfer of cash between SPF and IPF accelerated significantly during 2011 and 2012 as the liquidity needs became more difficult to fulfill and the Funds' auditor objected to further loans by the Funds to the Manager.  The following is a list of transfers between Funds by year, excluding transfers between IPF and its subsidiary, SBC LLC:

| TABLE 10 | |
| :--- | :---: |
| CASH TRANSFERS BETWEEN FUNDS BY YEAR | |
| 2007 | 50,000 |
| 2008 | 992,146 |
| 2009 | 688,024 |
| 2010 | 146,264 |
| 2011 | 2,082,863 |
| 2012[12] | 2,633,603 |
| Total | 6,592,900 |

Further analysis of the transfers between IPF and SPF indicates IPF was the net beneficiary of the transfers between IPF and SPF, to the detriment of SPF.

---

[11] SBC returned $2,803,881.71 of these funds back to IPF.

[12] From January 1, 2012 to June 26, 2012

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-12-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 11 | | | |
|---|---|---|---|
| **ANALYSIS OF INTER-FUND CASH TRANSFERS** | | | |
| | **IPF TO SPF** | **SPF TO IPF** | **TOTAL** | **FAVORABLE/ (UNFAV.) TO IPF** |
| 2007 | 50,000 | - | 50,000 | (50,000) |
| 2008 | - | 992,146 | 992,146 | 992,146 |
| 2009 | 60,208 | 627,816 | 688,024 | 567,608 |
| 2010 | 12,670 | 133,594 | 146,264 | 120,923 |
| 2011 | 1,023,089 | 1,059,774 | 2,082,863 | 36,685 |
| 2012 | 123,823 | 2,633,603 | 2,757,426 | 2,633,603 |
| Total | 1,145,967 | 5,446,933 | 6,592,900 | 4,300,966 |

In addition to the cash transfers, several types of transactions were used to facilitate the moving of cash from one Fund to another in order to address liquidity needs.

### 2.   Fund to Fund Loan Transfers

The Receiver has identified at least 47 transactions involving 19 loans that were transferred between the Funds.  The total value of these transactions was $26,183,571.91.  Exhibit D provides a listing of loan transfers and which entity paid and received cash in the transactions.  The Fund that originated the loan would transfer the loan to another Fund in exchange for cash, and then later the receiving Fund would transfer the loan to another Fund or back to the originating Fund, also for cash.  Thus, there was no loss of cash to the Funds in the aggregate for the transfers themselves (other than the recognition of a premium on certain loan transfers discussed below.) Instead, the transfers facilitated offsetting movements of cash between Funds to provide for the momentary cash needs of a particular Fund.  Loans transferred between the Funds are summarized as follows:

| TABLE 12 | | | |
|---|---|---|---|
| **INTER-FUND LOAN TRANSFERS** | | | |
| **($ millions)** | | | |
| | **IPF** | **SPF** | **SCMF** | **TOTAL** |
| Cash From Loans Transferred to Other Funds | 8.352 | 15.642 | 2.189 | 26.183 |
| Cash From Loans Received From Other Funds | (14.826) | (5.686) | (5.671) | (26.183) |
| Net Increase/(Decrease) in Liquidity | (6.474) | 9.956 | (3.482) | -0- |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-13-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

As can be seen from the foregoing table, the circulation of cash between the Funds had no impact on the cash generated by the Receivership Entities in total.  IPF and SCMF, however, experienced a significant decrease in liquidity to the benefit of SPF.

There were relatively few loan transfers in 2007, 2008, and 2009, and none in 2010.  Most of the transfers were made between June 2011 and June 2012, with the majority of transfers occurring in the six months prior to the Receiver's appointment.  The gross amount of cash moving between Funds due to loan transfers is broken down by year as follows:

| TABLE 13 | |
|---|---|
| **INTER-FUND LOAN TRANSFERS BY YEAR** | |
| 2007 | 398,376.69 |
| 2008 | 391,134.97 |
| 2009 | 125,000.00 |
| 2010 | 486,500.00 |
| 2011 | 5,070,097.12 |
| 2012 | 19,712,463.13 |
| Total | 26,183,571.91 |

Of the 19 loans that were transferred between Funds, 11 were owned by all 3 Funds at various points in time.  There were 13 loans sold to other Funds for a premium, *i.e.* an amount higher than the principal lent.  The premiums paid by the acquiring Fund should have resulted in accrued profits to the originating Fund.  The originating Fund, however, did not benefit in 8 of the 13 loans transferred at a premium because, although it recognized the profit, the profit (and in some cases, an amount greater than the profit) was promptly paid to SBCC as a management fee.  For 3 of the loans sold at a premium, a management fee was paid to SBCC, but the fee was less than the full profit recognized by the originating Fund.  In this manner, SBCC took management fees of $1,199,015 from the Funds, as follows:

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-14-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 14 | | | |
|---|---|---|---|
| MANAGEMENT FEES TAKEN FROM LOAN PREMIUMS | | | |
| LOAN | PREMIUM PAID | MANAGEMENT FEE | DATE OF TRANSFER |
| 3 AM, LLC | 128,052 | 128,052 | 03/08/12 |
| 47300 Kato, LLC | 94,995 | 95,000 | 02/17/12 |
| Airport Blvd. | 149,558 | 85,000 | 02/16/12 |
| Aung San | 114,209 | 60,000 | 02/17/12 |
| Aung Solvang | 81,444 | 81,444 | 04/11/12 |
| Auto Spa | 25,989 | 25,989 | 03/12/12 |
| Edge Partners | 46,669 | 46,669 | 03/12/12 |
| Focus Hospitality | 63,036 | 63,036 | 03/07/12 |
| Milliken-Napa | 169,750 | 175,000 | 05/23/12 |
| Senese | 123,825 | 123,825 | 03/30/12 |
| Sunshine Hospital | 500,000 | 315,000 | 05/18/12 |
| Total | 1,497,527 | 1,199,015 | |

All of this suggests that the intercompany transfer of loans was used as a tool to generate management fees.

### 3.   Fund to Fund Member Account Transfers

Another type of transaction used to create temporary liquidity was the transfer of member accounts between Funds.  Transfers of member accounts are summarized as follows:

| TABLE 15 | | | | |
|---|---|---|---|---|
| INTER-FUND MEMBER ACCOUNT TRANSFERS | | | | |
| | IPF | SPF | SCMF | Total |
| Transferred From Other Funds | 2,279,456 | 3,845,970 | 786,125 | 6,911,552 |
| Transferred to Other Funds | 4,621,720 | 2,289,831 | -0- | 6,911,552 |
| Net Increase/(Decrease) in Liquidity | (2,342,264) | 1,556,139 | 786,125 | -0- |

The transfers to and from the Funds had no effect on the total cash flows of the Receivership Entities when consolidated.  These transfers, however, significantly decreased IPF's liquidity and increased SPF and SCMF's liquidity.

Summarizing the impact of all transfers between the Funds only, which offset each other in total, indicates the increase or decrease in liquidity each Fund experienced.

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**
806668.01/SD

-15-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 16 | | | | |
|---|---|---|---|---|
| NET EFFECT OF ALL INTER-FUND TRANSFERS | | | | |
| | **IPF** | **SPF** | **SCMF** | **Total** |
| Cash From Loan Transfers | (6.474) | 9.956 | (3.482) | -0- |
| Cash From Member Account Transfers | (2.342) | 1.556 | .786 | -0- |
| Payments Between Funds[13] | 1.572 | (1.572) | -0- | -0- |
| Net Increase/(Decrease) in Liquidity | (7.244) | 9.940 | (2.696) | -0- |

The foregoing indicates that SPF was the net beneficiary of the inter-Fund transfers at the expense of IPF and SCMF.

### 4.   Fund to Manager Transfers

The Receiver's Preliminary Forensic Accounting Report arrived at the amount of cash transferred to the Manager by the Funds by logical deduction based on reasonably reliable estimates of money raising and money lending activities.  With the forensic accounting now complete, logical deduction is no longer necessary and a discrete listing of all payments can be produced.

The total amount the Funds transferred to the Manager is $9,239,845.  The total transferred by each Fund is as follows.

| TABLE 17 | |
|---|---|
| CASH TRANSFERS FROM FUNDS TO MANAGER BY FUND | |
| IPF | 6,392,503 |
| SBC LLC | 295,146 |
| SPF | 2,276,107 |
| SCMF | 276,088 |
| Total | 9,239,845 |

Transfers by the Funds to the Manager are summarized by year as follows:

---

[13]   Payments between IPF and its subsidiary SBC LLC shown on Table 9 are not shown in this table.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**
806668.01/SD

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

-16-

| TABLE 18 | |
|---|---|
| **CASH TRANSFERS FROM FUNDS TO MANAGER BY YEAR** | |
| 2007 | 155,000 |
| 2008 | 441,258 |
| 2009 | 1,950,830 |
| 2010 | 1,727,508 |
| 2011 | 3,030,000 |
| 2012 | 1,935,250 |
| Total | 9,239,845 |

Exhibit F provides a listing of all disbursements made by the Funds to the Manager. The majority of these transfers were accounted for in the companies' books and records as loans to the Manager from IPF and SPF. the amount owing on the loans as of the time of the Receiver's appointment was $5,238,478 for IPF and $452,996 for SPF. The total unpaid balance of these loans from the Funds to the Manager was $5,691,474.

The balance of funds transferred to the Manager ($3,428,872) includes (a) the previously discussed management fees taken in conjunction with loan premiums recognized on intercompany loan transfers ($1,195,015), (b) $200,000 transferred from IPF to the Manager as an advance on the Sweet Fingers loan where SBCC had taken the property from the borrower in a foreclosure sale and assumed the role of the borrower under the loan from IPF, (c) $125,000 transferred from IPF to the Manager as an advance on the Whiskey Junction loan where, again, SBCC had taken the property from the borrower in a foreclosure sale and assumed the role of the borrower under the loan from IPF, (d) $100,000 transferred from IPF for payroll expenses incurred for personnel raising money from members, (e) $40,000 to "reimburse" the Manager for a portion of Mr. Feather's salary, and (f) $145,146.66 in April 2012 to reimburse the Manager for expenses it purportedly incurred on behalf of SBC LLC. The remaining transfers to the Manager in the total amount of $1,623,710.34 were for management fees, reimbursement of syndication and organizational expenses, loan fees, and consulting fees.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-17-

Case No. CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

5.      Manager to Fund Transfers

The Manager returned some of the foregoing amounts to the Funds.  The total amount returned to the Funds by the Manager was $1,772,872.61.  Of this amount, $394,552.42 was interest paid by the Manager on loans the Funds made to the Manager (of course, this "interest" was simply money from the Funds and was not independently generated.)

The Manager also paid interest on the IPF loans relating to the Sweet Fingers and Whiskey Junction properties after acquiring the properties via foreclosure sales.  The total amount of interest paid on these loans by the Manager was $452,769.38.  The Manager's assumption of these loans as borrower and interest payments had the effect of avoiding recognition of the borrowers' defaults and overstating the net income of the Funds.  The Manager borrowed additional money from the Funds secured by the properties and used the new loan proceeds to make interest payments back to the Funds.

The remainder of the $1,772,872.61 returned to the Funds includes the return of management fees in the amount $631,088, as well as equity investments by the Manager of $150,000 in IPF and $125,000 in SPF.  Both of these investments were redeemed and returned to the Manager shortly thereafter.  The specific purpose of the remaining $19,462.85 returned by the Manager to the Funds remains unclear.

In addition to the $1,772,572.61 returned to the Funds, the Manager paid $170,549.17 to the Funds for referral fees which were added to member capital accounts.

## VII.    SBCC SOURCES AND USES OF FUNDS

SBCC was extremely thinly capitalized and at the start of the accounting period held cash in the amount of $146,571.  The only other source of operating capital was cash generated from lending activities, primarily origination income of $1,396,296 paid by borrowers of the Funds.  SBCC's sources and uses of funds is summarized as follows:

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

-18-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 19 | |
|---|---|
| **SBCC - SOURCES AND USES OF FUNDS** | |
| Beginning Cash Balance | 146,571 |
| **Sources** | |
| Received From Funds | 9,239,846 |
| Returned to Funds | (1,772,873) |
| Net Transfers From Funds | 7,466,973 |
| Loan Interest Income | 195,094 |
| Loan Origination Income | 1,396,296 |
| Loan Servicing Income | 29,991 |
| Loan Income Other | 722,204 |
| Bank Interest Income | 1,654 |
| Cash Flows From Lending[14] | 1,284,637 |
| Credit Card Debt | 9,093 |
| Total Sources of Funds | 11,252,512 |
| **Uses of Funds** | |
| Operating Expenses | (7,738,468) |
| Payments to or on Behalf of Mark Feathers | (2,046,075) |
| Payments to Shareholders | (394,619) |
| Interest Expense | (122,285) |
| Trading Losses | (93,201) |
| Unknown Expenses | (28,627) |
| Income Taxes Paid | (25,813) |
| Total Uses | (11,049,089) |
| Ending Balance | 203,424 |

During the forensic accounting period, SBCC used $11,049,089 in cash, of which $7,466,973 came from the Funds (net of amounts returned to the Funds). The largest category of expense comprising the uses of cash were operating expenses of $7,738,468. These expenses are broken down as follows:

---

[14] Although the vast majority of lending activity was by the Funds, the Manager engaged in some lending activity, primarily in the early stages of the accounting period, including loans acquired from Mr. Feathers' former company Coast Capital.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-19-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

| TABLE 20 | |
|---|---:|
| **SBCC - OPERATING EXPENSES** | |
| Advertising | 1,200,512 |
| Bank Service Fees | 36,218 |
| Collection Expense | 1,800 |
| Commissions and Referral Fees | 850,474 |
| Consulting Fees | 167,120 |
| Fees Paid to ECI | (53) |
| Insurance | 528,372 |
| Member Events/Dinners | 149,425 |
| IRA Account Fees | 9,190 |
| Licenses and Permits | 11,959 |
| Office Expenses | 382,526 |
| Other Operating Expenses | 177,012 |
| Outside Service Fees | 283,065 |
| Payroll & Payroll Related | 2,751,084 |
| Postage & Delivery | 150,323 |
| Professional Fees | |
|     Accounting Fees | 44,340 |
|     Legal Expense | 312,080 |
|     Total Professional Fees | 356,420 |
| Property Tax | 4,138 |
| Rent Expense | 365,700 |
| Utilities | 117,025 |
| Total Operating Expenses | 7,738,468 |

The largest categories of operating expenses are payroll expenses of $2,751,084 and advertising of $1,200,512.

Separate and apart from payments from the Funds, SBCC paid Mr. Feathers and his immediate family a total of $2,046,075 as discussed further below.  The company also paid down a line of credit with Bank of Alameda in the net amount of $600,000.  SBCC's operating expenses were vastly disproportionate to the size of the loan portfolios owned by the Funds it managed. Specifically, the operating expenses of $7,738,468 almost double the $3.97 million in lending profits set forth in Table 8 above.  SBCC's total operating expenses were 32% of the loan portfolio balance at the time of the Receiver's appointment.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-20-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

1  Despite SBCC's illiquidity, it opened a stock trading account at TD Ameritrade in the fall

2  of 2007 and deposited $225,000 into the account.  By the end of 2007 alone, the account had lost

3  approximately $86,000.  Ultimately, the account lost $93,227.76.

4  ### VIII.   PAYMENTS TO OR ON BEHALF OF MR. FEATHERS

5  Mr. Feathers received money from the Funds and from the Manager.  Mr. Feathers also

6  received payments directly from escrow accounts for loans made by the Funds.  Mr. Feathers and

7  his wife, Natalie Feathers, were employed by the Receivership Entities and a significant amount of

8  the money they received was for their salaries.  However, personal expenses including household

9  expenses, purchases of automobiles and car payments, travel & entertainment, and other expenses

10  of a personal nature were paid by the Receivership Entities.  Mr. Feathers' minor children also

11  received money from the Receivership Entities.  Payments to or on behalf of Mr. Feathers and his

12  immediate family members are summarized as follows:

| TABLE 21 | | | |
|---|---|---|---|
| **PAYMENTS TO FEATHERS AND IMMEDIATE FAMILY** | | | |
| | **FROM FUNDS** | **FROM MANAGER** | **TOTAL** |
| Direct to Mark Feathers | 205,235 | 1,686,817 | 1,892,052 |
| Direct to Natalie Feathers | 30,000 | 115,524 | 145,524 |
| Minor Children | 17,663 | 44,620 | 62,283 |
| Personal Expenses | 5,371[15] | 199,115 | 204,486 |
| Total | 258,269 | 2,046,075 | 2,304,344 |

20  Mr. Feathers also received payments totaling $119,949.72 directly from escrow accounts

21  used by the Funds to make new loans.  These amounts were made in checks payable to Small

22  Business Capital, which Mr. Feathers used as a DBA, and deposited into an account under the

23  name Mark Feathers DBA Small Business Capital.  In one case, Mr. Feathers paid $25,000 from

24  $35,000 he received from the Airport Boulevard loan escrow back to the Manager for loans it had

25  made to him, this payment is included in the forensic accounting and therefore reduced the

26  foregoing amounts.  The total transferred to Mr. Feathers from the Manager and the Funds,

---

27  [15]  The personal expenses paid on Mr. Feathers' behalf by the Funds were for a truck purchased
28  by SPF for $15,371, which Mr. Feathers bought from SPF for $10,000, for a net of $5,371.
There does not appear to be any need for SPF's short-term ownership of the truck.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-21-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

1  including transfers to Natalie Feathers and Mr. Feathers' minor children, and disbursed directly to

2  Feathers from loan escrows, less the aforementioned $25,000, is $2,424,294.

3                    IX.    TEST OF ESTIMATE OF LOSSES

4          The Cash Basis Adjusted Balance Sheet provided in Table 1 above reflects that an

5  estimated $13.1 million of member capital has been lost.  The Receiver tested the accuracy of this

6  loss estimate against the sources and uses of funds provided herein.  The sources and uses of funds

7  supports the accuracy of the estimate to a very close degree.  Specifically, when the cash shortfall

8  from Table 8 above ($10.081 million) is combined with the expected loan losses of $2.284 million

9  and the $.947 million loss on the CBB stock purchase, the total is $13.312 million, an amount very

10  close to the $13.1 million estimated loss.

11                    X.    CONCLUSION

12         As discussed above, Member Returns and payments made to SBCC vastly exceeded the

13  net revenue generated by the Funds' lending activities.  As a result, an estimated $13.1 million of

14  member capital had been lost as of the Receiver's appointment.

15

16  Dated:  June 27, 2013                    By:  _Thomas A. Seaman_____

17                                               Thomas A. Seaman, Receiver

18                                          ALLEN MATKINS LECK GAMBLE
19                                          MALLORY & NATSIS LLP

20                                          By:  _____/s/ Ted Fates_____
21                                               TED FATES
                                                 Attorneys for Receiver
22                                               Thomas A. Seaman

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

-22-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

1

**PROOF OF SERVICE**

2       I am employed in the County of San Diego, State of California.  I am over the age of
eighteen (18) and am not a party to this action.  My business address is 501 West Broadway,
3   15th Floor, San Diego, California 92101-3541.

4       On June 27, 2013, I served the within document(s) described as:

5       ➢ **RECEIVER'S FORENSIC ACCOUNTING REPORT**

6   on the interested parties in this action by:

7   ☒ **BY MAIL:**  I placed a true and correct copy of the document in a sealed envelope or package
addressed as indicated below on the above mentioned date in San Diego, California for
8       collection and mailing pursuant to the firm's ordinary business practice.  I am familiar with the
firm's practice of collection and processing correspondence for mailing.  Under that practice it
9       would be deposited with the U.S. Postal Service on that same day in the ordinary course of
business.  I am aware that on motion of party served, service is presumed invalid if postal
10      cancellation date or postage meter date is more than one day after date of deposit for mailing
in affidavit.

11

12  ☐ **BY OVERNIGHT DELIVERY:**  I deposited in a box or other facility regularly maintained
by an overnight courier service, or delivered to a courier or driver authorized by said express
13      service carrier to receive documents, a true copy of the foregoing document(s) in sealed
envelopes or packages designated by the express service carrier, addressed as indicated in the
14      attached service list on the above-mentioned date, with fees for overnight delivery paid or
provided for.

15  ☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a true copy of the document
to be sent to the persons at the corresponding electronic address as indicated herein on the
16      above-mentioned date.

17      I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct.
18

19      Executed on June 27, 2013, at San Diego, California.

20
_____            _____
21         Janine L. Batiste                                            (Signature of Declarant)
          (Type or print name)

22

23

24

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

806668.01/SD

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT

## SERVICE LIST

| Mark Feathers<br>1520 Grant Road<br>Los Altos, California 94024 | *Pro Se* Defendant<br><br>Tel:  (650) 776-2496<br>Fax:  (650) 961-2382<br>Email:  markfeathers@sbcglobal.net |
|---|---|

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

806668.01/SD

-2-

Case No.  CV12-03237
RECEIVER'S FORENSIC
ACCOUNTING REPORT