UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiffs,<br><br>v.<br><br>SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LLC; and SBC PORTFOLIO FUND, LLC,<br><br>    Defendants. | Case No.: 5:12-CV-03237 EJD<br><br>**ORDER PARTIALLY GRANTING SECOND INTERIM FEE APPLICATIONS**<br><br>**[Docket Item Nos. 339, 339, 340]** |

This above-captioned lawsuit involves allegations made by the Securities and Exchange Commission (the "SEC") that the Defendants violated antifraud and other provisions of the federal securities laws. Compl. 1, Docket Item No. 1. Receiver Thomas Seaman ("Receiver") and the law firm of Allen Matkins, Leck, Gamble, Mallory & Natsis, LLP ("Allen Matkins") seek interim payment of fees and expenses for services performed during the period from October 1, 2012 through December 31, 2012—the "second interim fee period"—in connection with the receivership of Defendant companies Small Business Capital Corporation, Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and related companies.

1

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING SECOND INTERIM FEE APPLICATIONS

**I. Fee Applications**

The Receiver and Allen Matkins request the following fees for services performed during the second interim fee period:

| Applicant and Role | Fees Incurred | Interim Payment Requested | Costs | Total Payment Requested |
|---|---|---|---|---|
| Thomas A. Seaman, Receiver | $195,279.50 | $175,751.55 (90% of fees incurred) | $0.00 | $175,751.55 |
| Allen Matkins Leck Gamble Mallory & Natsis LLP, General Counsel | $127,107.90 | $114,397.11 (90% of fees incurred) | $1,404.65 | $115,801.76 |

**A. The Receiver**

The Receiver submitted his second interim fee application on April 4, 2013. See Receiver's Second Interim Fee Appl., Docket Item No. 338. In that application, the Receiver requests approval of 90% of the $195,279.50 in fees incurred from October 1, 2012, through December 31, 2012. Id. at 1. The Receiver is requesting compensation for 1,019.1 hours of work during this period at a blended hourly rate of $191.61. Id. The Receiver is not requesting compensation for any expenses incurred during this period. Id.

**B. Allen Matkins**

The Receiver's counsel, Allen Matkins, requests 90% of the $127,107.90 in incurred fees—a total of $114,397.11. See Allen Matkin's Second Interim Fee Appl., Docket Item No. 339. This total reflects a blended hourly rate of $436.46 (262.1 hours total). See id. Allen Matkins also requests approval of 100% of its expenses totaling $1,404.65. Id. Allen Matkins states that it has discounted its customary hourly rates by 10% and written off a total of $6,786 in fees during the second application period. Id. at 7.

2

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING SECOND INTERIM FEE APPLICATIONS

**II.     Discussion**

   **A.   Applicable Law**

The court appointing the Receiver is responsible for compensating the Receiver and his attorneys. See In re Alpha Telcom, Inc. [Alpha Telcom II], No. 03:01-CV-1283-PA, 2013 WL 840065, at *16 (D. Or. Mar. 6, 2013). The court may use its discretion to fashion a "fee award that is appropriate under the circumstances." Id. at *17. "The court appointing the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys." Drilling & Exploration Corp. v. Webster, 69 F.2d 416, 418 (9th Cir. 1934). The Receiver and the attorneys assisting the Receiver will be "reasonably, but not excessively" compensated for their efforts to benefit the receivership estate. Alpha Telcom II, 2013 WL 840065, at *17. "[I]n receivership situations, lawyers should be awarded moderate fees and not extravagant ones." SEC v. Byers, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008). The Receiver and any professionals assisting the Receiver should charge a reduced rate to reflect the public interest involved in preserving funds held in the receivership estate. See id. at 646–47. The Receiver and his counsel should be moderately compensated for their services because investors who were promised large returns on investments by the defendant may stand to recover "only a fraction of their losses." See id. at 645.

A court considering awarding interim fees should consider several factors. Alpha Telcom II, 2013 WL 840065, at *16. An award of interim fees is appropriate "where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services to the estate." In re Alpha Telcom, Inc. [Alpha Telcom I], No. CV 01-1283-PA, 2006 WL 3085616, at *3 (D. Or. Oct. 27, 2006). The court should also consider the "economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services provided to the estate." In re Imperial "'400'" Nat., Inc., 432 F.2d 232, 238 (3rd Cir. 1970). Frequently courts will withhold a portion of the requested interim fees because "until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim

3
Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING SECOND INTERIM FEE APPLICATIONS

compensation is sought." Alpha Telcom I, 2006 WL 3085616, at *3. The factors listed above, and others, may persuade the court to award the entirety of the requested interim fees or some amount less than requested. See Byers, 590 F. Supp. 2d at 648. Lastly, "'courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application'" and courts "'endorse percentage cuts as a practical means of trimming fat from a fee application.'" Id. (quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2nd Cir. 1983)).

### B. Applications

#### 1. The Receiver

The receivership estate has continued to benefit from the Receiver's efforts to reduce the operating costs of the Defendant companies and hire professionals who charge less than the Receiver and the Defendant companies' employees. See Receiver's Second Interim Fee Appl. 4. In the first fee application period, the Receiver charged his full rate of $375 per hour for only 127 hours out of the 1,072 hours claimed during the interim period, and reduced the operating costs of the receivership estate by $24,000 per month. See Receiver's First Interim Fee Appl. 4–5, Docket item No. 134. During the second application period, the Receiver's agents conducted the vast majority of the work required to maintain the receivership estate, charging an average of $173 per hour. See Receiver's Second Interim Fee Appl. 4. The Receiver further reduced the financial burden on the receivership estate by absorbing travel expenses, not billing for time he spent traveling, and charging a reduced fee for communicating via telephone with investors. Id. 4–5.

The Receiver caused the receivership estate to experience financial gains during the second application period. The receivership estate received $2,584,567.76 in receipts and disbursed $1,970,623.10, resulting in net revenue of $448,894.80 for the receivership estate. Id. at 3. The Receiver has also continued to work to maximize recovery of impaired loans by "restructuring, forbearing, foreclosing and/or otherwise enforcing the rights of the lender." Id. at 5.

The Court partially grants the Receiver's request for fees incurred during the second fee application period. The Court withholds 25% of the Receiver's request for fees and the Receiver may apply for those fees at the conclusion of this litigation. Withholding fees until the conclusion of the lawsuit assists the Court in achieving its continuing goal of preserving funds held in the receivership estate for the compensation of the investors. This approach is common in SEC civil enforcement actions because it allows the Court to withhold fees until it is absolutely clear that a receiver's efforts will ultimately benefit the receivership estate. See SEC v. Byers, 590 F. Supp. 2d at 648. The Court derives the authority to award such reduced fees from its power to "fix the compensation" of receivers and their attorneys. Drilling, 69 F.2d at 418.

### 2. Allen Matkins

Allen Matkins provided valuable services to the Receiver during the second application period. See Allen Matkin's Second Interim Fee Appl. 2–6. Allen Matkins assisted the Receiver in answering the numerous motions filed by Defendant Mark Feathers, addressed legal issues in connection with servicing loans, investigated possible sources of income for the Receivership Estate, and addressed the threat of investor litigation. Id.

The Court grants 75% of Allen Matkins' request for fees and 100% of its request for expenses for the second interim period. Allen Matkins requests a blended hourly rate of $436.46 and will be compensated at a blended hourly rate of approximately $327. See id. at 1. The Court has determined that the latter rate is appropriate under the circumstances for several reasons.

First, as discussed above, the Court has a strong interest in preserving the funds of the receivership estate for the benefit of the investors. Allen Matkins has chosen to assist the Receiver in this case where, if the SEC's allegations are proven, investors stand to suffer great losses on their investments. See Order Approving Receiver's Appl. to Employ Allen Matkins as General Counsel, Docket Item No. 36; Receiver's Appl. to Employ Allen Matkins as General Counsel, Docket Item No. 31. As a result, Allen Matkins is obligated to charge a substantially lower blended hourly rate than it has requested in both its first and second interim fee applications. The Court is

5
Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING SECOND INTERIM FEE APPLICATIONS

not alone in its view that SEC enforcement litigation requires the counsel to a receiver to charge an hourly rate substantially lower than its customary rates. For example, in Byers, the law firm assisting the Receiver requested a similar blended hourly rate to that requested by Allen Matkins in this instance, and the court deemed the rate "too high for a securities receivership case." See Byers, 590 F. Supp. 2d at 646–48. Although the law firm's application was unusual as it requested over $2,000,000 in fees, the Byers court stressed that the discretion of the court should be utilized to reflect the public interest in maintaining the vitality of the receivership estate. See id. at 644–46. The Byers court noted that in such situations, the receiver's counsel should be modestly compensated because investors "are likely to recover only a fraction of their losses." Id. at 645. Furthermore, a law firm should voluntarily charge a discounted rate for all of its services, regardless of the status of the attorney providing the services. See id. at 647 (noting that the law firm's application for fees should discount the hourly rate for all billing professionals, including summer associates, paralegals, and litigation support clerks).

Second, the Court emphasizes that in the application for Allen Matkins to represent the Receiver, Allen Matkins had "agreed that its blended hourly rate for the receivership will be $395 or less." See Receiver's Application to Employ Allen Matkins as General Counsel 7. Allen Matkins' second fee application requests a blended hourly rate of $436.46, reflecting a substantial departure from its agreement to charge $395 or less. The Court stresses that Allen Matkins should be held to its agreement to charge $395 per hour or less, and the Court will not wait for the fee application period during which Allen Matkins is able to achieve that rate.

Third, the Court reserves its discretionary power and may consider many factors when awarding a reduced fee, regardless of the fees being approved by other courts in similar cases. This discretionary power was made apparent in In re Alpha Telcom, Inc. when the court awarded a reduced fee, partially because the Receiver's performance failed to adequately recover assets for the receivership estate. See Alpha Telcom II, 2006 WL 3085616, at *3–6. The Alpha Telcom court explained that no statute or precedent required it to give deference to the opinion of the actual law firm or receiver requesting the fee, or the opinion of third parties who support the requested fees.

See id. at *3 ("No statute compels such a conclusion, however, nor do I believe such great deference is warranted in this instance."); see also id. (rejecting the argument that the court is compelled to give special deference to the SEC's support of a request for fees). The Alpha Telcom court chose to focus mainly on the success of the receiver's efforts, the financial burden that the receivership estate could bear, and "other factors," believing that those factors were most relevant to the appropriation of fees to the receiver and counsel. Id. at *6. This case highlights that the Court is not bound to any one of the established factors when considering fee requests. Although the Alpha Telcom court could have simply awarded fees based on the reasonable rates charged by other receivers in similar cases, it chose to focus on the efforts of the receiver to recover assets for the receivership estate instead. See id. at *3–6.

Similarly, rather than fashioning an award after analyzing and compiling a record of the rates approved by other courts in similar cases, the Court chooses to primarily focus on the fact that Allen Matkins' requested fee rate does not adequately reflect the public interest in maintaining the receivership estate's assets while the SEC pursues charges against the Defendants. The Court does note, however, that the fee awarded to Allen Matkins here is not unusual in this type of case, and Allen Matkins has requested similar rates of compensation in the past. As an example, Allen Matkins was appointed as general counsel to the receiver in SEC v. Medical Capital Holdings, Inc., and requested that the court pay 80% of its incurred fees during an interim fee period. See No. CV-8:09-0818 DOC, Docket Item No. 951, at 1 (C.D. Cal. Jan. 4, 2013). This request reflects a blended hourly rate of $382.72. See id. at 1, 5–6. The Medical Capital court granted the request on February 20, 2013. Medical Capital, CV 09-0818 DOC, Docket Item No. 977, at 1–2 (C.D. Cal. Feb. 20, 2013). Here, even after requesting that the Court withhold 10% of Allen Matkins' incurred fees, Allen Matkins still requests a blended hourly rate of $436.46 for the second interim fee period. See Allen Matkins' Second Interim Fee Appl. 1. Not only is this rate beyond the $395 per hour ceiling set in the Court's Order Approving the Receiver's Application to Employ Allen Matkins, it is also greater than the hourly rate requested in Medical Capital. As such, the reduction in the fee award to

Allen Matkins to approximately $327 per hour is reasonable in light of the circumstances of this case, the work performed by Allen Matkins, and other public interest considerations.

### III.  Conclusion and Order

The applications for fees and expenses incurred by Allen Matkins and the Receiver are granted in part for the period from October 1, 2012 through December 31, 2012. The requested amounts are disbursed as follows:

| **Fee Distribution** | | | | |
|---|---|---|---|---|
| **Applicant** | **Fees Allowed** | **% of Request** | **Expenses Allowed** | **% of Request** |
| Receiver | $131,813.66 | 75% | N/A | N/A |
| Allen Matkins | $85,797.83 | 75% | $1,404.65 | 100% |

**IT IS SO ORDERED.**

Dated: August 16, 2013



EDWARD J. DAVILA
United States District Judge

8

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING SECOND INTERIM FEE APPLICATIONS