1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | Case No.: 5:12-CV-3237 EJD |
| Plaintiff, | ) ) ) ) | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING** |
| v. | ) ) | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LLC; and SBC PORTFOLIO FUND, LLC, | ) ) ) ) | |
| Defendants. | ) ) ) | **[Re: Docket Nos. 459, 477]** |

The above captioned lawsuit is a civil enforcement action filed by the Securities Exchange Commission (the "SEC" or "Plaintiff") against Defendants Mark Feathers, Small Business Capital Corp., Investors Prime Fund, LLC, and SBC Portfolio Fund, LLC (collectively, "Defendants"). The SEC has brought forth causes of action related to allegations of fraud and misrepresentation in the offer and sale of investment fund securities in violation of several federal securities laws.

Presently before the Court are the parties' cross motions for summary judgment. Oral argument on these motions was presented before the Court at a hearing on June 28, 2013. Having fully reviewed the parties' papers and after hearing oral argument, the Court will GRANT the

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

28

SEC's Motion for Summary Judgment and DENY Defendant Feathers' Motion for Summary Judgment.

## I.        Background

Defendant Mark Feathers ("Feathers") managed two mortgage investment funds which he established in 2007: Investors Prime Fund, LLC ("IPF") and SBC Portfolio Fund, LLC ("SPF") (collectively, the "Funds"). Decl. of Mark Feathers dated May 16, 2013 ¶ 2, Docket Item No. 466. According to the offering documents of IPF and SPF issued in 2007, the Manager of the Funds was Feathers' company, Small Business Capital Corporation ("SBCC"). See, e.g., Investors Prime Fund Offering Circular dated June 11, 2009 ("2009 IPF Offering Circular") p. 21, Decl. of John Bulgozdy ISO of Pl.'s Mot. for Summ. J. Ex. 173, Docket Item No. 483; SBC Portfolio Fund Private Placement Memorandum ("PPM") dated Dec. 28, 2009 p. 9, Bulgozdy Decl. Ex. 184. Feathers founded SBCC to manage the two Funds. See Feathers Decl. dated May 16, 2013 ¶ 2. The IPF and SPF offering documents identified SBCC as the "sole manager" of the Funds with the "sole authority" to manage the affairs of the Funds. See, e.g., 2009 IPF Offering Circular, p. 16; 2009 SPF Private Placement Memo, p. i.

Consistent with that "sole authority," Feathers and his spouse, Natalie Taaffe Feathers, were the only signatories on the bank accounts of SBCC, IPF, and SPF. Dep. of Mark Feathers 35:20–37:7, Bulgozdy Decl. Ex. 218. In addition, Feathers has conceded that he approved the offering documents before they were provided to investors, and that he was "the final authority on the approval of offering documents." Dep. of Mark Feathers 401:20–23, Bulgozdy Decl. Ex. 219.

The SEC contends that beginning in 2009, Feathers caused the Funds to transfer millions of dollars to SBCC. The purpose of these transfers, the SEC contends, was to pay SBCC's operating expenses, to generate management fees, as well as to make cash distributions to investors in excess of the income and profits the Funds generated. The SEC argues that these loans, transfers, and distributions were in violation of the Funds' offering documents, circulars, and other

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  representations made to investors. This notion underlies the SEC's claims of fraud and

2  misrepresentation.

3    On June 21, 2012, the SEC initiated the present lawsuit by filing a Complaint naming as

4  Defendants Feathers, SBCC, IPF, and SPF. See Docket Item No. 1. The Complaint alleges the

5  following four causes of action: (1) fraud in the offer or sale of securities in violation of Section

6  17(a) of the Securities Act of 1933 ("Securities Act"); (2) fraud in connection with the purchase or

7  sale of securities in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange

8  Act") and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder; (3) violation of Section 15(a) of the

9  Exchange Act (unregistered broker-dealer); and (4) controlling person liability under Section 20(a)

10  of the Exchange Act. Id.

11    On July 10, 2012, the Court issued a Preliminary Injunction and Order (1) Freezing Assets;

12  (2) Prohibiting Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a

13  Permanent Receiver ("PI Order"). See Docket No. 34. In the PI Order, the Court ordered an

14  immediate freeze on the assets of IPF, SPF, SBCC, and Feathers. See id. This Order also appointed

15  Thomas A. Seaman (the "Receiver") as permanent receiver of the funds and granted him "full

16  power over all funds, assets, collateral, premises" as equity receiver of the defendant companies

17  SBCC, IPF, and SPF. Id. The Receiver was authorized to employ the law firm of Allen Matkins,

18  Leck, Gamble, Mallory & Natsis, LLP as his general counsel on July 10, 2012. See Docket Item

19  No. 36.

20

21  **II.     Legal Standard for Motion for Summary Judgment**

22    A motion for summary judgment should be granted if "there is no genuine dispute as to any

23  material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a);

24  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the

25  initial burden of informing the court of the basis for the motion and identifying the portions of the

26

27

28

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the

2  absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

3        If the moving party meets this initial burden, the burden then shifts to the non-moving party

4  to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for

5  trial." Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56(e). The court must regard as true the opposing

6  party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324.

7  However, the mere suggestion that facts are in controversy, as well as conclusory or speculative

8  testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. See

9  Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Instead, the non-moving

10  party must come forward with admissible evidence to satisfy the burden. Fed. R. Civ. P. 56(c); see

11  also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990). The

12  "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,

13  but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth

14  specific facts showing that there is a genuine issue for trial. If the adverse party does not so

15  respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R.

16  Civ. P. 56(e); see also Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the

17  nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on

18  conclusory allegations unsupported by factual data to create an issue of material fact."). "The mere

19  existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the

20  jury could reasonably find for [the opposing party]." Anderson v. Liberty Lobby, Inc., 477 U.S.

21  242, 252 (1986).

22        A genuine issue for trial exists if the non-moving party presents evidence from which a

23  reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

24  material issue in his or her favor. Anderson, 477 U.S. at 248–49; Barlow v. Ground, 943 F.2d

25  1132, 1134–36 (9th Cir. 1991). Conversely, summary judgment must be granted where a party

26

27

28

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    "fails to make a showing sufficient to establish the existence of an element essential to that party's

2    case, on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322;

3         The Court also notes that Defendant Feathers is proceeding in this litigation pro se and on

4    behalf of all Defendant companies. As such, the Court has liberally construed his written

5    submissions. See Abassi v. Immigration & Naturalization Serv., 305 F.3d 1028, 1032 (9th Cir.

6    2002). However, liberal construction is not a substitute for Defendants' burden of production in

7    response to a motion for summary judgment. See Bias v. Moynihan, 508 F.3d 1212, 1218–19 (9th

8    Cir. 2007) ("A district court does not have a duty to search for evidence that would create a factual

9    dispute . . . . A district court lacks the power to act as a party's lawyer, even for pro se litigants.").

10

11   **III.    Discussion**

12       **A.  Securities Fraud**

13       The SEC's first cause of action is for violations of Sections 17(a)(1), 17(a)(2), and 17(a)(3)

14   of the Securities Act, 15 U.S.C. §§ 77q(a)(1), 77q(a)(2), & 77q(a)(3). Section 17(a) prohibits fraud

15   in the offer or sale of securities:

16       It shall be unlawful for any person in the offer or sale of any securities (including
         security-based swaps) or any security-based swap agreement (as defined in section
17       78c(a)(78) of this title) by the use of any means or instruments of transportation or
         communication in interstate commerce or by use of the mails, directly or indirectly
18

19       (1) to employ any device, scheme, or artifice to defraud, or

20       (2) to obtain money or property by means of any untrue statement of a material fact
         or any omission to state a material fact necessary in order to make the statements
21       made, in light of the circumstances under which they were made, not misleading; or

22
         (3) to engage in any transaction, practice, or course of business which operates or
23       would operate as a fraud or deceit upon the purchaser.

24
25   15 U.S.C. §§ 77q(a)(1), 77q(a)(2), & 77q(a)(3). The SEC's second cause of action is for violations

26   of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a), 10b-5(b), and 10b-

27

28
     Case No.: 5:12-CV-3237 EJD
     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

5(c) thereunder, 17 C.F.R. § 240.10b-5. Section 10(b) prohibits fraud in connection with the purchase or sale of any security:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b-5 seeks to enforce these statutes by making the following acts in connection with the purchase or sale of any security unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

17 C.F.R. § 240.10b-5.

For the allegations relevant to this case, violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder, consist of the same elements. See SEC v. Dain Rauscher, Inc., 254 F.3d 852, 855–56 (9th Cir. 2001); SEC v. TLC Invs. & Trade Co., 179 F. Supp. 2d 1149, 1153 (C.D. Cal. 2001). Violations of these provisions require a showing that Defendants made a material misstatement, misrepresentation, or omission or fact in connection with the offer or sale of a security by means of interstate commerce with the requisite mental state. See SEC v. Phan, 500 F.3d 895, 908 (9th Cir. 2007); Dain Rauscher, 254 F.3d at 855–56; SEC v. Rana Research, Inc., 8 F.3d 1358, 1364 (9th Cir. 1993); SEC v. Rogers, 790 F.2d 1450, 1458–59 (9th Cir. 1986). While securities antifraud enforcement actions often involve questions of fact,

United States District Court
For the Northern District of California

6

district courts can resolve such cases on summary judgment as long as there is no genuine issue of material fact. See, e.g., TLC Invs., 179 F. Supp. 2d 1149; SEC v. Aqua Vie Beverage Corp., CV 04-414-S-EJL, 2007 WL 2025231 (D. Idaho July 9, 2007), aff'd sub nom., SEC v. Gillespie, 349 F. App'x 129 (9th Cir. 2009); SEC v. Smart, No. 2:09CV00224 DAK, 2011 WL 2297659 (D. Utah June 8, 2011), aff'd, 678 F.3d 850 (10th Cir. 2012); SEC v. Kenton Capital, Ltd., 69 F. Supp. 2d 1 (D.D.C. 1998).

For the reasons explained below, the Court finds that the SEC has met its burden of establishing its antifraud causes of action, and that Feathers has failed to present specific facts and evidence that introduce a genuine issue of material fact. The Court will address each element in turn, followed by a discussion of Feathers' objections and oppositions to the SEC's summary judgment motion and evidentiary support.

### 1.   Misrepresentations, Misstatements, and Omissions

Violations of the securities antifraud provisions require that a defendant's misstatements and omissions concern facts material to the investment in or sale of securities. Basic, Inc. v. Levinson, 485 U.S. 224, 231–32 (1988); TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976). "An omitted fact is material 'if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" SEC v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1092 (9th Cir. 2010) (quoting Phan, 500 F.3d at 908). In other words, a misrepresentation, misstatement, or omission is material if there is a substantial likelihood that a reasonable investor would consider the true or complete information important in making an investment decision. See id. As such, the antifraud provisions of the securities statutes and regulations impose a "'duty to disclose material facts that are necessary to make disclosed statements, whether mandatory or volunteered, not misleading.'" SEC v. Fehn, 97 F.3d 1276, 1290 n.12 (9th Cir. 1996) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 504 (9th Cir. 1992)). Such a duty "arises whenever a

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  disclosed statement would be 'misleading' in the absence of the 'disclos[ure] of [additional]

2  material facts' needed to make it not misleading." Id. (quoting Hanon, 976 F.2d at 504).

3      The SEC identifies several statements, representations, and omissions made by Feathers

4  and Defendant companies to the Fund investors that satisfy the "material misrepresentation"

5  element of the securities antifraud provisions. These statements were made in the Funds' offering

6  circulars, private placement memoranda, and other documents that were distributed to the

7  investors. The SEC asserts that these documents contained false or otherwise misrepresentative

8  assertions about how the Funds were managed and capitalized by SBCC, how Funds' assets would

9  and would not be transferred, and how returns on investments would be distributed to Fund

10  members.

12              **a.  Misstatements Regarding  Fund Loans and Money Transfers**

13      The first of the misrepresentations the SEC identifies is the representation that Feathers

14  made to investors and potential investors in the Funds that there would be "No Loans to Manager"

15  other than certain loans secured by real property. See Pl.'s Mot. for Summ. J. 16–17, Docket Item

16  No. 477. As an example, IPF's 2008 Offering Circular contains the following provision:

17      **No Loans to Manager**. No loans will be made by the Fund to the Manager or to
18      any of its affiliates, except for any financing extended as part of a sale of real estate
        owned or loans purchased as a result of foreclosure. (See "Conflicts of Interest –
19      Sale of Real Estate Owned to Affiliates.")

20  Bulgozdy Decl. Ex. 172, at p. 8. This representation also appears in IPF's 2009 Offering Circular

21  (id. Ex. 173, at p. 15), IPF's 2010 Offering Circular (id., Ex. 175, at p. 15), and IPF's Jan. 2011

22  Offering Circular (id. Ex. 177 at p.18), SPF's 2007 PPM (id. Ex. 182 at p. 7), SPF's 2009 PPM

23  (id., Ex. 184 at p. 7), SPF's January 2011 PPM (id. Ex. 185 at p. 8), and SPF's August 2011 PPM

24  (id., Ex. 188 at p. 8).

25      Additionally, the offering circulars, PPMs, and other documents expressly limited the

26  expenses that would be paid by the Funds, at least with regard to IPF. IPF's Offering Circulars

27  contain the following representation regarding Fund expenses:

28

8

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Fund will pay for its own annual audit, LLC tax, tax return preparation, protective advances and the costs to own and maintain real property, if any is acquired in foreclosure. All other expenses will be borne by the Manager, including rent, salaries, business insurance, utilities, marketing, and other similar operational expenses[.]

See, e.g., IPF's 2010 Offering Circular, Bulgozdy Decl. Ex. 175, at p.1; IPF's Jan. 2011 Offering Circular, id. Ex. 177 at p.1; IPF's June 2011 Offering Circular, id. Ex. 177, at p.1.

The SEC argues these representations were false or misleading because Feathers was in fact causing the Funds to loan money to himself and SBCC where that financing was not part of a sale of real estate, purchased as a result of foreclosure, or otherwise secured by real property. From as early as 2009 through the date of the Receivership, a total of at least $7,497,402.51 in cash was transferred from the Funds to SBCC. See Decl. of Sarah Mitchell ISO Pl.'s Mot. for Summ. J. ¶ 4, Ex. 220 at A-00789-90, A-00882-3, Ex. 221 at A-01212-3, Docket Item No. 479. The following table summarizes the cash transfers—many of which were in large, round number amounts—from the Funds to SBCC:

| Gross Cash Transfers From Funds to SBCC from January 1, 2009 through Date of Receivership | | | | | |
|------|------|------------------|----------------------------|---------------------|-----------|
| Year | Fund | Ledger Acct. No. | Ledger Acct. Name | Cash Paid to SBCC | Source |
| 2009 | IPF | 1770 | Syndication Expense (2009) | $100,000.00 | A-00624 |
| 2009 | IPF | 1725-22 | Loan 65 | $100,000.00 | A-00626 |
| 2009 | IPF | 1725-20 | Loan 300001 | $152,148.37 | A-00627 |
| 2009 | IPF | 1780-4 | Organizational Expenses | $200,000.00 | A-00632 |
| 2009 | IPF | 6550-2 | Management Fees – SB Capital | $439,500.00 | A-00789-90 |
| 2009 | SPF | 6550 | Management Fees | $63,780.00 | A-01212-3 |
| 2009 | SPF | 2050 | Capitalization of Contract | $540,000.00 | A-01169 |
| 2010 | IPF | 1250 | LT Rec – Fund Mgrs Organ Invt | $1,374,047.14 | A-00882 |
| 2010 | SPF | 1220 | Due From Manager | $175,000.00 | A-01273-4 |
| 2011 | IPF | 5020 | Fund Management Fees | $100,000.00 | A-00959-60 |
| 2011 | IPF | 1250 | LT Rec – Fund Mgrs Organ Invt | $2,930,000.00 | A-00882-3 |

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

| 2012 | IPF | 1250 | LT Rec – Fund Mgrs Organ Invt | $400,000.00 | A-00882-3 |
| 2012 | SPF | 5020 | Fund Management Fee | $922,927.00 | A-01322 |
| **Total** | | | | **$7,497,402.51** | |

Id. ¶ 4. This summary of the transfers was derived from IPF's and SPF's general ledgers, which were produced to the SEC and Feathers by the Receiver. Id.

   Several other documents submitted by the SEC in support of its summary judgment motion, confirm that large sums of cash were transferred from IPF to SBCC. The audit report of the financial statements of IPF for 2010 and 2009, prepared by Spiegel Accountancy Group, shows that SBCC owed $1.85 million to IPF as of December 31, 2010. See Decl. of Jeffrey Spiegel ISO of Pl.'s Mot. for Summ. J. Exs. 27, 44, Docket Item No. 480. The draft audited financial statements for IPF for 2011 show that SBCC owed $4,863,479 to IPF as of December 31, 2011. Id. Ex. 46 at p. 15. This report also notes that these loans were unsecured. Id. As noted, IPF's general ledger shows additional cash transfers from the bank accounts of IPF to SBCC in the amount of at least $400,000 in early 2012. See Mitchell Decl. Ex. 220 at A-00882-3.

   The SEC has also submitted several documents that confirm the transfers from SPF to SBCC. The audit report of the financial statements of SPF for 2010 and 2009, prepared by Spiegel Accountancy Group, shows that SBCC owed $707,464 to SPF as of December 31, 2010. See Spiegel Decl. Ex. 28. The draft audited financial statements for SPF for 2011 show that SBCC owed $690,868 as of December 31, 2011. Id. Ex. 47. Like with the reports for IPF, this report notes that these loans were unsecured. Id. at p.18. SPF's general ledger records additional cash transfers from SPF's bank accounts to SBCC totaling $922,927 in the first five months of 2012 for management fees. See Mitchell Decl. Ex. 221 at A-01322.

   The SEC asserts and has provided evidence establishing that Feathers used the money he transferred from the Funds to SBCC to pay SBCC's expenses and to manage the yield of the Funds. Feathers was able to do this under the guise of "due from" or "manager's note" accounting on the Funds' financial statements to supposedly account for these cash transfers. Some of the

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

evidence the SEC has presented in support of its claims was obtained from David Gruebele, a management consultant employed by Feathers from 2009 through 2012. See Decl. or David Gruebele ISO of Pl.'s Mot. for Summ. J., Docket Item No. 482. According to Gruebele, the "due from manager" or "manager's note" labeling had a twofold effect. First, this provided a mechanism for the Funds to pay SBCC's "management fees" since SBCC was not earning any net management fees from the Funds under the terms of the offering documents. Id. ¶ 9. Second, recording the transfers as "due from" or "manager's note" had the effect of converting the excess expenses into an "asset" of the Funds rather than a liability. Id. This allowed the Funds to give the misleading appearance that they were still generating a net income necessary to pay the target yield of returns to investors. Id.

The SEC provides numerous documents in support of these assertions. See Pl.'s Mot. for Summ. J. 3–4. For example, a September 2011 email exchange between Feathers and Gruebele states that SBCC needed approximately $225,000 in cash to pay its September 2011 expenses, and lists nine items. The first four items are obligations of SBCC: (1) interest on the "due from" SBCC to SPF, (2) interest on the "due from" SBCC to IPF, (3) interest on Loan 300001—a loan from IPF to SBCC; and (4) interest on Loan 65—another loan from IPF to SBCC. See Gruebele Decl., ¶¶ 14–17, Exs. 56, 73. The remaining items—payroll, Amex, Citibank, rents, and "misc"—were also expenses incurred by SBCC. Id., ¶ 16. The SEC has provided additional emails evincing the "due from" or "manager's note" labeling of the cash transfers. See, e.g., Gruebele Decl. Exs. 69, 74. Additionally, Feathers communicated in an email in December 2010 to Gruebele about using the "due-from-manager fund asset" to "ensure hitting our yield target to investors of 7.5% (compounded)." Id. ¶ 19, Ex. 112.

The Funds' auditor has also confirmed this organization of the Funds' expenses. See Spiegel Decl. ¶¶ 16, 34, Ex. 49. For example, a work paper from the audit of IPF's 2009 financial statements on "Due from Manager LS" notes that the balance "represents money that the Fund advanced to the Fund Manager," that "the Fund Manager is not allowed to take out loans/advances

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

against the Fund," and that Feathers had assured the auditor that the amount would be "repaid during the 2010 year." Id. ¶¶ 34, 35, Ex. 49. When the IPF auditor determined that IPF needed to restate its 2009 financial statements to reverse the $300,000 that had been capitalized as a syndication expense, Feathers stated that he preferred that the restatement reclassify these costs as "due from manager." Id. ¶¶ 32, 39–41, Exs. 13, 14. The SPF auditors, similarly, required SBCC and SPF to reclassify over $500,000 in cash expenditure in the 2009 financial statements, and required SPF to disclose that the "due from" listing was in violation of the SPF offering documents. Id. ¶¶ 43, 44, Exs. 16, 53. Spiegel has also asserted that by the end of 2010, the amount that IPF had loaned to SBCC under the "due from" had grown to over $1 million. Id. ¶ 49, Ex. 19. The alleged note receivable from SBCC became an issue between Feathers and the Funds' auditor during the audit of the 2011 financial statements. See id. ¶¶ 75–80, Exs. 38–43. For example, on or about April 24, 2012, the Funds' independent outside auditor received a letter addressed to Feathers from the Fund's outside counsel which stated that Feathers' failure to disclose SBCC's borrowing from IPF was "highly misleading" and did "not comply with the offering documents." Id. ¶ 81, Ex. 44; see also Bulgozdy Decl. Ex. 192; id. Ex. 218 (Feathers Dep. 415:16–453:6).

The SEC has also established that Feathers did not disclose to the investors that, contrary to the representations from the offering documents, cash from the Funds was being transferred to SBCC. As noted, these transfers had been occurring with regard to IPF and SPF since 2009. The subsequent offering documents—e.g., the 2010 IPF Offering Circular, 2011 IPF Offering Circular, SPF's January 2011 PPM, and SPF's August 2011 PPM—all contained the same "No Loans to Manager" language and limitations on the Funds' payment of manager fees and expenses. In addition, Feathers sent several communications to the investors in the Funds requesting amendments to the offering circulars and the operating agreements. On or around May 24, 2010, Feathers sent a letter to IPF investors proposing to, among other things, "Increase permissible syndication expenses to two percent of fund capital." See Decl. of Robert Morris ISO Pl.'s Mot. for Summ. J. Ex. 136, Docket Item No. 481. Nothing in this letter disclosed that Feathers and SBCC

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    had been previously engaged in borrowing or planning on borrowing cash from IPF in an

2    unsecured loan, in violation of the representations of the offering circulars. On or around August

3    15, 2010, Feathers sent a letter to IPF investors asking for "concurrence" in a modification of the

4    IPF operating agreement "to initiate beneficial financial and tax planning for the fund." See id. Ex.

5    130. Like the May 2010 letter, this communication did not disclose the unsecured loans from IPF

6    to SBCC nor request approval or ratification of these loans.

7           The SEC also contends, and the Court agrees, that these misrepresentations were material.

8    The loans and money transfers between the Funds and from the Funds to SBCC allowed Feathers

9    to conceal or misrepresent the true net income, performance, and yield of the Funds. In that vein,

10   the "due from" and "manager's note" accounting practice removed expenses and liabilities from

11   the Funds' financial statements by virtually converting them to assets of the Funds. As such, and

12   applying the "reasonable investor" standard articulated by the Ninth Circuit to test materiality, the

13   Court finds that there is a substantial likelihood that a reasonable investor would have viewed the

14   disclosure of the truth about these loans and money transfers as altering the total mix of

15   information made available and important information in making the decisions to invest with IPF

16   or SPF. See Platforms Wireless, 617 F.3d at 1092. This is confirmed by declarations from at least

17   two investors who have asserted that had they been fully aware that Feathers was causing the

18   Funds to lend money to SBCC they would have considered that information important and likely

19   would have withdrawn their investments. See Morris Decl. ¶¶ 17–20; Decl. of Barbara Bushee ISO

20   Pl.'s Mot. for Summ. J. ¶ 8, Docket Item No. 478.

21

22                    **b.  Misstatements Regarding Conservative Lending Standards**

23          The SEC next asserts that Feathers made material misrepresentations in the Funds' offering

24   documents that the Funds would be managed under conservative lending standards. Specifically,

25   the Funds' disclosures stated that all loans made by the Funds would be secured by deeds of trust

26   and the Funds have and would continue to use conservative 65% or 75% loan-to-value guidelines.

27

28                                              13

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    The IPF Offering Circulars represented that IPF would invest in "loans secured by first deed of

2    trust encumbering commercial and income producing residential real estate." <u>See, e.g.</u>, IPF's 2008

3    Offering Circular, Bulgozdy Decl. Ex. 172, at cover page, p. 7; IPF's 2009 Offering Circular, <u>id.</u>

4    Ex. 173, at pp. 1, 13, 15; IPF's 2010 Offering Circular, <u>id.</u>, Ex. 175, at pp. 1, 13, 14; IPF's Jan.

5    2011 Offering Circular, <u>id.</u> Ex. 177 at pp. 1, 16. Similarly, the SPF offering documents represented

6    that SPF would invest in loans "secured by first and second deeds of trust." <u>See, e.g.</u>, SPF's 2007

7    PPM, <u>id.</u> Ex. 182, at cover page, p. 7; SPF's 2009 PPM, <u>id.</u> Ex. 184. SPF represented that it would

8    invest in loans where the "loan-to-value" ratio would not exceed 75% of the value of the security

9    property, <u>see, e.g.</u>, <u>id.</u>, Ex. 184 at p. 6; IPF represented that it used a more conservative 65% (or

10   less) loan-to-value ratio, <u>see, e.g.</u>, <u>id.</u>, Ex. 175 at p. 14. The offering documents also represented

11   that the Funds were and would continue to be managed—by SBCC and Feathers—in accordance

12   with generally accepted accounting principles ("GAAP"). <u>See, e.g.</u>, IPF's 2009 Offering Circular,

13   <u>id.</u> Ex. 173, at pp. 17; SPF's January 2011 PPM, <u>id.</u> Ex. 185 at p. 25. As shown in the preceding

14   section, these representations were materially false and misleading because the loans and money

15   transfers Feathers caused the Funds to make to SBCC were not secured by any real property, and

16   there was no loan-to-value ratio for these unsecured loans.

17          Other material misrepresentations and omissions concern the Funds' "Operations to Date"

18   sections in the offering documents. The documents omit material information concerning the

19   unsecured receivable that SBCC owed to the Funds. As an example, the January 2011 IPF Offering

20   Circular represents that 100% of IPF's loans were secured by "First Trust Deeds," as required by

21   the terms of the offering. <u>See</u> Bulgozdy Decl. Ex. 177, at p. 22. This was materially false because,

22   as shown above, by December 31, 2010, IPF had loaned at least $1.85 million to SBCC in an

23   unsecured loan, which represented over 11% of IPF's total assets. <u>See</u> Spiegel Decl. Exs. 27, 44.

24   Similarly, SPF's January 2011 PPM represents, in a chart titled "Portfolio Characteristics as of

25   December 31, 2010," that "0%" of loans by dollar amount were outstanding to the Manager or

26   Affiliates. <u>Id.</u> Ex. 185 at p. 9. This was materially false and misleading because, as shown in the

27

28

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

preceding section, by December 31, 2010, SBCC owed SPF $707,464, which represented over 18% of SPF's total assets. <u>See</u> Spiegel Decl. Ex. 28.

### c.  Misstatements Regarding Returns to Investors

The SEC also contends, and supports those contentions with voluminous evidence, that Feathers caused the Funds to make misrepresentations regarding the returns Fund members would receive on their investments. The offering documents of both Funds represented that member returns would be based on a proportionate share of the profits generated by the Funds' investments. The IPF offering documents represented that investors would be paid a "Member Preferred Return" allocated from "Fund profits." <u>See, e.g.</u>, Bulgozdy Decl. Ex. 173 at p. 1. The IPF offering documents explicitly stated that "Monthly profits will be allocated among the Members as of the last day of each month in accordance with their respective capital account balances as of such date. Each month, profits will be allocated entirely to Members . . . ." <u>Id.</u> at p. 31. Similarly, the SPF offering documents represented that investors would be "allocated a proportionate share of Fund income during any month." <u>See, e.g.</u>, <u>id.</u> Ex. 184 at pp. 5, 24. The SEC has also provided statements and declarations from investors that they believed the returns on their investment would be derived from the Funds' profits and that the Funds were profitable. <u>See</u> Morris Decl.; Bushee Decl.

The SEC has provided evidence showing that despite these representations, the Funds were not profitable and that the returns on members' investments were not being derived from the Funds' profits. Essentially, the SEC has shown that Feathers was not using Fund profits to pay out returns, but rather other member investments—contrary to the representations of the Funds' offering documents—as "Ponzi-like payments." <u>See</u> Pl.'s Reply ISO of Mot. for Summ. J. As explained above, Feathers had instructed his employees to maintain monthly payments to investors in IPF and SPF at a return of 7.5% per annum and 9–10% per annum, respectively, without taking into consideration the Funds' net income or actual profitability. <u>See</u> Gruebele Decl. ¶ 11. Gruebele

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

has also asserted that he advised Feathers that these distributions were greater than the net income of the Funds. Id. Gruebele avers that, in response, Feathers stated that additional income was going to be generated in the near future from new transactions that would balance the over-distribution. Id. In October 2010, as but one example, Feathers was informed by Gruebele that IPF had distributed $300,000 more to investors than net income to date. Id. ¶ 12, Ex. 76. In early 2011, Feathers was informed that IPF and SPF had each paid more to investors in returns than net income year-to-date. Id. ¶ 13, Ex. 80. This over-distribution was even reflected in SBCC internal reports. See id. ¶ 10, Ex. 79.

Feathers directed the over-distribution of the Funds' "income" to investors by means of his "due from" and "manager's note" recording. According to Feathers, during the period from 2009 to 2011 IPF reported a combined net income of $2,597,784. During that same period, Feathers caused at least $4,863,479 of expenses of IPF to be recorded as an "asset" in the form of the Note Receivable from Fund Manager. See Spiegel Decl. Exs. 27, 46 at p. 15. In reality, this amount reflected money transfers and loans from IPF to SBCC. Similarly, SPF reported a combined net income of $852,827, while over the same period Feathers caused at least $690,868 of expenses of SPF to be recorded as an "asset." Id. Exs. 28, 47. This too was perpetuated using the "due from" accounting to manage the yield of the Funds. Gruebele Decl. ¶ 9. In fact, Feathers instructed his staff on how to use the "due-from-manager fund asset" to manage earnings; in an email sent to Gruebele, Feathers stated, "As necessary we may have to use up much or all of this amount as necessary to ensure hitting our yield target to investors of 7.5% (compounded). I want to have everything buttoned up for Spiegel ahead of time." Id. Ex. 112.

The misrepresentations about the source of member returns were material for similar reasons as stated above. A reasonable investor would consider the true source of returns as important when making the decision to invest. See Platforms Wireless, 617 F.3d at 1092. There is a material difference between returns on an investment being derived from profits of the investment fund—as Feathers represented they would be—and those being derived from other members'

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   investments, which is ultimately unsustainable. Information regarding a company's financial

2   condition is material to investment. United States v. Reyes, 577 F.3d 1069, 1076 (9th Cir. 2009);

3   see also SEC v. Murphy, 626 F.2d 633, 653 (9th Cir. 1980) ("Surely the materiality of information

4   relating to financial condition, solvency and profitability is not subject to serious challenge."). A

5   reasonable investor "would consider it important to know [his] funds were being misappropriated

6   and used for purposes other than those stated when solicited." SEC v. Merrill Scott & Assocs.,

7   Ltd., No. 2:02-CV-39-TC, 2011 WL 5834271, at *11 (D. Utah Nov. 21, 2011) (citing TLC Invs.,

8   179 F. Supp. 2d at 1153).

9

10              **2.   Requisite Mental State**

11          Section 17(a)(1) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5

12  require scienter. Ernst & Ernst v. Hochfelder, 425 U.S. 185 (1976); see also Aaron v. SEC, 446

13  U.S. 680, 701–02 (1980). Scienter for violations of these provisions can be satisfied by a showing

14  of recklessness. Nelson v. Serwold, 576 F.2d 1332 (9th Cir. 1984), cert. denied, 439 U.S. 970

15  (1978); Dain Rauscher, 254 F.3d at 855–56; Hollinger v. Titan Capital Corp., 914 F.2d 1564,

16  1568–69 (9th Cir. 1990) (en banc). "In the absence of further guidance from the Supreme Court,

17  the Ninth Circuit has held that recklessness will satisfy the scienter requirement." Wright v.

18  Schock, 571 F. Supp. 642, 660 & n.9 (N.D. Cal. 1983), aff'd, 742 F.2d 541 (9th Cir. 1984) (citing

19  Nelson, 576 F.2d 1332). "Reckless conduct is conduct that consists of a highly unreasonable act, or

20  omission, that is an 'extreme departure from the standards of ordinary care, and which presents a

21  danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the

22  actor must have been aware of it.'" Dain Rauscher, 254 F.3d at 856 (quoting Hollinger, 914 F.2d at

23  1569). Violations of Section 17(a)(2) and (3) of the Securities Act require a showing of negligence.

24  Dain Rauscher, 254 F.3d at 856; SEC v. Hughes Capital Corp., 124 F.3d 449, 453–54 (3d Cir.

25  1997).

26

27

28

17

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1     Establishing scienter is typically a question of fact; however, courts can and have decided

2  the issue of scienter on summary judgment in cases where defendants have failed to introduce

3  particular facts or pieces of evidence showing that there exists a genuine issue of material fact with

4  regard to the defendant's state of mind. See Platforms Wireless, 2007 WL 1238707 (explaining that

5  defendant's good faith belief is not enough to create a genuine issue of fact as to whether he was

6  reckless), aff'd in part and rev'd in part, 617 F.3d 1072 (9th Cir. 2010) (affirming summary

7  judgment on claims brought under Section 10(b) of the Exchange Act and Rule 10b-5); SEC v

8  Wilde, No. SACV 11-0315, 2012 WL 6621747 (C.D. Cal. Dec. 17, 2012) (granting summary

9  judgment because evidence of defendants' scienter was "clear"); Aqua Vie Beverage, 2007 WL

10  2025231 (finding no genuine issue of material fact that the defendants acted with extreme

11  recklessness); TLC Invs., 179 F. Supp. 2d 1149 (granting summary judgment on scienter because

12  plaintiff had submitted "uncontroverted evidence"). Proof of scienter can be based on inferences

13  from circumstantial evidence. SEC v. Burns, 816 F.2d 471, 474 (9th Cir. 1987); Shad v. Dean

14  Witter Reynolds, 799 F.2d 525, 530 (9th Cir. 1986); see also SEC v. Yuen, No. CV 03-

15  4376MRP(PLAX), 2006 WL 1390828, at *38 (C.D. Cal. Mar. 16, 2006) ("The Ninth Circuit has

16  held that the recklessness standard can be established by demonstrating (1) a defendant's motive

17  and opportunity to engage in securities fraud; and (2) red flags casting doubt on the truthfulness or

18  accuracy of representations." (citing Howard v. Everex Systems, Inc., 228 F.3d 1057, 1063–65

19  (9th Cir. 2000))).

20     The SEC has presented abundant evidence demonstrating that Feathers acted intentionally

21  or recklessly in carrying out the misrepresentations and misstatements presented in the preceding

22  section. As an initial matter, it is beyond dispute that Feathers prepared and distributed the IPF and

23  SPF offering circulars from at least 2009 to 2011, which clearly prohibited certain loans and money

24  transfers. Rather than refraining from this prohibited conduct, Feathers continued to cause the

25  Funds to transfer cash to SBCC and make other unsecured loans and transfers since 2009.

26

27

28

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1     Feathers' creation and utilization of "due from" and "manager's note" accounting evinces

2  Feathers' intent to deceive the investors as to the true amount of cash in the Funds, or, at the least,

3  an extreme recklessness in his management of the Funds. In other words, Feathers' usage of the

4  "due from" device actively disguised the true financial performances of the Funds. In an email to

5  Gruebele dated December 16, 2010, Feathers explained that he sought to use the "due-from-

6  manager fund asset" to absorb Fund expenses so as to "ensure hitting our yield." Spiegel Decl. Ex.

7  112. As such, the loans and money transfers that were recorded as "due from" manager created the

8  false impression that they were assets of the Funds rather than expenses. The true effect of the "due

9  from" accounting device allowed Feathers to pay SBCC's management expenses (in violation of

10  the offering documents) while deceptively making it seem the Funds were properly capitalized and

11  yielding the target net income. Id. ¶ 9. Had Feathers properly recorded the money transfers in

12  accordance with GAAP, he would have had to establish an allowance equal to the full value of the

13  receivables, which, as noted, would have created expenses or liabilities against the Funds' income.

14  See Pl.'s Mot. for Summ. J. 20–21. The effect of this would have been a reported loss of the Funds

15  since the financial statements and audit reports show that the Funds had made payments in excess

16  of net income and returned capital. See id.

17     Feathers' interaction with the auditor of the Funds further evinces an intent to deceive or

18  recklessness in his management of the Funds and representations made to investors. The SPF

19  auditors notified Feathers that the "due from" classification was in violation of the SPF offering

20  documents. Id. ¶¶ 43, 44, Exs. 16, 53. Similarly, the IPF auditor required the restatement of the

21  cash transfers that had been capitalized as a syndication expense in the 2009 financial statements.

22  Id. ¶ 32. In response, Feathers stated that he preferred that the restatement reclassify the

23  syndication costs to the "due from manager." Id. In addition, while preparing a quarterly

24  compilation for IPF after 2009, Spiegel learned that at least $170,000 had been added to the

25  organizational costs of IPF. Id. ¶ 48, Ex. 18. After being notified of this, Feathers responded that he

26  had "[taken] it upon myself to send a motion to investors to change the operating agreement to re-

27

28

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

categorize up to $1 MM FY 2010 accrued syndication/organizational expenses into a receivable

from Fund Manager. This would be paid back over a period of 5 years, and would also have an

interest rate paid to fund members of 7.5%." See Spiegel Decl. ¶ 49, Ex. 19. In response, IPF's

outside auditor told Feathers, "I am not sure getting approval after the fact is proper. Generally,

that should be done prior to taking money." Id.

        The SEC has presented several more communications that evince that Feathers knew that

his representations to investors in his letters and offering documents were false or misleading. For

example, with regard to the "due from" manager, in an email dated April 3, 2012, Spiegel wrote to

Feathers the following:

> Just because it shows a loan to the manager does not make it compliant with the OC
> or operating agreement. I believe we did and will again indicate in the audit report
> and financials, it violates the OC and operating agreement. Dennis [Doss, attorney
> of SBCC] and I agree that your communications to the investors are misleading.
> Besides the loan itself: your communication indicates the purpose of the loan which
> also is not consistent with the actual use of the proceeds. May I suggest you get
> some counsel on what a proper communication to your investors should include so
> they are fully disclosed of all fund issues.

See Bulgozdy Decl. Ex. 192. As another example of Feathers' scienter, Doss wrote to Feathers in

an email on the same date, "I know you don't want to hear this but the letter is misleading. You

have obtained unauthorized loans from the fund of $5M and for the past two fiscal years the fund

earned less than the 7.5% it distributed to investors." Id.

        Moreover, Feathers' decision to have the auditor issue a qualified opinion for the 2010

financial statements of the IPF and SPF serves as further circumstantial evidence demonstrating

Feathers' scienter. After discovering the sizeable amounts of the "due from" SBCC to the Funds,

Spiegel informed Feathers that he could not issue an unqualified audit opinion. Id. ¶ 49, Ex. 19. As

such, Spiegel presented Feathers with three options: (1) Feathers and SBCC could pay the "due

from" in full before the audit was completed; (2) Feathers and SBCC could provide a documented

assessment of the collectability of the "due from" so that an appropriate loss allowance could be

established for the note; or (3) the outside auditor would have to issue a qualified opinion. Id. ¶ 61.

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Feathers elected to have the Funds' outside auditor issue qualified audit opinions on the 2010

2    financial statements rather than rectifying the questionable accounting, paying back the money that

3    was transferred to SBCC, or making the proper disclosure to investors. Id. ¶¶ 61–62. As a result,

4    the Funds' auditors issued qualified opinions for both IPF's and SPF's audited financial statements.

5    See, e.g., id. Exs. 27, 28.

6

7                **3.   Remaining Elements: Sale of Securities by Means of Interstate Commerce**

8              The remaining elements of the antifraud provisions are that the misrepresentations were

9    made in connection with the offer or sale of a security by means of interstate commerce. See Phan,

10   500 F.3d at 908. There is no question of fact that the misrepresentations in the Funds' offering

11   documents were connected to the sale of securities (investment in the Funds) by means of interstate

12   commerce. These elements are not in dispute among the parties.

13

14                **4.   Feathers' Opposition**

15             The Court now turns to Feathers' opposition to the SEC's summary judgment motion, his

16   objections to the evidentiary support provided therein, and his attempts to demonstrate the

17   existence of a genuine issue of material fact. As the non-moving party, Feathers cannot create a

18   genuine issue of material fact simply by making assertions in his legal papers. S.A. Empresa de

19   Viacao Aerea Rio Grandense v. Walter Kidde & Co., 690 F.2d 1235, 1238 (9th Cir. 1982); Wilde,

20   2012 WL 6621747, at *3. "When the nonmoving party relies only on its own affidavits to oppose

21   summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create

22   an issue of material fact." Hansen, 7 F.3d at 138. Rather, he must introduce and present specific,

23   admissible evidence that a reasonable trier could find in his favor. Anderson, 477 U.S. at 248–49.

24   As such, the non-movant must "do more than simply show that there is some metaphysical doubt

25   as to the material facts." Matsushita Elec. Indus., Co. v. Zenith Radio Corp., 475 U.S. 574, 586

26   (1986). In that regard, the Court is "'not required to comb the record to find some reason to deny a

27

28
                                                      21
     Case No.: 5:12-CV-3237 EJD
     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  motion for summary judgment.'" <u>Carmen v. S.F. Unified Sch. Dist.</u>, 237 F.3d 1026, 1029 (9th Cir.

2  2001) (quoting <u>Forsberg v. Pac. N.W. Bell Tel. Co.</u>, 840 F.2d 1409, 1418 (9th Cir.1988)); <u>see also</u>

3  <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district

4  court, to scour the record in search of a genuine issue of triable fact." (quoting <u>Richards v.</u>

5  <u>Combined Ins. Co.</u>, 55 F.3d 247, 251 (7th Cir. 1995)). "If a party wishes the court to consider an

6  affidavit for more than one issue, the party should bring that desire to the attention of the court." <u>Id.</u>

7        Thus, Feathers "has the responsibility to identify with reasonable particularity the evidence

8  which precludes summary judgment." <u>SEC v. Leslie</u>, No. C 07-3444, 2010 WL 2991038, at *17

9  (N.D. Cal. July 29, 2010), <u>clarified on denial of reconsideration</u>, No. 5:07-CV-03444-JF, 2010 WL

10  3259375 (N.D. Cal. Aug. 18, 2010) (citing <u>Keenan</u>, 91 F.3d at 1279); <u>see also</u> Fed. R. Civ. P.

11  56(c)(1). It is not enough to establish a genuine issue of material fact for Feathers to simply state

12  that he disputes the evidence or arguments the SEC has presented because "[s]ummary judgment

13  requires facts, not simply unsupported denials or rank speculation." <u>McSherry v. City of Long</u>

14  <u>Beach</u>, 584 F.3d 1129, 1138 (9th Cir. 2009). Also, the moving party—in this case the SEC—can

15  meet its burden by pointing out that the nonmoving party has failed to present any genuine issue of

16  material fact. <u>Musick v. Burke</u>, 913 F.2d 1390, 1394 (9th Cir. 1990).

17        The Court also reiterates that Feathers' status as a pro se litigant does not relieve him of this

18  burden or the standards of defeating a summary judgment motion. <u>See</u> <u>Jacobsen v. Filler</u>, 790 F.2d

19  1362, 1364 (9th Cir. 1986) ("[P]ro se litigants in the ordinary civil case should not be treated more

20  favorably than parties with attorneys of record."). The notion that "a district court does not have a

21  duty to search for evidence that would create a factual dispute" in a motion for summary judgment

22  extends to a situation where the non-moving party is pro se. <u>Bias</u>, 508 F.3d at 1219 (citing

23  <u>Jacobsen</u>, 790 F.2d at 1365 & n.5).

24        In his Opposition to the SEC's Motion for Summary Judgment as well as in his own Motion

25  for Summary Judgment, Feathers offers several arguments attempting to demonstrate that genuine

26  issues of material fact exist with regard to the SEC's allegations. For the reasons explained below

27

28                                   22

United States District Court
For the Northern District of California

1   the Court rejects these arguments and finds that Feathers' assertions fail to introduce a question of

2   fact.

3           First, Feathers appears to contend that the Funds were properly capitalized and disputes the

4   SEC's arguments that the returns paid to members were actually from other members' investments

5   rather than the net income and profits generated by the Funds. The Court rejects this argument as

6   Feathers fails to sufficiently point to particular and specific evidence that would raise a question of

7   fact in light of the evidence that the SEC has provided in support of its position. For example,

8   Feathers argues that the SEC has overstated funds distributions by more than 50%, which, he

9   argues, created the "illusory [sic] of the [Funds'] needing new member capital for distributions,

10  when they never did." Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def's Opp'n") 3–4, Docket Item

11  No. 511. In support of this assertion, Feathers only points to Exhibit 2 of his Evidentiary

12  Objections to SEC's Motion For Summary Judgment and Related Submissions ("Feathers'

13  Evidentiary Objections") (Docket Item No. 509), which appears to be a general description of the

14  SEC's Enforcement Division's duties. As another example, Feathers argues that by June 2012, the

15  Funds had approximately $14 million in cash on hand and near cash from loan sales scheduled. In

16  support of this assertion, Feathers offers a two-page spreadsheet titled "Loan Pipeline 2012." See

17  Feathers' Evidentiary Objections, Docket Item No. 509, Ex. 3. Aside from this document being

18  unsupported by a declaration or other assertion establishing foundation, Feathers fails to

19  demonstrate how it supports his position that the Funds were sufficiently and properly capitalized.

20          Feathers raises several arguments against the SEC's establishment of the scienter element.

21  He initially argues that scienter can only be established at trial, not at the summary judgment phase

22  of a litigation. Pl.'s Opp'n at 10–11. This is an incorrect statement of law; as explained above, a

23  court's determination about a defendant's state of mind in SEC enforcement actions can be

24  established at the summary judgment phase of a litigation. See, e.g., Platforms Wireless, 2007 WL

25  1238707 (affirming summary judgment on claims brought under Section 10(b) of the Exchange

26  Act and Rule 10b-5); Wilde, 2012 WL 6621747 (granting summary judgment because evidence of

27

28

                                                   23

United States District Court
For the Northern District of California

1  defendants' scienter was "clear"); Aqua Vie Beverage, 2007 WL 2025231 (finding no genuine

2  issue of material fact that the defendants acted with extreme recklessness); TLC Invs., 179 F. Supp.

3  2d 1149 (granting summary judgment on scienter based on plaintiff's "uncontroverted evidence").

4         Feathers' attempts to demonstrate a genuine issue of material fact as to his scienter also

5  fails. Feathers appears to assert that the SEC's evidence that Feathers used the "due from" to

6  manage the Funds' yields is false. See Def.'s Opp'n at 10–11. However, he does not support this

7  contention with particularized facts and submitted evidence. He does argue that—with regard to

8  loan transfers being in large round numbers—Gruebele "asked for these 'rounded' transfers to ease

9  his burden of bookkeeping and bill paying." Id. at 11. Not only is this claim unsupported by

10  documentary evidence on the record, it is also irrelevant and non-material to Feathers' state of

11  mind.

12         Feathers also appears to argue that scienter has not been sufficiently established by the SEC

13  because SBCC had the "good faith intentions to honor the terms of the note" and "retire part, or all,

14  of the fund's note receivables" in early 2012. Id. at 13. The evidence Feathers provides in support

15  of this is an email chain suggesting that SBCC "engaged counsel of Foley Lardner Law" to assist

16  with the repayment and retirement of the notes receivable. Id.; Feathers' Evidentiary Objections

17  Ex. 7. However, this unfounded assertion that only possibly shows an intent to repay the

18  misappropriated funds and loans is insufficient to establish a question of fact in light of the

19  specific, particular, and abundant evidence the SEC has provided establishing Feathers' scienter.

20  As explained in great detail, the SEC has provided sufficient evidence of Feathers' scienter with

21  regard to all of the following contentions: that Feathers reviewed and approved the Funds' offering

22  documents that prohibited unsecured loans to SBCC; that Feathers had caused the Funds to make

23  unsecured and loans and cash transfers to SBCC; that Feathers failed to disclose this to past and

24  future investors; that Feathers did not account for the "notes receivable" of the Funds financial

25  statements in accordance with GAAP; that Feathers explained how the "due from" recording would

26  be deceptively used to absorb the Funds' expenses; and that Feathers disregarded advice from the

27

28

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Funds' auditors and attorneys to cease selling loans between the Funds and readjust the "due from"

2    accounting to be in accordance with GAAP.

3          Feathers also contends that he relied on the advice of professionals when drafting the

4    offering documents as well as in executing the fund transfers, and that this reliance disproves the

5    SEC's argument as to his scienter. Def.'s Opp'n at 16. In order to establish the affirmative defense

6    of reliance on professional assistance, a defendant "must show that [he] (1) made a complete

7    disclosure to [the professional]; (2) requested [the professional]'s advice as to the legality of the

8    contemplated action; (3) received advice that it was legal; and (4) relied in good faith on that

9    advice." SEC v. Goldfield Deep Mines  of Nev., 758 F.2d 459, 467 (9th Cir. 1985) (citation

10   omitted). Feathers neither points to nor provides any evidence to establish any of these elements.

11   He only offers an unsupported assertion that he "acted with his professionals in good faith, and

12   does not believe there were omissions of material information to these professionals, nor

13   misrepresentations." Def.'s Opp'n at 16. As such, the Court rejects this argument.

14         Next, Feathers argues that he had obtained approval from investors to engage in the conduct

15   the SEC contends underlies the securities fraud causes of action. First, Feathers asserts that SBCC

16   "sought, and gained, consent from investors in May of 2012 for a change from GAAP basis

17   accounting to tax basis accounting for the [F]unds." Def.'s Opp'n at 13. The only piece of

18   documentary evidence Feathers provides and relies on in support of this contention is a letter

19   purportedly to two IPF investors requesting this approval. See Feathers' Evidentiary Objections Ex.

20   10. However, this request fails to establish that Feathers actually received the approval from these

21   and other investors to make this change. Furthermore, the letter fails to disclose that Feathers was

22   actually causing IPF to make cash transfers and loans to SBCC in violation of the offering

23   documents, as has been established by the SEC. Feathers also contends that SBCC had the "express

24   authority to sell loans between the Funds, or to others and was doing so well before 2012." Def.'s

25   Opp'n. at 19.  Whether this authority was derived from the investors or the fund offering

26   documents is unclear, as Feathers points to no specific and particular evidence confirming this

27

28

United States District Court
For the Northern District of California

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

assertion. Feathers also asserts that "distributions to members, if they did occur in excess of fund profits, were not prohibited." Again, Feathers points to no evidence supporting this, and the Court has explained why the excess distributions were prohibited by the Fund documents.

Feathers also attempts to discredit several of the SEC's declarants. He argues that the "declarations of Jeff Spiegel and David Gruebele cannot have credibility" and that "[t]heir declarations, also, like those of Barbara Bushee and Robert Morris, appear to be heavily assisted by SEC." Def.'s Opp'n, at 7. Feathers also complains of not being able to depose them, arguing that only a jury can judge the credibility of declarations. Id. at 7–9, 15–16. However, "once the movant for summary judgment has supported his or her motion, the opponent must affirmatively show that a material issue of fact remains in dispute and may not simply rest on the hope of discrediting movant's evidence at trial." Frederick S. Wyle Prof'l Corp. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir. 1985). "Neither a desire to cross-examine affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment, unless other evidence about an affiant's credibility raises a genuine issue of material fact." Id.; see also Nat. Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983); cf. Vaughn v. Teledyne, Inc., 628 F.2d 1214, 1220 (9th Cir. 1980). Here, Feathers offers no direct and incontrovertible evidence that the SEC's declarants are not credible; he only offers unsupported conjectures such as, for example, the assertion that Spiegel's and Gruebele's declarations are "very suspect" and that they are "suddenly seeing things very differently now." Def.'s Opp'n at 7. Accordingly, the Court rejects Feathers' arguments regarding the character and credibility of the SEC's witnesses who have signed and sworn their declarations under penalty of perjury.

Feathers brings forth several other arguments in opposition to the SEC's summary judgment motion. The Court disposes of these arguments by noting that Feathers has not supported them with a presentation of specific and particular evidence that demonstrates that there exists a genuine issue of material fact. See Keenan, 91 F.3d at 1279. Feathers has provided hundreds of pages of exhibits in support of his opposition as well as in support of his own summary judgment

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

motion; many of these exhibits include the Funds' offering documents, lengthy email conversations without any context, the same audit reports the SEC provided, and magazine clippings. Feathers fails, however, to indicate which specific pieces support his assertions that there exist questions of material fact with regard to the SEC's contentions. See id. To reiterate, it is not the task of the Court to comb through the record in search of genuine issue of triable fact. Id.; Carmen, 237 F.3d at 1029; Forsberg, 840 F.2d at 1417–18.

### 5.  Securities Fraud Claims Conclusion

For the foregoing reasons, the Court finds that the SEC has presented sufficient evidence to establish the elements of its securities fraud causes of action: that Feathers made material misstatements, misrepresentations, or omissions of fact to investors regarding his and SBCC's management of the Funds; that such misrepresentations were made in connection with the offer or sale of a security—specifically, the investment securities in the Funds—by means of interstate commerce; and that the misrepresentations were made with the intent to deceive the investors and other parties or with extreme recklessness. The Court also finds that Feathers has not met his burden of demonstrating, with the support of specific and particular documentary evidence, that there exist genuine issues of material fact with regard to these elements. Accordingly, the Court GRANTS the SEC's Motion for Summary Judgment with regard to its allegations of securities fraud.

### B.  Broker-Dealer Registration

Section 15(a) of the Exchange Act makes it unlawful for brokers to offer securities without registering themselves with the SEC. See 15 U.S.C. § 78o(a)(1). The Act defines a "broker" to include "any person engaged in the business of effecting transactions in securities for the account of others." Id. § 78c(a)(4). Courts considering this definition have required a showing that there was a "certain regularity of participation in securities transactions at key points in the chain of

27

United States District Court
For the Northern District of California

1    distribution." <u>SEC v. Hansen</u>, No. 83 CIV. 3692, 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984);

2    <u>see also</u> <u>SEC v. Interlink Data Network of Los Angeles, Inc.</u>, No. CIV. A. 93-3073 R, 1993 WL

3    603274, at *10 (C.D. Cal. Nov. 15, 1993). Activities that may indicate that a person is a broker

4    include, <u>inter alia</u>, that the person "1) is an employee of the issuer; 2) received commissions as

5    opposed to a salary; 3) is selling, or previously sold, the securities of other issuers; 4) is involved in

6    negotiations between the issuer and the investor; 5) makes valuations as to the merits of the

7    investment or gives advice; and 6) is an active rather than passive finder of investors." <u>Hansen</u>,

8    1984 WL 2413, at *10.

9         Here, it is not disputed that Feathers and SBCC are the sole managers of the Funds, which

10   technically were the issuers of the securities. Feathers and SBCC employed investor

11   representatives who were paid a salary and a commission for sales of securities of IPF and SPF.

12   <u>See, e.g.</u>, Bulgozdy Decl. Ex. 175 at p. ii. Feathers and SBCC actively solicited new investments in

13   IPF and SPF. <u>See</u> Morris Decl. ¶¶ 2–5, Ex. 131; Bulgozdy Decl. Exs. 215, 216. Moreover, Feathers

14   and SBCC have been selling IPF and SPF securities regularly for years, with sales of at least

15   $46 million of securities of these Funds. <u>See</u> Receiver's Preliminary Forensic Accounting Report,

16   Docket Item No. 171, at pp. 2, 5. As such, the Court finds that Feathers and SBCC fall under the

17   definition of "brokers" under Section 15(a) of the Exchange Act. Feathers has not presented

18   evidence to the contrary nor evidence that introduces a genuine issue of material fact. As such, the

19   Court GRANTS the SEC's Motion for Summary Judgment with regard to the claim of violation of

20   the Exchange Act's broker-dealer registration provisions.

21

22        **C.  Control Person Liability**

23        The Court also finds that the SEC has established that Feathers and SBCC are liable as

24   control persons under Section 20(a) of the Exchange Act, which provides, "Every person who,

25   directly or indirectly, controls any person liable under any provision of this chapter or of any rule

26   or regulation thereunder shall also be liable jointly and severally with and to the same extent as

27

28
                                                    28
     Case No.: 5:12-CV-3237 EJD
     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    such controlled person to any person to whom such controlled person is liable . . . ." 15 U.S.C.

2    § 78t(a). A defendant may be liable for securities violation if (1) there is a violation of the

3    Exchange Act and (2) the defendant directly or indirectly controls any person liable for the

4    violation. SEC v. Todd, 642 F.3d 1207, 1223 (9th Cir. 2011). The SEC defines "control" as "the

5    possession, direct or indirect, of the power to direct or cause the direction of the management and

6    policies of a person, whether through ownership of voting securities, by contract, or otherwise." 17

7    C.F.R. § 230.405; Todd, 642 F.3d at 1223 n.4. The definition of "person" under the Act

8    encompasses a "company." Id. at 1223 (citing 15 U.S.C. § 78c(a)(9)). As the SEC has established,

9    and Feathers has admitted, that Feathers controlled SBCC, IPF, and SPF, the Court finds that the

10   elements for control person liability for securities violation have been met beyond a genuine issue

11   of material fact. As such, the Court GRANTS the SEC's Motion for Summary Judgment with

12   regard to this cause of action.

13

14   **IV.    Conclusion and Order**

15        For the foregoing reasons, the Court finds as a matter of law that Defendants committed

16   securities fraud in violation of Sections 17(a)(1), 17(a)(2), and 17(a)(3) of the Securities Act as

17   well as Section 10(b) of the Exchange Act and Rules 10b-5(a), 10b-5(b), and 10b-5(c) thereunder;

18   that SBCC operated as an unregistered broker-dealer in violation of Section 15(a) of the Exchange

19   Act; and that Feathers and SBCC are liable as control persons under Section 20(a) of the Exchange

20   Act. As such, the SEC's Motion for Summary Judgment is GRANTED.

21        Defendant Feathers' Motion for Summary Judgment is DENIED.

22        The SEC seeks the following relief against Feathers and Defendant companies: (1)

23   permanent injunction prohibiting future violations of the federal securities laws; (2) disgorgement

24   of ill-gotten gains (plus prejudgment interest) from the conduct at issue here; and (3) payment of

25   civil penalties. Based on the findings of fact and law contained herein, the Court is prepared to

26   grant appropriate relief to the SEC and will hear and consider argument from the SEC and

27

28
                                                29
     Case No.: 5:12-CV-3237 EJD
     ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Defendants as to what remedies are to be granted and in what amounts. This hearing will be set for **October 22, 2013 at 1:30 p.m.** The SEC is ordered to file opening briefings on this matter by September 9, 2013; Defendants are ordered to file any opposition by September 20, 2013; the SEC is ordered to file its reply by October 11, 2013.

**IT IS SO ORDERED.**

Dated: August 16, 2013



EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-CV-3237 EJD
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT