DR. STEPHAN HENGSTLER
1307 Bronwen Way
Campbell, California 95008
Phone: (408) 306-4932

STEPHAN HENGSTLER, Pro Se, Investor

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br>     Plaintiff, <br> vs. <br> SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LLC; and SBC PORTFOLIO FUND, LLC, <br>     Defendants. | Case No. CV12-03237 – EJD <br><br> **OPPOSITION TO RECEIVER'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN AND AUTHORIZATION TO MAKE INTERIM DISTRIBUTIONS; MEMORANDUM OF POINTS AND AUTHORITIES (DOCKET NO. 628)** <br><br> Date: <br> Time: <br> Ctrm: <br> Judge: Hon. Edward J. Davila |

## I. INTRODUCTION

The Receiver requests in his motion (Docket No. 628) the approval of a distribution plan, which utilizes the distribution method known as "rising tide" for the calculation of receivership asset distributions. He states on p. 5 that "[…] this method has been endorsed by courts as a fair and equitable method of distributing receivership assets in fraud cases."

## II. OPPOSITION

Contrary to the receiver's statement, the selection of a fair and even distribution method is a contested issue. Although the rising tide method may be the most commonly used for appointing receivership assets, such as in *SEC v. Huber, 702 F.3d 903 (7th Cir. 2012)*, the alternate distribution method, know as the "net investment" method or the "net loss" method, should at least be considered and compared to the rising tide method with respect to fair and equitable distributions. Under the net loss method, withdrawals are not considered part of the distribution received by an investor. The net loss method was applied in *In re Bernard L. Madoff Investment Securities LLC, 654 F.3d 229 (2d Cir. 2011)*. Therefore, it is requested that the Receiver conducts a more detailed comparison of receivership asset distributions applying both methods, i.e., the rising tide method and the net loss method.

The Receiver makes a brief comparison of the rising tide method to the net loss method in his motion (Docket No. 628) on p. 11, "Only 63 claimants will receive a smaller amount under the rising tide method than they would under the net loss method and 292 claimants will receive a larger amount. In comparison to the net loss method, the rising tide method, for the initial distribution, reallocates $1.404 million from investors who previously recovered 52.387% or more of their contributions to investors who previously recovered less than 52.387% of their contributions." While the Receiver provides sufficient information in (Docket No. 626-1) for determining distributions to individual investors under the rising tide method, insufficient information has been submitted for applying the net loss method since withdrawals of principle investment are not separately listed from interest paid out.

Therefore, it is requested that the Receiver should state the percentage of contributions recovered under the net loss method, i.e., what percentage the 52.387% contributions recovered would be under the net loss method, and provide sufficient information to determine distributions to individual investors applying the

net loss method. The method for distribution of receivership assets should be chosen as the one that results in the most fair and equitable distributions to investors following the argumentation and decision in either the *Huber* or the *Madoff* settlement.

### III. ARGUMENT

The investors in this case can be divided into three groups with respect to investment term and withdrawals of principal investment, i.e., for the purpose of asset distribution:

Group A: This group of investors consists of long-term investors who received more than 100% of their contributions prior to the receivership.

Group B: Investors in this group are long-term investors who made withdrawals of their principal investment prior to the receivership.

Group C: This group of investors includes short-term investors and long-term investors who made no withdrawals of their principal investment prior to the receivership.

In this grouping of investors, the distinction between short-term and long-term is made by the minimum investment term of the fund(s); a long-term investor is one who has been invested in the fund(s) longer than the minimum investment term of the fund(s) prior to the receivership.

For the purpose of asset distribution, investors in Group A have no claim and end up with a net gain. Investors in Group B are disadvantaged under the rising tide method and end up with the largest net loss of the three groups of investors. It should be taken into consideration that a portion of the investors in Group B

(i) made their initial investment into the Investors Prime Fund as far back as 2006 and therefore before the inception of the SBC Portfolio Fund, that is, before inter-fund transactions between these two funds in violation of the securities exchange legislation occurred, and

(ii) re-invested some or all of the withdrawals of their principal investment into the fund; although, admittedly, such re-investments are difficult to prove.

Therefore, distributions under the rising tide method would penalize investors in Group B for their long-term investments in the fund(s) and favor the portion of short-term investors in Group C. This is contradictory to capital gains taxation, which gives more favorable treatment to long-term investments compared to short-term investments. More information for the net loss method is needed to determine fair and equitable distributions.

## IV. CONCLUSION

Based on the foregoing, the Receiver should state the percentage of contributions recovered under the net loss method and provide a comparison of asset distributions to individual investors under the rising tide method and the net loss method.

Dated: December 2, 2013

STEPHAN HENGSTLER

Pro Se, Investor