UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiffs, <br><br> v. <br><br> SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LLC; and SBC PORTFOLIO FUND, LLC, <br><br> Defendants. | Case No.: 5:12-CV-03237 EJD <br><br> **ORDER PARTIALLY GRANTING THIRD INTERIM FEE APPLICATIONS** <br><br> **[Docket Item Nos. 607, 608]** |

This above-captioned lawsuit involves allegations made by the Securities and Exchange Commission (the "SEC") that the Defendants violated antifraud and other provisions of the federal securities laws. Compl. 1, Docket Item No. 1. Receiver Thomas Seaman ("Receiver") and the law firm of Allen Matkins, Leck, Gamble, Mallory & Natsis, LLP ("Allen Matkins") seek interim payment of fees and expenses for services performed during the period from January 1, 2013 through July 31, 2013 ("third interim fee period") in connection with the receivership of Defendant companies Small Business Capital Corporation, Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and related companies.  The Receiver and Allen Matkins filed their third interim fee

1

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING THIRD INTERIM FEE APPLICATIONS

applications on September 20, 2013.  See Receiver's Third Interim Fee Appl., Docket Item No. 607; See Allen Matkins' Third Interim Fee Appl., Docket Item No. 608.

## I. Fee Applications

The Receiver and Allen Matkins request the following fees for services performed:

| Applicant and Role | Fees Incurred | Interim Payment Requested | Costs | Total Payment Requested |
|---|---|---|---|---|
| Thomas A. Seaman, Receiver | $600,143.50 | $540,129.15 (90% of fees incurred) | $0.00 | $540,129.15 |
| Allen Matkins Leck Gamble Mallory & Natsis LLP, General Counsel | $336,009.60 | $290,799.00 (86.54% of fees incurred) | $9,092.27 | $115,801.76 |

### A. The Receiver

The Receiver requests approval of 90% of the $600,143.50 in fees incurred from January 1, 2013, through July 31, 2013. Dkt. No. 607 at 1. The Receiver is requesting compensation for 2,871.5 hours of work during this period at a blended hourly rate of $209.00. Id. at 9. The Receiver is not requesting compensation for any expenses incurred during this period. Id. at 1.

### B. Allen Matkins

Allen Matkins requests $290,799.00 of the $336,009.60 in incurred fees for 736.2 hours of work, amounting approximately 86.54%. Dkt. No. 608 at 1; Notice of Hearing on Interim Fee Appl. 1, Docket Item No. 609. This requested amount reflects a blended hourly rate of $395.00, rather than Allen Matkins approximate hourly rate of $456.40. Dkt. No. 608 at 1, 16. Allen Matkins also requests approval of 100% of its expenses totaling $9,092.27. Id. at 12.

## II. Discussion

### A. Applicable Law

The court appointing the Receiver is responsible for compensating the Receiver and his attorneys. See In re Alpha Telcom, Inc. [Alpha Telcom II], No. 03:01-CV-1283-PA, 2013 WL 840065, at *16 (D. Or. Mar. 6, 2013). The court may use its discretion to fashion a "fee award that

2

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING THIRD INTERIM FEE APPLICATIONS

is appropriate under the circumstances." Id. at *17. "The court appointing the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys." Drilling & Exploration Corp. v. Webster, 69 F.2d 416, 418 (9th Cir. 1934). The Receiver and the attorneys assisting the Receiver will be "reasonably, but not excessively" compensated for their efforts to benefit the receivership estate. Alpha Telcom II, 2013 WL 840065, at *17. "[I]n receivership situations, lawyers should be awarded moderate fees and not extravagant ones." SEC v. Byers, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008). The Receiver and any professionals assisting the Receiver should charge a reduced rate to reflect the public interest involved in preserving funds held in the receivership estate. See id. at 646-47. The Receiver and his counsel should be moderately compensated for their services because investors who were promised large returns on investments by the defendant may stand to recover "only a fraction of their losses." See id. at 645.

A court considering awarding interim fees should consider several factors. Alpha Telcom II, 2013 WL 840065, at *16. An award of interim fees is appropriate "where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services to the estate." In re Alpha Telcom, Inc. [Alpha Telcom I], No. 01-CV-1283-PA, 2006 WL 3085616, at *3 (D. Or. Oct. 27, 2006). The court should also consider the "economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services provided to the estate." In re Imperial "'400'" Nat., Inc., 432 F.2d 232, 238 (3rd Cir. 1970). Frequently courts will withhold a portion of the requested interim fees because "until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim compensation is sought." Alpha Telcom I, 2006 WL 3085616, at *3. The factors listed above, and others, may persuade the court to award the entirety of the requested interim fees or some amount less than requested. See Byers, 590 F. Supp. 2d at 648. Lastly, "'courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application'" and courts "'endorse percentage cuts as a practical means of trimming fat from a fee application.'" Id.

3
Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING THIRD INTERIM FEE APPLICATIONS

(quoting N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2nd Cir. 1983)).

### B. Applications

#### 1. The Receiver

The receivership estate has continued to benefit from the Receiver's progress and completion of substantial receivership tasks, as well as reducing the operating costs of the Receivership Entities, including lowering payroll expenses, and using agents who are billed at lower hourly rates. See Dkt. No. 607 at 3-8. In the first fee application period, the Receiver charged his full rate of $375 per hour for only 127 hours out of the 1,072 hours claimed during the interim period, and reduced the operating costs of the receivership estate by $24,000 per month. See Receiver's First Interim Fee Appl. 4-5, Docket Item No. 134. During the second application period, the Receiver's agents conducted the vast majority of the work required to maintain the receivership estate, charging an average of $173 per hour. See Receiver's Second Interim Fee Appl. 4, Docket Item No. 338. The Receiver further reduced the financial burden on the receivership estate by absorbing travel expenses, not billing for time spent traveling, and charging a reduced fee for communicating via telephone with investors. Id. 4-5.

During the third application period, the Receiver prepared and filed income tax returns, reduced the operating costs of the Receivership Entities, and spent considerable time dealing with Mr. Feathers' motions. The gross receipts from all sources were $9,445,942.22 and total disbursements were $5,286, 375.66, resulting in a net cash increase of $4,159,566.56, which is significantly higher than the net revenue of $448,894.80 in the second application period. Dkt. No. 607 at 1; Dkt. No. 338 at 3. The Receiver's fees dropped from $92,929.50 in June to $43,800 in July. Dkt. No. 607 at 1.  Furthermore, the average fees to operate the Receivership Entities and administer the estate (excluding work related to Mr. Feathers and the forensic accounting) have declined as stabilization has been attained. Id. at 6-7. The Receiver delegates work to agents who are billed at a lower rate, resulting in a blended hourly rate of $209 for the third application period. Id. at 8-9.

4

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING THIRD INTERIM FEE APPLICATIONS

The Court partially grants the Receiver's request for fees incurred during the third fee application period. The Court withholds 25% of the Receiver's request for fees and the Receiver may apply for those fees at the conclusion of this litigation. Withholding fees until the conclusion of the lawsuit assists the Court in achieving its continuing goal of preserving funds held in the receivership estate for the compensation of the investors. This approach is common in SEC civil enforcement actions because it allows the Court to withhold fees until it is absolutely clear that a receiver's efforts will ultimately benefit the receivership estate. See SEC v. Byers, 590 F. Supp. 2d at 648. The Court derives the authority to award such reduced fees from its power to "fix the compensation" of receivers and their attorneys. Drilling, 69 F.2d at 418.

### 2. Allen Matkins

Allen Matkins provided valuable services to the Receiver during the third application period. See Dkt. No. 608 at 1-12. During the third application period, Allen Matkins assisted the Receiver in answering numerous motions filed by Mr. Feathers and the SEC, prepared and filed an ex parte application for reconsideration, helped answer communications and inquiries from Mr. Feathers and investors, addressed legal issues in connection with servicing loans, analyzed third party claims, assessed the distribution of receivership estate assets, and prepared the second interim fee application. Id.

The Court grants 90% of Allen Matkins' request for fees and 100% of its request for expenses for the third interim period. Allen Matkins requests to be compensated for $290,799 at a blended hourly rate of $395, and will be compensated for 90% of its request, at a blended hourly rate of approximately $355.50. See id. at 1, 16. The Court has determined that the latter rate is appropriate under the circumstances for several reasons.

First, as discussed above, the Court has a strong interest in preserving the funds of the receivership estate for the benefit of the investors. Allen Matkins has chosen to assist the Receiver in this case where, if the SEC's allegations are proven, investors stand to suffer great losses on their investments. See Order Approving Receiver's Appl. to Employ Allen Matkins as General Counsel, Docket Item No. 36; Receiver's Appl. to Employ Allen Matkins as General Counsel,

5

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING THIRD INTERIM FEE APPLICATIONS

Docket Item No. 31. As a result, Allen Matkins is obligated to charge a substantially lower blended hourly rate than it has requested in both its interim fee applications. The Court is not alone in its view that SEC enforcement litigation requires the counsel to a receiver to charge an hourly rate substantially lower than its customary rates. For example, in Byers, the law firm assisting the Receiver requested a similar blended hourly rate to that requested by Allen Matkins in this instance, and the court deemed the rate "too high for a securities receivership case." See Byers, 590 F. Supp. 2d at 646–48. Although the law firm's application was unusual as it requested over $2,000,000 in fees, the Byers court stressed that the discretion of the court should be utilized to reflect the public interest in maintaining the vitality of the receivership estate. See id. at 644–46. The Byers court noted that in such situations, the receiver's counsel should be modestly compensated because investors "are likely to recover only a fraction of their losses." Id. at 645. Furthermore, a law firm should voluntarily charge a discounted rate for all of its services, regardless of the status of the attorney providing the services. See id. at 647 (noting that the law firm's application for fees should discount the hourly rate for all billing professionals, including summer associates, paralegals, and litigation support clerks).

Second, the Court emphasizes that in the application for Allen Matkins to represent the Receiver, Allen Matkins had "agreed that its blended hourly rate for the receivership will be $395 or less." See Dkt. No. 31 at 7. Allen Matkins' third fee application requests a blended hourly rate of $395.00, which is the maximum limit set in the application. See Dkt. No. 608 at 16.

Third, the Court reserves its discretionary power and may consider many factors when awarding a reduced fee, regardless of the fees being approved by other courts in similar cases. This discretionary power was made apparent in In re Alpha Telcom, Inc. when the court awarded a reduced fee, partially because the Receiver's performance failed to adequately recover assets for the receivership estate. See Alpha Telcom II, 2006 WL 3085616, at *3-6. The Alpha Telcom court explained that no statute or precedent required it to give deference to the opinion of the actual law firm or receiver requesting the fee, or the opinion of third parties who support the requested fees. See id. at *3 ("No statute compels such a conclusion, however, nor do I believe such great

deference is warranted in this instance."); see also id. (rejecting the argument that the court is compelled to give special deference to the SEC's support of a request for fees). The Alpha Telcom court chose to focus mainly on the success of the receiver's efforts, the financial burden that the receivership estate could bear, and "other factors," believing that those factors were most relevant to the appropriation of fees to the receiver and counsel. Id. at *6. This case highlights that the Court is not bound to any one of the established factors when considering fee requests. Although the Alpha Telcom court could have simply awarded fees based on the reasonable rates charged by other receivers in similar cases, it chose to focus on the efforts of the receiver to recover assets for the receivership estate instead. See id. at *3-6.

Similarly, rather than fashioning an award after analyzing and compiling a record of the rates approved by other courts in similar cases, the Court chooses to primarily focus on the fact that Allen Matkins' requested fee rate in the first and second interim fee request did not adequately reflect the public interest in maintaining the receivership estate's assets while the SEC pursues charges against the Defendants. However, in this instance, Allen Matkins did restrain its request to the upper limit approved by the Court.

The Court notes that the fee awarded to Allen Matkins here is not unusual in this type of case, and Allen Matkins has requested similar rates of compensation in the past. As an example, Allen Matkins was appointed as general counsel to the receiver in SEC v. Medical Capital Holdings, Inc., and requested that the court pay 80% of its incurred fees during an interim fee period. See No. CV-8:09-0818 DOC (C.D. Cal. Jan. 4, 2013), Docket Item No. 951 at 1. This request reflects a blended hourly rate of $382.72. See id. at 1, 5-6. The Medical Capital court granted the request on February 20, 2013. Medical Capital, 09- CV-0818 DOC (C.D. Cal. Feb. 20, 2013), Docket Item No. 977, at 1-2. Here, Allen Matkins requests approximately 86% of fees incurred, to reach a blended hourly rate of $395 for the third interim fee period. See Dkt. No. 608 at 16, Dkt. No. 609. This is the maximum limit approved in the Court's Order Approving the Receiver's Application to Employ Allen Matkins. As such, the reduction in the fee award to Allen

Matkins to approximately $355.50 per hour is reasonable in light of the circumstances of this case, the work performed by Allen Matkins, and other public interest considerations.

### III. Conclusion and Order

The applications for fees and expenses incurred by Allen Matkins and the Receiver are granted in part for the period from January 1, 2013 through July 31, 2013. The requested amounts are disbursed as follows:

Fee Distribution

| Applicant | Fees Allowed | % of Request | Expenses Allowed | % of Request |
|---|---|---|---|---|
| Receiver | $405,096.86 | 75% | N/A | N/A |
| Allen Matkins | $261,719.10 | 90% | $9,092.27 | 100% |

IT IS SO ORDERED.

Dated: December 19, 2013



EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING THIRD INTERIM FEE APPLICATIONS