United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 5:12-CV-03237 EJD |
| Plaintiffs, | **ORDER PARTIALLY GRANTING FOURTH INTERIM FEE APPLICATIONS** |
| v. | |
| SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LLC; and SBC PORTFOLIO FUND, LLC, | **[Docket Item Nos. 646, 647]** |
| Defendants. | |

This lawsuit involves allegations made by the Securities and Exchange Commission ("SEC") that the Defendants violated antifraud and other provisions of the federal securities laws. See Compl. 1, Docket Item No. 1. Receiver Thomas Seaman ("Receiver") and the law firm of Allen Matkins, Leck, Gamble, Mallory & Natsis, LLP ("Allen Matkins") seek interim payment of fees and expenses for services performed during the period from August 1, 2013 through October 31, 2013 ("fourth interim fee period") in connection with the receivership of Defendant companies Small Business Capital Corporation, Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and related companies. The Receiver and Allen Matkins filed their fourth interim fee applications on

1

December 4, 2013.  <u>See</u> Receiver's Fourth Interim Fee Appl., Docket Item No. 646; <u>See</u> Allen

Matkins' Fourth Interim Fee Appl., Docket Item No. 647.

## I.   Fee Applications

The Receiver and Allen Matkins request the following fees for services performed:

| Applicant and Role | Fees Incurred | Interim Payment Requested | Costs | Total Payment Requested |
|---|---|---|---|---|
| Thomas A. Seaman, Receiver | $167,264.50 | $150,538.05 (90% of fees incurred) | $0.00 | $150,538.05 |
| Allen Matkins Leck Gamble Mallory & Natsis LLP, General | $99,292.05 | $89,981.00 (90.6% of fees incurred) | $905.68 | $90,886.68 |

### A.  The Receiver

The Receiver requests approval of his fees in full and the authority to pay 90% of the

$167,264.50 in fees incurred from August 1, 2013, through October 31, 2013.  Dkt. No. 646 at 1.

The Receiver is requesting compensation for 861 hours of work during this period at a blended

hourly rate of $194.00. <u>Id.</u> at 8.  The Receiver is not requesting compensation for any expenses

incurred during this period.

### B.  Allen Matkins

Allen Matkins requests $89,981.00 of the $99,292.05 in incurred fees for 227.8 hours of

work, amounting to approximately 90.6% of the total fees incurred.  Dkt. No. 647 at 1.  This

requested amount reflects a blended hourly rate of $395.00.  Dkt. No. 647 at 1.  Allen Matkins also

requests approval of 100% of its expenses totaling $905.68.  <u>Id.</u> at 6.  The total payment requested

amounts to $90,886.68.

## II.   Discussion

### A.  Applicable Law

The court appointing the Receiver is responsible for compensating the Receiver and his

attorneys.  <u>See</u> <u>In re Alpha Telcom, Inc. [Alpha Telcom II]</u>, No. 03:01-CV-1283-PA, 2013 WL

840065, at *16 (D. Or. Mar. 6, 2013).  The court may use its discretion to fashion a "fee award that is appropriate under the circumstances."  Id. at *17.  "The court appointing the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys."  Drilling & Exploration Corp. v. Webster, 69 F.2d 416, 418 (9th Cir. 1934).  The Receiver and the attorneys assisting the Receiver will be "reasonably, but not excessively" compensated for their efforts to benefit the receivership estate.  Alpha Telcom II, 2013 WL 840065, at *17.  "[I]n receivership situations, lawyers should be awarded moderate fees and not extravagant ones."  SEC v. Byers, 590 F. Supp. 2d 637, 648 (S.D.N.Y. 2008).  The Receiver and any professionals assisting the Receiver should charge a reduced rate to reflect the public interest involved in preserving funds held in the receivership estate.  See id. at 646-47.  The Receiver and his counsel should be moderately compensated for their services because investors who were promised large returns on investments by the defendant may stand to recover "only a fraction of their losses."  See id. at 645.

A court considering awarding interim fees should consider several factors.  Alpha Telcom II, 2013 WL 840065, at *16.  An award of interim fees is appropriate "where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services to the estate."  In re Alpha Telcom, Inc. [Alpha Telcom I], No. 01-CV-1283-PA, 2006 WL 3085616, at *3 (D. Or. Oct. 27, 2006).  The court should also consider the "economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services provided to the estate."  In re Imperial "'400'" Nat., Inc., 432 F.2d 232, 238 (3rd Cir. 1970).  Frequently courts will withhold a portion of the requested interim fees because "until the case is concluded the court may not be able to accurately determine the 'reasonable' value of the services for which the allowance of interim compensation is sought."  Alpha Telcom I, 2006 WL 3085616, at *3.  The factors listed above, and others, may persuade the court to award the entirety of the requested interim fees or some amount less than requested.  See Byers, 590 F. Supp. 2d at 648.  Lastly, "'courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application'" and courts

"'endorse percentage cuts as a practical means of trimming fat from a fee application.'" <u>Id.</u> (quoting <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1146 (2nd Cir. 1983)).

### B. Applications

#### 1. The Receiver

The receivership estate has continued to benefit from the Receiver's progress and completion of substantial receivership tasks.  In the first fee application period, the Receiver charged his maximum allowable rate of $375 per hour for 127 hours out of the 1,072 hours claimed during the interim period, and reduced the operating costs of the receivership estate by $24,000 per month.  <u>See</u> Receiver's First Interim Fee Appl. 4-5, Docket Item No. 134.  During the second application period, the Receiver's agents conducted the vast majority of the work required to maintain the receivership estate, charging an average of $173 per hour.  <u>See</u> Receiver's Second Interim Fee Appl. 4, Docket Item No. 338.  The Receiver further reduced the financial burden on the receivership estate by absorbing travel expenses, not billing for time spent traveling, and charging a reduced fee for communicating via telephone with investors. <u>Id.</u> 4-5.

During the third application period, the Receiver prepared and filed income tax returns, reduced the operating costs of the receivership entities, and spent considerable time dealing with Mr. Feathers' motions. The net cash increase in that time period was $4,159,566.56, which is significantly higher than the net revenue of $448,894.80 in the second application period.  Dkt. No. 607 at 1; Dkt. No. 338 at 3.  The Receiver's fees dropped from $92,929.50 in June to $43,800 in July.  Dkt. No. 607 at 1.  Furthermore, the average fees to operate the receivership entities and administer the estate (excluding work related to Mr. Feathers and the forensic accounting) declined as stabilization was attained.  <u>Id.</u> at 6-7.  The Receiver delegated work to agents billed at a lower rate, resulting in a blended hourly rate of $209 for the third application period.  <u>Id.</u> at 8-9.

During the fourth application period, the Receiver managed loan portfolios and loan servicing, making significant progress with several slow paying or impaired loans.  Dkt. No. 646 at 2.  The Receiver completed the sale of the Whiskey Junction asset with sales proceeds of

4

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   $243,835.50 and completed the sale of the Sweet Fingers asset with sales proceeds of $244,669.

2   Id. at 2-3.  The average cost of operating the receivership entities and administer the estate has

3   declined to $55,800 per month for this application period (from approximately $71,000 per month

4   over the life of the receivership).  Id. at 7.  In October, fees increased as a result asset sales, loan

5   payoff, improved collections and cost cutting, claims reconciliation, determination, and analysis

6   and development of a distribution plan.  Id.  The Receiver delegated work to agents billed at a

7   lower rate, resulting in a blended hourly rate of $194 for the fourth application period.  Id. at 8.

8   Further, the Receiver spent $2,288.00 in work related to Defendant, including responding to

9   Defendant through the Receiver's attorney.  Id. at 4, 10.

10        The Court partially grants the Receiver's request for fees incurred during the fourth fee

11   application period.  The Court withholds 25% of the Receiver's request for fees and the Receiver

12   may apply for those fees at the conclusion of this litigation.  Withholding fees until the conclusion

13   of the lawsuit assists the Court in achieving its continuing goal of preserving funds held in the

14   receivership estate for the compensation of the investors.  This approach is common in SEC civil

15   enforcement actions because it allows the Court to withhold fees until it is absolutely clear that a

16   receiver's efforts will ultimately benefit the receivership estate.  See SEC v. Byers, 590 F. Supp. 2d

17   at 648.  The Court derives the authority to award such reduced fees from its power to "fix the

18   compensation" of receivers and their attorneys.  Drilling, 69 F.2d at 418.

19        **2.  Allen Matkins**

20        Allen Matkins provided valuable services to the Receiver during the fourth application

21   period.  See Dkt. No. 647 at 2-6.  During the fourth application period, Allen Matkins assisted the

22   Receiver in answering and reviewing numerous motions filed by Mr. Feathers and the SEC,

23   reviewed the Court's order granting the SEC's motion for summary judgment, helped answer

24   communications from loan borrowers, advised regarding legal issues and strategy pertaining to

25   default and collection issues on loans, advised regarding a dispute concerning a consulting

26   contract, helped answer communications and inquiries from investors, advised regarding the

27   potential sale of receivership entities, analyzed claims, drafted the proposed distribution plan of

28

5

United States District Court
For the Northern District of California

1    receivership estate assets, prepared the third interim fee application, and prepared pleadings in the

2    case filed by California Business Bank.  Id.  Allen Matkins requests to be compensated for 90.6%

3    of its total fee amount of $99,292.05 (equaling $89,981) at a blended hourly rate of $395.

4            The Court grants 90% of Allen Matkins' request for fees and 100% of its request for

5    expenses for the fourth interim period.  The Court has determined that the award is appropriate

6    under the circumstances for several reasons.

7            First, as discussed above, the Court has a strong interest in preserving the funds of the

8    receivership estate for the benefit of the investors.  Allen Matkins has chosen to assist the Receiver

9    in this case where, if the SEC's allegations are proven, investors stand to suffer great losses on

10   their investments.  See Order Approving Receiver's Appl. to Employ Allen Matkins as General

11   Counsel, Docket Item No. 36; Receiver's Appl. to Employ Allen Matkins as General Counsel,

12   Docket Item No. 31.  As a result, Allen Matkins is obligated to charge a lower blended hourly rate

13   than its customary fee.  The Court is not alone in its view that SEC enforcement litigation requires

14   the counsel to a receiver to charge an hourly rate substantially lower than its customary rates.  For

15   example, in Byers, the law firm assisting the Receiver requested a similar blended hourly rate to

16   that requested by Allen Matkins in this instance, and the court deemed the rate "too high for a

17   securities receivership case."  See Byers, 590 F. Supp. 2d at 646-48.  The Byers court stressed that

18   the discretion of the court should be utilized to reflect the public interest in maintaining the vitality

19   of the receivership estate.  See id. at 644-46.  The Byers court noted that in such situations, the

20   receiver's counsel should be modestly compensated because investors "are likely to recover only a

21   fraction of their losses."  Id. at 645.  Furthermore, a law firm should voluntarily charge a

22   discounted rate for all of its services, regardless of the status of the attorney providing the services.

23   See id. at 647 (noting that the law firm's application for fees should discount the hourly rate for all

24   billing professionals, including summer associates, paralegals, and litigation support clerks).

25           Second, the Court emphasizes that in the application for Allen Matkins to represent the

26   Receiver, Allen Matkins had "agreed that its blended hourly rate for the receivership will be $395

27

28

6

or less." Dkt. No. 31 at 7.  Allen Matkins' fourth fee application requests a blended hourly rate of $395.00, which is the maximum limit set in the application.

Third, the Court reserves its discretionary power and may consider many factors when awarding a reduced fee, regardless of the fees being approved by other courts in similar cases. This discretionary power was made apparent in In re Alpha Telcom, Inc. when the court awarded a reduced fee, partially because the Receiver's performance failed to adequately recover assets for the receivership estate.  See Alpha Telcom II, 2006 WL 3085616, at *3-6.  The Alpha Telcom court explained that no statute or precedent required it to give deference to the opinion of the actual law firm or receiver requesting the fee, or the opinion of third parties who support the requested fees.  See id. at *3 ("No statute compels such a conclusion, however, nor do I believe such great deference is warranted in this instance.").  The Alpha Telcom court chose to focus mainly on the success of the receiver's efforts, the financial burden that the receivership estate could bear, and "other factors," believing that those factors were most relevant to the appropriation of fees to the receiver and counsel.  Id. at *6.  This case highlights that the Court is not bound to any one of the established factors when considering fee requests.  Although the Alpha Telcom court could have simply awarded fees based on the reasonable rates charged by other receivers in similar cases, it chose to focus on the efforts of the receiver to recover assets for the receivership estate instead. See id. at *3-6.

Similarly, rather than fashioning an award after analyzing and compiling a record of the rates approved by other courts in similar cases, the Court chooses to primarily focus on the fact that Allen Matkins' requested fee rate is the upper limit approved by the Court.

The Court notes that the fee awarded to Allen Matkins here is not unusual in this type of case, and Allen Matkins has requested similar rates of compensation in the past.  As an example, Allen Matkins was appointed as general counsel to the receiver in SEC v. Medical Capital Holdings, Inc., and requested that the court pay 80% of its incurred fees during an interim fee period.  See No. CV-8:09-0818 DOC (C.D. Cal. Jan. 4, 2013), Docket Item No. 951 at 1.  This request reflects a blended hourly rate of $382.72.  See id. at 1, 5-6.  The Medical Capital court

Case No. 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING FOURTH INTERIM FEE APPLICATIONS

United States District Court
For the Northern District of California

granted the request on February 20, 2013.  <u>Medical Capital</u>, 09- CV-0818 DOC (C.D. Cal. Feb. 20, 2013), Docket Item No. 977, at 1-2.

Here, Allen Matkins requests approximately 90.6% of fees incurred, to reach a blended hourly rate of $395 for the fourth interim fee period.  This is the maximum limit approved in the Court's Order Approving the Receiver's Application to Employ Allen Matkins.  As such, the reduction in the fee award to Allen Matkins to approximately $355.50 per hour is reasonable in light of the circumstances of this case, the work performed by Allen Matkins, and other public interest considerations.

### III.   <u>Conclusion and Order</u>

The applications for fees and expenses incurred by Allen Matkins and the Receiver are granted in part for the period from August 1, 2013 through October 31, 2013.  The requested amounts are disbursed as follows:

**Fee Distribution**

| Applicant | Fees Allowed | % of Request | Expenses Allowed | % of Request |
|-----------|--------------|--------------|------------------|--------------|
| Receiver | $112,903.54 | 75% | N/A | N/A |
| Allen Matkins | $80,982.90 | 90% | $905.68 | 100% |

**IT IS SO ORDERED.**

Dated: May 9, 2014

EDWARD J. DAVILA
United States District Judge

Case No. 5:12-CV-03237 EJD
ORDER PARTIALLY GRANTING FOURTH INTERIM FEE APPLICATIONS

United States District Court
For the Northern District of California