Mark Feathers, in *pro per*
1520 Grant Rd.
Los Altos, CA 94024
Telephone: (650) 575-7881
markfeathers@sbcglobal.net

UNITED STATES DISTRICT COURT

NORTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION <br><br> PLAINTIFF, <br><br> vs. <br><br> SMALL BUSINESS CAPITAL CORP., MARK FEATHERS, INVESTORS PRIME FUND, LLC, AND SBC PORTFOLIO FUND, LLC <br><br> DEFENDANTS. | Case No.    CV12-03237-EJD <br><br> **MARK FEATHERS' REPLY BRIEF TO SEC OPPOSITION TO MOTION TO ALTER OR AMEND JUDGMENT UNDER RULE 60(b)1, 2, & 3 OF THE FEDERAL RULES OF CIVIL PROCEDURE** <br><br> DATE: November 14, 2014 <br> TIME: 9:00 a.m. <br> JUDGE: Hon. Edward J. Davila <br> PLACE: Courtroom 4, 5th Fl. |

MARK FEATHERS' REPLY BRIEF TO SEC OPPOSITION TO MOTION

## I. SEC MAKES ITS OPPOSITION WITH IMPROPER REFERENCES TO A 'RECONSIDERATION", WITH RED HERRINGS, AND WITH OTHER DIVERSIONS

SEC states *ad hoc* throughout its opposition that this defendant has requested a "reconsideration". This is a false description by SEC, though. Any party other than SEC reading this defendant's motion will see that the motion is a Fed.R.Civ.P. 60b) request for the Court to set aside judgment based upon new evidentiary matters which SEC kept hidden during discovery. SEC falsely describes the motion only in its hope of casting a diversion to the fact that SEC has obstructed justice by hiding evidentiary files from this Court and this defendant which would have clearly shown a failure of SEC to allege. This defendant was belatedly provided these files by SEC, and SEC never would have provided these to this defendant except for the fact that SEC initiated Administrative Proceedings (Exhibit 1) against this Defendant with SEC's administrative law judge in February of 2014 to obtain a lifetime ban from the securities industry against this defendant. Under its own Rule of Procedure 230, SEC was required to turn over Enforcement Division files to this defendant at his request (Exhibit 2). These files contain exculpatory evidentiary information that would have benefitted this defendant earlier, before summary judgment against him, by showing SEC's failure to allege. SEC and its Enforcement Division, staffed with hundreds of attorneys who are very knowledgeable as to evidentiary rules and laws, can only have been aware that it was required to turn these files over prior in its civil lawsuit against this defendant.

## II. SEC'S HIDDEN DOCUMENTS SHOW ITS FAILURE TO ALLEGE A CENTRAL ELEMENT TO ITS LAWSUIT

SEC based a central element of its lawsuit on its argument that SB Capital used investor capital for its expenses that it should not have, and that SB Capital failed to inform investors of this fact. A document held undisclosed by SEC (Exhibit 3) shows that SEC's allegations in its Complaint on this central element are rebutted by their own Enforcement Division files. SEC has always known this. SEC's allegations about SB Capital wrongly causing money to be transferred to pay expenses to operate the defendant investment funds were taken as truthful by the Court in its

summary judgment against this Party when the Court sided with SEC on this matter. For example, in its Complaint (Court Docket 1), paragraph no. 37 (page 8, lines 24 – 26), SEC writes:

"Since at least 2009, Feathers and SB Capital have caused the funds to transfer over $6 million to SB Capital, which monies were not payable to SB Capital under the terms of the offerings..." In its complaint for securities fraud, SEC states that SB Capital failed to disclose to investors that their monies were used for SB Capital's expenses related to managing the funds. Yet included in the documents SEC hid from the Court, provided to SEC by Lee V. Emerson (who was a fund investor), is an email (Exhibit 3) in which Emerson writes to Feathers knowledge of these expenses which rebut any notion of SEC that SB Capital failed to disclose in its offering materials or investor communications information about its expenses.

Emerson writes the following in her email to this defendant, and withheld by SEC:

"Further, your request for a vote of investors to allow you to repay the Fund some amount of organizational and syndication expenses deducted from the Fund is not necessary", whereupon then Emerson cites in the email, after she wrote these words, a very specific passage in the fund operating agreement describing this matter which allowed SB Capital full and unlimited entitlement for such reimbursement. Emerson, with her reference to "repay the Fund some amount" clearly indicates her knowledge that the Fund had thereby paid organization and syndication expenses to begin with to SB Capital, which SB Capital was properly entitled to. Further, Emerson purports to represent many investors, as outlined in the motion points & authorities, so they all knew, also. In its motion for summary judgment (Court Docket 477), SEC included only the Bushee (Court Docket 478) and the Morris (Court Docket 481) declarations which purportedly show that investors were not informed that SB Capital would be reimbursed for its expenses incurred to manage the funds. SEC withheld from the Court contrary evidentiary matters in its possession from investor Emerson and her sizeable investor group, and has knowingly obstructed justice and interfered with due process.

The Court's summary judgment in favor of SEC (see Court Docket 591) validates its knowledge that SEC made these representations in its Complaint as central elements; (*id*, page 2, lines 22 – 26, and page 3, lines 1 – 2. The Court states that "The SEC argues that these...transfers...were in violation of the fund's offering documents". On page 12 of the Order

for Summary Judgment, lines 16 – 18, the Court states "The SEC has also established that Feathers did not disclose to the investors that, contrary to the representations from the offering documents, cash from the Funds was being transferred to SBCC". Here, in Emerson's email, which was withheld by SEC from the Court and from this Party, we have an investor who shows the truth to be otherwise with direct evidence of her knowledge of these expense reimbursement transfers of investor capital to SB Capital. The Court must agree that Emerson's email to this defendant, which was suppressed by SEC, clearly rebuts SEC's contention that investors were not aware that SB Capital would be reimbursed for fees that it incurred to manage the funds.

The Court's summary judgment states, incorrectly as it were (*id*, page 8, lines 25 – 27), that "…the offering documents, circulars, PPMs, and other documents expressly limited the expenses that would be paid by the funds. Here, we also have in the Emerson email document hidden by SEC, Emerson's own reference to a very specific provision of the Offering Documents which includes a citation that states wording exactly opposite of SEC's contention:

"10.4 <u>Reimbursement of Manager for Certain Expenses.</u> The Manager shall be reimbursed by the Company **for all** organizational, syndication, and operating expenses…" (bold/underlined portion is added by this Party for emphasis).

## III   FEDERAL PROSECUTORS ARE BOUND BY LAW TO PRESENT EVIDENCE WHICH THEY HOLD IN THEIR POSSESSION WHICH MAY AID DEFENDANTS

Here we have clear evidence that SEC withheld information from the Court and this defendant which showed investors, beyond provisions which were already outlined in fund offering documents, were informed that SB Capital was entitled to transfer fund capital to itself to pay expenses it incurred to operate the funds. Because SEC hid this information from the Court and has obstructed justice and has interfered with due process, summary judgment should be set aside.

## IV   SEC'S RED HERRINGS

When it is not attempting to disguise the motion, SEC's best answer to this party's motion to set aside judgment is that this Party "has not paid his disgorgement". This is not a valid legal argument, especially for a party such as SEC who has withheld key evidence from a Court. Nor is

it even a rational argument to defeat a request for relief under Fed.R.Civ.P. 60(b). If the Court sets aside judgment this would have the effect of setting aside the Court's Order for disgorgement, nullifying even this diversionary argument of SEC.

## V  WHY HAS EMERSON RECEIVED PREFERENTIAL TREATMENT FROM THE RECEIVER?

The Court must ask itself why Emerson has not been the subject of any claw-back by the Receiver of her proceeds from this defendant's so-called "Ponzi-like scheme". Emerson was listed, after all, by the Receivere as an investor who would be subject to claw-back, **in greater amounts, in fact, than any other single investor in these funds** (bold and underline added by this defendant for emphasis), on the Receiver's Plan of Claims and Distributions (Court Docket 626-1). Emerson purportedly was over-distributed by $102,607.51 per the Receiver's court pleadings:

Case5:12-cv-03237-EJD Document626-1 Filed11/15/13 Page10 of 18

Small Business Capital Receivership Investor Claims

| Partner Name | Contributions | Net Distributions Received (1) | Net (Gain)/Loss | Percent Recovered |
|---|---|---|---|---|
| Lee V. Emerson Revocable Trust | 1,250,000.00 | 1,352,607.51 | (102,607.51) | 108% |

Eight months ago the Receiver stated in his Court pleadings that he would be initiating claw-backs against investors of $945,970.09. Through this date there appears to be no indication provided to the Court by the Receiver of any claw-back against Emerson for her purported $102,607.51 over-distribution, or for any portion of this amount. Emerson's so-called gain of $102,607.51 would significantly represent more than 11% of these amounts outlined in the Receiver's court pleadings (see Court Docket 663-1, page 4, lines 1 - 3). With passage now of eight months' time, there has been little or no further reference by the Receiver to the Court about claw-backs. This is very alarming. The Receiver states in Court Docket 923 the following:

> "The expected time from of closing a sale is end of September, 2014 will lead to a second significant distribution to investors, and conclusion of the receivership."

Put together, these matters create supportable conjecture that SEC provided Emerson with an illicit proffer agreement in return for her hidden submissions during their Enforcement Review. The Receiver's earlier request to the Court to keep his submissions under seal (see Court Docket 663) appears to be but only a smokescreen on this matter, in fact. The Court should consider questioning the Receiver, under penalty of perjury, to see if SEC has provided communication of any kind to the Receiver, outside of Court, about not initiating claw-backs from Emerson or her investor group, or to let this matter just "fade-away" before the conclusion of the lawsuit. The Receiver has spent much effort of the Receivership Estate for a potential $990,000 recovery for its investment into California Business Bank. Yet a very similarly sized $945,000 potential gain to the Receivership Estate from a so-called claw-back recovery has received scant, if any, attention over the past eight months, especially in comparison to Court pleadings over the past two years which are related to a recovery of almost the same amount from California Business Bank.

## VI    REQUEST FOR LEGAL FEES

SEC states that this party provides no legal argument or factual support for payment of any amounts. Obstruction of justice by SEC is a pretty valid legal argument, however. As evidenced herein, facts which would benefit the Court and this defendant have clearly been suppressed by SEC's actions.

## VII    SUMMARY

The whole of SEC's entire opposition has no sound legal basis or merit. The Court should set aside its prior Order for summary judgment in favor of SEC. Legal fees should be awarded to this Party. The Court should dismiss this lawsuit in full due to SEC's clear obstruction of justice and its failure to allege from the Complaint. The Court should end its permanent injunction on this defendant.

Respectfully Submitted

September 2nd, 2014                                            Mark Feathers, in *pro per*

-5-