Mark Feathers, in *Pro Per*
1520 Grant Rd.
Los Altos, CA 94024
Telephone: (650) 575-7881

**FILED**

OCT 0 9 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## NORTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>PLAINTIFF,<br><br>vs.<br><br>SMALL BUSINESS CAPITAL CORP., MARK FEATHERS, INVESTORS PRIME FUND, LLC, AND SBC PORTFOLIO FUND, LLC<br><br>DEFENDANTS. | Case No.    CV12-03237-EJD<br><br>**MARK FEATHERS' OMNIBUS REPLY TO RECEIVER'S (DOCKET 958) AND PLAINTIFF'S (DOCKET 957) RESPONSE TO MARK FEATHERS MOTION FOR RELIEF (DOCKET 950)**<br><br>**Concurrently Filed Herewith:**<br>**Declarations of Mark Feathers; Request for Judicial Notice**<br><br>**Hearing Date: Feb. 6th at 9:00 a.m.**<br>**Hon. Edward J. Davila**<br>**Courtroom 4, 5th Fl.** |

MARK FEATHERS' OMNIBUS REPLY TO OPPOSITION TO MOTION FOR RELIEF

### Citations

Page

*1.   Wood v. County of San Joaquin* (2003) 111 Cal. App. 4th 960, 971 [4 Cal.Rptr.3d 340]     5

2.   1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 660, p. 738     5

3.   Health Net of California, Inc. v. Department of Health Services, supra, 113 Cal.App.4th at p. 234     5

*4.   Farnham v. Superior Court* (1997) 60 Cal.App.4th 69, 74 [70 Cal. Rptr. 2d 85].) [***26]     5

*5.   Bullock*, 133 S. Ct. at 1757, 1759

*6.   Coleman v. Dunlap*, 695 F. 3d 650, 653-655 (7th Cir. 2012)     7

*7.   In re Markos Gurnee P'ship*, 182 B.R. 211, 224 (Bankr., N.D. Ill. 1995)     7

*8.   In re Chicago Pacific Corp.* 733 F.2d 909, 915 (7th Cir. 1985)     7

*9.   People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 950 (2013)     7

*10. Goodworth Holdings, Inc. v. Suh*, 99 Fed. Appl. 806, 808 (9th Cir. 2009)     8

*11. Consupak, supra,* 87 B.R. at 539 – 540     8

*12. Vinich* and *Swanson, supra*     8

*13. Ernest & Ernst v. Hochfelder*, 425 U.S. 185, 193-194 n. 12 (1976)     8

*14. In re Fruehauf Trailer*, 2011 WL 2014672, *5 (C.D. Cal)     9

*15. 15 Lewis and Clark Law Review*, 153, 161 (2011)     9

*16. Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)     9

*17. Bullock v. BankChampagin, N.A.*     5, 9

*18. Eberhard v. Marcu*, 530 F.3d 122, 135 – 137 (2d Cir. 2008)     11

## I      THOMAS A. SEAMAN'S GROSS NEGLIGENCE - *RES IPSA LOQUITOR*

Plaintiff's June 2012 court filing incorrectly states Thomas A. Seaman, Plaintiff's requested court appointed receiver, a "licensed CPA" (Docket 6, page 2, line 1).  This is the second successive lawsuit in which Plaintiff has misrepresented Seaman as a "licensed CPA"; see accompanying request for Judicial Notice, Exhibit "A", *S.E.C. v. Medical Capital Holdings, LLC,* Docket No. 5, Page 2, Line 2.  The court may take judicial notice of facts, such as this Evidentiary demonstration that Plaintiff prior referred to Seaman as a CPA in requesting his appointment, "not subject to reasonable dispute" because they are either (1) generally known

-1-

1   within the territorial jurisdiction of the trial court or (2) capable of accurate and ready

2   determination by resort to sources who's accuracy cannot reasonably questioned.  Fed. R. Evid.

3   201.

4         Of substantial note, Plaintiff is the U.S. Securities and Exchange Commission ("SEC"), a

5   federal agency.  SEC has twice, successively, misrepresented their recommended receiver as a
    CPA.  Repetitive CPA licensing misrepresentations harm the public.
6

7   As to Seaman, who is the subject of this motion for relief, the fact that SEC misrepresented

8   him in his SEC lawsuit before this one certainly would have put him on heightened awareness

9   of such an issue again.  Seaman notified Feathers that he was "not" a CPA on February 22nd, 2013.

10  This was eight months into this lawsuit.  During that eight months Seaman, his counsel, and SEC

11  were all provided constructive notice Feathers thought Seaman a CPA because Feathers referenced

12  Seaman being a CPA no less than three times in Feathers' court pleadings.  A forth instance of

13  constructive notice occurred when a fund investor also made a reference in her court pleadings.

14        Feathers had no reason to disbelieve SEC's description of Seaman.  In addition to the

15  factual evidentiary basis to Seaman's gross negligence herein, the Court should consider *res ipsa*

16  *loquitur* as to Seaman's gross negligence, as this appears to "speak for itself" when looking at all of

17  the circumstances described herein.

18  ## II  EVIDENTIARY BASIS TO RECEIVER'S GROSS NEGLIGENCE

19        For eight months Feathers held belief and justifiable reliance that Seaman was a CPA

20  because for eight months Seaman failed to correct Feathers about SEC's misrepresentation.  For at

21  least three of those eight months, Seaman had notice that Feathers believed him to be a CPA

22  because Feathers made multiple references to Seaman being a CPA in Feathers' pleadings.

23        Seaman took Feathers aside February 22nd of 2013 after a court hearing to make a

24  confession to Feathers about not being a CPA.  Feathers was shocked to hear Seaman say that he

25  was not a CPA, and that Seaman had allowed Feathers to believe this.  On the next business

26  day Feathers filed a motion to dismiss the lawsuit and for Seaman to discontinue his work (see

27  Court Dockets 274, 275, and 297).

28        Feathers holds an MBA with an emphasis in Investments and a B.S. in Finance.  He was,
    and is, aware of what a CFA is, and how this designation, and what it represents, differs from a

-2-

1  CPA.  In consenting to the permanent injunction, Feathers took comfort in his belief that Seaman

2  was a licensed and certified public accountant, from a review of SEC's description of Seaman in

3  their request for his appointment.   Feathers would not have held similar comfort with a CFA,

4  unless they were also a CPA.  A CFA is an analyst.  They have different skills, abilities, and

5  entitlements from a CPA, and do not report to a licensing authority as CPAs do.

### III  EVIDENCE OF FEATHERS' BELIEF THAT SEAMAN WAS A CPA

For eight months before he admitted to Feathers that he was not a CPA, Seaman provided
reports to the Court which Feathers believed were produced by Seaman as a CPA.  These included
"Temporary Receiver's First Status Report and Inventory (Court Docket 30), "Second Interim
Report" (Court Docket 53), "Receiver's Letter Brief" (Court Docket 54), "Declaration of Thomas
A. Seaman in Support of Ex Parte Application" (Court Docket 57-1), and a "Preliminary Forensic
Accounting Report" (Court Docket 168).  Evidence of Feathers' belief of Seaman a CPA is seen in
three court pleadings from November 2012 through January 2013:

### Feathers First CPA Reference about Seaman

In Docket No. 123, page 15, line 6, and dated 11-20-12 with the Clerk, Feathers cut and pasted into
his pleading SEC's description of Seaman (Court Docket 6, page 2, line 1) which stated:

"Seaman is a licensed CPA…".

### Feathers Second CPA Reference about Seaman

In Docket 138, page 13, lines 25 – 26, and dated 12-10-12 with the Clerk, Feathers writes:

"The receiver, a CPA, is aware of the substantial distinction between
"payments" and "disbursements" ".

Seaman, in his reply pleadings, Docket 153, dated 12-27-12, could have, and should have,
informed Feathers he was not a CPA.  He chose to conceal this matter or to leave it unaddressed.

### Feathers Third CPA Reference about Seaman

In Docket 180, page 9, lines 17 – 21, and dated 1-18-13 with the Clerk, Feathers, sharing
his opinions about Seaman's Preliminary Forensic Accounting Report (Docket 168), states:

"The receiver is a licensed public accountant…he should
face AICPA ethics charges, and the complete loss of his license,
for his actions and for his illustrations".

-3-

**Fourth CPA Reference of Seaman – by Natalie Feathers**

In Docket 182, listed as page 3 of 8 by the Clerk, and dated 1-22-13 by the Clerk, fund investor Natalie Feathers, in her declaration of opposition to Seaman's Preliminary Forensic Accounting Report states:

> "As an investor relying upon the data portrayed in the report, I assert my belief that the report is a travesty and a downright embarrassment to the accounting industry…".

Her statement shows her belief that Seaman was an accountant. Seaman never corrected these CPA references by either of the Feathers in his Reply, Court Docket 192, dated 2-1-13.

## IV    SEAMAN ACTED IN GROSS NEGLIGENCE AFTER CONSTRUCTIVE NOTICE

Despite numerous references to Seaman as a CPA in court pleadings beginning November 2012, Seaman continued for months thereafter to submit court pleadings without informing Feathers, the Court, or investors that he was not a CPA. In fact, the Court learned from Feathers, and not from Seaman, that Seaman was not a CPA (see Court Docket 275).

## V    FEATHERS HAD MUCH AT STAKE WITH A PARTY THOUGHT TO BE A CPA

Feathers invested money and many years of hard work into his company. His career and reputation were at stake with the outcome of this lawsuit. With almost all of his assets seized at the commencement of the lawsuit, Feathers has almost always been *pro se* in this lawsuit, not able to afford counsel or a CPA, and therefore had substantial reliance upon a party he believed to be a CPA, thinking that party with these licensing credentials would benefit all parties in this lawsuit. Additionally, several hundred fund investors have tens of millions of dollars invested. Seaman should have corrected SEC's false description of him before he accepted employment, and certainly, without excuse, when it was apparent of Feathers' belief that he was a CPA by way of Feathers November and December 2012 and January 2013 court pleadings. Seaman was under obligation to do so, as well, under state law, due to the nature of the contract between both.

## VI THE ISSUE THAT ELEVATES THIS TO GROSS NEGLIGENCE

This issue goes from negligence to gross negligence due to the fact that Seaman was similarly falsely described by SEC as a CPA in *SEC v. Medical Capital Holdings, LLC.* Neither

-4-

Seaman nor SEC have denied this fact in their current or prior pleadings.  For Seaman there can be no valid excuse why this would occur again and to allow Feathers to be misled for eight months, several of which were after Feathers' court pleadings showed his misled belief, and while Seaman was still submitting important Court reports about Feathers' businesses and investment funds.

California law describes gross negligence as defined as an act or omission that shows as "want of even scant care or an extreme departure from ordinary standard of conduct" (*Wood v. County of San Joaquin* (2003) 111 Cal. App. 4th 960, 971 [4 Cal.Rptr.3d 340]).  Seaman here failed even to show "scant care" until he informed Feathers that he was not a CPA in February of 2013, eight months into the lawsuit.  Seaman's fiduciary and legal obligation was to immediately inform Feathers of this fact in November of 2012, not in February of 2013, that he was not a CPA. He did not.  Seaman continued to submit critical reports to the Court and to ignore the issue.

## VII    LAWFUL DETERMINATION OF GROSS NEGLIGENCE

Determination that gross negligence has occurred is a question of fact. Conduct that qualifies will vary according to the nature of the act and the surrounding circumstances as shown by the evidence. "There can be no exemption from liability for in-tentional wrong, gross negligence, or violation of law." (1 Witkin, Summary of Cal. Law (10th ed. 2005)) Contracts, § 660, p. 738; see also Health Net of California, Inc. v. Department of Health ervices, supra, 113 Cal.App.4th at p. 234; Farnham v. Superior Court (1997) 60 Cal.App.4th 69, 74 [70 Cal. Rptr. 2d 85].) [***26].

The underlying violation of California law here appears to be an allowance by Seaman of SEC's Negligent Misrepresentation (California Civil Code 1710 – see Exhibit "H" in the accompanying Request for Judicial Notice) from June 2012 through November 2012, followed by Concealment on Seaman's part for the period from November 2012 through February 2013 (also California Civil Code 1710).

A fiduciary's conduct is sufficiently reckless "if the fiduciary consciously disregards or is willfully blind to a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. *Bullock*, 133 S. Ct. at 1757, 1759. As defined by West's Encyclopedia of American Law, 2nd Edition, (2008), "Gross negligence is a conscious and voluntary disregard of

1    the need to use reasonable care, which is likely to cause foreseeable grave injury or harm to

2    persons, property, or both."

3         Seaman holds a fiduciary obligation to a defendant such as Feathers whom he holds

4    stewardship over their property. As SEC similarly misrepresented Seaman in his most recent prior

5    SEC receivership, Seaman had heightened basis to closely review SEC's description of him in this

6    lawsuit, proximate to or before SEC's pleading date. A reasonable person cannot argue otherwise.

7
## VIII   THIRD PARTY FUND INVESTOR COURT SUBMISSIONS

8
9         Although these are small investment funds with only several hundred investors, the Court is

10   aware that these third party fund investors have submitted many scores of sworn declarations and

11   letters to this Court voicing strong concern over this licensing issue and due to SEC's prior

12   admission that it also employed a false financial formula to describe the financial performance of

13   the funds (see Court Dockets 126 and 187). Investor letters and sworn statements include Dockets

14   300, 392, 552, 765, 765-1, 775, 776, 777, 778, 779, 780, 781, 782, 783, 784, 785, 786, 787, 788,

15   789, 790, 791, 792, 793, 794, 795, 796, 797, 798, 799, 800, 801, 802, 803, 804, 805, 806, 807, 808,

16   810, 811, 912, 813, 814, 815, 816, 817, 818, 819, 820, 825, 826, 827, 828, 829, 832, 833, 841, 842,

17   843, 844.

18
## IX  REASONABLE ACTION IN THESE CIRCUMSTANCES BY OTHER FIDUCARIES

19        There are few, if any, instances of case law to cite in which a fiduciary, in particular a

20   federal equity receiver, allowed himself to be misrepresented as to his licensing by a federal agency

21   in consecutive instances in which they requested his appointment as a receiver. The Court must

22   accept that it is unreasonable for any licensed professional, never mind a fiduciary, be they a

23   doctor, environmental abatement contractor, pilot, etc., to allow themselves to be misrepresented

24   by a federal agency on multiple occasions, and to fail to notify the court of same when there have

25   been court pleadings that did, or should have, drawn the fiduciary's attention to this matter.

26
27
## X  SEAMAN'S CONDUCT IS *ULTRA VIRES*

28        Seaman's conduct was outside the order appointing him after his notice by way of Feathers'

pleadings that Feathers held improper belief Seaman was a CPA. Seaman's decision not to inform

-6-

Feathers for months thereafter of the truth appears to have been willful and deliberate.  It does not matter why Seaman did not disclose this issue to Feathers after Seaman was aware, or should have been aware, of Feathers' misguided belief.  Seaman's decision was a discretionary decision on his part.  Under *Coleman v. Dunlap*, 695 F. 3d 650, 653-655 (7th Cir. 2012), the Court held that receivers do not have quasi-judicial immunity for discretionary acts.  *Coleman* effectively overruled *In re Markos Gurnee P'ship*, 182 B.R. 211, 224 (Bankr., N.D. Ill. 1995), which had held prior to *Coleman* that a bankruptcy attorney was not liable for a state law violation committed within the scope of his responsibilities.  *Coleman* also noted that a bankruptcy trustee had long been liable not only for *ultra vires* conduct, but also for willful breaches of their fiduciary duties.  695 F.3d at 655 (citing *In re Chicago Pacific Corp.* 733 F.2d 909, 915 (7th Cir. 1985)).

There is no question Seaman was Feathers' fiduciary.  "A fiduciary relationship has been defined as 'any relation existing between parties to a transaction wherein one of the parties is…duty bound to act with the utmost good faith for the benefit of the other party.  Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relationship the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating ot the interest of the other party without the latter's knowledge or consent".  *People ex rel. Harris v. Rizzo*, 214 Cal. App. 4th 921, 950 (2013).

## XI  SEAMAN FAILED TO ACT REASONABLY

A reasonable party, especially a fiduciary to a defendant and indirectly, at least, to hundreds of other persons, would have read pleadings requesting their appointment especially closely if the party recommending them had prior attributed onto them professional financial services licensing which they did not hold, such as we have here.  The ability to read contracts, agreements, and pleadings in detail is arguably one of the characteristics a receiver holds to begin with, and extra protection is afforded because a non-attorney receiver such as Seaman will typically also employ counsel to assist them.  Receivers should observe the highest standards of conduct and professionalism so as to preserve the integrity, dignity, and independence of the court and judicial system.

## XII DAMAGES TO FEATHERS

Feathers has suffered damages, and what appears to be substantial interference with due process. The extent and the amount of these are best argued with the assistance of professionals who are qualified to assist Feathers in this regards, i.e., qualified counsel and a licensed CPA.

## XIII A FIDUCIARY CLAIM DOES NOT REQUIRE A SHOWING OF INTENT

A breach of duty claim does not require a showing of intent. Rather, breach of fiduciary duty requires (1) the existence of a duty, (2) breach, and (3) damages proximately caused by the breach; *Goodworth Holdings, Inc. v. Suh*, 99 Fed. Appl. 806, 808 (9th Cir. 2009).

## XIV THE WHOLE OF THE RECEIVERSHIP ESTATE SUFFERS BY SEAMAN'S TORT

Publicity created by the discovery of a false licensing representation by a federal agency, uncorrected by a receiver, may create legal uncertainty in the minds of potential buyers of assets of those parties involved in the lawsuit. Parties may not offer the same compensation for assets they intend to acquire as they might be willing to pay in the absence of such a controversy. As stated in *Consupak, supra*, 87 B.R. at 539 – 540: [A] [bankruptcy] trustee's duties include that of maximizing the distribution from the estate to creditors. Here, one can argue Seaman's fiduciary breach may prevent the maximization of possible distributions to fund investors in the absence of that breach. SEC owning up to a so-called "typo" cannot aid Seaman. In *Vinich* and *Swanson, supra*, the Seventh Circuit held that a claim may not be dismissed on plausibility grounds merely because the defendant has proffered exculpatory justification for its conduct. SEC here appears to proffer some blame for Seaman by suggesting the court shrug off the CPA issue as a harmless typo.

## XV SEAMAN'S RECKLESSNESS

Seaman was reckless in not informing the Court of SEC's false description of him after Feathers provided constructive awareness of his belief of Seaman as a CPA through pleadings. "In certain areas of the law recklessness is considered to be a form of intentional conduct for the purposes of imposing liability for some act"; *Ernest & Ernst v. Hochfelder*, 425 U.S. 185, 193-194 n. 12 (1976). Here, Feathers has provided "evidence that supports an inference that the receiver

-8-

1    acted in bad faith or recklessly disregarded her fiduciary duty" such as stated by Judge Hibbler in

2    *SEC v. Nutmeg* (2011 WL 5042092, *3 (N.D. Ill.). Another decision to address this issue in the

3    area of receiver or bankruptcy trustee liability is *In re Fruehauf Trailer*, 2011 WL 2014672, *5

4    (C.D. Cal) ("willful misconduct" satisfied by allegations that the trustee was 'recklessly indifferent

5    or that he deliberately disregarded…his fiduciary duty").

6

7 ## XVI  RECEIVERS HAVE NO IMMUNITY FOR VIOLATING STATE/FEDERAL LAW

8      Seaman has no immunity; *See* McCullough, "Bankruptcy Trustee Liability:   Is There a

9    Method to the Madness?"  15 *Lewis and Clark Law Review*, 153, 161 (2011).   SEC misrepresented

10   Seaman as a CPA twice.  A party such as Seaman may be liable if he 'knows the other's conduct

11   constitutes a breach of duty and gives substantial assistance or encourage to the other to so act".  In

12   the second instance, Seaman was also liable for SEC's "typo" when he failed on numerous

13   occasions to notify Feathers of this; *Casey v. U.S. Bank National Ass'n,* 127 Cal. App. 4th 1138,

14   1144 (2005).

15

16 ## XVII  SUPREME COURT ON BREACH OF FIDUCIARY DUTY

17      "Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if

18   the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk"

19   that his or her conduct would constitute a breach of fiduciary duty", *Bullock v. BankChampagin, N.A.*

20

21 ## XVIII  OTHER FEDERAL AGENCY CRITICISM OF SEC CONCERNING RECEIVERS

22      The United States General Accountability Office, which, according to its website homepage

23   is "an independent, nonpartisan agency that works for Congress" and helps to "improve the

24   performance and ensure accountability of the federal government for the benefit of the American

25   people" in its Report to Congress entitled Report to Congressional Enforcement/SEC Enforcement,

26   GAO-020771, (full report attached to the Request for Judicial Notice which accompanies this court

27   pleading) had these words to offer to Congress about SEC and its receiver choices:   "As court-

28   appointed fiduciaries, receivers are subject to the same standards of trust and confidence as other

fiduciaries…", and  "A fiduciary must act with the same degree of care and skill that a reasonably

1   prudent person would use in connection with his or her own affairs." See Request for Judicial

2   Notice, Exhibit "B", bottom lines of pages 21 and 22).

3

4   ## XX  SEAMAN VIOLATES THE CANON OF ETHICS OF NAFER AND THE CODE OF

5   ## CONDUCT OF THE CFA INSTITUTE

6       Exhibit "F" and "G", resp., of the accompanying Request for Judicial Notice shows the

7   Canon of Ethics for the National Association of Federal Equity Receivers "NAFER" and the Code

8   of Conduct of the CFA Institute.  Seaman is purported by these professional membership

9   organizations to be a member (*id*, Exhibits "C" and "D" of same), and his name is included in their

10   directories.

11       NAFER – Code of Conduct Canon 1.  "A Receiver must Uphold the Integrity and Fairness

12   of the Receivership Process".    Canon III.  "A receiver should respect and comply with the law

13   and should at all times act in a manner that promotes public confidence in the integrity and

14   impartiality of the receiver and the judiciary.

15       CFA Institute – Code of Ethics and Standards of Professional Conduct

16   Members must (1) At with integrity, (2) Use reasonable care and (3) Must understand comply with

17   all applicable laws, rules, and regulations of any government

18

19   ## XXI CONCLUSION

20       A claim for relief is facially plausible when the movant pleads enough facts, taken as true,

21   to allow a court to draw a reasonable inference that a party is liable for the alleged conduct.  This

22   Court should provide an opinion that Seaman has acted with gross negligence, according to either,

23   or both, the federal or state standards, in the matter of Seaman's failure to disclose to Feathers on a

24   timely basis a very serious false licensing representation made about him by SEC.  Seaman should

25   be dismissed, due to his fiduciary breach to Feathers and to fund investors.  Seaman's counsel and

26   SEC's counsel should be sanctioned.  There should be an independent outside CPA accounting of

27   all of Seaman's work.  The Court should agree that Seaman has no personal immunity for this

28   matter of his gross negligence and as outlined by the permanent injunction.  This party holds belief

     that this is a *legal* issue as opposed to an *equitable* issue.  The Ninth Circuit has held that where

                                                    -10-

claims are legal, rather than equitable, there is a Constitutional right to a trial by jury, which

Feathers requests of the Court if it does not provide to him relief which he requests; *Eberhard v.*

*Marcu*, 530 F.3d 122, 135 – 137 (2d Cir. 2008).

Dated:10-9-14

Mark Feathers, in *pro per*

MARK FEATHERS' OMNIBUS REPLY TO OPPOSITION TO MOTION FOR RELIEF
Case No. CV-12-03237