Mark Feathers, in *Pro Per*
1520 Grant Rd.
Los Altos, CA 94024
Telephone: (650) 575-7881

**FILED**

DEC 0 2 2014

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>PLAINTIFF,<br><br>vs.<br><br>SMALL BUSINESS CAPITAL CORP., MARK FEATHERS, INVESTORS PRIME FUND, LLC, AND SBC PORTFOLIO FUND, LLC<br><br>DEFENDANTS. | Case No.    CV12-03237-EJD<br><br>**REPLY TO SEC OPPOSITION TO MARK FEATHERS' REQUEST TO END PERMANENT INJUNCTION (COURT DOCKET 980) AND TO DISMISS RECEIVER, REQUEST FOR LEGAL AND PROFESSIONAL FEES FOR JURY TRIAL, AND FOR A JURY TRIAL, AND REQUEST FOR DAMAGES TO BE AWARDED TO ALL DEFENDANTS**<br><br>Ctrm: 4, 5th Floor<br>Date: February 5th, 2015   Time: 9:00 a.m.<br>Judge: Hon. Edward J. Davila |

In its response SEC states Feathers' has not provided proper legal argument in his Motion for Relief. SEC is wrong and needs to re-read the motion. Feathers has demonstrated that SEC actions in this civil proceeding fall under the *Doctrine of Cumulative Error* and that SEC and Thomas A. Seaman appear *prima facie* to have committed constructive fraud about his licensing.

As to SEC's stance, naturally, it is one to be expected from an Agency that provided sham financial illustrations (see Court Docket 187) within its sealed *ex parte prima facie* Complaint that led to a seizure of three hundred private investors' and this person's assets and income, and crippled their ability to retain counsel to protect their interests.

SEC would do well to take note of the fact that this Court never disagreed with Feathers that SEC provided sham financial illustrations in its sealed *ex parte prima facie* Complaint. This Court has never appeared to make a ruling on that matter, and SEC should finally quit twisting this

---

MARK FEATHERS' REPLY TO SEC OPPOSITION TO FEATHERS MOTION FOR RELIEF

Case5:12-cv-03237-EJD Document986 Filed12/02/14 Page2 of 7

fact around in its pleadings to make it appear as though the Court disagreed with Feathers that SEC provided sham financial illustrations. What this Court did actually do is deny Feathers' motion to dismiss the lawsuit on the basis of SEC's sham financial illustrations. That matter is now on appeal with the 9th Circuit, and apparently these matters are so well pled by Feathers to the 9th Circuit (that SEC has violated the 4th and 5th Amendments to the Bill of Rights which prohibit seizures based on false pretense and caused major interferes with due process) that SEC appears to be the primary engineer of Feathers' criminal indictment and arrest *years after discovery has ended*.

On SEC bringing up Feathers' recent indictment and arrest, here we have again SEC's so-called allegations which have been once again presented - to a grand jury - both under seal and *ex parte*. This agency is shameless. It defines the terms bad faith and overreach. On its face, the arrest shows retribution against Feathers' for not backing down on public statements for two years about SEC's gross misconduct of employing sham financial illustrations in its Complaint, and for Feathers filing a Federal Tort Claims Act against SEC on behalf of fund investors for $15,500,000 for its sham financial illustrations which led to a seizure, and because scores of third party fund investors at Feathers' suggestion took an unprecedented action – for an SEC lawsuit – of filing Tort Claims Act complaints against SEC for its bad faith actions, including SEC's abuse of process. A powerful multi-billion dollar budget agency will not allow a *pro se* party lacking counsel to embarrass it in the public's eye, or one-up it by having the very investors it "advocates" for turn around and accuse it of fraud in scores of court pleadings. SEC's solution? Retribution by engineering Feathers' arrest, of course.

SEC feigns itself "the investor's advocate". SEC initiated this lawsuit in federal court, not the fund's investors, who are CA *accredited* investors (typically millionaires). Public comments within the past few weeks of SEC Commissioner, Hon. Daniel Gallagher, Jr. (see Exhibit "A"), illustrate best what Feathers has asserted for more than two years. Post-Madoff, in this lawsuit SEC has clearly overreached and acted in bad faith (by way of its sealed sham financial illustrations) in its desire to erase the widespread embarrassment SEC's Madoff failure brought it.

This month Hon. SEC Commissioner Daniel Gallagher stated to national media the following comments:

> *"This obsession with 'protecting' millionaires — potentially at the cost of hindering the wildly successful and critically important private markets — strains logic and reason."*

MARK FEATHERS' REPLY TO SEC OPPOSITION TO FEATHERS MOTION FOR RELIEF
Case No. CV-12-03237

*"Millionaires can fend for themselves. The SEC doesn't need to shield rich people from the vicissitudes of private placements."*

Of course, when Hon. Commissioner Gallagher talks about "this obsession", he is talking about SEC's obsession. And there is no doubt that the private defendant investment funds wrongfully persecuted by SEC in its civil action were a prime example of "successful participants" in "important private markets", as clearly demonstrated by their having financed more than $100,000,000 in loans to small business owners in less than two years from the time of receiving their federal SBA licensing.

**Conclusion**

Wherefore, this party prays that this Motion for Relief should be approved.

Dated: 12-1-14

Mark Feathers, in *pro per*

# EXHIBIT "A"

Recent national media comments by Hon. SEC Commissioner Daniel Gallagher



**The Leading Information Source for Financial Advisers**

# SEC's Daniel Gallagher questions need to revise accredited-investor standard

**InvestmentNews Reprints**

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, click the link below.

- Order a reprint article

**Commissioner: 'Millionaires can fend for themselves'**

By Mark Schoeff Jr.  |  *November 20, 2014 - 1:39 pm EST*

As the Securities and Exchange Commission mulls whether to change the qualifications for who is eligible to buy unregistered securities, one of the agency's members said Thursday it should drop the effort.

"This obsession with 'protecting' millionaires — potentially at the cost of hindering the wildly successful and critically important private markets — strains logic and reason," said SEC member Daniel Gallagher Jr. "Millionaires can fend for themselves."

The SEC is reviewing the accredited investor standard, which limits private placement purchases to individuals who earn at least $200,000 annually ($300,000 for a married couple) or have a net worth of $1 million, excluding their residence.

Under the Dodd-Frank financial reform law, the SEC must revisit the accredited-investor definition every four years. This is the first year the SEC has undertaken the task since the law was enacted in 2010.

Mr. Gallagher asserted that the SEC has better things to do.

"I have yet to be persuaded that this is an issue that we should be taking up at this time," he said at the SEC Government-Business Forum on Small Business Capital Formation.

The accredited-investor standard is designed to keep small, unsophisticated retail investors who can't withstand large losses out of the market for investments in startup companies and other risky ventures. About 12 million U.S. households, or 9.9% of the total, qualified as accredited investors in 2013, according to SEC statistics.

The SEC doesn't need to shield rich people from the vicissitudes of private placements, Mr. Gallagher said.

The SEC Investor Advisory Committee came to a different conclusion last month, when it recommended that the SEC scrap the income and net-worth floors and instead consider a definition that takes into account an individual's education, professional credentials and investment experience.

The panel, created by the Dodd-Frank law to represent retail investors before the SEC, criticized the income and net-worth thresholds as poor proxies for sophistication that leave investors vulnerable.

Participants in the SEC forum Thursday also wrestled with the question of whether raising the income and net worth thresholds would force so many investors out of the private-placement pool that it would hinder the ability of fledgling companies to raise capital.

A study by the SEC Division of Economic and Risk Analysis showed that if the accredited-investor standard was adjusted for inflation, only 3.5% of American households would qualify. If retirement assets also were excluded, only 3.1%

would exceed the threshold. The standard was set in 1982 and hasn't been revised significantly since.

"The question of what the standard should be for an accredited investor is unanswerable except as a political question," Donald Langevoort, a professor at the Georgetown University Law Center, said at the SEC forum. "There is no analytical basis."

Yet it's a topic whose urgency is increasing following the SEC's approval of a rule last year that allowed advertising to the general public about private placements. Sales are still limited to accredited investors.

"We keep struggling, and we haven't gotten there yet," A. Heath Abshure, Arkansas securities commissioner, said at the SEC forum. "The time has come. We've really got to do something."

Unlike her commission colleague, SEC member Kara Stein is undecided about the direction the agency should take on the accredited investor definition.

"It's hard for me to comment on this right now," Ms. Stein said at the forum. "What I hear are the tensions. Everyone is talking about trade-offs."

Reproductions and distribution of the above news story are strictly prohibited. To order reprints and/or request permission to use the article in full or partial format please contact our Reprint Sales Manager at (732) 723-0569.