1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

| | |
|---|---|
| 11 SECURITIES AND EXCHANGE COMMISSION, | Case No. CV12-03237 EJD |
| 12                 Plaintiff, | [PROPOSED] ORDER APPROVING SALE OF 504/FMLP LOAN AND NON SBA LOAN PORTFOLIOS |
| 13        vs. | |
| 14 SMALL BUSINESS CAPITAL CORP.; | Date:    January 8, 2015 |
| 15 MARK FEATHERS; INVESTORS PRIME FUND, LLC; and SBC PORTFOLIO | Time:    9:00 am Ctrm:    4 - 5th Floor |
| 16 FUND, LLC, | Judge:   Hon. Edward J. Davila |
| 17                 Defendants. | |

18

19        The Motion for Approval to Sell 504/FMLP Loan Portfolio and Non-SBA Loans

20 ("Sale Motion") of Thomas A. Seaman ("Receiver"), Court-appointed permanent receiver

21 for Small Business Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC,

22 and their subsidiaries and affiliates, came before the Court.  The Court, having received

23 and read the Sale Motion and all papers in support thereof or opposition thereto, and being

24 so advised in the matter and finding sufficient and timely notice was provided to all

25 interested parties, the Receiver complied with the Sale Procedures Order previously

26 entered by this Court [Docket 898], and that good cause exits, orders as follows:

27        **IT IS ORDERED:**

28        1.      The Court grants the Sale Motion.

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1005736.01/LA

Case No.  CV12-03237 EJD
[PROPOSED] ORDER GRANTING MOTION AND APPROVING SALE OF 504 AND NON-SBA LOANS

1       2.      The Receiver is authorized to sell the assets of the 504/FMLP Loan Portfolio

2  and Non-SBA Loans to Western Alliance Bank in accordance with the Loan Purchase and

3  Sale Agreement, which agreement is attached hereto as <u>Exhibit A</u>.  The Receiver is

4  authorized to execute such documents as may be required to in order to conclude the sale

5  transaction contemplated by this Order.

6       3.      The Court waives all the requirements set forth in 28 U.S.C. § 2004,

7  including those concerning publication, appraisal and public auction.
   The hearing scheduled for January 8, 2015, is VACATED.
8

9  Dated:  _____January 2, 2015_____          _____

10                                                 Hon. Edward J. Davila
                                                   Judge, United States District Court
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

1005736.01/LA                    -2-

Case No.  CV12-03237 EJD
[PROPOSED] ORDER GRANTING MOTION
AND APPROVING SALE OF 504 AND NON-
SBA LOANS

# EXHIBIT A

## LOAN PURCHASE AND SALE AGREEMENT

This LOAN SALE AGREEMENT ("Agreement") is made as of this 5th day of December, 2014 (the "Effective Date"), by and between Thomas A. Seaman, Receiver ("**Seller**"), appointed by the United States District Court for the Northern District of California ("**Court**") for Small Business Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and their subsidiaries and affiliates, including Small Business Capital LLC and SBC Senior Commercial Mortgage Fund, LLC ("**Receivership Entities**"), and Western Alliance Bank, an Arizona corporation ("**Purchaser**").

## RECITALS:

WHEREAS, Seller is the holder of interests in SBA 504/FMLP Loans ("**SBA Loans**"), Non-SBA Loans, both identified on **Exhibit A** hereto (collectively, the "**Loans**"), and rights to service the Loans listed on **Exhibit A** hereto and receive servicing fees in connection therewith ("**Servicing Rights**") (collectively, the Loans and Servicing Rights are sometimes referred to as the "**Loan Assets**");

WHEREAS, pursuant to that certain Preliminary Injunction and Orders (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing a Permanent Receiver (the "**Order**") entered on July 10, 2012 by the Court in Case No. 12-CV-03237-EJD (the "**Case**"), Thomas A. Seaman was appointed receiver for the Receivership Entities;

WHEREAS, on May 9, 2014, the Court entered an order authorizing the Receiver to market the Loan Assets for sale, approving the procedures for such sale, and authorizing the Receiver to engage Voit Real Estate Services LP as broker ("**Sale Procedures Order**").

WHEREAS, Seller wishes to sell all of Seller's right, title and interest in, to and under the Loan Assets, and Purchaser, based on its own due diligence review of the Loan Assets, wishes to purchase all of Seller's right, title and interest in, to and under the Loan Assets.

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are expressly acknowledged, Seller and Purchaser agree as follows:

## SECTION I

## DEFINITIONS AND RULES OF CONSTRUCTION

Section 1.1    Definitions.   Capitalized terms used in this Agreement are defined in **Exhibit B** or in the text with a cross-reference in **Exhibit B**.

Section 1.2    Rules of Construction.   This Agreement will be interpreted in accordance with the rules of construction set forth in **Exhibit C** to this Agreement.

## SECTION II

## SALE AND PURCHASE OF THE LOANS

Section 2.1    Agreement to Sell and Purchase the Loans and the Warrants.  Seller agrees to sell, and Purchaser agrees to purchase, all of Seller's right, title and interest in, to and under the Loan Assets in accordance with the terms of this Agreement.

Section 2.2    Assignment and Assumption of the Loan Documents.  Effective as of the Closing, Seller hereby assigns and transfers all of its right, title, and interest as lender in, to, and under the Loan Documents to Purchaser, its successors and assigns.  Effective as of the Closing, Purchaser hereby assumes the performance of all of the terms, covenants, conditions, and obligations of Seller as lender under the Loan Documents, arising or accruing from and after the Closing.

Section 2.3    Access to Loan Files; Confidentiality.  Seller has delivered (or made available) to Purchaser prior to the Effective Date copies of the Loan Documents and copies of all other original documents in the possession of Seller relating to the Loan Assets, including, without limitation, the Loan Files and endorsements to the lender's title insurance policy relating to the Loans that were obtained after the origination of the Loans, if any.  Up to and through the Receiver's discharge by the Court, Seller shall deliver to Purchaser copies of any written communication with any Borrower or Credit Party received or sent by Seller after the Effective Date.  In addition, at the written request of Purchaser, Seller shall make available to Purchaser any additional documents in the possession of Seller relating to the Loans Assets, including the Loan File.  To the extent that the Closing does not occur as contemplated herein, Purchaser agrees, upon the written request of Seller, to promptly return to Seller all documents and other materials delivered by Seller to Purchaser (if any).  Purchaser agrees to keep all information confidential in accordance with that certain Confidentiality Agreement executed by Purchaser on July 25, 2014.  Purchaser understands and acknowledges that Receiver took control over the Loan Assets in his capacity as a federal equity receiver.  Purchaser acknowledges that much of the materials, data and other information which Seller may make available to Purchaser were prepared by third parties other than Seller and, in many instances, may have been prepared prior to Seller taking control over the Loan Assets.  Purchaser expressly acknowledges that any materials, data or other information of any type which Purchaser has received or may receive from Seller or any of Seller's agents, employees, contractors or representatives is furnished on the express condition that Purchaser shall not rely thereon, that Purchaser shall make an independent verification of the accuracy of such materials, data or other information, and that all such materials, data or other information are being furnished without any express or implied representation or warranty whatsoever.  Without limiting the foregoing, Seller makes no representation or warranty, and hereby expressly disclaims any representation or warranty, that any of the materials, data or other information previously or hereafter delivered or made available to Purchaser are true, accurate or complete.  Furthermore, Seller has informed Purchaser that any such materials, data or other information delivered or made available to Purchaser may not constitute all of the documents or materials relating to the Loan Assets in the possession of Seller and Purchaser acknowledges that Purchaser has satisfied itself or that such materials, data or other information are sufficient for Purchaser to purchase the Loans Assets.

## SECTION III

### THE CLOSING

Section 3.1    Time and Location of the Closing.    The Closing will occur on the Scheduled Closing Date at the time specified in **Exhibit B**.

Section 3.2    Payment of and Adjustment to Purchase Price.

(a)    Purchaser has deposited with the Seller ten (10%) percent of the estimated Purchase Price $813,721.93 (the "Deposit")

(b)    As more particularly described in Section 6.2 below, the Deposit shall be retained by Seller as liquidated damages if the Closing does not occur for any reason other than (i) a material default by Seller or (ii) the material failure of a condition precedent to Purchaser's obligations to consummate the Closing hereunder.

(c)    If the Closing does not occur because of Seller's material default or the material failure of a condition precedent to Purchaser's obligations, the Deposit shall be returned to Purchaser.  Upon the Closing, the Deposit shall be credited toward payment of the Purchase Price.

(d)    Not later than 2:00 p.m.  (Eastern Standard Time) on the Scheduled Closing Date, Purchaser will deliver the balance of the Purchase Price to Seller.

(e)    Any and all adjustments to the Purchase Price will be computed effective as of 12:01 a.m. (Pacific Standard Time) on the date specified in this Agreement for the particular adjustment.

Section 3.3    Purchaser's Closing Documents.  At the Closing, Purchaser will deliver the following Closing Documents to Seller:

(a)    an Allonge to SBA form 2401 (FMLP) for each loan, in the form of Exhibit E to this Agreement executed by Purchaser;

(b)    an assumption of Seller's rights and obligations under the Loan Documents with respect to the Loans, in the form of **Exhibit F** to this Agreement, executed in counterpart by Purchaser (the "**Assumption Agreement**");

(c)    a letter addressed to each Borrower notifying such Borrower of the transfer of the applicable Loan to Purchaser and directing such Borrower to make all debt service and any other payments required under the applicable Loan from and after the Closing Date to Purchaser or Purchaser's designee, substantially in the form of **Exhibit G** to this Agreement, executed in counterpart by Purchaser (the "**Borrower Notice Letter**");

(d)    a certificate of Purchaser certifying (i) as to the incumbency of the signatories authorized to execute this Agreement and the Closing Documents required to be executed and delivered by Purchaser on behalf of Purchaser and (ii) that the execution of this

Agreement and the Closing Documents and the consummation of the transaction contemplated by this Agreement have been duly authorized, executed by the Secretary or Assistant Secretary of Purchaser; and

> (e)   the Settlement Statement, executed in counterpart by Purchaser.

Section 3.4   <u>Seller's Closing Documents</u>.   At the Closing, Seller will deliver the following Closing Documents to Purchaser (and pursuant to which Seller will transfer, assign, set-over and convey to Purchaser, without recourse, except as otherwise expressly set forth in this Agreement):

> (a)   the original promissory notes or, if such original promissory notes are lost, lost note affidavits signed by Seller;

> (b)   an allonge for each promissory note endorsed to Purchaser, substantially in the form of **Exhibit H** to this Agreement, executed by Seller;

> (c)   an assignment of each Deed of Trust, in the form of **Exhibit I**, executed and acknowledged by a notary public (collectively, "**Assignments of Deeds of Trust**");

> (d)   the Assumption Agreement, in the form of **Exhibit F** to this Agreement, executed in counterpart by Purchaser;

> (e)   UCC-3 Financing Statements (or the equivalent) reflecting the transfer of all of Seller's right, title and interest in, to and under the Loans to Purchaser, assigning to Purchaser the rights of Seller as "Secured Party" under each UCC-1 financing statement included in the Loan Files;

> (f)   the Borrower Notice Letter, substantially in the form of **Exhibit G** to this Agreement, executed in counterpart by Seller;

> (g)   the Loan Files;

> (h)   the Settlement Statement, executed in counterpart by Seller; and

> (i)   if available, a letter from the SBA reflecting the consent of the SBA in connection with the transfer of the Loan Assets.

Section 3.5   <u>Delivery of the Closing Documents</u>.

> (a)   At Closing, and upon Seller's receipt of the Purchase Price by wire transfer of immediately available funds in accordance with the wiring instructions attached to this Agreement as **Exhibit D**, Seller shall promptly deliver to Purchaser, at Purchaser's expense, all Closing Documents required to be delivered by Seller to Purchaser in accordance with this Article III, and Purchaser shall promptly deliver to Seller all Closing Documents required to be delivered by Purchaser to Seller, all in accordance with this Article III.  Upon receipt of the Loan Files, Purchaser shall execute and deliver to Seller a receipt of the Loan Files in the form of Exhibit J to this Agreement.

Section 3.6     Reconveyance, Recording and Filing Closing Documents.  Purchaser will record or file, as the case may be, at Purchaser's expense, the Assignments of Deed of Trust and the UCC Financing Statements.

Section 3.7     Other Closing Conditions.

(a)     Purchaser's obligation to Close is subject to satisfaction of the following conditions, which are for the benefit of Purchaser and may be waived by Purchaser in its sole discretion:

(A)     Seller's representations and warranties set forth in this Agreement shall be true and correct in all material respects.

(B)     Seller shall not, as of the Closing Date, be in material default in the performance of Seller's obligations under this Agreement.

(C)     The Court shall have entered the Sale Order approving the transaction contemplated by this Agreement.

(b)     Seller's obligation to Close is subject to satisfaction of the following conditions, which are for the benefit of Seller and may be waived by Seller in its sole discretion:

(A)     Purchaser's representations and warranties set forth in this Agreement shall be true and correct in all material respects.

(B)     All of the documents and funds required to be delivered by Purchaser to Seller at the Closing pursuant to the terms and conditions hereof shall have been delivered.

(C)     Seller shall have received all consents, documentation and approvals necessary to consummate and facilitate the transactions contemplated hereby, including the Sale Order, the SBA's consent, and as may otherwise be required by law.

(D)     Purchaser shall not, as of the Closing Date, be in material default in the performance of its obligations under this Agreement.

(c)     If the purchase and sale fails to Close by the Scheduled Closing Date due to a failure of a condition, the party for whose benefit the condition is set forth may terminate this Agreement at any time thereafter until the Closing occurs, so long as the failure of condition is not caused by such party's breach of such party's obligations under this Agreement.  If Purchaser so terminates, Purchaser shall be entitled as Purchaser's sole and exclusive remedy to the return of the Deposit.

Section 3.8     Loan Files.  At any time prior to Closing, upon reasonable notice to Seller, Seller shall make the Loan Files available to Purchaser for inspection.  At Closing, Seller shall make available to Purchaser (at Seller's office) the Loan Files, including, the original promissory notes.  Purchaser acknowledges that Seller may retain a copy of the Loan Files for Seller's records.  From and after the Closing, Seller and Seller's Affiliates, agents, employees,

representatives and trustees will have no responsibility for the Loan Files and Purchaser will bear all risk of loss or damage with respect to the Loan Files.

Section 3.9    Loan Payments after Closing.   In the event that a borrower makes a payment to Seller for any Loan Asset after Closing, Seller agrees to process the payment as reflected in the definition of Purchase Price on Exhibit B.

## SECTION IV

## PURCHASER'S REPRESENTATIONS, WARRANTIES, AND COVENANTS

Purchaser warrants and represents to Seller, as of the Effective Date and the Closing Date, and where indicated, covenants and agrees as follows:

Section 4.1    Purchaser's Authority.

(a)    Purchaser is and through the Closing Date will continue to be duly organized, validly existing and in good standing under the laws of the state or commonwealth in which it was organized or incorporated.

(b)    Purchaser has and through the Closing Date will continue to have all necessary approvals, whether governmental or otherwise, and full right, power and authority, to (i) execute and deliver this Agreement and the Closing Documents and (ii) perform Purchaser's obligations under this Agreement and the Closing Documents and consummate the transaction contemplated by this Agreement.

(c)    Purchaser's execution and delivery of this Agreement and the Closing Documents, Purchaser's performance of Purchaser's obligations under this Agreement and the Closing Documents and consummation of the transaction contemplated by this Agreement and the Closing Documents do not and through the Closing Date will continue to not (i) conflict with any laws or agreements binding on Purchaser or (ii) result in a default under any agreement or other instrument to which the Purchaser is a party or that is applicable to the Purchaser which, in each case, would adversely affect Purchaser's ability to carry out the transactions contemplated by this Agreement and the Closing Documents.

(d)    Assuming Seller's due execution and delivery of this Agreement and the Closing Documents, this Agreement and the Closing Documents constitute and through the Closing Date will continue to constitute legal, valid and binding obligations of Purchaser, enforceable in accordance with their respective terms, except to the extent that enforceability of the obligations may be subject to bankruptcy, insolvency, moratorium and other similar laws affecting the rights of creditors generally and to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

Section 4.2    No Reliance.

(a)    Purchaser acknowledges the following:  (i) Seller may not have in Seller's possession or control all documents relating to or affecting the Loan Assets as Seller has taken control over the Loan Assets as a court appointed receiver only, and as such, the Loan Files may

be incomplete and (ii) Seller did not conduct any due diligence of the Loan Files prior to obtaining control of the Loan Assets.

(b)     As of the Closing Date, Purchaser is familiar with all aspects of each Loan and the Servicing Rights, and, in entering into this Agreement, Purchaser has not relied on any oral or written information provided by Seller or by Seller's Affiliates, agents, attorneys, employees, representatives or trustees or by Voit Realty or any broker or agent pertaining to any Loan or the Servicing Rights, but merely on Purchaser's independent review of the Loan Files and such independent evaluation of each Loan and the Servicing Rights as Purchaser deemed necessary. Purchaser's decision to purchase all of Seller's right, title and interest in, to and under the Loan Assets is based on Purchaser's due diligence review and independent evaluation of each Loan and the Servicing Rights. Purchaser is a sophisticated purchaser, with experience in owning and holding commercial mortgage loans in the nature of the Loans. Purchaser understands and is freely taking all risks involved in connection with the transaction and acknowledges that the nature and risks are reflected in the Purchase Price and in the terms and conditions pursuant to which Purchaser is willing to purchase and Seller is willing to sell all of Seller's right, title and interest in, to and under the Loans and the Servicing Rights. Purchaser acknowledges that Seller has not made any representations or warranties with respect to the Loans, the Servicing Rights accounting or servicing records, or the validity or enforceability of the Loan Documents unless expressly provided for herein.

(c)     Purchaser acknowledges (i) the SBA may deny liability on any of the SBA's guarantees associated with the Loans due to defects, deficiencies, or other concerns related to the Loans in existence prior to the Closing Date, and (ii) in the event the SBA denies liability on a guaranty associated with the Loans, Purchaser, at its sole expense, will be responsible for repairing or otherwise addressing any such defects, deficiencies, or concerns and for any claims, damages, or other amounts owed to the SBA.

(d)     No agent, employee, attorney, or representative of Seller or other agent or broker has been authorized to make, and Purchaser has not relied on, any statements other than those expressly set forth in this Agreement. Except as specifically set out in this Agreement, Purchaser is not relying on any continued actions or efforts on the part of Seller or Seller's Affiliates, agents, employees, representatives or trustees with respect to any Loan or the Servicing Rights. After the Closing Date, Seller will retain no further interest in the Loans or the Servicing Rights (except as otherwise expressly set forth herein), and Seller and Seller's Affiliates, agents, employees, representatives and trustees will not provide any further servicing of the Loans or any foreclosure or other management services. Seller has not and will not advance funds to Purchaser to protect the value of the Loan Assets. Seller has not guaranteed and does not guarantee payment of the Loans or performance of the borrowers' obligations under the documents in the Loan Files, and Seller has not guaranteed and does not guarantee the condition, performance, rate of return, value or yield of the Loans or the Servicing Rights. Further, Purchaser acknowledges that some of the borrowers are currently in default under the Loans. Seller shall have no responsibility for the validity, sufficiency, or effectiveness of the liens created by the Loan Documents. Subject to Seller's representations, warranties and covenants contained herein, Seller's right, title and interest in, to and under the Loans and the Servicing Rights are being sold on an "AS IS," "WHERE IS" BASIS, "WITH ALL FAULTS" AND WITHOUT REPRESENTATIONS, EXPRESS OR IMPLIED, OF ANY TYPE, KIND,

CHARACTER OR NATURE (INCLUDING, WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), AND WITHOUT WARRANTIES, EXPRESS OR IMPLIED, OF ANY TYPE, KIND, CHARACTER OR NATURE (INCLUDING, WITHOUT LIMITATION, MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE), EXCEPT THE LIMITED AND EXPRESS REPRESENTATIONS OF SELLER SET FORTH IN ARTICLE V HEREOF, AND WITHOUT RECOURSE OF ANY NATURE TO SELLER.

(e)     Notwithstanding anything to the contrary herein, Seller shall not have any liability whatsoever to Purchaser with respect to any matter disclosed to or discovered by Purchaser or Purchaser's agents or representatives prior to the Closing Date.

Section 4.3     No Securities.  Purchaser waives all rights, if any, to make any Claim in connection with any federal or state securities law.

Section 4.4     Litigation.  Purchaser will not (a) institute any legal action in the name of Seller, (b) intentionally or unintentionally, through misrepresentation or nondisclosure, conceal or mislead any person as to Purchaser's identity or (c) use or refer to Seller's name or any name derived from Seller's name to promote the sale or transfer of any Loan or the Servicing Rights, or the collection or management of any Loan.

Section 4.5     No Brokers.  Purchaser represents and warrants that Purchaser has not dealt with any broker or finder in connection with the purchase and sale of all of Seller's right, title and interest in, to and under the Loans and the Servicing Rights.  Purchaser will be responsible for the payment of any brokerage commission or finder's fee payable to any broker or finder claiming through Purchaser in connection with the purchase and sale of all of Seller's right, title and interest in, to and under the Loans and the Servicing Rights.

## SECTION V

## SELLER'S REPRESENTATIONS AND WARRANTIES

Section 5.1     Representations or Warranties.  Seller warrants and represents to Purchaser, as of the Effective Date and the Closing Date as follows:

(a)     Seller has not entered into any written agreements to modify the terms of any Loan or the Servicing Rights, other than (i) any modifications that may have been entered into by the Receivership Entities prior to Seller taking control of the Loan Assets and (ii) any modifications included in the Loan Documents and thereby fully disclosed to Purchaser.

(b)     Seller has not knowingly and intentionally withheld any portion of the Loan Files.

(c)     Assuming Purchaser's due execution and delivery of this Agreement and the Closing Documents and subject to the receipt of the Sale Order, this Agreement and the Closing Documents constitute and through the Closing Date will continue to constitute legal, valid and binding obligations of Seller, enforceable in accordance with their respective terms, except to the extent that enforceability of the obligations may be subject to bankruptcy,

insolvency, moratorium and other similar laws affecting the rights of creditors generally and to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

Section 5.2 No Implied Representations or Warranties. Except as expressly provided in Section 5.1, Seller has not and will not be deemed to have made and specifically disclaims any implied warranties or representations under this Agreement. Except as expressly provided in Section 5.1, Seller makes no representations or warranties with respect to (a) any Loan, the Warrants or the Loan File; (b) the priority, perfection or enforceability of the Notes, the Deeds of Trust or any other document in the Loan File; (c) the presence or absence of defaults under, defenses to or offsets against the Notes, the Deeds of Trust or any other document in the Loan File; (d) the status or financial condition of any Borrower or any Credit Party; or (e) any fact or condition respecting any Loan, collateral, insurance, or servicing of the same.

## SECTION VI

## DEFAULTS AND REMEDIES

Section 6.1 Seller's Breach. If Seller defaults under this Agreement, the default is discovered prior to Closing by Purchaser and Purchaser proceeds to close the transactions contemplated hereunder, Purchaser shall have waived any and all rights and remedies resulting from Seller's default. If Seller materially defaults under this Agreement and the Closing and the consummation of the transactions contemplated herein do not occur as a result thereof, Purchaser may, at Purchaser's option, as Purchaser's sole and exclusive remedy, either (i) terminate this Agreement and be entitled to return of the Deposit or (ii) enforce specific performance. Notwithstanding anything herein to the contrary, if the Closing and the consummation of the transactions herein contemplated do not occur by reason of any such material default by Seller, or Purchaser elects not to proceed to Closing as a result of such material breach of Seller, then Purchaser shall be deemed to have elected to terminate this Agreement pursuant to clause (i) hereinabove if Purchaser fails to deliver to Seller written notice of its intent to file a claim or assert a cause of action for specific performance against Seller on or before twenty (20) days following the scheduled Closing Date or, having given such notice, fails to file a lawsuit asserting such claim or cause of action with the Court within two (2) months following the scheduled Closing Date. Under no circumstances whatsoever may Purchaser recover any consequential, exemplary, special, indirect, incidental, or punitive damages resulting from Seller's defaults under this Agreement and Purchaser hereby expressly waives any claim or right to do so.

Section 6.2 Purchaser's Breach. IF PURCHASER MATERIALLY DEFAULTS UNDER THIS AGREEMENT AND THE CLOSING AND THE CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED HEREIN DO NOT OCCUR AS RESULT THEREOF, PURCHASER AND SELLER AGREE THAT IT WOULD BE IMPRACTICAL AND EXTREMELY DIFFICULT TO ESTIMATE THE DAMAGES WHICH SELLER MAY SUFFER. THEREFORE, PURCHASER AND SELLER HEREBY AGREE THAT A REASONABLE ESTIMATE OF THE TOTAL NET DETRIMENT THAT SELLER WOULD SUFFER IN THE EVENT THAT PURCHASER DEFAULTS IS AND SHALL BE, AN AMOUNT EQUAL TO THE DEPOSIT, TOGETHER WITH ANY ACCRUED INTEREST

THEREON.   SAID AMOUNT SHALL BE THE FULL, AGREED AND LIQUIDATED DAMAGES FOR THE BREACH OF THIS AGREEMENT BY PURCHASER, ALL OTHER CLAIMS TO DAMAGES BEING HEREIN EXPRESSLY WAIVED BY SELLER.   THE PAYMENT OF SUCH AMOUNT AS LIQUIDATED DAMAGES IS NOT INTENDED AS A FORFEITURE OR PENALTY WITHIN THE MEANING OF CALIFORNIA CIVIL CODE SECTIONS 3275 OR 3369, BUT IS INTENDED TO CONSTITUTE LIQUIDATED DAMAGES TO SELLER PURSUANT TO CALIFORNIA CIVIL CODE SECTIONS 1671, 1676 AND 1677.  NOTHING CONTAINED HEREIN SHALL BE DEEMED TO LIMIT OR OTHERWISE AFFECT PURCHASER'S INDEMNIFICATION OBLIGATIONS UNDER THIS AGREEMENT.

SELLER AND PURCHASER ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE PROVISIONS OF THIS SECTION 6.2 AND BY THEIR INITIALS IMMEDIATELY BELOW AGREE TO BE BOUND BY ITS TERMS.

| _____ | _____ |
|:---:|:---:|
| PURCHASER'S INITIALS | SELLER'S INITIALS |

### SECTION VII

### <u>INDEMNIFICATION; RELEASE</u>

  <u>Section 7.1</u>  <u>General Indemnification</u>.  Purchaser hereby indemnifies, holds harmless and defends Seller, Seller's Affiliates, agents, attorneys, employees, representatives and trustees, the existing trustees under any deed of trust securing any Loan and any predecessor or successor of Seller (each an "**<u>Indemnified Party</u>**" and collectively, the "**<u>Indemnified Parties</u>**") for, from and against any and all Claims, losses or damages to which any of the Indemnified Parties may become subject (other than for a breach of Seller's representations and warranties or Seller's gross negligence or willful misconduct)) on account of, arising out of or related to any act, omission, conduct or activity of Purchaser or any of Purchaser's Affiliates, agents, employees, members, partners, principals, representatives or trustees at any time occurring or failing to occur after the Closing Date and arising out of or related to (a) any action or omission of Purchaser with respect to any Loan or the Servicing Rights; (b) any inaccuracy in or breach of Purchaser's representations, warranties, covenants or acknowledgments made pursuant to this Agreement; and (c) any Claim for a finder's fee or broker's commission asserted against Seller and arising from the transaction contemplated by this Agreement and arising through Purchaser.

  <u>Section 7.2</u>  Indemnification for SBA Claims.  Purchaser acknowledges that it is aware that the SBA has filed a proof of claim reflecting a $24 million contingent claim arising out of certain alleged defects in the Loans ("SBA Claim").   Purchaser hereby indemnifies, holds harmless, and defends the Indemnified Parties for, from, and against any and all Claims, losses or damages to which any of the Indemnified Parties may become subject on account of, arising out of or related to the SBA Claim, any defect, deficiency, or other concern with the Loans raised by the SBA before or after the Closing Date, or any denial of liability on any guaranty associated with the Loans by the SBA (except to the extent of Seller's gross negligence or willful misconduct).

Section 7.3     Settlement.  If any Claim is settled or if there is a final judgment against the Indemnified Party in any Claim, the indemnifying party will indemnify, hold harmless and defend the Indemnified Party for, from and against any and all loss or liability incurred by the Indemnified Party by reason of such settlement or judgment and will pay on demand all costs and expenses incurred by the Indemnified Party in connection with the settlement or judgment.

Section 7.4     Release.  From and after the Closing and so long as the Closing occurs, Purchaser hereby agrees that Seller, the Receivership Entities, Seller's and the Receivership Entities' Affiliates, agents, employees, representatives, attorneys and trustees, the existing trustees under any deed of trust securing any Loan and any predecessor or successor of Seller and/or the Receivership Entities (each a "**Released Party**" and collectively, the "**Released Parties**") shall be, and are hereby, fully and forever released and discharged from any and all Claims, whether direct or indirect, known or unknown, foreseen or unforeseen, that may arise on account of or in any way be connected with the Case, any Loan or the Servicing Rights.  The foregoing release shall not excuse (x) Seller's express obligations under this Agreement, (y) Seller's gross negligence or willful misconduct, or (z) breaches of Seller's representations or warranties for which a claim is timely delivered.  Purchaser hereby expressly waives the provisions of Section 1542 of the California Civil Code which provides:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

and all similar provisions or rules of law.  Purchaser elects to and does assume all risk for such Claims heretofore and hereafter arising, whether now known or unknown by Purchaser.

BY INITIALING BELOW, PURCHASER HEREBY WAIVES THE PROVISIONS OF SECTION 1542 IN CONNECTION WITH THE MATTERS WHICH ARE THE SUBJECT OF THE FOREGOING WAIVERS AND RELEASES:



PURCHASER'S INITIALS

In this connection and to the greatest extent permitted by law, Purchaser hereby agrees, represents and warrants that such party realizes and acknowledges that factual matters now unknown to him, her or it may have given or may hereafter give rise to causes of action, claims, demands, debts, controversies, damages, costs, losses and expenses which are presently unknown, unanticipated and unsuspected, and Purchaser further agrees, represents and warrants that the waivers and releases herein have been negotiated and agreed upon in light of that realization and that Purchaser nevertheless hereby intends to release, discharge and acquit the Released Parties from any such unknown Claims, debts, and controversies which might in any way be included as a material portion of the consideration given to Seller by Purchaser in exchange for Seller's performance hereunder.  Without limiting the foregoing, if Purchaser has actual knowledge of a default in any of the covenants, agreements or obligations to be performed by Seller under this Agreement, and Purchaser nonetheless elects to proceed to Closing, then,

upon the consummation of the Closing, Purchaser shall be conclusively deemed to have waived any such default and shall have no Claim against Seller or hereunder with respect thereto.

Seller has given Purchaser material concessions regarding this transaction in exchange for Purchaser agreeing to the provisions of this Section 7.4.  The provisions of this Section 7.4 shall survive the Closing and shall not be deemed merged into any instrument or conveyance delivered at the Closing.

Section 7.5    NO LIABILITY TO RECEIVER.  WITHOUT LIMITATION OF THE FOREGOING, AS AN ESSENTIAL INDUCEMENT TO RECEIVER TO ENTER INTO THIS AGREEMENT, AND AS PART OF THE CONSIDERATION GIVEN HEREUNDER, PURCHASER ACKNOWLEDGES, UNDERSTANDS AND AGREES AS FOLLOWS:

(a)    RECEIVER IS ENTERING INTO THIS AGREEMENT SOLELY IN CONNECTION WITH HIS DUTIES AS RECEIVER PURSUANT TO THE ORDER.  IN NO EVENT SHALL RECEIVER BE LIABLE FOR ANY ERROR OF JUDGMENT OR ACT DONE BY RECEIVER, OR BE OTHERWISE RESPONSIBLE OR ACCOUNTABLE UNDER ANY CIRCUMSTANCE WHATSOEVER, EXCEPT IF THE RESULT OF RECEIVER'S GROSS NEGLIGENCE OR INTENTIONAL AND WILLFUL MISCONDUCT.  RECEIVER SHALL NOT BE PERSONALLY LIABLE IN CONNECTION WITH ANY DUTIES PERFORMED BY RECEIVER PURSUANT TO THE ORDER OR THE SALE ORDER.

(b)    NO PROVISION OF THIS AGREEMENT SHALL OPERATE TO PLACE ANY OBLIGATION OR LIABILITY FOR THE SERVICING OF ANY LOAN OR THE CONTROL, CARE, MANAGEMENT OR REPAIR OF THE LOAN ASSETS UPON RECEIVER NOR SHALL IT OPERATE TO MAKE RECEIVER RESPONSIBLE OR LIABLE FOR ANY WASTE COMMITTED ON THE PROPERTY BY ANY PERSON OR FOR ANY DANGEROUS OR DEFECTIVE CONDITION OF THE PROPERTY OR FOR ANY NEGLIGENCE IN MANAGEMENT, UPKEEP, REPAIR OR CONTROL OF THE PROPERTY RESULTING IN LOSS OR INJURY OR DEATH TO ANY PERSON.

THE PROVISIONS OF THIS SECTION 7.5 SHALL SURVIVE THE CLOSING AND SHALL NOT BE DEEMED MERGED INTO ANY INSTRUMENT OR CONVEYANCE DELIVERED AT CLOSING.

## SECTION VIII

## MISCELLANEOUS

Section 8.1    Notices.  All Notices must be in writing and (a) delivered personally by a process server providing a sworn declaration evidencing the date of service, the individual served, and the address where the service was made; (b) sent by certified mail, return receipt requested; or (c) delivered by nationally recognized overnight delivery service providing evidence of the date of delivery, with all charges prepaid, addressed to the appropriate party at its address listed in **Exhibit B**.  Seller and Purchaser each may change from time to time the address to which Notices must be sent, by Notice given in accordance with this Section 8.1 All Notices given in accordance with this Section 8.1 will be deemed to have been given three (3) Business

Days after having been deposited in any mail depository regularly maintained by the United States postal service, if sent by certified mail, or one (1) Business Day after having been deposited with a nationally recognized overnight delivery service, if sent by overnight delivery, or on the date of personal service, if served by a process server.

Section 8.2    Applicable Law.  This Agreement is governed by and will be construed in accordance with the laws of the State of California.

Section 8.3    Discretion.  Wherever under this Agreement either Seller or Purchaser has the right to approve or determine any matter, such approval or determination will be in the approving party's sole discretion unless expressly provided to the contrary in this Agreement. Wherever under this Agreement any matter is required to be satisfactory to Seller or Purchaser, such determination that the matter is satisfactory will be in the party's sole discretion unless expressly provided to the contrary in this Agreement.

Section 8.4    Unenforceable Provisions.  If any provision of this Agreement is found to be illegal or unenforceable or would operate to invalidate this Agreement, then the provision will be deemed to be expunged and this Agreement will be construed as though the provision was not contained in this Agreement and the remainder of this Agreement will remain in full force and effect.

Section 8.5    Survival.  Unless expressly provided to the contrary in this Agreement, Seller's and Purchaser's representations, warranties and covenants contained in this Agreement will continue in full force and effect and survive the Closing and any other act or omission that might otherwise be construed as a release or discharge and will not merge into the Closing Documents, but instead will be independently enforceable.

Section 8.6    Entire Agreement.  Any agreements between Seller and Purchaser relating to the matters described in this Agreement are contained in this Agreement, which contains the complete and exclusive statement of the agreements between Seller and Purchaser, except as Seller and Purchaser may later agree in writing to amend this Agreement.

Section 8.7    No Oral Amendment.  This Agreement may not be amended, waived or terminated orally or by any act or omission made individually by Seller or Purchaser but may be amended, waived or terminated only by a written document signed by the party against which enforcement of the amendment, waiver or termination is sought.

Section 8.8    Joint and Several Liability.  If Purchaser or Seller consists of more than one person or entity, the obligations and liabilities of each such person or entity under this Agreement are joint and several.

Section 8.9    Successors and Assigns.  This Agreement binds Seller and Purchaser and their respective successors and assigns and inures to the benefit of Seller and Purchaser and their respective successors and permitted assigns.  This Agreement also inures to the benefit of all Indemnified Parties and Released Parties pursuant to Article VII.  Except as expressly provided above, this Agreement is not intended to give or confer any benefits, rights, privileges, claims, actions, or remedies to any person or entity as a third party beneficiary, decree, or otherwise.

Section 8.10   Duplicates and Counterparts; Facsimile.   Duplicate counterparts of this Agreement may be executed and together will constitute a single original document. Transmission by facsimile of the signature of any party to this Agreement shall constitute execution and delivery of this Agreement or such document, provided that the party transmitting the same shall be obligated to promptly deliver the executed original thereof to the other party.

Section 8.11   Rights Cumulative; Waivers.   The rights of each of Seller and Purchaser under this Agreement are cumulative and may be exercised as often as such party considers appropriate.  The rights of each of Seller and Purchaser under this Agreement will not be capable of being waived or varied except by an express waiver or variation in writing.  Any failure to exercise or any delay in exercising any of such rights will not operate as a waiver or variation of that or any other such right.  Any defective or partial exercise of any of such rights will not preclude any other or further exercise of that or any other such right.  No act or course of conduct or negotiation on the part of any party will in any way preclude such party from exercising any such right or constitute a suspension or any variation of any such right.

Section 8.12   Assignment.   This Agreement is not assignable by Purchaser; provided, however, that Purchaser will have the right to name an Affiliate as the assignee of the Loan Files pursuant to this Agreement; provided, however, that Purchaser shall notify Seller of any such change no less than two (2) Business Days prior to the Closing Date.

Section 8.13   Fees and Expenses.   Purchaser and Seller shall each bear all costs, fees and expenses incurred thereby in connection with this Agreement, including without limitation, the fees and expenses of accountants, appraisers, attorneys, servicers and other consultants and other costs and expenses in connection with the preparation of this Agreement and the consummation of the transaction contemplated by this Agreement.  Purchaser shall pay all other costs and expenses related to the transaction.  Without limitation of the foregoing, Seller shall not bear the cost of any recordation fees and/or taxes associated with selling, transferring, and assigning the Loans, the Servicing Rights, or any interest therein, including, without limitation, the Assignments of Deeds of Trust, assignments of any financing statements, and any fees and/or taxes associated with other transfer documents which are to be recorded in connection with the transactions contemplated hereby.

Section 8.14   Agreement Not Binding.   Nothing contained in this Agreement will create any obligation on the part of Seller under this Agreement unless and until Seller has executed and delivered to Purchaser a counterpart copy of this Agreement.

Section 8.15   Further Assurances.   Seller and Purchaser shall, upon the request of the other, execute and deliver such assignment and assumption documents, or perform such other acts, as may be reasonably required in order to effect, perfect or confirm the assignment by Seller, and the assumption by Purchaser, of all right, title, interest and obligations of Seller under the Loans and the Servicing Rights, and to complete the transactions contemplated by this Agreement, including correcting any errors or omissions in the Closing Documents delivered under Sections 3.3 and 3.4 hereof and including such further acts as are reasonably necessary to assure the timely transfer of the Loan Assets and Loan Documents.

Section 8.16    Attorneys' Fees.  If any action or claim is made by any party hereto against the other relating to this Agreement or the subject matter hereof, the prevailing party shall be entitled to their reasonable attorneys' fees and legal expenses, including all fees, costs and expenses incurred in any appellate or bankruptcy proceedings, or in any post-judgment proceedings to collect or enforce any judgment.  This provision for the recovery of post-judgment fees, costs, and expenses is separate and several and shall survive the merger of this Agreement into any judgment.  The term "prevailing party" means the party obtaining substantially the relief sought, whether by compromise, settlement, or judgment.

## ARTICLE IX

### DISPUTE RESOLUTION

Section 8.17    Court Trial.  Each party to this Agreement hereby expressly waives any right to trial by jury with respect to any claim, demand, action or cause of action (a) arising under this Agreement, including any present or future modification thereof, or (b) in any way connected with or related or incidental to the dealings of the parties hereto or any of them with respect to this Agreement (as now or hereafter modified) or any other instrument, document or agreement executed or delivered in connection herewith, or the transactions related hereto or thereto, in each case whether such claim, demand, action or cause of action is now existing or hereafter arising, and whether sounding in contract or tort or otherwise; and each party hereby agrees and consents that any such claim, demand or cause of action shall be decided by court trial without a jury, and that any party to this Agreement may file an original counterpart or a copy of this section with any court as written evidence of the consent of the parties hereto to the waiver of any right they might otherwise have to trial by jury.

Section 8.18    Venue.  Any action shall be commenced and maintained in the Court.  The parties irrevocably consent to jurisdiction and venue in such Court and agree not to seek transfer or removal of any action commenced in accordance with the terms of this Article IX.

**IN WITNESS WHEREOF**, Seller and Purchaser have executed and delivered this Agreement as of the date first set forth above.

**PURCHASER:**
WESTERN ALLIANCE BANK, an Arizona corporation

By: _Wf_

Name: WARREN FORSYTHE

Title: SENIOR VICE PRESIDENT

**SELLER:**

Thomas A. Seaman, as Receiver

## EXHIBIT A

## TABLE OF SBA 504 AND NON-SBA LOAN INTERESTS

## EXHIBIT B

## DEFINITIONS

"**Affiliate**" is defined, in the case of any entity, as the entity's parent or any wholly or partially-owned subsidiary of the entity or the entity's parent.

"**Agreement**" is defined as this Loan Purchase and Sale Agreement, together with all Exhibits, Schedules and attachments annexed hereto and made a part hereof, as the same may be amended, supplemented or modified.

"**Assignments of Deeds of Trust**" is defined in Section 3.4(a) of the Agreement.

"**Assumption Agreement**" is defined in Section 3.3(b) of the Agreement.

"**Borrower Notice Letter**" is defined in Section 3.3(c) of the Agreement.

"**Business Day**" is defined as any day, other than a Saturday, a Sunday, a federal holiday or any day on which banking institutions in Los Angeles, California are not generally open for business.

"**Case**" is defined in the second Recital of the Agreement.

"**Claim**" is defined as any and all liabilities, losses, claims (including third party claims), demands, damages (of any nature whatsoever), causes of action, costs, penalties, fines, judgments, attorneys' fees, consultants' fees and costs and experts' fees.

"**Closing**" is defined as the consummation of the purchase and sale of all of Seller's right, title and interest in the Loans and the Servicing Rights as contemplated by this Agreement pursuant to delivery of the Closing Documents, payment of the Purchase Price and sale and purchase of the Loans and the Servicing Rights in accordance with this Agreement and the Sale Order, which Closing will occur at or before 2:00 p.m.  (Pacific Standard Time) on the Scheduled Closing Date.

"**Closing Date**" is defined as the date on which the Closing actually occurs.

"**Closing Documents**" is defined as all documents that are required to be delivered by Seller or Purchaser at the Closing in accordance with the Agreement.

"**Court**" is defined as the United States District Court for the Northern District of California, San Jose Division.

"**Deposit**" is defined in Section 3.2(a) hereof.

"**Effective Date**" is defined as December 5, 2014.

"**Indemnified Party**" and "**Indemnified Parties**" are each defined in Section 7.1 hereof.

"**Loan**" or "**Loans**" is defined in the first Recital of the Agreement.

"**Loan Assets**" is defined in the first Recital of the Agreement.

"**Loan Documents**" means any and all loan documents contained in the Loan Files as defined herein and all other loan agreements, promissory notes, deeds of trust/mortgages, guarantee agreements and any other documents and instruments evidencing or otherwise securing the Loans, Loan Assets or agreements set forth as Loan Files.

"**Loan Files**" is defined as, with respect to the Loans,

      (a)     the original promissory notes (and any endorsements thereto) or, if such original promissory notes are lost, lost note affidavits signed by Seller;;

      (b)     the original or copy of the original recorded Deed of Trust for each Loan, and any intervening assignments (or certified copies of such assignments) of the original Deed of Trust for each Loan, in each case with evidence of recording indicated thereon;

      (c)     all of the other Loan Documents;

      (d)     the original or copy of all original assumption, modification, amendment and substitution agreements in those instances, if any, where the promissory notes, the Deeds of Trust or any other documents in the Loan Files have been assumed, modified, amended or substituted;

      (e)     the original, or a copy by the issuing title insurance company, of an original lender's title insurance policy for the Loans;

      (f)     the original or copy of the filed UCC Financing Statements; and

      (g)     all files, correspondence, third party studies, surveys and other material documents related to the Loans held by Seller and reasonably required for the servicing of the Loans furnished by Seller to Purchaser for review by Purchaser prior to the Closing Date, other than those items and materials that are deemed by Seller in its sole discretion to be confidential or proprietary in nature, including, without limitation, any internal memoranda of Seller, including, but not limited to, loan underwriting and credit committee memorandum; provided, however, that no such confidential or proprietary materials, other than confidential or proprietary materials included in the Loan File, amend, modify or waive the rights or remedies of the holder of any promissory note under the Loan Documents.

"**Notice**" is defined as any and all acceptances, approvals, consents, demands, notices, requests and other communications required or permitted to be given under this Agreement.

"**Order**" is defined in the second Recital above.

"**Purchase Price**" is defined as the amount payable by Purchaser in consideration of the transfer of the Loans Assets to Purchaser in accordance with this Agreement, such amount being equal to 110% of the sum of the unpaid balances of the SBA Loans and 60% of the Non-SBA Loans described in **Exhibit A**, as of the Closing Date.  Purchaser and Seller agree that the calculation of

the Purchase Price shall be subject to the following adjustments to reflect the impact of time and payments upon the Purchase Price:

- Purchaser shall receive a credit for interest on the loans and servicing income collected by the Seller for the month in which the sale closes for the period after the Closing Date;

- Purchaser will collect all loan payments after the Closing Date including any payments from borrowers who have not made their current monthly payment as of the Closing Date. In the event such payments are made to Seller, Seller shall immediately remit them to Purchaser. Purchaser shall retain the portion of interest and servicing income for the post-Closing Date time period from any payments it receives that were due prior to closing and remit to the Seller, interest and servicing income for the period of the current month through the Closing Date, within ten days of receipt. Purchaser shall retain all principal payments made after the Closing Date.

"**Purchaser**" is defined in the introductory paragraph. Purchaser's address for Notices is as follows:

> WESTERN ALLIANCE BANK
> 3033 W. Ray Rd.
>
> Chandler, AZ 85226
> Attention: Seth Davis

"**Receivership Entities**" is defined as Small Business Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and their subsidiaries and affiliates, including Small Business Capital LLC and SBC Senior Commercial Mortgage Fund, LLC

"**Released Party**" or "**Released Parties**" is defined in Section 7.4 of the Agreement.

"**Sale Order**" is defined as that order entered by the Court approving the sale to Purchaser of the Loan Assets in accordance with the Agreement.

"**Sale Procedures Order**" is defined in the third Recital of the Agreement.

"**SBA**" is defined as the United States Small Business Administration.

"**Scheduled Closing Date**" is defined as the earlier of (a) five Business Days from entry the Sale Order and (b) a date agreed on by Seller and Purchaser.

"**Seller**" is defined in the introductory paragraph of the Agreement. Seller's address for Notices is as follows:

> THOMAS SEAMAN COMPANY
> 3 Park Plaza, Suite 550
> Irvine, California 92614

Facsimile:  (949) 222-0661
Attention:  Thomas A. Seaman CFA

with a
copy to:          Allen Matkins Leck Gamble Mallory & Natsis LLP

515 South Figueroa Street, 9th Floor
Los Angeles, California 90071
Attention:  David Zaro

"**Servicing Rights**" is defined in the first Recital of the Agreement.

"**Settlement Statement**" is defined in Section 3.2(f) of the Agreement. [Not defined]

"**UCC Financing Statement**" is defined as those UCC financing statements filed or recorded in connection with the Loans.

# EXHIBIT C

## RULES OF CONSTRUCTION

1.      References in this Agreement to numbered Articles or Sections are references to the Articles and Sections of this Agreement.  References in this Agreement to lettered Exhibits and numbered Attachments are references to the Exhibits and Attachments attached to this Agreement, all of which are incorporated in and constitute a part of this Agreement.  Article, Section, Exhibit and Attachment captions used in this Agreement are for reference only and do not describe or limit the substance, scope or intent of this Agreement or the individual Articles, Sections, Exhibits or Attachments of this Agreement.

2.      The terms "include", "including" and similar terms are construed as if followed by the phase "without limitation."

3.      The term "Property" is construed as if followed by the phrase "or any part thereof".

4.      Any agreement by or duty imposed on either party in this Agreement to perform any obligation or to refrain from any act or omission constitutes a covenant on such party's part and includes a covenant by such party to cause its Affiliates, agents, employees, members, partners, principals, representatives and trustees to perform the obligation or to refrain from the act or omission in accordance with this Agreement.

5.      The singular of any word includes the plural and the plural includes the singular. The use of any gender includes all genders.

6.      The terms "person", "party" and "entity" include natural persons, firms, partnerships, limited liability companies and partnerships, corporations and any other public or private legal entity.

7.      The term "provisions" includes terms, covenants, conditions, agreements and requirements.

8.      The term "amend" includes modify, supplement, renew, extend, replace, restate and substitute and the term "amendment" includes modification, supplement, renewal, extension, replacement, restatement and substitution.

9.      No inference in favor of or against a party with respect to this Agreement may be drawn from the fact that the party drafted this Agreement.

10.      The term "certificate" means the sworn, notarized statement of the entity giving the certificate, made by a duly authorized person satisfactory to Seller affirming the truth and accuracy of every statement in the certificate.  Any document that is "certified" means the document has been appended to a certificate of the entity certifying the document that affirms the truth and accuracy of everything in the document being certified.  In all instances the entity issuing a certificate must be satisfactory to Seller and Purchaser.

11.     All obligations, rights, remedies and waivers contained in this Agreement will be construed as being limited only to the extent required to be enforceable under applicable law.

## EXHIBIT D

## WIRING INSTRUCTIONS

| | |
|---|---|
| **Wire to:** | Small Business Capital Corp (Brokers Trust), Thomas Seaman as Receiver |
| **ABA Number:** | 121000248 |
| **For Credit To:** | Small Business Capital Corp, Thomas Seaman as Receiver |
| **Account Number:** | 2607400120 |
| **Reference:** | Loan portfolio sale |

# **EXHIBIT E**

## **FORM OF ALLONGE**

### **ALLONGE TO SBA FORM 2401 (FMLP)**

SBA 504 Loan No. _____

In connection with the transfer of the Seller Receipt for the above-referenced FMLP Loan, the Purchaser listed below acknowledges, assumes and accepts all rights, title, obligations and responsibilities of Seller under the attached SBA Form 2401 FIRST LIEN POSITION 504 LOAN POOL GUARANTEE AGREEMENT ("Guarantee Agreement"). Purchaser acknowledges that the transfer of the Seller Receipt is subject to SBA's existing rights, including SBA's rights under Paragraph 2 of the Guarantee Agreement.

This Allonge is attached to and made part of the Guarantee Agreement.

_____
(PURCHASER)

By: _____(SEAL)
Name: _____
Title: _____

Dated: _____

**EXHIBIT F**

**FORM OF ASSIGNMENT AND ASSUMPTION**
**OF AGREEMENTS AND BILL OF SALE**

FOR VALUE RECEIVED, Thomas A. Seaman, Receiver, appointed by the United State District Court for the Northern District of California for Small Business Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and their subsidiaries and affiliates, including Small Business Capital LLC and SBC Senior Commercial Mortgage Fund, LLC ("**Assignor**"), assigns, conveys, grants, sets over and transfers to

Western Alliance Bank, an Arizona corporation ("**Purchaser**")

("**Assignee**"), all of Assignor's right, title and interest, if any, in and to (1) the agreements listed on **Attachment 1** to this Assignment (collectively, the "**Agreements**"), (2) to the extent paid after the Effective Date, all scheduled and unscheduled payments, including any proceeds of any insurance claims or settlements or casualty or eminent domain proceedings or any payments made by Borrower, arising in connection with the Loans or the Servicing Rights, and (3) the Loan Files, including, without limitation, the servicing files (to the extent in the possession and/or control of Assignor) and the items listed on **Attachment 1** hereto.

TOGETHER WITH all of Assignor's right, title and interest, if any, in and to all notes and contracts described or referred to in the Agreements, all guarantees of the Agreements, all assumptions of the Agreements, the money due and to become due thereon with interest and all contract rights accrued or to accrue under the Agreements.

Assignee unconditionally assumes all liabilities and obligations of Assignor arising under the Agreements on and after the Effective Date, including, without limitation, any obligation under the Agreements to make any future advances to the borrower thereunder at any time on and after the Effective Date.

This Assignment and Assumption of Agreements and Bill of Sale (this "**Assignment and Assumption**") will be binding on and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

Except as set forth in the Loan Purchase and Sale Agreement, dated as of December 5, 2014, between Assignor and Assignee (the "**Purchase Agreement**"), this Assignment and Assumption is made without recourse to or any representation or warranty, express or implied, by Assignor. Any such representation or warranty will not inure to the benefit of any assignee of Purchaser other than an assignee permitted under such Purchase Agreement. Capitalized terms not otherwise defined in this Assignment and Assumption shall have the respective meaning ascribed to such term in the Purchase Agreement.

[Will this assignment include the Form 2401 Assignments?]

Dated as of the _____ day of _____, 2014.

                                         **ASSIGNEE**:

                                          Western Alliance Bank, an Arizona corporation

                                          By:_____
                                          Name:_____
                                          Title:_____

**ASSIGNOR**:

                                          _____
                                          Thomas A. Seaman, Receiver

**ATTACHMENT 1 TO EXHIBIT F**

**AGREEMENTS**

A.      Loan Documents

        1.

## EXHIBIT G

## FORM OF NOTICE TO BORROWER

_____, 2014

**BY CERTIFIED MAIL/**
**RETURN RECEIPT REQUESTED**

_____

_____

_____

Attention: _____

        Re:

Ladies and Gentlemen:

     Thomas A. Seaman, Receiver, appointed by the United State District Court for the Northern District of California, for Small Business Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and their subsidiaries and affiliates, including Small Business Capital LLC and SBC Senior Commercial Mortgage Fund, LLC ("**Seller**") and Western Alliance Bank ("**Purchaser**"), having an address set forth below, hereby notify _____ ("**Borrower**") that on the date hereof, Seller sold its entire interest in the referenced loan ("**Loan**") to Purchaser. Seller and Purchaser irrevocably and unconditionally authorize and direct Borrower to make each payment of interest, principal, escrows, impounds and all other amounts payable with respect to the Loan payable to the order of: Western Alliance Bank

and to deliver each payment to the following address:

        WESTERN ALLIANCE BANK
        3033 W. Ray Rd.
        Chandler, AZ 85226
        Attention: Seth Davis

Phone: 602-952-5468 If Borrower makes any payments other than in accordance with this authorization and direction, Borrower will not receive credit for the payment until otherwise properly directed. Borrower should notify Purchaser at the address and phone number set forth above if Borrower has any questions or comments on this matter.

Thank you very much for your cooperation.

Very truly yours

**<u>PURCHASER</u>**:

Western Alliance Bank, an Arizona corporation


By:_____
Name:_____
Title:_____

**SELLER**:

_____

Thomas A. Seaman, Receiver

**EXHIBIT H**

**ALLONGE TO NOTE**

LOAN #_____

**[insert name of note]** Note, dated _____, in the original principal amount of _____ 00/100  dollars  ($_____.00),  made  by **[Maker]** in favor of **[Lender]**.

Endorsed to the order of _____, a _____, such endorsement being without representation or warranty, express or implied, and without recourse in any event whatsoever to or against the undersigned.

Dated as of _____, 2014

[LENDER NAME]

By:    _____
    Name: _____
    Title: _____

# EXHIBIT I

## FORM OF ASSIGNMENT OF DEED OF TRUST

[please provide forms]

## EXHIBIT J

## RECEIPT FOR LOAN FILE

WESTERN ALLIANCE BANK, an Arizona corporation ("**Purchaser**") acknowledges receipt, in conformance with the requirements of the Loan Purchase and Sale Agreement, dated as of _____ ____, 2014, between Thomas A. Seaman, Receiver, appointed by the United State District Court for the Northern District of California, for Small Business Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and their subsidiaries and affiliates, including Small Business Capital LLC and SBC Senior Commercial Mortgage Fund, LLC ("**Seller**") and Purchaser (the "**Agreement**"), of the Loan Files (as defined in the Agreement; capitalized terms not defined in this receipt have the meanings given them in the Agreement) that is described in **Schedule A** attached to this receipt.

Dated as of the _____ day of _____, 2014.

<div style="margin-left:40%">

WESTERN ALLIANCE BANK, an Arizona corporation

By:_____
Name:_____
Title:_____

</div>

## SCHEDULE A TO EXHIBIT J

## LOAN FILES

      (a)    the original promissory notes (and any endorsements thereto) or, if such original promissory notes are lost, lost note affidavits signed by Seller;

      ;

      (b)    the original or a copy of the original recorded Deed of Trust for each Loan, and any intervening assignments (or certified copies of such assignments) of the original Deed of Trust for each Loan, if any, in each case with evidence of recording indicated thereon;

      (c)    all of the other Loan Documents;

      (d)    the original or a copy of all original assumption, modification and substitution agreements in those instances, if any, where the promissory notes, the Deeds of Trust or any other documents in the Loan File have been assumed or modified;

      (e)    the original, or a copy of an original lender's title insurance policy for the Loans, if any;

      (f)    the original or a certified copy of the UCC Financing Statements; and

      (g)    all files, correspondence, third party studies, surveys and other material documents related to the Loans and the Servicing Rights held by Seller or its servicer in connection with the servicing of the Loans other than those items and materials that are deemed by Seller in its reasonable discretion to be confidential or proprietary in nature, including, without limitation, any internal memoranda of Seller, including, but not limited to, loan underwriting and credit committee memorandum; provided, however, that no such confidential or proprietary materials, other than confidential or proprietary materials included in the Loan Files, amend, modify or waive the rights or remedies of the holder of any promissory notes under the Loan Documents.

# **PROOF OF SERVICE**

*Securities and Exchange Commission v. Small Business Capital Corp; Mark Feathers, et al.*
USDC, Northern District of California – San Jose Division – Case No. 5:12-cv-03237-EJD

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 515 S. Figueroa Street, 9th Floor, Los Angeles, California 90071-3398.

A true and correct copy of the foregoing document(s) described below will be served in the manner indicated below:

**NOTICE OF LODGING PROPOSED ORDER GRANTING MOTION OF RECEIVER AND APPROVING SALE OF 504/FMLP LOAN PORTFOLIO AND NON-SBA LOANS**

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – the above-described document will be served by the Court via NEF.   On **December 23, 2014**, I reviewed the CM/ECF Mailing Info For A Case for this case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Eric James Adams**
  eric.adams@sba.gov

- **John Brian Bulgozdy**
  bulgozdyj@sec.gov,LAROFiling@sec.gov,delgadilloj@sec.gov,mitchells@sec.gov, berryj@sec.gov,irwinma@sec.gov

- **California Business Bank**
  rormond@buchalter.com

- **Lynn Marie Dean**
  deanl@sec.gov,larofiling@sec.gov,mitchells@sec.gov,berryj@sec.gov irwinma@sec.gov

- **Ted Fates**
  tfates@allenmatkins.com,bcrfilings@allenmatkins.com,jbatiste@allenmatkins.com

- **Susan Frances Hannan**
  hannans@sec.gov

- **John M. McCoy , III**
  mccoyj@sec.gov

- **Richard Paul Ormond**
  rormond@buchalter.com,jwright@buchalter.com,clazo@buchalter.com

- **Loraine L. Pedowitz**
  lpedowitz@allenmatkins.com

- **Thomas A. Seaman**
  tom@thomasseaman.com

982442.06/LA

- **David Robert Zaro**
  dzaro@allenmatkins.com

2.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served)**:  On  **December 23, 2014** , I served the following person(s) and/or entity(ies) in this case by placing a true and correct copy thereof in a sealed envelope(s) addressed as indicated below.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it is deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion for party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 (one) day after date of deposit for mailing in affidavit.

*Pro Se* **Defendant**                                                              **U.S. First Class Mail**
Mark Feathers
1520 Grant Road
Los Altos, CA  94024
650.776.2496 (phone) | 650.961.2382 (fax)
markfeathers@sbcglobal.net

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on **December 23, 2014** at Los Angeles, California.

/s/ *Martha Diaz*
_____
Martha Diaz

982442.06/LA

- 2 -