EXHIBIT "A"

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

# SEC RECEIVERS AND THE PRESUMPTION OF INNOCENCE: THE PROBLEM WITH PARALLEL PROCEEDINGS IN SECURITIES CASES AND THE EVER INCREASING POWERS OF THE RECEIVERS

I.     INTRODUCTION .................................................................. 204
II.    UNDERSTANDING THE SEC ............................................... 205
III.   UNDERSTANDING ENFORCEMENT BY THE SEC ................ 207
       A.  Process of Enforcement of Securities Laws ................ 207
       B.  Civil Enforcement ..................................................... 207
           1.  Injunctive Relief ................................................. 208
           2.  Ancillary or Equitable Relief .............................. 209
           3.  Burden of Proof .................................................. 211
           4.  Contempt ............................................................ 212
IV.    EXAMINING RECEIVERS .................................................... 212
       A.  Receiver Authority and Powers ................................. 213
       B.  Jurisdictional Complications ..................................... 214
       C.  Termination of the Receiver ...................................... 215
       D.  Problems Associated With Receivers .......................... 216
V.     PARALLEL PROCEEDINGS .................................................. 217
       A.  Parallel Proceedings are Constitutional .................... 217
       B.  The Process ............................................................... 218
       C.  Limitations on the Government .................................. 219
       D.  Stay of the Civil Proceeding ..................................... 222
VI.    OTHER CONSTITUTIONAL PROBLEMS ................................ 224
       A.  Double Jeopardy Clause ............................................ 224
       B.  The Presumption of Innocence ................................... 225
       C.  The Supreme Court and the Presumption of
           Innocence ................................................................. 226
VII.   NO PRESUMPTION OF INNOCENCE ..................................... 227
       A.  Cases and Receivers .................................................. 227
       B.  Receivers Violate the Presumption of Innocence ......... 229
       C.  Why the Supreme Court Should Decide This Issue ..... 230
VIII.  CONCLUSION .................................................................... 230

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

204 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

## I. INTRODUCTION

Investor fraud, Ponzi schemes, and white collar crime: all of these words evoke images in Americans' minds from the barrage of media coverage of Enron and Ken Lay, Bernard Madoff, Quest Communications, and Stanford Financial, among others. However simple the media may portray these crimes, the legal implications are far more intricate and complex. The web of parallel proceedings between the civil and criminal enforcement of federal regulatory statutes makes it very difficult to see where the Securities and Exchange Commission (SEC) stops and the Department of Justice begins.[1] While parallel proceedings of civil and criminal enforcement of federal law are constitutional, the line has become increasingly blurred as to when governmental agencies are acting in bad faith and overstepping their bounds.[2] Legal implications of these parallel proceedings have been challenged,[3] but the courts typically side with the government.[4]

The focus of this paper is on the implications parallel proceedings have on the constitutional rights of criminal defendants. Specifically, this paper focuses on the violation of the presumption of innocence, which is at the core of constitutional rights in the United States. This paper will explore the use of receivers in SEC actions, who effectively take over a company, corporation, or individual and liquidate the assets before the Department of Justice is handed the case for criminal prosecution and trial by jury.[5] The presumption of innocence in this realm is a novel question of the law that the Supreme Court has yet to decide; however, it most likely will be

---

1. *See* Gary P. Naftalis, *Defending Parallel Civil and Criminal Proceedings*, SM090 ALI-ABA 1257, 1294 (2007); Margaret V. Sachs, *Harmonizing Civil and Criminal Enforcement of Federal Regulatory Statutes: The Case of the Securities and Exchange Act of 1934*, 2001 U. ILL. L. REV. 1025, 1040 (2001).

2. *See* United States v. Kordel, 397 U.S. 1, 6 (1970); SEC v. First Fin. Group, Inc., 659 F.2d 660, 667 (5th Cir. 1981); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1374 (D.C. Cir. 1980) (en banc).

3. *See, e.g.*, Hudson v. United States, 522 U.S. 93, 101 (1997) (noting that the Supreme Court has set a very high standard to find a violation of the double jeopardy clause in parallel proceedings).

4. *Id.* at 105.

5. *See* Robert G. Wing & Katherine Norman, *SEC Receivers: What Are They and What Do They Do?*, UTAH B.J., Dec. 20, 2007, at 20; Thomas V. Sjoblom & Benjamin R. Ogletree, *Primer: Parallel Proceedings in Securities Cases 2008*, at *24-25 (PLI Corporate Law & Practice, Course Handbook Series No. 1644, 2008); Naftalis, *supra* note 1, at 1332.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

confronted at some point, as receivers have taken on increasingly powerful roles in recent years.[6]

## II. UNDERSTANDING THE SEC

The creation of the Securities and Exchange Commission can be traced to the Great Stock Market Crash of 1929.[7] In the post-war prosperity that followed World War I, millions of Americans, tempted by promises of riches, set out to make their fortunes in the stock market.[8] When the stock market collapsed in October 1929, public confidence was destroyed, which forced Congress to act to restore the public's faith in capital markets.[9] During the peak years of the Depression, Congress passed the Securities Act of 1933 (Securities Act), and together with the Securities Exchange Act of 1934 (Exchange Act), created the SEC.[10] While there are six federal statutes regarding securities,[11] the Securities Act and the Exchange Act are the most important in that the former governs the primary market and the latter governs the secondary market.[12]

The Securities Act "has two basic objectives: require that investors receive financial and other significant information concerning securities being offered for public sale; and prohibit deceit, misrepresentations, and other fraud in the sale of securities."[13] These objectives are achieved by requiring the registration of securities and through rules which require the disclosure of financial information to the government and to shareholders.[14] Generally, securities sold in the United States

---

6. *See* Julie Triedman, *Smoke . . . But No Fire*, THE AMERICAN LAWYER (Sept. 1, 2009), *available at* http://www.law.com/jsp/tal/PubArticleTAL.jsp?id=1202433237764&slreturn=1&hbxlogin=1.

7. U.S. Securities and Exchange Commission, *The Investor's Advocate: How the SEC Protects Investors, Maintains Market Integrity, and Facilitates Capital Formation*, http://www.sec.gov/about/whatwedo.shtml (last visited Mar. 25, 2011) [hereinafter *The Investor's Advocate*].

8. *Id.*

9. *Id.*

10. *Id.* ("This law, together with the Securities Act of 1934 . . . was designed to restore investor confidence . . . by providing . . . reliable information and clear rules of honest dealing.").

11. *Id.* These statutes include the Securities Act of 1933, Securities Exchange Act of 1934, Trust Indenture Act of 1939, Investment Company Act of 1940, Investment Advisers Act of 1940, and the Sarbanes-Oxley Act of 2002. *Id.*

12. *See* Matthew R. King, Elizabeth Corrigan & Craig Francis Dukin, *Securities Fraud*, 46 AM. CRIM. L. REV. 1027, 1028 (2009).

13. *The Investor's Advocate*, *supra* note 7. Also referred to as the "truth in securities" law, the full text of this Act can be found at: http://www.sec.gov/about/laws/sa33.pdf.

14. *Id.*

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

206 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

must be registered, which calls for "a description of the company's properties and business; a description of the security to be offered for sale; information about the management of the company; and financial statements certified by independent accountants."[15] Civil suits for "injunctive relief" are authorized to be brought by the SEC under Section 20(b) of the Securities Act, "upon a proper showing of possible violations of the securities laws."[16]

The Exchange Act provides broad authority to the SEC to investigate violations of securities laws.[17] It also "identifies and prohibits certain types of conduct in the markets and provides the [SEC] with disciplinary powers over regulated entities and persons associated with them."[18] A company must file annual and other periodic reports, which are available to the public, if the company has assets in excess of $10 million and more than 500 owners of its securities.[19] Similar to section 20(b) of the Securities Act, section 21(d) of the Exchange Act authorizes the SEC to bring civil suits for "injunctive relief" by showing possible violations of securities laws.[20] However, Section 32(a) of the Exchange Act and Rule 10b-5 are the means for pursuing criminal prosecution, over which the Department of Justice has jurisdiction.[21]

The SEC pursues the following goals, according to its website:

> The mission of the U.S. Securities and Exchange Commission is to protect investors, maintain fair, orderly, and efficient markets, and facilitate capital formation.... The laws and rules that govern the securities industry in the United States

15. *Id.*
16. Sjoblom & Ogletree, *supra* note 5, at 16; *see* 15 U.S.C. § 78u(d)(1) (2006) (allowing the SEC to seek a temporary injunction or restraining order).
17. 15 U.S.C. § 78u(a)(1).
18. *The Investor's Advocate, supra* note 7.
19. *Id.*
20. Sjoblom & Ogletree, *supra* note 5, at 16; 15 U.S.C. § 78u(d)(1).
21. King et al., *supra* note 12, at 1029, 1079. Section 32(a) provides criminal penalties for willful violations of the Exchange Act, including large monetary fines and imprisonment. 15 U.S.C. § 78ff(a). Rule 10b-5, which was authorized by section 10(b) of the Securities Act or 15 U.S.C. § 78j(b), provides the basis of a securities fraud: prohibiting the use of interstate commerce "(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5 (2009).

Case5:12-cv-03237-EJD Document1004-2 Filed01/16/15 Page6 of 30

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

derive from a simple and straightforward concept:
all investors, whether large institutions or private
individuals, should have access to certain basic
facts about an investment prior to buying it, and so
long as they hold it. To achieve this, the SEC
requires public companies to disclose meaningful
financial and other information to the public. This
provides a common pool of knowledge for all
investors to use to judge for themselves whether to
buy, sell, or hold a particular security.[22]

## III. UNDERSTANDING ENFORCEMENT BY THE SEC

### A. *Process of Enforcement of Securities Laws*

Violations of federal securities laws allow for administrative,
civil, and criminal remedies, which is why this is such an
intricate area of the law.[23] The civil and administrative remedies
are available to the SEC.[24] First, the SEC initiates an
investigation into a lead that there has been a violation of
securities laws.[25] If the SEC finds that there has been a
violation, it must initiate a formal order that does not require
probable cause as the order is only investigatory.[26] This
investigation is a private matter, and the SEC does not even
have to notify the person being investigated so that the integrity
of the investigation can be preserved.[27]

### B. *Civil Enforcement*

Civil enforcement actions by the SEC for a violation of
securities laws must be brought in federal district court;

---

22. *The Investor's Advocate, supra* note 7.
23. King et al., *supra* note 12, at 1078-79.
24. *Id.* If the action is administrative, it will be brought before an administrative
law judge or the Commission of the SEC. However, if the action is civil, it will be brought
in a federal district court. *See The Investor's Advocate, supra* note 7; King et al., *supra*
note 11, at 1081.
25. *The Investor's Advocate, supra* note 7. The sources of leads include "market
surveillance activities, investor tips and complaints, other Divisions and Offices of the
SEC, the self-regulatory organizations and other securities industry sources, and media
reports." *Id.*
26. King et al., *supra* note 12, at 1080. Under a formal order, the SEC can compel
testimony and production of relevant documents by subpoena. *The Investor's Advocate,
supra* note 7.
27. *See* SEC v. Jerry T. O'Brien, Inc., 467 U.S. 735, 744-45, 750 (1984); *The
Investor's Advocate, supra* note 7.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

208 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

however, the decision to bring such action is at the discretion of the SEC.[28] The remedies available to the SEC include injunctive[29] and ancillary or equitable relief.[30]

### 1. Injunctive Relief

To prevail, the SEC must provide a "proper showing" that there is a "reasonable likelihood" that the defendant is violating or will violate federal securities laws.[31] Interestingly, unlike a private litigant seeking an injunction, the SEC does not have to show that there will be irreparable injury or harm or that there is no other remedy available.[32]

The term "proper showing" is derived from the statute[33] and is generally interpreted to mean reasonable likelihood of future violations, which is shown by past violations.[34] In making this determination, the district court has wide discretion[35] and takes several factors into consideration: "(i) the severity of the violations, (ii) the degree of scienter involved, (iii) the defendant's recognition of the wrongful nature of his conduct, and (iv) her sincerity in refraining from future violations."[36] The severity of the violations refers to the egregiousness of the actions of the defendant.[37] The degree of scienter involved refers to "a mental state embracing intent to deceive, manipulate, or defraud."[38] The defendant's refusal to recognize or show any remorse for his wrongdoing is also taken into account.[39] Finally, the district

---

28. *See* 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d).

29. 15 U.S.C. § 78u(d).

30. Ancillary relief finds much less statutory support. *See infra* Part III.B.2; King et al., *supra* note 12, at 1084.

31. *See Aaron v. SEC*, 446 U.S. 680, 700-01 (1980).

32. *SEC v. Amerifirst Funding, Inc.*, No. 3:07-CV-1188-D, 2007 WL 2192632, at *2 n.7 (N.D. Tex. July 31, 2007) (quoting *SEC v. Prater*, 289 F. Supp. 2d 39, 49 (D. Conn. 2003)).

33. *See* 15 U.S.C. § 77t(b).

34. *See SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004); *Aaron*, 446 U.S. at 700-01; *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692, 698 (9th Cir. 1978).

35. The standard of review for a district court in determining whether or not to issue an injunction is abuse of discretion. *See SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 731 (11th Cir. 2005); *Calvo*, 378 F.3d at 1216; *SEC v. Sargent*, 329 F.3d 34, 38 (1st Cir. 2003).

36. King et al., *supra* note 12, at 1083.

37. *See Calvo*, 378 F.3d at 1216; *Sargent*, 329 F.3d at 39.

38. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). The Supreme Court has held that the SEC must establish scienter to obtain an injunction for violations of Section 10(b), Rule 10b-5 of the Exchange Act, and Section 17(a)(1) of the Securities Act. *See Aaron*, 446 U.S. at 701-02. However, scienter is not required for an injunction under Sections 17(a)(2) or 17(a)(3) of the Securities Act. *Id.* at 702.

39. *See SEC v. Lorin*, 76 F.3d 458, 461 (2d Cir. 1996); *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 426 (D. Md. 2005).

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

courts consider the truthfulness of a defendant's promise to not violate securities laws in the future.[40]

Furthermore, in pursuing a civil enforcement the SEC can seek a temporary restraining order pursuant to Section 21(d) of the Exchange Act.[41]   The SEC may also seek a temporary restraining order *ex parte* in a federal district court.[42]  After the SEC has obtained an injunction, the district court can prohibit those who have violated securities laws from serving as officers or directors of public companies.[43]

## 2.  Ancillary or Equitable Relief

There is much less of a statutory basis for ancillary relief under federal securities laws,[44] and federal district courts have generally used their inherent equitable powers in order to provide ancillary relief.[45]   In 1990, Congress passed the Securities Enforcement Remedies and Penny Stock Reform Act,[46] which added Sections 21(d)(2)-(3) to the Exchange Act.[47] Congress then added more statutory strength to ancillary relief when it added to the Exchange Act Section 21(d)(5) through the Sarbanes-Oxley Act of 2002.[48] Courts across the United States invoke this principle by stating: "[o]nce the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy."[49]  The SEC has broad power

---

40.   SEC v. Fehn, 97 F.3d 1276, 1295-96 (9th Cir. 1996).

41.   15 U.S.C. § 78u(d)(1).

42.   Sjoblom, *supra* note 5, at 24.  The TRO expires ten days after it is entered pursuant to Federal Rule of Civil Procedure 65(b).

43.   15 U.S.C. § 78u(d)(2); 15 U.S.C. § 77t(e).

44.   SEC v. Am. Bd. of Trade, Inc., 830 F.2d 431, 436 (2d Cir. 1987) (holding that while there is no explicit statutory authority, district courts have broad equitable powers and can appoint a receiver to achieve the purposes of federal securities laws).

45.   Jennifer O'Hare, *The Use of the Corporate Monitor in SEC Enforcement Actions*, 1 BROOK. J. CORP., FIN. & COM. L. 89, 93 (2006); *see also* SEC v. Amerifirst Funding, No. 3:07-CV-1188-D, 2007 WL 2192632 at *3 (N.D. Tex. Jul. 31, 2007) (citing SEC v. Posner, 16 F.3d 520, 521-22 (2d Cir. 1994) ("The court has broad equitable power in securities fraud cases to fashion appropriate ancillary remedies necessary to grant full relief.")).

46.   Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101-429, 104 Stat. 931 (1990).

47.   15 U.S.C. § 78u(d)(2)-(3) (authorizing the SEC to obtain ancillary relief and sanctions in the form of monetary civil penalties and prohibiting violators from holding officer-director positions).

48.   15 U.S.C. § 78u(d)(5) (explaining that "[i]n any action or proceeding brought or instituted by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may grant, any equitable relief that may be appropriate or necessary for the benefit of investors").

49.   SEC v. Manor Nursing Ctr., Inc., 458 F.2d 1082, 1103 (2d Cir. 1972). Other courts which have followed this principle include: SEC v. Investors Sec. Corp., 560 F.2d

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

210  *HOUSTON BUSINESS AND TAX LAW JOURNAL*  [Vol. XI

to seek ancillary relief and this relief must only be "appropriate to protect investors and effectuate the purposes of federal securities law."[50]

The types of ancillary remedies include disgorgement, restitution, rescission, asset freeze, appointment of a receiver, appointment of a trustee, and requiring reports.[51]  In *Manor Nursing*, the court held that the ultimate ancillary remedies are disgorgement,[52] restitution, and rescission.[53]  An asset freeze preserves the necessary funds for such remedies by "assur[ing] that any funds that may become due can be collected."[54]  The goal of an asset freeze is to maintain the status quo.[55]

It is a well established equitable remedy for a federal district court to appoint a receiver at the request of the SEC.[56]  A receiver takes control, custody, or management of the corporation or property.[57]  Appointment of a receiver need only be necessary "to effectuate the purposes of the federal securities laws."[58]  The Seventh Circuit is frequently cited for holding that:

> The prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court. It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of [the corporate defendant's] affairs for the benefit of those shown to have been defrauded.... In such cases the appointment of a trustee-receiver

---

561, 567 (3d Cir. 1977); SEC v. Materia, 745 F.2d 197, 200 (2d Cir. 1984); SEC v. Current Fin. Servs., Inc., 783 F. Supp. 1441, 1443 (D.D.C. 1992).

50.  King et al., *supra* note 12, at 1084.

51.  *See Current Fin. Servs., Inc.*, 783 F. Supp. at 1443.

52.  Disgorgement is the forced return of profits that were obtained by fraud to the victims of such fraud. *See King et al., supra* note 12, at 1084. In using this remedy, a court does not have to find that future violations are likely, as is required in obtaining an injunction. SEC v. Colello, 139 F.3d 674, 679 (9th Cir. 1998).

53.  *Manor Nursing*, 458 F.2d at 1103-06.

54.  SEC v. Unifund SAL, 910 F.2d 1028, 1041 (2d Cir. 1990).

55.  Sjoblom, *supra* note 5, at 24.

56.  SEC v. First Fin. Group of Tex., 645 F.2d 429, 438 (5th Cir. 1981) (citing cases that follow this principle: L.A. Trust Deed & Mortgage v. SEC, 285 F.2d 162, 181 (9th Cir. 1960); Commodity Futures Trading Comm'n v. Muller, 570 F.2d 1296, 1300 (5th Cir. 1978); SEC v. Investors Sec. Corp., 560 F.2d 561, 566-67 (3rd Cir. 1977); SEC v. Beisinger Indus., 552 F.2d 15, 18-19 (1st Cir. 1977); *Manor Nursing*, 458 F.2d at 1103).

57.  *See infra*, Part IV.

58.  *See Manor Nursing*, 458 F.2d at 1105.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

becomes a necessary implementation of injunctive relief.[59]

In making the decision to appoint a receiver, courts take a number of factors into consideration, such as "fraudulent conduct by the defendant; imminent danger of property being lost, concealed, or squandered; failures to comply with the court's orders; the inadequacy of available legal remedies; plaintiff's probability of success in the action; and whether interests of plaintiff will be well served by the receivership."[60]

### 3. Burden of Proof

The burden of proof on the plaintiff in most civil law suits is preponderance of the evidence.[61] The Supreme Court has also applied this burden of proof to actions brought by the SEC under the Securities Act[62] and in SEC administrative enforcements.[63] Many defense lawyers argue that the common law burden of proof for civil fraud actions is clear and convincing evidence; however, the Supreme Court has held that this is not applicable to anti-fraud provisions of securities laws.[64] Most of the lower courts also hold that the burden of proof is a preponderance of the evidence standard in civil enforcement actions.[65]

Therefore, in determining if there is a "proper showing" for an injunction as discussed *supra*,[66] the burden of proof on the SEC is by a preponderance of the evidence.[67] The burden is also preponderance of the evidence for securities laws that require the

---

59.   SEC v. Keller Corp., 323 F.2d 397, 403 (7th Cir. 1963); *see also Manor Nursing*, 458 F.2d at 1105; SEC v. Current Fin. Servs., Inc., 783 F. Supp. 1441, 1443 (D.C. Cir. 1992); *First Fin.*, 645 F.2d at 438.

60.   Carl H. Loewenson, *Court-Appointed Receivers*, in PARALLEL PROCEEDINGS IN SECURITIES CASES 2008, at 61, 66 (PLI Corp. Law & Practice, Course Handbook Series No. 14655) 2008 (citing Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316-17 (8th Cir. 1993)).

61.   SEC v. C.M. Joiner Leasing Corp., 320 U.S. 344, 355 (1943).

62.   *Id.* (explaining that "[w]here this proof is offered in a civil action, as here, a preponderance of the evidence will establish the case").

63.   Steadman v. SEC, 450 U.S. 91, 96 (1981) (holding that the "preponderance-of-the-evidence standard should be applied").

64.   *See* Herman & MacLean v. Huddleston, 459 U.S. 375, 387-89 (1983).

65.   SEC v. Moran, 922 F. Supp. 867, 888-89 (S.D.N.Y. 1996).

66.   *See supra* Part III.B.1.

67.   *See* SEC v. Amerifirst Funding, No. 3:07-CV-1188-D, 2007 WL 2192632, at *3-4 (N.D. Tex. July 31, 2007) (finding a "proper showing" based on the preponderance of the evidence and granting equitable and ancillary relief, including appointment of a receiver).

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

212 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

SEC to show that the defendant acted with scienter.[68] This burden is similarly applied to injunctive or ancillary relief.[69]

### 4. Contempt

The SEC uses contempt proceedings to enforce judicial decrees.[70] In the event of noncompliance with ancillary relief, the SEC will pursue contempt proceedings.[71] For example, in *SEC v. Porto*, the defendant was held to be in civil contempt for not paying monthly payments on a disgorgement judgment.[72] Civil contempt is not meant to be punitive, rather, it is an equitable remedy used to enforce compliance with a court order and it implies that the defendant can comply with the order.[73] Criminal contempt is punitive for violating a court order, but a defendant charged with criminal contempt is still entitled to the same constitutional protections as a criminal defendant.[74]

## IV. EXAMINING RECEIVERS

When an action is brought by the SEC against corporate entities or individuals who have allegedly broken securities laws, a judge may appoint an SEC receiver.[75] A receiver is an expensive, drastic and extraordinary equitable remedy.[76] The receiver is not an employee of the SEC, but is instead an officer of the court, responsible only to the appointing judge.[77] Often, the receiver is an accountant or attorney in private practice because those employed by the United States Government are prohibited from serving as receivers.[78]

---

68.  *Moran*, 922 F. Supp. at 891.
69.  See Sjoblom & Ogletree, *supra* note 5, at 16, 25.
70.  *Id.* at 26 (citing SEC v. Moss, 644 F.2d 313 (4th Cir. 1981); SEC v. Bankers Alliance Corp., 881 F. Supp. 673 (D.D.C. 1995); SEC v. Musella, 818 F. Supp. 600 (S.D.N.Y. 1993)).
71.  *See, e.g.*, SEC v. Porto, 739 F. Supp. 1236, 1236 (N.D. Ill. 1990).
72.  *Id.*
73.  See Sjoblom & Ogletree, *supra* note 5, at 26-27. Examples of civil contempt include a witness refusing, without just cause, to testify or to turn over information pursuant to a court order. *See id.* at 27.
74.  *See id.* at 28.
75.  Wing & Norman, *supra* note 5, at 20. *See* discussion of the procedural appointment of receivers, including burden of proof, *supra* Part III.
76.  See Loewenson, *supra* note 60, at 66 (citing Ferguson v. Tabah, 288 F.2d 665 (2d Cir. 1961); Citibank, N.A. v. Nyland, Ltd., 839 F.2d 93, 97 (2d Cir. 1988)).
77.  *Id.* at 65-66; *see also* SEC v. Am. Principals Holding, 962 F.2d 1402, 1408-09 (9th Cir. 1992) (explaining that the court-appointed receiver is an officer of the court and not an agent of the company in receivership).
78.  *See* Wing & Norman, *supra* note 5, at 20.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

Receivers and receiverships have been in the news because of several large alleged Ponzi schemes which received national attention, including those involving Bernard Madoff and Stanford Financial. These illegal pyramid schemes get their name from Charles Ponzi, who cheated thousands of New England residents into investing in a postage stamp speculation scam in the 1920s.[79] These schemes promise incredible returns when compared to those of a bank and soon attract numerous investors.[80] Although the first few investors are usually paid to make the scheme appear legitimate, the "rob-Peter-to-pay-Paul" principle soon takes over, as money from new investors is used to pay off old investors until the entire scheme collapses.[81] If an alleged Ponzi scheme is discovered before it has collapsed, the SEC may attempt to freeze the assets of the Ponzi participants and appoint a receiver to prevent the dissipation of those assets.[82]

### A. Receiver Authority and Powers

When appointed, the receiver is given the authority to marshal company assets;[83] his goal is to benefit the allegedly defrauded investors.[84] To accomplish this goal, the court typically has wide discretion and will usually grant very broad powers to the receiver.[85] The receiver in effect becomes the corporation, and some of its powers include investigating and making financial reports to the SEC[86] and the court,[87] preventing

---

79.  *Ponzi Schemes - Frequently Asked Questions*, http://www.sec.gov/answers/ponzi.htm (last visited Mar. 4, 2011).

80.  *Id.*

81.  *See id.*

82.  *See* Wing & Norman, *supra* note 5, at 20. However, not every action requires the appointment of a receiver. If there are insufficient assets to be recovered or if the violations are not egregious enough to warrant investigation, a court may simply appoint a special agent to monitor the company without any authority to control its operations. *Id.* at 20-21.

83.  *See* Sjoblom & Ogletree, *supra* note 5, at 25. In *SEC v. Credit Bancorp, Ltd.*, the receiver was given broad powers to marshal the corporate assets, liquidate those assets, and then reinvest the proceeds in Treasury instruments. *See* SEC v. Credit Bancorp, Ltd., 297 F.3d 127, 130 (2d Cir. 2002).

84.  *See* Wing & Norman, *supra* note 5, at 21.

85.  *See id.* at 21-22. These powers include the power to sue on behalf of the receivership and to place the receivership in bankruptcy. *See, e.g.,* SEC v. Investors Sec. Corp., 560 F.2d 561, 566-67 (3d Cir. 1977) (authorizing the receiver to bring suit on behalf of the corporation); SEC v. Berger, 244 F. Supp. 2d 180, 183, n.1 (S.D.N.Y. 2001) (noting that the receiver caused the defendant companies to file Chapter 11 bankruptcy and was later appointed trustee of the proceeding).

86.  SEC v. Koenig, 469 F.2d 198, 202 (2d Cir. 1972) (noting that the receiver had authority to make financial reports to the SEC and the shareholders, along with holding a

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

214 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

further violations of federal securities laws,[88] and incurring expenses.[89] Sometimes the goal of the receiver is simply to preserve the assets until the suit is resolved.[90] The receiver will operate any income-producing assets until they are sold, sell any real or personal property it controls, and attempt to trace the assets and recover funds from investors who received more than they invested.[91] The receiver has discretion to gather, manage, and liquidate all of the receivership company's assets.[92] Additionally, the court has the authority to prohibit litigation against the receiver.[93]

### B. *Jurisdictional Complications*

Jurisdictional limits can present problems for a receiver. Receivership property is usually located in several states, and under 28 U.S.C. § 959, the receiver is directed to manage the property pursuant to the laws of the state where the property is situated.[94] Process may be served and executed in any federal court to recover receivership property.[95] In the interest of justice, "receivers may bring suit in the receivership court relating to property found anywhere in the United States."[96] This is preferred because the judge appointing the receiver is thought to be most familiar with the alleged Ponzi scheme and can best reach a fair result.[97] However, the Supreme Court has ruled that the receiver "has no powers except such as are conferred upon him by the order of his appointment and the course and practice

---

shareholders meeting and making the books and records of the corporation available to the shareholders).

88. *Id.*

89. *Id.* This duty includes the hiring of attorneys. *Id.*

90. *See* Consol. Rail Corp. v. Fore River Ry. Co., 861 F.2d 322, 326 (1st Cir. 1988).

91. Wing & Norman, *supra* note 5, at 21. Although similar to a bankruptcy trustee, the receiver is not governed by statute, but by the order of the court appointing him or her. *Id.* Nevertheless, there is one important statute that governs a receiver's actions: 28 U.S.C. § 959 (2006). This is discussed *infra*.

92. Wing & Norman, *supra* note 5, at 22.

93. *Id.; see* SEC v. Wencke, 622 F.2d 1363, 1369 (9th Cir. 1980) (holding that the district court had the power "to issue a stay, effective against all persons, of all proceedings against the receivership entities").

94. 28 U.S.C. § 959(b) (2006).

95. Wing & Norman, *supra* note 5, at 22.

96. *Id.*

97. *Id.*

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

of the court."[98] Thus, a receiver has no power over parties in foreign countries if the district court issuing the order has no jurisdiction in that foreign country.[99] If a mutual legal assistance treaty exists between the nations and provides for such ruling, a foreign court may enforce a freeze order issued by an American court.[100]

Summary proceedings are often used by a receivership court either to determine whether the asset is part of the receivership or to evaluate an objection to a plan of distribution.[101] This proceeding will satisfy due process if it allows the claimant an opportunity to be heard, i.e., offer evidence if facts are in dispute.[102] The receiver may also require that claims be submitted, especially if the company records are fraudulent and it is difficult to determine the amount of investments.[103]

Once the receiver has marshaled all of the company's assets and determined the amount of the claims, the receiver will propose a plan of distribution to the receivership court.[104] This proposed plan will identify the individuals who will receive money as well as state the amount they will receive.[105] The plan usually encounters numerous objections, which will be resolved before a final plan is issued.[106] The receivership once again has wide discretion in formulating a plan of distribution.[107]

## C.  *Termination of the Receiver*

Receivers are supposed to be terminated as soon as they are no longer necessary, and they are certainly unnecessary if they are unprofitable.[108] The decision to terminate is based on the

---

98.    Sjoblom & Ogletree, *supra* note 4, at 26 (quoting Booth v. Clark, 58 U.S. 322 (1854)).

99.    *Id.*

100.   *Id.*

101.   Wing & Norman, *supra* note 5, at 22. Due process simply requires that the claimant has "an opportunity to be heard and to offer evidence where facts are in dispute." *Id.*

102.   *Id.*

103.   *See id.* These forms are tailored to the circumstances in each case. Usually they ask for the amount invested in the company, the amount received from the company, and any documentation supporting these transactions, including documents such as brochures provided to the investor. *Id.*

104.   *Id.*

105.   *Id.*

106.   *See id.*

107.   Wing & Norman, *supra* note 5, at 22.

108.   *See* SEC v. Spence & Green Chem. Co., 612 F.2d 896, 904 (5th Cir. 1980) ("A receivership once imposed on a corporation should be terminated and control returned to those who own the business as soon as the reason for its imposition ceases."); *see also* Bowersock Mills & Power Co. v. Joyce, 101 F.2d 1000, 1004 (8th Cir. 1939) ("There is no

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

216  *HOUSTON BUSINESS AND TAX LAW JOURNAL*  [Vol. XI

discretion of the district court.[109]  Once the receivership has been terminated, a receiver must complete a final accounting and turn all remaining property over to the court.[110]  The court will then issue an order discharging the receiver, at which time the receiver is relieved of all official liabilities.[111]

### D.  *Problems Associated With Receivers*

Many white-collar defense and securities lawyers have concerns with what seems like the ever-increasing powers of receivers.  If the growing list of powers conferred upon receivers by the courts is not enough, receivers themselves seem to be taking on more authority and raising eyebrows.[112]

One problem in particular is the counter-intuitive manner in which receivers are compensated: they pay themselves[113] out of the assets they are supposed to be using to continue to run the corporation or to return to investors, or at times the assets from which they are charged with maintaining the status quo.[114]  The receiver is required to submit an affidavit to the court and all parties with a detailed bill explaining the services and amount of time in which they are requesting payment.[115]  This award of payment is within the discretion of the federal district court.[116]

A recent large-scale example can be seen in the case of Stanford Financial.[117]  The SEC appointed and the Northern District of Texas approved receiver Ralph Janvey.[118]  Within a few months of being appointed, Janvey requested an initial 20 million dollars in fees for his work, the work of outside lawyers, and for other professional services.[119]  Then, that August, he

---

justification for maintaining an unprofitable and futile receivership, and, ordinarily, a court may not charge the expense of such a receivership against anyone.").

109.  *Spence & Green Chem. Co.*, 612 F.2d at 904.

110.  Loewenson, *supra* note 60, at 78.

111.  *Id.*

112.  *See* Asher Hawkins, *Judge to SEC: Who Guards the Guardians?*, FORBES.COM, Oct. 15, 2009, http://WWW.FORBES.COM/2009/10/15/sec-receiver-northshore-asset-personal-finance-pauley.html; Vanessa Blum, *Lawyers' $11 Million Bonus Request Leaves Judge, SEC Surprised*, LAW.COM, Nov. 2, 2009, http://www.law.com/jsp/article.jsp?id=1202435090170.

113.  *See* Loewenson, *supra* note 60, at 77-78.

114.  The costs and expenses are charged against the assets of the receivership. *See* Donovan v. Robbins, 588 F. Supp. 1268, 1271 (N.D. Ill. 1984); *see also* Sjoblom, *supra* note 5, at 10.

115.  Loewenson, *supra* note 60, at 77.

116.  SEC v. First Sec. Co. of Chi., 528 F.2d 449, 451 (7th Cir. 1976).

117.  Triedman, *supra* note 6.

118.  *Id.*

119.  *Id.*

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

requested another 7.6 million dollars in fees, bringing the receiver compensation alone equal to 34 percent of all the assets of the corporation he had recovered.[120]  Essentially, Janvey had dissipated one-third of the corporation's assets within six months simply by paying himself and his lawyers.[121]  While the SEC objected and the district judge rejected the initial request of 20 million dollars, the receiver has been and continues to be heavily compensated.[122]  While this is disenchanting to defense lawyers, it infuriates the investors, who have lost all of their money in what the SEC and prosecutors claim was nothing more than an 8 billion dollar Ponzi scheme.[123]

## V.  PARALLEL PROCEEDINGS

Parallel proceedings refer to the concurrent or consecutive civil and criminal proceedings permitted under hybrid federal statutes, such as securities laws.[124]  For example, the SEC and the Department of Justice initiate civil and criminal proceedings against the same defendant, either concurrently or consecutively, where the alleged unlawful conduct arises out of the same facts or transactions.[125]  There are many concerns among lawyers with the government's ability to manipulate parallel proceedings and thus violate defendants' constitutional rights.[126]  Defendants' actions in the criminal proceeding may have a substantial impact in the civil proceeding, and vice versa.[127]  In an area of the law with many uncertainties, defendants and their lawyers alike can be certain that parallel proceedings are a difficult balancing act.

### A.  *Parallel Proceedings are Constitutional*

The Supreme Court has held that parallel proceedings in which the government has instituted civil and criminal proceedings against a defendant simultaneously are constitutional.[128]  However, parallel proceedings are intended to

---

120.  *Id.*
121.  *See id.*
122.  *Id.*
123.  *See* Triedman, *supra* note 6.
124.  *See* Sachs, *supra* note 1, at 1026-27; Naftalis, *supra* note 1, at 1259.
125.  Sjoblom & Ogletree, *supra* note 5, at 15.
126.  *See* Naftalis, *supra* note 1, at 1259-60.
127.  *Id.* at 1259.
128.  United States v. Kordel, 397 U.S. 1, 11 (1970) ("It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.").

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

218  *HOUSTON BUSINESS AND TAX LAW JOURNAL*  [Vol. XI

"be like the side-by-side train tracks that never intersect."[129] These same principles are also applicable to simultaneous SEC and DOJ investigations.[130]     Thus, the SEC can pursue enforcement by way of civil or administrative proceedings while considering criminal prosecution,[131] and the government has no obligation to inform the defendant of the possible criminal prosecution.[132]

### B.  *The Process*

The SEC's investigative powers and subsequent civil and administrative enforcement, including but not limited to injunctive and ancillary relief, are typically the beginning of the process.[133] Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act provide for communication between the SEC and the DOJ by allowing the SEC to turn over evidence of criminal violations to the DOJ.[134] This has been interpreted by the D.C. Circuit: "These statutes explicitly empower the SEC to investigate possible infractions of the securities laws with a view to both civil and criminal enforcement, and to transmit the fruits of its investigations to [DOJ] in the event of potential criminal proceedings."[135] This sharing of information usually takes the form of a criminal referral, which the SEC prepares and forwards to the Department of Justice.[136] The SEC can go about this more informally though, by simply making its files available to the Department of Justice. Pursuant to SEC rules, it can provide the U.S. Attorney's Office access to its investigatory files.[137]     The SEC typically looks at four types of violations when deciding whether to refer the case to the Department of Justice: "(i) those involving organized crime, (ii) those committed by chronic

---

129.   United States v. Scrushy, 366 F. Supp. 2d 1134, 1139 (N.D. Ala. 2005).

130.   Naftalis, *supra* note 1, at 1294 (quoting SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1377 (D.C. Cir. 1980) (*en banc*) ("Effective enforcement of the securities laws require that the SEC and Justice be able to investigate possible violations simultaneously. . . . The SEC cannot always wait for Justice to complete the criminal proceedings if it is to obtain the necessary prompt civil remedy; neither can Justice always await the conclusion of the civil proceeding without endangering its criminal case.")).

131.   King et al., *supra* note 12, at 1090.

132.   Naftalis, *supra* note 1, at 1294.

133.   *See supra* pp. 208-212.

134.   15 U.S.C. § 77t(b) (2006) ("The Commission may transmit such evidence as may be available concerning such acts or practices to the Attorney General who may, in his discretion, institute the necessary criminal proceedings under this title . . . ."); 15 U.S.C. § 78u(d)(1) (same).

135.   *Dresser Indus., Inc.*, 628 F.2d at 1376.

136.   King et al., *supra* note 12, at 1088.

137.   *Id.* at 1089. Informal referrals are the most common form of referral. *Id.*

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

violators, (iii) those where the schemes pose a significant threat to investors, and (iv) those involving corruption of SEC staff or other government officials."[138]   However, the U.S. Attorney's Office always has the authority to start a criminal prosecution without the SEC bringing securities laws violations to its attention.[139]

### C.  *Limitations on the Government*

The government should exercise caution when dealing with parallel proceedings.  The government should not bring a civil action against a defendant in order to obtain evidence for that same defendant's criminal prosecution.[140]   For example, the government should not use a civil proceeding for the liberal discovery of evidence that such proceedings provide in order to obtain the evidence for purposes of a criminal prosecution where the same broad discovery tactics are obviously not available.[141] The government should also advise a civil defendant that it is contemplating criminal prosecution.[142]

An interesting example of parallel proceeding discovery can be found in *United States v. Grunewald*,[143] a case in which the IRS was conducting a civil audit and the evidence it obtained in that civil proceeding was used to prosecute the defendant criminally for income tax evasion.[144]   In describing the use of a civil proceeding as a guise for a criminal prosecution, the Eighth Circuit held that "[i]t would be a flagrant disregard of individuals' rights to deliberately deceive, or even lull, taxpayers into incriminating themselves . . . ."[145]   The defendant's motion to suppress the evidence obtained in the civil audit was denied,

---

138.   *Id.* at 1088.

139.   *Id.* at 1089.

140.   United States v. Kordel, 397 U.S. 1, 11-12 (1970) (citing United States v. Thayer, 214 F. Supp. 929 (D. Colo. 1963); Beard v. N.Y. Cent. R. Co., 20 F.R.D. 607 (N.D. Ohio 1957)).

141.   United States v. Parrott, 248 F. Supp. 196, 202 (D.D.C. 1965).

142.   *Kordel*, 397 U.S. at 12 (citing Smith v. Katzenbach, 351 F.2d 810, 811-13 (D.C. Cir. 1965); United States v. Lipshitz, 132 F. Supp. 519, 523 (E.D.N.Y. 1955); United States v. Guerrina, 112 F. Supp. 126, 128 (E.D. Pa. 1953)). It should be noted that *Kordel* does not explicitly hold that either of these actions of the government are unconstitutional, but instead states this in *dicta*; further, it cites non-Supreme Court cases that hold such and states that these actions "might suggest the unconstitutionality or even the impropriety of [the] criminal prosecution." *Kordel*, 397 U.S. at 12.

143.   987 F.2d 531 (8th Cir. 1993).

144.   *Id.* at 533-34.

145.   *Id.* at 534 (citing United States v. Tweel, 550 F.2d 297, 299 (5th Cir. 1977) (holding that a search was unreasonable under the Fourth Amendment if consent was induced by misrepresentations of the IRS agent)).

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

however, partly because of the high burden with which the defendant was faced: the defendant had to prove by "clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and . . . the IRS's conduct resulted in prejudice to the defendant's constitutional rights."[146] Acts such as these evoke the constitutional principles of justice and fair play, and the court in *Parrott* evokes principles of Wigmore,[147] stating that "[w]hen a witness under investigation is subpoenaed to testify in a civil proceeding, oftentimes the witness is forced 'to choose among the three horns of the triceratops—harmful disclosure, contempt, perjury.'"[148]

Defendants found more support from a district court in Oregon in the case of *United States v. Stringer*.[149] In *Stringer*, the district court dismissed the indictment and in the alternative granted the motion to suppress evidence because the government, through the SEC, was using what was disguised as a civil proceeding to gather evidence for the criminal prosecution.[150] The court held that this fell into the category of a "'violation of due process or a departure from proper standards in the administration of justice[ ]'" that the Supreme Court described in *Kordel*.[151] Also, the government's actions were a violation of due process as the government did not advise the defendants that it anticipated their criminal prosecution; instead, the government was deceitful and made affirmative misrepresentations about the parallel criminal proceedings.[152] Support for defendants did not last long though, as the Ninth Circuit reversed this decision in mid-2008.[153] In the appellate decision, the court appears to take the government at its word that it did not use a civil proceeding solely to obtain evidence to be used in a criminal prosecution.[154] Moreover, the court reasoned that the fact that the SEC started its investigation before making a criminal referral to the U.S. Attorney's Office

---

146. *Id.* (citing United States v. Meier, 607 F.2d 215, 217 (8th Cir. 1979); *Tweel*, 550 F.2d at 299).

147. John Henry Wigmore is the most famous legal scholar on evidence.

148. United States v. Parrott, 248 F. Supp. 196, 201 (D.D.C. 1965) (quoting VIII Wigmore on Evidence, McNaughton Revision, § 2251).

149. 408 F. Supp. 2d 1083 (D. Or. 2006), *rev'd in part, vacated in part*, 521 F.3d 1189 (9th Cir. 2008), *opinion amended and superseded*, 535 F.3d 929 (9th Cir. 2008), *and rev'd in part, vacated in part*, 535 F.3d 929 (9th Cir. 2008).

150. *Stringer*, 408 F. Supp. 2d at 1092.

151. *Id.* at 1088 (quoting United States v. Kordel, 397 U.S. 1, 11 (1970)).

152. *Stringer*, 408 F. Supp. 2d at 1088-89 (citing United States v. Robson, 477 F.2d 13, 18 (9th Cir. 1973)).

153. *Stringer*, 535 F.3d at 942.

154. *Id.* at 938-39.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

tended to negate any bad faith on the part of the government in the use of parallel proceedings.[155] The court also reasoned that this sharing of information between the SEC and the Department of Justice is authorized by Congress in 15 U.S.C. §§ 77t(b) and 78u(d).[156]

Another example of misconduct on the part of the government can be found in *United States v. Scrushy*.[157] In this case the SEC moved the deposition it had scheduled the defendant in connection with its civil proceeding to a different venue at the request of the U.S. Attorney's Office, who wanted the change of venue so it could prosecute the defendant for perjury if he lied to the SEC.[158] The defendant and his attorneys were not advised of the possible criminal prosecution when the SEC took his deposition.[159] The court held that not advising the defendant that he was the target of a criminal investigation and the manipulative change of venue "cannot be said to be in keeping with the proper administration of justice."[160] Furthermore, the court held that the commingling of the civil and criminal proceedings in this situation was in no way a parallel investigation, and therefore the perjury counts were ordered to be dismissed.[161] A related case in the district court in Alabama held that the civil and criminal proceedings completely overlapped and thus were not parallel; therefore, the government was conducting a *de facto* criminal investigation under the guise of a civil proceeding.[162]

The SEC uses a standard form, 1662, to place everyone who provides information to the SEC on notice that the information can be used against them in other administrative, civil or criminal proceedings.[163] Two district courts have held that this form was a boilerplate warning and was not sufficient to meet the obligation of the government to inform a civil defendant that it is contemplating his criminal prosecution, or at a minimum that warnings mean very little if the defendant is not aware of

---

155.  *Id.* at 939 (citing United States v. Unruh, 855 F.2d 1363, 1374 (9th Cir. 1987); United States v. Churchill, 483 F.2d 268, 272 (1st Cir. 1973); United States v. Teyibo, 877 F. Supp. 846, 855 (S.D.N.Y. 1995)).

156.  *Id.* at 939.

157.  366 F. Supp. 2d 1134 (N.D. Ala. 2005).

158.  *Id.* at 1135-36, 1138.

159.  *Id.* at 1137.

160.  *Id.* at 1139.

161.  *Id.* at 1140.

162.  SEC v. Healthsouth Corp., 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003). Note that Mr. Scrushy and Healthsouth Corp. were co-defendants. *Id.*

163.  Sjoblom, *supra* note 5, at 19.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

222 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

the real purpose of the investigation.[164] However, both of these courts were reversed by their respective circuits' Courts of Appeals, and thus the SEC remains able to rely on the "warnings" provided in its form 1662.[165]

### D. *Stay of the Civil Proceeding*

In a parallel proceeding, the district court can stay the SEC civil case until the criminal prosecution or investigation is complete; however, a stay is not a constitutional or statutory right of a defendant and is within the discretion of the court.[166] A stay may be granted when it will prevent "'substantial and irreparable prejudice,'"[167] or if it is in the interests of law enforcement.[168] The burden is on the party seeking the stay and the courts take many different factors into account: "[t]he degree of risk of self-incrimination[,]" "[t]he likely duration of a stay[,]" "[w]hether the *status quo* will be maintained if a stay is granted[,]" "[i]nterests of private plaintiffs in avoiding delay and potential harm to them if a stay is granted[,]" "[c]onvenience to the court[,]" "[i]nterests of non-parties[,]" and "[t]he public interest[.]"[169] Courts may also consider the overlap of issues in the criminal and civil case, the burden on the defendant(s), and whether the defendant(s) has/have been indicted.[170]

Common forms of staying proceedings include motions for stays filed by defendants, motions for stays filed by the Department of Justice, voluntary dismissals of civil proceedings by the SEC, and stays of civil discovery.[171] A defendant typically bases his motion for stay on one of two grounds. First, a

---

164. United States v. Stringer, 408 F. Supp. 2d 1083 (D. Or. 2006), *rev'd in part, vacated in part,* 521 F.3d 1189 (9th Cir. 2008), *opinion amended and superseded,* 535 F.3d 929 (9th Cir. 2008), *and rev'd in part, vacated in part,* 535 F.3d 929 (9th Cir. 2008); United States v. Posada Carriles, 486 F. Supp. 2d 599, 617 (W.D. Tex. 2007), *rev'd,* 541 F.3d 344 (5th Cir. 2008).

165. *Stringer,* 535 F.3d at 934-34; *Posada Carriles,* 541 F.3d at 356-57.

166. SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980) (citing United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) (noting that federal district courts "deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action")).

167. SEC v. Healthsouth Corp., 261 F. Supp. 2d 1298, 1327 (N.D. Ala. 2003) (quoting United States v. Little Al, 712 F.2d 133, 136 (5th Cir. 1983)).

168. Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) (explaining that "[a]dministrative policy gives priority to the public interest in law enforcement" and that "[t]his seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities").

169. Sjoblom, *supra* note 5, at 20.

170. Naftalis, *supra* note 1, at 1296.

171. Sjoblom, *supra* note 5, at 15-16.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

defendant may base his motion for stay on the Fifth Amendment's right against self-incrimination; however, this does not guarantee that a stay will be granted.[172] Second, a criminal defendant can base his motion on the bad faith of the government in trying to use liberal civil discovery rules to obtain evidence to be used in the criminal proceeding.[173]

The next category includes motions for stays of the civil proceedings brought by the Department of Justice. The Department of Justice may seek a stay in order to use evidence obtained during civil discovery in the criminal case, and it may even use this evidence before the grand jury.[174] Typically, the Department of Justice moves for a stay to shield its criminal strategy by staying civil discovery requests by the defendant.[175] For example, the defendant may file a motion to take the depositions of the government's witnesses in order to obtain information for cross-examination of those witnesses in the criminal trial. Interestingly, a federal district court in New York expressed its disapproval of the SEC for bringing a civil suit with no intention of pursuing it until the parallel criminal case was over.[176] In *Oakford*, the SEC actually moved for a dismissal after they had to answer the defendants' discovery requests, and the court went so far as to warn the SEC and the U.S. Attorney's Office for their "troubling" behavior.[177]

The third category involves voluntary dismissals by the SEC in order to benefit the U.S. Attorney's Office, and usually with the intention of re-filing the case at a later time.[178] The purpose of this is usually to remove any civil discovery advantage that the defendant may seek to use.[179] Finally, courts may simply issue a

---

172. SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). The strongest case for granting a defendant's motion for a stay is when he is indicted on a serious offense and trying to defend the same matter in a civil proceeding simultaneously. *Id.*; *cf.* SEC v. Rehtorik, 755 F. Supp. 1018, 1019-20 (S.D. Fla. 1990) (denying a stay for defendants in the SEC civil proceeding even though there was a parallel criminal proceeding on the same matter, and reasoning that the non-criminal risk of remaining silent in a civil proceeding to protect the criminal case does not violate the constitution).

173. *See, e.g., Dresser*, 628 F.2d at 1375-76. This is the strongest case for granting a defendant's motion for a stay. *Id.*

174. United States v. Educ. Dev. Network Corp., 884 F.2d 737, 737 (3d. Cir. 1989) (holding that it is not unconstitutional for the Department of Defense and the Department of Justice to work together and obtain evidence through civil subpoenas that was then brought before a grand jury).

175. *See* SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988).

176. SEC v. Oakford Corp., 181 F.R.D. 269, 271-73 (S.D.N.Y. 1998).

177. *Id.* at 272-73.

178. *Id.* at 272.

179. *Id.*

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

stay of civil discovery instead of a stay of the entire civil case.[180] This stay of discovery is authorized by Federal Rule of Civil Procedure 26(c).[181]

## VI. OTHER CONSTITUTIONAL PROBLEMS

The constitutional implications of parallel proceedings are magnified when taking into consideration the increasingly aggressive nature of the Department of Justice in securities violations cases, which becomes even more troubling when it works with the SEC to force plea agreements.[182] The "side-by-side train tracks" analogy of parallel criminal and civil proceedings has become less accurate in recent years, as the courts seem to do very little to stop the SEC from collecting evidence and turning it over on a silver platter to the Department of Justice.[183] The Fifth Amendment implications have been briefly addressed thus far, and remain a troublesome area for criminal defendants and their attorneys. If the defendant chooses to invoke his Fifth Amendment right against self-incrimination in the SEC civil proceeding, that can be used against him at trial. However, if he chooses to give a pre-trial deposition, that deposition can obviously be used against him in the criminal case even if he chooses not to take the stand.[184]

### A. *Double Jeopardy Clause*

In the landmark Supreme Court case of *Hudson v. United States*, the Court placed the standard for a violation of the Double Jeopardy Clause very high in regards to civil fines coupled with criminal punishment.[185] The Double Jeopardy Clause applies to more than one criminal punishment for the same offense, but not to civil penalties.[186] In determining whether punishment is civil or criminal, a court should look first and foremost to the legislative intent and the statute on its face.[187] If a statute calls itself a civil punishment, then "only the

---

180. Naftalis, *supra* note 1, at 1297.
181. Fed. R. Civ. P. 26(c)(1)(A). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery[.]" *Id.*
182. Naftalis, *supra* note 1, at 1259.
183. Sjoblom. *supra* note 5, at 15.
184. *Id.* at 15-16.
185. 522 U.S. 93 (1997).
186. *Id.* at 99.
187. *Id.* at 99-100.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

clearest proof" that it is really a criminal penalty will override the legislative intent.[188] Courts typically find no problem with the Double Jeopardy Clause and criminal penalties in securities cases after civil sanctions were already awarded in SEC proceedings.[189] Following the *Hudson* decision the SEC actually pursued civil fines more routinely in parallel proceedings.[190] Moreover, in *SEC v. Palmisano*, the Double Jeopardy Clause was not violated when the SEC sought civil fines and penalties after the defendant was criminally convicted for his Ponzi scheme operations and had paid restitution.[191]

### B.  *The Presumption of Innocence*

Whatever the constitutional argument that is thrown at the use of parallel proceedings, particularly those that involve securities laws, the SEC, and the Department of Justice, courts hold strong to the ability of the government to take such action.[192] The most common arguments—violation of the Fifth Amendment and violation of the Double Jeopardy Clause—have been failures in the courts and have left parallel proceedings neatly intact. Interestingly, what seems to be the crux of the problem with parallel proceedings goes to the core of criminal matters and the rights of criminal defendants, and has not been addressed by the courts. This obvious concern appears to be a question of first impression in the Supreme Court.

Parallel proceedings, even when narrowed to include only federal securities laws involving the SEC and the Department of Justice, are very broad in scope and an even broader constitutional principle must be applied to them. Parallel proceedings can, however, be narrowed further to include only the topic of ancillary relief, particularly relating to the appointment of receivers. The very powerful SEC receiver violates the heart of the criminal justice system in America: the presumption of innocence.[193]

---

188.  *Id.* at 100.
189.  Naftalis, *supra* note 1, at 1314.
190.  *Id.*
191.  135 F.3d 860, 864-66 (2d Cir. 1998).
192.  *See* Sjoblom, *supra* note 5, at 15.
193.  *See id.* at 35. After dismissing an entire indictment where prosecutors had "elected to gather information through the SEC, [and] concealed the criminal investigation from the defendants, [t]he court concluded that the government's tactics violated the defendants' due process rights because, had they known of the criminal investigation they likely would have invoked the Fifth Amendment privilege against self-incrimination in the SEC civil proceeding." *Id.*

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

226 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

Imagine the following scenario: The SEC goes after a corporation and its owner/President for securities fraud violations. It convinces a judge, by the lowest burden in our legal system, to appoint a receiver. The SEC then or concurrently refers the case to the U.S. Attorney's Office and hands over any evidence it has obtained in civil discovery. Meanwhile, the receiver bills for months against the company's assets and then chooses to liquidate the entire corporation. Finally, when the criminal case is brought to trial before a jury of the defendant's peers, where he is presumed innocent until proven guilty beyond a reasonable doubt, the jury acquits him. Although he was found not guilty, he has already lost everything he worked for in building the corporation. Courts might as well tell the person: "Sorry, you did not do anything wrong, but now you have lost everything and there is nothing you can do about it." This flies in the face of the presumption of innocence.

## C. *The Supreme Court and the Presumption of Innocence*

The presumption of innocence and the burden of proof are intertwined, as the presumption of a defendant's innocence is implied from the phrase "beyond a reasonable doubt."[194] The defendant is presumed innocent until all reasonable doubt has been removed.[195] The landmark Supreme Court case on this matter is *Coffin v. United States*, which details the presumption of innocence.[196] The Supreme Court best describes this principle in holding, "[t]he principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."[197] This principle is "unquestioned" and is referenced in books and in courts all across the United States.[198] In delivering the opinion, Justice White traced the history of the presumption of innocence from Deuteronomy, to Sparta and Athens, to Roman law and English common law.[199]

---

194. Hisham M. Ramadan, *The Challenge of Explaining "Reasonable Doubt*," 40 CRIM. L. BULL. 1, 6 (2004).

195. *Id.*

196. 156 U.S. 432, 453 (1895).

197. *Id.* at 453.

198. *Id.* at 454.

199. *Id.* at 454-56 ("I conceive that this presumption is to be found in every code of law which has reason and religion and humanity for a foundation.").

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

Another famous related criminal law case is *In re Winship*,[200] in which the Supreme Court, relying on *Coffin*, stated that the reasonable doubt "standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'"[201] The Court does not require an explicit instruction on presumption of innocence; it can be disguised in the jury instructions and the Court will look to the totality of the circumstances to determine whether the Constitution has been violated because the jury was not given an adequate instruction on the presumption of innocence.[202] Moreover, the burden of proof must not in any way be shifted to the defendant, as this would undermine the presumption of innocence.[203] Finally, the Supreme Court has reversed cases where the standard of proof is lowered from beyond a reasonable doubt to preponderance of the evidence.[204] Allowing the standard to be lowered substantially weakens the presumption of innocence.

## VII. NO PRESUMPTION OF INNOCENCE

### A. *Cases and Receivers*

Pursuant to SEC enforcement proceedings, many companies have been hit with massive civil penalties in the last few years.[205] Some examples of recent SEC penalties include Worldcom's 750 million dollar penalty in 2003, Qwest Communications' 250 million dollar penalty in 2004, and Time Warner's 300 million dollar penalty in 2005.[206] In the list of infamous securities fraud cases, Enron is usually at the top; however, the outside auditor, Arthur Andersen, may not command the same infamy. Arthur Andersen, once one of the largest public accounting firms,

---

200. 397 U.S. 358 (1970) (providing support to the proof beyond a reasonable doubt standard in that each element of a crime must be proven beyond a reasonable doubt, and applying this standard to juvenile cases).

201. *Id.* (quoting *Coffin*, 156 U.S. at 453).

202. *Compare* Taylor v. Kentucky, 436 U.S. 478, 490 (1978), *with* Kentucky v. Whorton, 441 U.S. 786, 789 (1979) (explaining when the Constitutional requirements for the presumption of innocence have been met).

203. Ramadan, *supra* note 194, at 7.

204. *See* Jones v. United States, 526 U.S. 227 (1999) (holding that each of the elements of an offense must be charged and proven beyond a reasonable doubt to a jury, and a state legislature cannot circumvent this requirement by adding additional elements disguised as higher penalties).

205. Naftalis, *supra* note 1, at 1259.

206. *Id.*

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

228 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

performed the auditing for Enron and was subsequently indicted by the government in 2002 on obstruction charges for allegedly shredding documents.[207] The firm collapsed as a result of the indictment, and a jury found it guilty of the charges.[208] However, the Supreme Court reversed the conviction in 2005.[209] The reversal was practically worthless, as Andersen's business by this time was completely defunct.[210] The Chief Financial Officer of Enron Broadband Services, Kevin Howard, was tried on securities fraud charges some four years after the collapse of Enron.[211] Howard's trial ended with a hung jury, while there were a few acquittals for some of the other defendants.[212] Howard was tried a second time, and prosecutors got a conviction which was later thrown out by the district judge.[213] Finally, instead of going to trial for a third time, Howard reached a plea bargain in late 2009, agreeing to a plea that did not require any prison time.

The ongoing Stanford Financial case has seen unprecedented action on the part of the receiver and requests for compensation reaching into the millions.[214] The corporation has been completely shut down by the receiver, yet the criminal defendants have barely been arraigned. The abuse by receivers can be seen throughout the country. A judge in the Southern District of New York was appalled by a team of SEC appointed receivers who directed $11 million of the $15.4 million of investor money to compensate themselves.[215] Another New York judge was troubled by a $2.2 million fee request from receivers in 2008 for their first 20 days of work.[216] And, in South Florida, a receiver requested an $11 million bonus in his final fee request to be split between his firm and the primary counsel's firm.[217] Not only do many of these receivers seem to be out of control, the sheer number of SEC appointed receivers is alarming. One could

207. *See* Arthur Andersen, LLP v. United States, 544 U.S. 696, 702 (2005).
208. *Id.* at 702.
209. *Id.* at 708; Naftalis, *supra* note 1, at 1259.
210. Naftalis, *supra* note 1, at 1259.
211. Mary Flood, *Ex-Enron Broadband Figure Given Home Confinement*, HOUSTON CHRONICLE, Nov. 2, 2009, *available at* http://www.chron.com/disp/story.mpl/special/enron/barge/6698821.html.
212. *Id.*
213. *Id.*
214. *See* Triedman, *supra* note 6.
215. Asher Hawkins, *Judge to SEC: Who Guards the Guardians?*, Forbes.com, Oct. 15, 2009, *available at* http://www.forbes.com/2009/10/15/sec-receiver-northshore-asset-personal-finance-pauley.html.
216. *Id.*
217. Blum, *supra* note 112.

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

*SEC RECEIVERS*

simply search the SEC's homepage or do a quick search of receiverships on the Internet to see the massive number of receiverships in the United States.

### B. *Receivers Violate the Presumption of Innocence*

This paper's assertions are not intended to be an attack on parallel proceedings *per se*, rather they are intended to question the fundamental fairness of allowing a receiver broad powers, even to liquidate an entire corporation, before a jury is even impaneled. If the presumption of innocence is "axiomatic" and at the "foundation" of our legal system,[218] how then can the government through the use of a receiver avoid these principles, then subsequently take the case to trial before a jury? The receiver is appointed at the request of the SEC, and *one* person bases the decision on the *lowest* burden in the legal system: preponderance of the evidence. Further, the standard for injunctive relief is lowered in SEC enforcement actions. The SEC does not have to show that there will be irreparable injury or harm or that there is no other remedy available, unlike a private litigant.[219] The Supreme Court has already held that lowering the burden of proof substantially weakens the presumption of innocence, as it has reversed cases where the standard of proof is lowered from beyond a reasonable doubt to a preponderance of the evidence.[220]

How is this any different than the government appointed receiver? The burden of proof is lowered by seeking a receiver first, only to obtain a stay in the civil case in order to pursue the criminal charges.[221] Simply requiring the government to pursue the criminal case and follow the constitution before seeking a receiver to wipe out the corporation would solve this problem. After the criminal trial, the government would still be able to use the SEC to pursue civil penalties and the like.[222] Either way it is the government pursuing the defendant (the SEC or the Department of Justice), so why not at least afford the person his or her constitutional rights? Such a minor change would not require the entire system to be changed or hybrid statutes to be tossed, but it would allow for respect for the presumption of

---

218. Coffin v. United States, 156 U.S. 432, 453 (1895).

219. *See* SEC v. Amerifirst Funding, Inc., No. 3:07-CV-1188-D, 2007 WL 2192632, at *2 n.7 (N.D. Tex. July 31, 2007); SEC v. Unifund SAL, 910 F.2d 1028, 1036 (2d Cir. 1990).

220. *See* Jones v. United States, 526 U.S. 227, 242-43 (1999).

221. *See Unifund SAL*, 910 F.2d at 1036.

222. *See supra* note 47 and accompanying text (explaining the legislative authority for the SEC's power to invoke civil penalties).

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

230 *HOUSTON BUSINESS AND TAX LAW JOURNAL* [Vol. XI

innocence that the United States criminal justice system demands.

### C. *Why the Supreme Court Should Decide This Issue*

Attacking the use of receivers and their immense powers would not require the Supreme Court to overturn precedent because it would still allow for parallel proceedings. To the contrary, it would allow the Supreme Court to enforce a principle of fundamental fairness that has been around since before the creation of the United States. While the Court has delved into due process, the Fifth Amendment, and double jeopardy in this area, it has not dealt with the issue of the presumption of innocence; therefore, this would be a question of first impression.

Moreover, there is a substantial amount of SEC litigation and the government has become increasingly aggressive in pursuing parallel proceedings in securities fraud matters.[223] In a time when the United States is demanding more financial regulation, it is imperative to not forget the constitution and the rights and principles on which the American criminal justice system is based. The financial system is not the only place in need of oversight—so is the United States government.

Unfortunately, searching for the perfect plaintiff to get this issue to the Supreme Court may not be simple. The plaintiff would need to be truly sympathetic and innocent, but someone who had his business wiped out by a receiver, and after losing everything, was acquitted by a jury. A strong standing argument would need to be made. In getting the Court's attention to grant certiorari, a decision on this issue by a state court or a United States Court of Appeals may be sufficient, as this is "an important question of federal law that has not been, but should be, settled by [the] Court."[224]

### VIII. CONCLUSION

While the parallel proceedings process appears quite complicated at first, breaking down the three different enforcement mechanisms makes the hybrid securities laws statutes much simpler. The government can pursue alleged securities laws violators through the SEC's civil enforcement mechanisms (injunctive and ancillary relief), through the SEC's administrative law, through the Department of Justice, or any

---

223. *See* Naftalis, *supra* note 1, at 1259.
224. U.S. SUP. CT. R. 10(c).

COPYRIGHT © 2011 HOUSTON BUSINESS AND TAX LAW JOURNAL. ALL RIGHTS RESERVED

2011]                 *SEC RECEIVERS*                    231

combination thereof.[225] In regards to ancillary relief, particularly receivers, the court has broad powers, and unfortunately, so does the receiver.[226]  In light of the aggressive pursuit of this area of the law by the government, the issue of presumption of innocence must be brought to the attention of the courts.

                                                    *Megan Smith*

---

225.    *See supra* Part III.
226.    Wing, *supra* note 5, at 21-22.