1  DAVID R. ZARO (BAR NO. 124334)
   TED FATES (BAR NO. 227809)
2  ALLEN MATKINS LECK GAMBLE
      MALLORY & NATSIS LLP
3  515 South Figueroa Street, Ninth Floor
   Los Angeles, California 90071-3309
4  Phone: (213) 622-5555
   Fax: (213) 620-8816
5  E-Mail: dzaro@allenmatkins.com
           tfates@allenmatkins.com
6
   Attorneys for Receiver
7  THOMAS A. SEAMAN

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                    **SAN JOSE DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV12-03237 |
| Plaintiff, | **RECEIVER'S TWELFTH INTERIM REPORT** |
| vs. | Ctrm: 4 - 5th Floor |
| SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LLC; AND SBC PORTFOLIOS, LLC, | Judge: Hon. Edward J. Davila |
| Defendants. | |

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1008215.01/LA

# **TABLE OF CONTENTS**

**Page**

I. EXECUTIVE SUMMARY ...................................................................................................1

II. SUMMARY OF RECEIVER'S ACTIVITIES .....................................................................2

    A. Operations and Accounting ......................................................................................2

        1. Post-Receivership Receipts and Disbursements ...............................2

        2. Receiver and Professional Fees and Costs ........................................4

        3. Loan Portfolio, Loan Servicing and Watch List ...............................5

    B. Analysis of Loans ......................................................................................................7

    C. Litigation Against California Business Bank ...........................................................8

III. RECOMMENDED FURTHER ACTIVITIES .....................................................................8

Thomas A. Seaman ("Receiver"), Court-appointed permanent receiver for Small Business Capital Corp. ("SBCC"), Investors Prime Fund, LLC ("IPF"), SBC Portfolio Fund, LLC ("SPF") and their subsidiaries and affiliates, including Small Business Capital, LLC ("SBC LLC") and SBC Senior Commercial Mortgage Fund, LLC ("SCMF") (collectively, "Receivership Entities"), submits this Twelfth Interim Report. The Receiver has previously filed eleven quarterly status reports. This Twelfth Interim Report covers the Receiver's activities during the three-month period from October 1, 2014 through December 31, 2014, and also provides inception-to-date accounting information.

## I.  EXECUTIVE SUMMARY

Operations of the Receivership Entities were stable and generated cash during the fourth quarter of 2014. Operating revenue for the quarter was $459,674.87 and is comprised of loan interest income of $228,873.88, servicing revenue of $230,661.99, and late fees of $139.00. The operating expenses of managing the assets and administering the receivership estate paid during the quarter, including servicing fees of the receiver for August and September, were $56,099.75. The loans generated a profit for the quarter of $393,065.37. Total receipts were $4,130,012.63, which includes deposits on the loan sales of $1,113,721.93, while disbursements were $2,026,833.87 and the cash balance increased by $2,103,178.76 from $5,772,806.01 to $7,875,984.77.

Significant progress was made in servicing and resolving non-performing loans. The loans are being properly serviced and the Receiver is in compliance with all requirements of the Small Business Administration's ("SBA") SOP 5057, the standard operating procedure that SBA lenders are required to follow. Collection efforts on problem loans have been successful. Specific actions taken on various problem loans are set forth in detail below.

During the quarter, the Receiver marketed the portfolios for sale in accordance with the Court's May 9, 2014 order approving the sale procedures for loan portfolios. In December 2014, the Court approved the sale of the 504/FMLP loan portfolio and non-SBA loans to the highest bidder and the sale closed in January 2015. The sale price of the

504/FMLP loans was 110% of the retained portion of the unpaid loan balance. The non-SBA loans sold for 60% of the unpaid balance.

Efforts to sell the 7-A loans and the SBA license continue. The highest bidder was selected and the Receiver expects to file a motion approving the sale shortly. Assuming the sale is concluded to the current buyer, the 7-A loan portfolio will sell for approximately 93% of the retained portion of the unpaid balance of the loans. The SBA license will be sold for $700,000 as part of the same transaction.

In accordance with the Court's prior Order Approving Distribution Plan and Authorizing Interim Distribution, the Receiver has notified the Commission of his intent to make an interim distribution and expects to make this distribution to investors within the next two weeks. The total amount of the interim distribution is expected to be $7,000,000. This second distribution of $7,000,000, together with the first distribution of $15,000,000 and funds investors received prior to the receivership, will bring the recovery for all investors up to 59.5% of the amounts they invested. Investors who received more than 59.5% of their investment prior to the receivership will not participate in the second distribution.

The sale of the 7-A loans and SBA license will lead to a third distribution. The timing of the third distribution will depend upon the sale closing date and perhaps the timing of the Receiver's proposed closing of the receivership case.

## II. SUMMARY OF RECEIVER'S ACTIVITIES

### A. Operations and Accounting

1. Post-Receivership Receipts and Disbursements

Attached hereto as <u>Exhibit A</u> are accounting reports reflecting the post-receivership receipts and disbursements. <u>Exhibit A</u> provides cash basis financial statements through December 31, 2014, and includes a Profit and Loss Statement, Balance Sheet, and a redacted General Ledger for October, November and December 2014. The total gross receipts to the estate during the three-month period were $4,130,012.63, comprised of loan interest income of $228,873.88, loan servicing income of $230,661.99, late fees of

1  $139.00, bank interest income of $1,198.24, net loan payments from borrowers owing to
2  participants in the amount of $1,942,156.64, and loan principal repayments of
3  $613,260.95.
4       Total disbursements during the quarter were $2,026,833.87, payments to lending
5  participants of $1,942,156.64, advances to borrowers added to the unpaid balances of the
6  loans of $28,577.48, and operating expenses of $56,099.75, which includes August and
7  September servicing fees.
8       The Profit and Loss statement on page 1 of <u>Exhibit A</u> provides a summary of all
9  operating expenses and costs of administration. The Receiver was holding cash in the total
10 amount of $7,875,984.77 as of December 31, 2014. The unpaid balance of the retained
11 portion of the loans is $14,218,397.79 as of December 31, 2014, without adjustment for
12 loan loss reserves and net of the deposit received on the 3AM foreclosure sale discussed in
13 further detail below. From the inception of the receivership through December 31, 2014,
14 the total gross receipts are $46,117,322.94, comprised of cash on hand at the time of the
15 Receiver's appointment of $10,249,494.45, loan interest income of $2,822,633.63, loan
16 servicing revenue of $2,903,088.21, net loan payments from borrowers owing to
17 participants in the amount of $18,671,776.94, loan principal repayments of $8,883,055.05,
18 rental income of $50,830, Coast Capital revenue of $73,154.62, late fees of $39,257.99,
19 refunds of $56,785.28, proceeds from asset sales of $1,242,838.22, deposits on assets sales
20 of $1,113,721.93, and bank interest income of $10,686.59.
21      From inception of the receivership through December 30, 2014, the total
22 disbursements were $38,241,338.14, comprised of distributions to investors of
23 $15,023,143.49, payments to lending participants of $18,187,340.00, operating expenses
24 of $1,078,836.81, Receiver's fees of $1,168,293.95, Receiver's counsel's fees and expenses
25 of $735,825.13, taxes of $814,983.17, payments on the Natoma REO mortgage of
26 $400,140.04, Feathers' living expenses of $30,000, and loan funding and advances of
27 $332,716.69.
28

2. Receiver and Professional Fees and Costs

The Receiver's fees for the quarter were incurred as follows:

   October 2014  $77,031.00

   November 2014  $67,847.00

   December 2014  $69,839.00

From inception through December 31, 2014, the Receiver incurred fees of $2,188,970, or 4.7% of the gross receipts for the 31-month duration of the receivership, an average of $70,612 per month.

Allen Matkins' fees and costs for the quarter were approximately $98,077.23 or approximately 2.3% of the gross receipts to the receivership estate. From inception through December 31, 2014, Allen Matkins' incurred fees of approximately $1,130.633.01 (paid and unpaid) or approximately 2.4% of the gross receipts.

To date, $1,904,118.78 has been paid in Court-approved professional fees and costs to the Receiver and his counsel, representing 4.1% of gross receipts. The Receiver's unpaid fees through December 31, 2014, are approximately $1,020,676.35 and Allen Matkins' unpaid fees and expenses are approximately $394,807.88. The total unpaid professional fees are therefore approximately $1,415,848.23..

The Receiver has operated the Receivership Entities efficiently at a vastly lower cost than prior to his appointment. More specifically, prior to the appointment of the Receiver, the operating expenses of the Receivership Entities were $290,000 per month. This resulted in a cash shortfall of $490,000 per month and the equity of the Receivership Entities was dissipating rapidly. As discussed above, the cash flow is now stabilized and, excluding the $15 million distribution to investors, the cash balance has increased by over $12.5 million since the Receiver's appointment. The Receiver's fees associated with operating the companies, as well as for administering the receivership estate, and marketing the loan portfolios for sale were approximately $215,000 in the third quarter (on average, $71,600 per month), or 75.3% less than the Receivership Entities' operating expenses prior to the Receiver's appointment.

### 3. Loan Portfolio, Loan Servicing and Watch List

The Receivership Entities held 52 loans as of December 31, 2014, with unpaid principal of approximately $14.571 million. Portions of the majority of the loans had been sold to unrelated parties, with the remaining portion retained by the Receivership Entities. All REO properties formerly held by the Receivership Entities as a result of previously defaulted loans have been sold pursuant to the Court's order authorizing such sales.

The Receiver has aggressively enforced the rights of the lender and made significant progress in collecting and resolving problem loans. When the Receiver was appointed there were 72 loans. Twenty of these loans have since been paid off in full, or liquidated either by a foreclosure sale with the collateral being subsequently sold, or by accepting a discounted pay-off.

The sale of the 504/FMLP and non-SBA loans, completed in early January, 2015, reduced the watch list to three 7(a) loans and one 504/FMLP loan, the 3-AM loan that is in default was deliberately withheld from the 504/FMLP sale. The status of each of the watch list loans is as follows:

Z&H Happy Hands Corporation dba Happy Hands Car Wash: The unpaid principal balance for this loan is $1,727,335.71. This is an SBA 7(a) loan secured by a first trust deed on property located at 1205 W. 17th Street, Santa Ana, California and a second trust deed on a multi-unit property located at 17616 Sherman Way, Van Nuys, California. SBC LLC owns 10% of this loan. To date, the loan is current and borrower continues to pay as agreed. All current and delinquent property taxes have been paid. The business appears to be operating at a profit. No evidence of any deferred maintenance was noted at the property during the most recent site inspection. The loan is well secured by the real and personal property collateral as well as personal guaranties. The Receiver continues to monitor the loan.

Bragato Paving Company: The unpaid principal balance for this loan is $1,735,366.64. This is an SBA 7(a) loan secured by a first trust deed on property located at 500 – 506 Bragato Road, San Carlos, California and a second trust deed on property

1  located at 2141 San Carlos Avenue, San Carlos, California. SBC LLC owns 10% of this
2  loan. The loan is current. The borrower has an installment payment plan with the San
3  Mateo County Tax Collector's Office for the prior year delinquencies. The borrower had
4  also accrued significant late charges which the Receiver has now fully collected over time.
5  <u>Meyers Castle</u>: This was added to the watch list during the first quarter of 2014.
6  There are two loans with unpaid balances of $1,541,046.79 and $1,120,452.65
7  respectively. SBC LLC owns 24% of these loans. Payments for the last few months have
8  been late. The Receiver continues to assess late fees. Previously, the borrower agreed to
9  pay the outstanding late charges under an installment payment plan, and paid them. The
10 borrower failed to pay their insurance premium and the Receiver paid the cost of the
11 premium and added it to the unpaid balance of the loan in order to protect the collateral.
12    <u>3 AM, LLC</u>: The unpaid balance on this loan is $4,170,874.68. The principal
13 portion is $3,712,476. This SBA 504 FMLP loan was purchased by SCMF from an
14 unrelated party. Subsequently, 85% of the loan was pooled and sold to an unrelated party.
15 The loan is secured by a first trust deed on a hotel property located at 8850 Hampton Mall
16 Drive North, Capitol Heights, Maryland, as well as a UCC-1 security interest in the
17 furniture and fixtures at the hotel. The foreclosure sale was conducted on December 2,
18 2014. The property was sold to a third party for $4 million. There is a ratification process
19 pending in the Maryland courts and the sale should close shortly. The sale proceeds are
20 $4,000,000. The retained portion owned by the Receivership Entities is $600,000. The
21 Receivership Entities will receive 100% of the principal owed, collection costs, and a
22 portion of the accrued and unpaid interest.
23    It should be noted that the foreclosure process concerning the 3AM LLC loan was
24 concluded after much difficulty and expense due to the borrower filing multiple
25 bankruptcies and fighting the lender in bankruptcy court. Accordingly, the 3AM LLC loan
26 consumed considerable resources of the receivership estate in terms of cash payments to
27 cure the property taxes, payment of legal and collections expenses, force placed insurance,
28

and other expenses, in addition to the cost of complying with the SBAs procedures for administering foreclosures.

### B. Analysis of Loans

The following table provides the number and amount of loans held by each entity.

| Loan Summary | IPF | SBC LLC | SPF | Sen. Comm. Mortgage | Total |
|---|---|---|---|---|---|
| 7(a) SBA Loans | | | | | |
| # of loans | - | 34 | - | - | 34 |
| $ value | - | 5,689,493 | - | - | 5,689,493 |
| | | | | | |
| 504 SBA Loans | | | | | |
| # of loans | 1 | | 4 | 10 | 15 |
| $ value | 1,031,150 | | 3,063,669 | 2,712,217 | 6,807,036 |
| | | | | | |
| Non-SBA loans | | | | | |
| # of loans | 1 | | 2 | - | 3 |
| $ value | 2,025,511 | | 49,835 | - | 2,075,346 |
| | | | | | |
| Total | | | | | |
| # of loans | 2 | 34 | 6 | 10 | 52 |
| $ value | 3,056,662 | 5,689,493 | 3,113,504 | 2,712,217 | 14,571,875 |

Now that the sale of the 504/FMLP and non-SBA and has been completed and the price of the 7-A loans has been tentatively set, the previously established loan loss reserve of $985,000 is obsolete and the values set forth above may be revised based on the sales prices as follows:

\\\

\\\

|  | Book value | Sale price |
|---|---|---|
| 7-A loans | 5,689,493 | 5,291,228 |
| 504/FMLP loans | 6,807,036 | 7,454,233 |
| 3AM loan | 556,800 | 556,800 |
| Non-SBA loans | 2,075,346 | 1,240,345 |
| Adjusted value of loans | | $14.542 million |

### C. Litigation Against California Business Bank

The Receiver filed an action against California Business Bank ("CBB") and the directors and officers named in the Receiver's complaint other than N. Aaron Yashouafar ("Individual Defendants") arising out of, among other things, misrepresentations made to the Receivership Entities in connection with the sale of CBB stock. The parties participated in a mediation with a Court-assigned mediator on November 19, 2013, in San Francisco. The case did not settle.

The Receiver filed his complaint stating state law claims in Los Angeles Superior Court on May 8, 2014. CBB moved to strike one paragraph of the complaint arguing that it contains attorney-client privileged communications. CBB also demanded return of the documents containing such attorney-client communications and sought disqualification of Allen Matkins. The Receiver opposed the motion, which the court denied without prejudice to CBB re-raising the motion as a later date. Among other things, the court also instructed the parties to participate in a second mediation, which took place on September 23, 2014. The case did not settle at mediation.

Following the mediation, CBB filed an answer to the Receiver's amended complaint. The case is now "at issue." CBB has served discovery upon the Receiver. The Receiver intends to pursue discovery as well.

### III. RECOMMENDED FURTHER ACTIVITIES

Now that the proceeds of the 504/FMLP and non-SBA loans have been received, the Receiver recommends making a second distribution to investors. Pursuant to Paragraph 5 of the Order Approving Distribution Plan and Authorizing Interim

Distributions (the "Order") [Docket No. 711], Receiver has sought and received the approval of the Securities and Exchange Commission for the Receiver to make a interim distribution of $7,000,000 to investors.

As set forth above the Receiver expects the 7-A loan and SBA license sale to be completed soon after the SBA approves the buyer and this Court approves of the sale. Confirmation of the sale will complete the liquidation of receivership estate's primary assets and the Receiver may be in a position to make a third distribution to investors. Once all other outstanding matters (including the CBB litigation) have been resolved, the Receiver will seek authority to make a final distribution pursuant to the approved Distribution Plan, final approval of receivership fees and costs, and an order terminating the receivership and discharging the Receiver.

Dated: January 27, 2015

By: _____
THOMAS A. SEAMAN, Receiver

Dated: January 27, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ *David R. Zaro*
DAVID R. ZARO
Attorneys for Receiver
THOMAS A. SEAMAN

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1008215.01/LA

-9-

Case No. CV12-03237
RECEIVER'S TWELFTH INTERIM REPORT