# EXHIBIT "A"

JS 44 (Rev. 12/12)
Cand rev r1/15/13)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Mark Feathers, Individually and on Behalf of All Those Persons and Entities Similarly Situated

**DEFENDANTS**
United States of America

**(b)** County of Residence of First Listed Plaintiff  Santa Clara
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

E-filing

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro se

Attorneys *(If Known)*

CV 15 02194

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)

☑ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

ADR

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☑ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☑ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities Employment
☐ 446 Amer. w/Disabilities Other
☐ 448 Education

**PRISONER PETITIONS**

**Habeas Corpus:**
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty

**Other:**
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
5 USCS § 702 AND 28 U.S.C. §1346(b)(1)
Brief description of cause:
Personal injury from Violations of the 4 and 5th Amendments to the Bill of Rights to the Constitution

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 16,500,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE  EJD
DOCKET NUMBER  CV12-03237-EJD

## IX. DIVISIONAL ASSIGNMENT (Civil L.R. 3-2)
*(Place an "X" in One Box Only)*
( ) SAN FRANCISCO/OAKLAND  ☑ SAN JOSE  ( ) EUREKA

DATE  5-16-15

SIGNATURE OF ATTORNEY OF RECORD  /s/  pro se

Mark Feathers, *pro se*
    markfeathers@sbcglobal.net
1520 Grant Rd.
Los Altos, CA 94024
Telephone: (650) 575-7881

E-filing



ADR

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION



MARK FEATHERS, INDIVIDUALLY )
AND ON BEHALF OF ALL THOSE PERSONS )
AND ENTITIES SIMILARLY SITUATED, )
)
        PLAINTIFFS, )
)
    vs. )
)
UNITED STATES OF AMERICA, )
)
        DEFENDANT. )

Case No. **CV 15 02194 PSG**

**COMPLAINT**

*"The Commission does not dispute that in calculating member returns in the Complaint, it added together the line items "distributions" and "re-invested Distributions…""*

And with these words, the U.S. Securities and Exchange Commission, who is the federal gatekeeper agency of public accounting within the United States, admits that its own Enforcement Division accountants employed very serious departures from Generally Accepted Accounting Principles within a sealed *ex parte prima* facie civil lawsuit complaint against Plaintiffs. SEC's pleadings, in fact, were replete with objectively false and highly misleading financial illustrations, which SEC's accountants should have known violated GAAP. As implausible as an SEC CPA's departure from GAAP may be, there is no denial that it occurred. Now, it is left to the Court to recognize that Plaintiffs were wrongfully deprived of their Constitutional rights, due to that.

## I.   INDIVIDUAL AND CLASS ACTION COMPLAINT

Plaintiffs are Mark Feathers and approximately three hundred individuals who invested in Small Business Capital Corp. or in three mortgage investments funds which were seized without notice from their possession in June 2012 from an order of a Federal District Court[1].  That seizure was based upon invalid and objectively false financial illustrations of an accountant of the United States Securities and Exchange Commission ("SEC") which were created by way of departures from Generally Accepted Accounting Principles. Due to those departures from GAAP, which constituted professional negligence of SEC's accountant, Roger Boudreau, CPA, Mark Feathers, individually and derivatively on behalf of himself and other individual Plaintiffs commences this lawsuit under the Federal Tort Claims Act ("FTCA") for direct or proximate harm to them caused by Boudreau.

Plaintiffs allege Boudreau in the course and scope of his employment with SEC acted with professional negligence by making scores of widely disparate, misleading, and objectively false illustrations of his so-called "distributions" of Plaintiff's investment funds, and which violated Generally Accepted Accounting Principles[2], and were not remotely consistent with these methods.

SEC relied upon not just a few, but scores in fact, of Boudreau's objectively false illustrations in sealed *ex parte prima facie* pleadings.  The significance of Boudreau's erroneous representations is paramount, for SEC relied on this public accounting expert's financial acumen as the basis to support a wrongful seizure and taking of Plaintiff's assets and income from their assets. Feathers' personal assets, of substantial amounts, were also seized under the Court's sealed Order.

---

[1] See *SEC v. Small Business Capital Corp., et al*, CV12-03237-EJD, NorDistCal, June 2012
[2] Generally Accepted Accounting Principles ("GAAP") were, and still are, the conventions, rules, and procedures that constitute the professional standards of the accounting profession.  GAAP consist of statements issued by the American Institute of Certified Public Accountants ("AICPA") through successive groups the AICPA has established to promulgate accounting standards, including:  The Financial Accounting Standards Board ("FASB"), which issues Statements of Financial Accounting Standards, the Accounting Principles Board, predecessor to FASB, which issued number opinions; the Accounting and Standards Division of AICPA, which issues Position Statements.

1   Boudreau's derived distributions were not remotely consistent with mortgage investment

2   fund accounting methods.  These violated GAAP, Generally Accepted Audit Standards[3] ("GAAS"),

3   California Business and Professions Codes and Civil Codes, and California Code of Regulations

4   which are applicable for his license.  On appearance Boudreau violated SEC's guidance within their

5   own publications and guidelines related to accounting and auditing matters for investment funds[4].

6

7   Boudreau's material, objectively false, and wholly misleading distribution illustrations were used and

8   relied upon by SEC in their sealed pleadings[5].  This led to a wrongful taking which violated

9   plaintiff's 4th and 5th Amendment rights at that time, and thereafter.  That "distributions" of Plaintiff's

10  investment funds was a central and material element for SEC in its civil lawsuit stands evidenced by

11  scores references to "distributions" in their civil lawsuit pleadings[5].

12

13       Boudreau did not adhere to GAAP or GAAS, the policies and practices of licensed public

14  accountants, or known policies and practices of government CPA investment fund examiners.

15  Boudreau's sworn descriptions of the dollar and percentage amounts of Plaintiff's investment fund

16  distributions were not tenuous, they were objectively false and highly misleading.  Boudreau, under

17  his licensing requirements, did not have discretion to employ a methodology to describe distributions

18  which incorporated lack of reasonable care by him.  Boudreau should have been aware that

19  objectively unreasonable factual determinations could and would cause prejudicial error.

20       There here is also cumulative error (professional negligence in both instances) of SEC which

21  interfered with Plaintiff's rights to due process.  SEC's trial prosecutor, with professional negligence,

22  wrongfully represented in SEC's sealed pleadings their recommended receiver as a licensed CPA.

23

24  [3]Generally Accepted Auditing Standards ("GAAS") were, and still are, the standards and principles
    for performing audits.  GAAS are promulgated by the AICPA.  GAAS includes broad standards
25  classified as General Standards, Standards for Fieldwork, and Standards of Reporting.  Statements of
    Auditing Standards ("SAS") were, and are, periodic interpretations of GAAS Standards.
26  [4]i.e, Guide 5, CF Disclosure Guidance: Topic 6, Enforcement Manual, Rules of Practice, and
    undiscovered policies
27  [5]In SEC's civil complaint distributions were interchange referred to, in more than fifty instances, as
28  "yield", "returns", "payments", "member returns", and "preferred returns".

## I.  **PARTIES**

Mark Feathers ("Feathers") is a resident of Los Altos, CA, and was a named defendant in SEC's lawsuit.  Feathers was the founder, controlling shareholder, and executive director of Small Business Capital Corp. ("SBCC") at the time it was seized in June 2012.

Other Plaintiffs are private, and, or, business citizens and residents primarily of California who were investors in SBCC, Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, SBC Senior Commercial Mortgage Fund, LLC, and Small Business Capital, LLC.  All of these were lawfully formed in, and headquartered, in California.  These entities had approximately $45 million assets and three hundred sixty investment accounts or investors at the time they were placed into receivership in June 2012.  Feathers' standing to represent most or all other plaintiffs falls under Rule 17 of the Federal Rules of Civil Procedure with Feathers position as the permanent and irrevocable attorney-in-fact[6] for other Plaintiffs, and described as such by SEC in civil pleadings[6].

The United States Securities and Exchange Commission ("SEC") is an agency of the Federal Government which reports to Congress and the President.  SEC is headquartered in Washington, D.C., and is tasked with enforcing federal securities laws.  Descriptions of SEC's operations and activities may be found at www.sec.gov.  SEC is the regulator for the Public Company Accounting Oversight Board, and other public and private accounting, auditing, and investigative agencies.  SEC's publications show that it may, and does, pursue and penalize accountants, auditors, and investigators who do not follow proper accounting and auditing rules, principles, statutes, etc.

Roger Boudreau is employed as a senior accountant in SEC's Western Regional Office in Los Angeles, CA.  Boudreau's employment description provided to Feathers by SEC shows Boudreau holds employment with SEC due to his licensing and stated accounting expertise.

---

[6]*SEC v. Small Business Capital Corp., et al.* (Docket 1, paragraph 13) "by Feathers…" as attorney-in-fact'"

## II.    EXHAUSTION

Plaintiff Feathers filed administrative claims on his behalf, and on behalf of other Plaintiffs, with SEC in, or around, May 2014.  SEC denied these claims in, or around, December 2014. Accordingly, Plaintiffs have exhausted their administrative remedies for purposes of its claims against the United States under the Federal Tort Claims Act.

## III.    CLASS ALLEGATIONS

Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) for himself and on behalf of a class of all persons similarly situated and who suffered a loss from their investments in Small Business Capital Corp., Investors Prime Fund, LLC, SBC Portfolio Fund, LLC, and SBC Senior Commercial Mortgage Fund, LLC, directly or indirectly, between June 2012 up through, and including, the date of this Complaint.  Excluded from the Class is the Defendant herein, the officers and employees of the SEC and the officers and employees of any of Plaintiff's related entities, members of their immediate families, heirs, successors, or predecessors in interest.

This class is sufficiently large that enjoinder of all members is impracticable.  There are questions of law and fact here that are common to all class members.  The Constitutional and other claims of Feathers share common elements with the class.

Feathers is not able to afford counsel for himself due to the seizure of his assets, and the income from those, and from having lost meaningful employment due to, and since, the date of seizure.  Despite this, he believes that he will fairly and adequately protect his interests and those of the class, whose membership information is detailed in pleadings of the receiver of Plaintiff's assets. Other Plaintiffs should not be burdened with legal fees given harm already incurred to them by SEC, and because Boudreau's negligence is readily identifiably, as well as damages caused by these.

Plaintiff's damages are measurable with a common methodology for the whole class of Plaintiffs.  Partial indication of damages is established by Plaintiff's opposition pleadings to the reports of the court appointed receiver in SEC's civil action.

## V. JURY DEMAND

Plaintiff individually and on behalf of the Class demands a trial by jury on all triable issues.

## VI. JURISDICTION AND VENUE

The Federal Tort Claims ACT ("FTCA") vests federal courts with exclusive jurisdiction over claims against the United States for which it has waived sovereign immunity. Pursuant to 5 USCS § 702, a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

The FTCA provides that the United States may be held liable for the wrongful acts of federal employees, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."; 28 U.S.C. §1346(b)(1). Venue is appropriate in this district court as Feathers and the majority of Plaintiffs reside within the boundaries of this district court. Plaintiffs have exhausted all administrative remedies under the FTCA with SEC.

## VII. FACTS AND NATURE OF THIS ACTION

1. Boudreau made material and professionally negligent representations of Plaintiff's investment fund member distributions covering SEC's Enforcement Review period for Plaintiff's investment funds of 2009 – 2011 and part of 2012.

2. Due to Boudreau's objectively false, material, and highly misleading presentations of Plaintiff's investment fund member's distributions, their property was seized from them in June 2012.

3. Boudreau, a licensed CPA, acted in professional negligence by adding member's "distributions" together with their "investments", and calling these all, again, "distributions".

4. Due to his professional licensing and his experience, Boudreau knows that distributions are money that goes out of a fund, and investments are money that come into a fund.

5. Distributions and investments are the opposite of each other, with opposite impacts on fund

capital, according to GAAP and simple principles of math.

6. Despite the fact that distributions and investments are opposite of each other, and should not be added together under GAAP, and even with extensive experience and his licensing which indicated Boudreau was aware these should not be added together according to GAAP, he still added distributions and investment to each other and SEC wrongfully illustrated these as distributions.

7. Boudreau's departure from GAAP should have been readily apparent to him, SEC, or both of them, as violating GAAP with his wrongful mathematical determination for determining fund distributions. The mathematical formula used by Boudreau, in his negligence, was:

$$\textit{"DISTRIBUTIONS" = "DISTRIBUTIONS + INVESTMENTS"}$$

8. The fallacy of this formula should have been evident to Boudreau and those who supervise him.

9. Under GAAP, Plaintiff's investment funds distributions could never equal their distributions plus their investments.

10. For the inclusive period of SEC's Enforcement review, which was 2009 – 2011 and part of 2012, Boudreau's negligence created the wrongful illusion that Plaintiff's investment funds distributed far more than they actually distributed.

11. Boudreau's formula caused him to materially and grossly overstate distributions to 54% from actual distributions for 2009 – 2011, and, combined with his other math errors, over 100% for 2012.

12. Boudreau overstated distributions by more than 100% for 2012 with his negligent formula, other mathematical, and objectively false illustrations. His tables and figures, all erroneous, were centrally placed and highly visible in SEC's pleadings. These made it appear that Plaintiff's fund had doubled, yet, erroneous grossly exaggerated distributions from 2009 – 2011, and gave an illusion in SEC's pleadings of a trend that did not actually exist, but appeared only due to GAAP departures.

13. Boudreau's negligence made it appears as though the funds required far more member capital for distributions then they relied upon.

14. In light of Boudreau's CPA licensing and his experience he was obligated to see that the truth about fund distributions emerged. Boudreau's negligence caused him to fail to establish the truth about fund distributions.

15. Boudreau's negligence caused others, including a federal district court judge looking at sealed *ex parte prima facie* pleadings which relied upon his objectively false illustrations of distributions, which violated GAAP, to possibly form untruthful conclusions of fund distributions, and on that basis for an Order to be issued authorizing a seizure of Plaintiff's assets..

16. With Boudreau's and SEC's knowledge of SEC's persuasive powers to bring injunctive relief for their cause and their knowledge that a deprivation of due process is caused for any lawsuit to a defendant with a seizure by its very nature, Boudreau, and SEC, should have properly followed accepted procedures to determine fund distributions, and carefully avoid negligence.

17. Boudreau's work does not involve policy making of the type which is an exception to FTCA. In carrying out his work, Boudreau performs the kind of work that would be performed by non-governmental accounting and auditing professionals.

18. Like all CPA licensees, Boudreau is required to exercise due care in delivering his services.

19. SEC relied upon Boudreau's negligent work product to bring its civil action against Plaintiffs. Boudreau's negligent work, if other than departures from GAAP or GAAS, or if not those, violated SEC's policies, or was outside any permissible range for a licensed CPA.

20. Boudreau's professional negligence was determined by Feathers and after Feathers' own analysis with no assistance provided to him from licensed accountants familiar, and bound by, GAAP, who Feathers could not afford after his assets were seized and his income was taken from him by way of his loss of his employment as CEO of his own company.

21. Due to Boudreau's negligence SEC was able to lead to inferences drawn in its favor as to its allegations about the fund's distributions that it would not have been able to otherwise. A federal agency plaintiff in a securities lawsuit such as SEC should not cause a seizure through such negligently produced, factually void, and unsubstantiated conclusions.

22. Impeded from his assets having been taken, Feathers was unable to discover on a timely

and useful basis that Boudreau's work, was, by legal definition, professionally negligent, and the cause of Plaintiff's injuries by that legal definition, until approximately the middle of 2014.

23. Upon Feathers' careful review of the legal standards for which CPA's are required to conduct their work in California, and Feathers' determination that Boudreau had failed to meet these standards, and in fact had performed his work with professional negligence, and Feathers' determination that Boudreau's negligence was the cause of substantial harm to himself and others similarly situated to Feathers, and to whom Feathers is a fiduciary by way of his permanent and irrevocable attorney-in-fact relationship with others similarly situated to him, Feathers submitted Tort Claim filings to SEC.

24. SEC, upon its review of Feathers' Tort Claim filings, denied Feathers' claim to damages for himself and others similarly situated, who Feathers had filed claims for.

25. Plaintiffs suffered damages when their assets, current, and future revenues from their assets were taken on the basis of SEC's pleadings which contained scores of Boudreau's objectively false financial illustrations. As well, Plaintiffs' funds suffered a steep drop in revenues immediately after their seizure, and continuously thereafter, and through this date, per the reports of the receiver.

26. Substantial write-downs, and, or, write-off of certain fund assets and other assets was caused by the seizure predicated on Boudreau's negligence in his work, as confirmed in the receiver's reports.

27. At the time of their seizure Plaintiffs were in the middle of their busiest thirty day period of loan originations in their history closing on Small Business Administration 504 "Jobs Act" loans, and for which federal appropriations were shortly expiring, as Plaintiff's records indicate.

28. Plaintiff's funds had raised considerable amounts of capital for these at substantial costs for these Jobs Act SBA loans to be funded, and at considerable expense to do so, all which was capital of investors that was wasted.

29. Authorities in Plaintiff's lending field recognized this unique lending period, which presented a unique risk:return period in Plaintiff's favor relative to risk:return offered during other periods:



*Coleman*

Critical Information For Today's Small Business Lender

Tags: 504 Loan Program

November 12, 2014

*Part 1, Special In-Depth Report*

By Charles H. Green



The past is past and I've recently documented that fiscal year 2014 was a successful one for SBA lenders, with the 7(a) program finishing with an approved volume of $19.19 billion. Overall, SBA programs clocked in at $28.68 billion of total financing, a significant foothold in the $1 trillion SME marketplace.

But the CDC/504 tranche of SBA offerings had a bad year, registering only $4.19 billion, a sum that limped worse than in FY 2013 (see graphics here). That earlier year was expected following the record $6.71 billion year set in FY 2012 thanks to the once-in-a-lifetime refinancing privileges granted to date.

30. Prior to the seizure Feathers and the funds enjoyed solid reputations.  Feathers served as a Naval Officer, then as an employee of the Small Business Administration ("SBA"), followed by a decade in banking, where Feathers gained considerable experience with SBA lending.

31. After military and federal agency (civilian) employment, and a decade in banking, Feathers then founded and managed his companies, which specialized in real estate loans to small business owners throughout the United States.

32. These companies were among the country's fastest growing SBA lenders according to SBA statistics and industry reports.

33. Six months prior to seizure, Feathers became a director of a state chartered bank six months prior to seizure of his company following background checks on him and funds he founded and managed by FDIC, the California Department of Financial Institutions,  FBI, and the United States Small Business Administration.

34. Feathers was forced to abruptly resign that bank director position due to the seizure, as he was aware that it would diminish his abilities to effectively manage an investment of the funds into the bank at which he was named a director, and that it would distract him, as well, from his bank director obligations, to which he had agreed to for that bank and to the federal and state regulators of that bank.

35. Feathers suffers from what, understated, is societal and industry pariah status due to SEC labeling him running a "Ponzi scheme" in their civil lawsuit pleadings.

36. SEC's prejudicial and harmful label, now applied on Feathers throughout the internet and in printed publications, relied upon pleadings replete with Boudreau's objectively false financial information.

37. Boudreau's negligence caused a Constitutionally infirm seizure of Plaintiff's Property and deprived Plaintiffs of the ability to employ counsel from the date of seizure through this date, and prevented due process. Plaintiffs deserved equal protection rights to their assets as others enjoy under state and federal law.

38. Boudreau is not shielded here by immunity, as his negligence violated California civil codes 1710 and 1714(a) and, or, other codes which may apply.

39. As a licensed CPA, Boudreau held awareness, or should have held awareness, that creating objectively false distributions for defendant funds could or would cause harm, and knowingly disregarded this risk.

40. Boudreau held legal and professional duty to use due care, and to abide by relevant accounting principles, which he failed. A privately employed accountant is held liable under these circumstances described herein.

41. Boudreau Boudreau's breach is, or was, the proximate or legal cause of Plaintiff's injury. Boudreau acted with disregard of the high likelihood of that probability, or with conscious disregard of the probable consequences of harm to Plaintiffs.

42. Feathers requested the receiver who controls Plaintiff's assets to consider filing a

complaint against SEC, to which the receiver was non-responsive. Feathers' believes his request to the receiver to have been futile, due to the ongoing relationship of the receiver and SEC, who have worked together in numerous lawsuits where SEC has requested his appointment.

43. Plaintiffs suffered harm due to Boudreau's negligence in that a wrongful civil judgement was obtained by defendants against Plaintiff(s). As a result of that, and their seizure, Plaintiff's companies or investments lost most or all of their going-concern value and have suffered other losses.

44. Plaintiff's member/owners were deprived of control of their investments, and their California investor voting control rights, by way of a receivership imposed on them. Property seized without full due process to Plaintiff's included mortgage notes, real estate, more than $10 million cash, more than $5 Million annual revenues generated from their assets, income generated from $100 million of loan servicing rights, tangible assets, etc. Plaintiff's assets are fully traceable to the records of Plaintiff's companies now under control of a receiver.

45. Boudreau's employment description does not describe his work as discretionary.

46. Boudreau's method of producing distributions was a severe departure from accepted accounting and auditing practices. This table compares Investors Prime Fund's distributions to Boudreau's objectively false representations in SEC lawsuit pleadings which incorporated these:

### Boudreau's IPF Illustrations in SEC's Pleadings

| Year | 2010 | 2011 |
|------|------|------|
| Boudreau's distributions in SEC pleadings | $1,284,874 | $2,146,299 |
| Investors Prime Fund's actual distributions | $850,514 | $1,390,853 |
| Amount distributions were overstated by Boudreau | 51% | 54% |

47. SEC alleged cause in their Complaint to request a seizure, the most drastic and harmful of civil law legal actions.

48. Any seizure request should rely on concrete facts, and should not rely upon on scores of

objectively false financial illustrations and tables produced by professional negligence of a

government agency's Enforcement Division CPA, and which did occur here.

49. In addition to losing their assets from a seizure, Plaintiffs permanently lost expected near

and long term expected revenues of their assets from foregone loan interest, premiums, and loan

servicing revenues in excess of $5 Million on $10 Million or more in scheduled loan fundings.

50. Boudreau has been a licensed CPA in California since 1989.

51. Boudreau is highly trained and highly compensated by the Government due to his expertise

and experience in his knowledge of public accounting, and as records provided by defendant to

Plaintiff indicate are terms of his employment.

52. Boudreau held knowledge that adding fund distributions to fund investments and then

describing numbers he combined in his departure from accepted accounting practice "distributions"

again violated acceptable procedures of analysis and illustration.

53. The method employed by Boudreau could never produce accurate representations of

Plaintiff's investment fund member distributions.

54. SEC initiated what was effectively a search of Plaintiffs in December 2011 when

it served Plaintiff with subpoenas for their records. SEC's seizure by way of Boudreau's conduct

during this search was constitutionally infirm, in that it relied upon Boudreau's negligently produced,

and false, illustrations of fund distributions which were objectively unreasonable. Citizens are

protected against searches executed in objectively unreasonable manners by government by the

Fourth Amendment. The manner in which a search is executed is subject to later judicial review as to

its reasonableness.

55. SEC's sealed pleadings, never seen by Plaintiffs on a timely basis, were replete with scores

of references to Boudreau's objectively false financial illustrations in many paragraphs and numerous

tables of SEC's pleadings. In SEC's complaint, these include paragraphs 2, 52, 53, 54, 55, 56, 57,

58, 59, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, and 81. SEC's request for an injunction, and for

Plaintiff's assets to be placed into receivership, as well as Boudreau's declarations in SEC's

pleadings, contained similar, or greater, numbers of his objectively false illustrations of member distributions.

56. The Fourth Amendment standard requires inquiry into the factual circumstances of every case. Here, Boudreau's conclusions were objectively false and could never be valid. Boudreau's flawed work, on which SEC was reliant, caused a meaningful interference, by way of a seizure, with Plaintiff's rights to hold and to control theirr possessory interests in their property.

57. Lack of knowledge beforehand and no assets or income after the seizure created an inability of Plaintiff to prevent the government's conversion of their property and the revenues from their property.

58. A holding of Plaintiff's property and revenues from them has continued through the date of this Complaint.

59. Plaintiff's records have been held against their will due to Boudreau's negligence. There was, and continues to be, an unconstitutional detention of all of Plaintiff's records, which constitutes an additional seizure within the meaning of the Fourth Amendment that requires reasonable suspicion.

60. Reasonable cause to allege, and to request a seizure, should not be based upon pleadings with unreasonable and objectively false factual illustrations and tables of an SEC Enforcement Division CPA. SEC is liable for Boudreau's negligence due to the affirmative link between SEC and Boudreau from his employment relationship.

61. Boudreau's illustrations were not mere talk. It is necessary here for the Judiciary to recognize Boudreau's negligence in order for the public to continue to have confidence in the regulatory audit abilities of SEC.

62. Prior, Courts have directed agencies such as SEC to examine closely employees' work product before submitting sealed *ex parte prima facie* requests for seizure.

63. By all appearance, SEC failed to closely examine Boudreau's work, and his visible departures from GAAP, before submitting their sealed *ex parte prima facie* pleadings.

64. Due to a seizure of their assets based upon allegations brought about by Boudreau's

negligence, SEC, whether intentionally or not, then aided its cause by using the element of surprise in its seizure by way of asking for an injunction with sealed pleadings, and which were *ex parte*, and based upon *prima facie* evidence.

65.  Plaintiffs were never afforded their own capital to employ accounting professionals to help discover on a timely basis SEC's complaint to be replete with Boudreau's objectively false distribution illustrations, and thereby demonstrate that SEC had failed to allege.

66. Since that seizure neither Plaintiff's capital, nor approximately $4 million in revenues generated on their assets since the time of that seizure, according to the reports of the receiver, has not been available to them to employ their own counsel for protecting their property interests, or for the employment of other professionals which would have aided their cause.

67. Pleadings of SEC's requested receiver demonstrate instances of harm to Plaintiffs, i.e.:

> "The pool of potential buyers and the value of the 7(a) Loans may also
> have been impacted...the very fact of the receivership itself."

68. Plaintiffs were careful and deliberate to reflect distributions.  Plaintiffs employed an outside public accountant who properly illustrated distributions in their financial reports.  Boudreau's work appears indifferent to, or ignored, the distribution information prepared by Plaintiff's CPAs, included those reflected on their tax returns, audited financial statements, and banking statements.

69. That Plaintiff's records were well maintained was confirmed by reports of the receiver:

> *"Based on information gathered to date, it appears that the business records*
> *of the sale of membership interests and payments of returns to investors were*
> *accurately maintained, and are generally reliable".*

70.  Boudreau, a licensed CPA and subject to California Civil Codes and common law, held a duty by way of his licensing, and state and federal laws, to exercise reasonable in his duties of audit and reconciliation techniques, so as to not cause harm to others, such as Plaintiffs.

71. Boudreau held awareness his reports were to be used for a particular purpose, up to, and including, a seizure, and that his court submission would be relied upon as truthful and factual by the Court.

72. Boudreau's conduct, including his sworn declarations to the court that he believed his work to be truthful and accurate, is clearly connected to the seizure of Plaintiff's assets, and harm to them from that.

73. Plaintiff's investments and distributions were distinct items in Plaintiff's financial records. A CPA such as Boudreau holds knowledge adding these two items together is not proper. A reasonably prudent licensed CPA should not have severely departed from acceptable audit and accounting practices illustrating distributions.

74. Feathers' and his spouse were harmed with a taking of substantially all of their life's savings in Feathers company. Feathers has not been able to obtain employment in the financial services field since the injunction and seizure, and Feathers' spouse was forced to accept a less senior and lower paying position afterward. Due to that event Feathers suffers a 75% reduction of income from other employment. Since seizure Feathers has lost approximately $750,000 salary and wages, and likely will lose several times that amount in future expected lifetime income losses.

75. If Plaintiff's assets and income had not been seized from them, they could have employed a CPA, who would have quickly determined Boudreau's work to be negligent and void of accuracy. That would have provided a basis for dismissal of the injunction early into the lawsuit.

76. Feathers did re-investigate the basis to his own earlier SEC lawsuit pleadings, and upon that, determined Boudreau had acted with negligence in his work, before making his decision to file an administrative action with SEC on his behalf, and for other Plaintiffs.

77. Plaintiff holds belief there is legal sufficiency to support the allegations within this complaint. Prior, Feathers filed in SEC's civil complaint a motion for relief due to beliefs he held at time of the nature of Boudreau's transgressions (Docket 126). That filing of Feathers' was made in the absence of counsel, which was beyond Feathers' control. Feathers' prior relief filing outlined incorrect legal descriptions and theory, did not cite relevant California or federal common law, statutes, or codes, cases, etc., to allow the Court to reach a conclusion which would support Feathers' motion for relief. This complaint corrects those errors and provides foundation.

78. Feathers has appeals with the 9th Circuit for the Court's order of summary judgement,

1   and other appeals, which are not filed on the legal basis presented here, which is Boudreau's

2   professional negligence under his CPA licensing.

3      79. SEC's explanation offered for Boudreau's violations was implausible:

4

5                     Case5:12-cv-03237-EJD   Document160   Filed01/14/13   Page10 of 13

6        1 ‖ The Commission's staff reasonably believed that the total amount of distributions was

7        2 ‖ reached by adding these two items.

8

9

10     80. SEC's explanation is confounding in light of skills and experience required of

11  Boudreau.  SEC's job description for Boudreau, parts of which are produced here, indicates that a

12  person with Boudreau's experience and licensing in his position should never have violated accepted

13  accounting and audit techniques and procedures:

14          U.S. Securities and Exchange Commission
          Division of Enforcement
15          Staff Accountant, SK-0510-14
          Job Number: OEN0945
16

17

18          COMPETENCIES

19          FACTORS

20          Factor 1. Requirements
          Expert level professional knowledge of accounting principles, standards, theories,
21          practices, concepts, and techniques and skill and ability in order to apply this knowledge
          to broad and difficult assignments
22          Mastery of the accounting profession to provide advice involving interpreting or
          developing important public policies; and to serve as a recognized expert in the specialty
          area.
23          Factor 3. Guidelines
24          Guidelines include generally accepted accounting principles as approved and adopted by
          the Financial Accounting Standards Board, generally accepted auditing standards as
25          approved and adopted by the Public Company Accounting Oversight Board and the
          American Institute of Certified Public Accountants, and other related pronouncements by
26          governing bodies, SEC policies, and statutes administered by the agency. These
          guidelines are typically stated in general terms and have gaps in specificity requiring
          considerable interpretation. The employee must apply extensive knowledge and
27          experience to develop new methods, applications, or criteria. Work may require the
          refinement or development of guidelines. The employee is generally recognized as a
28          technical authority in the interpretation of guidelines.

                                    - 16 -

81. Boudreau failed to abide by SEC's own tenets.  SEC's web site:

> http://www.sec.gov/about/whatwedo.shtml                                    4/25/2015

" ... the SEC requires public companies to disclose meaningful financial and other   information ... "

82. An injunction, especially one which is sealed, *ex parte* and *prima facie*, requesting drastic action of bringing about a seizure should be based on facts, not negligence.  To injunctions requested by SEC not based on fact, Hon. J. Rakoff, *SEC v. Citigroup Global Markets Inc.*, stated:

> An application of judicial power that does not rest on facts is
> worse than mindless, it is inherently dangerous.  The injunctive
> power of the judiciary is not a free-roving remedy to be invoked at
> the whim of a regulatory agency  even with the consent of the
> regulated.  If its deployment does not rest on facts  cold, hard,
> solid facts, established either by admissions or by trials - it
> serves no lawful or moral purpose and is simply an engine of
> oppression

83. SEC posted in national press releases that the funds were a "Ponzi-like scheme".  SEC made its postings while relying on Boudreau's objectively false financial illustrations about the funds.

84. SEC did not protect Plaintiff's investors, it harmed them.  This is opposite SEC's stated mission (http://www.sec.gov/about/whatwedo.shtml) "the mission of the U.S. Securities and Exchange Commission is to protect investors...Only through the steady flow of timely, comprehensive, and accurate information can people make sound investment decisions".

85. Boudreau held knowledge, by virtue of training, experience, and his CPA licensing that negligence could cause injury or harm to persons if they were the cause of Plaintiff being subjected to a seizure which held reliance on his illustrations, even more so cause harm when employed in sealed *ex parte prima facie* pleadings.

86. The large variance between Boudreau's distributions produced in an objectively improper manner and the distributions reflected on a proper GAAP basis by the funds' outside

accountant, as outlined in their tax returns and financial statements, and provided by Plaintiffs to SEC, should have presented an obvious red flag[8] to Boudreau to question his work before allowing SEC to use his objectively false distributions in their pleadings.

87. Plaintiff does not assert here Boudreau did not act with good faith or good intention executing his work.

88. Plaintiff does not assert here that Boudreau may not have held himself to disbelieve he did not act with good faith or good intention.

89. Plaintiff represents the consequences of the harm to Plaintiff's caused by Boudreau's errant distributions is relevant, not his good faith or intentions.

90. Neither Boudreau nor SEC exercised care with proper review of his distribution illustrations, and which an essential element to SEC's lawsuit, and their request for a seizure.

91. Plaintiff's investment funds were similar to a mortgage real estate investment trust ("REIT"), as reasonably determined by SEC and industry publications which describe these.

92. As a class of investment mortgage REITs, especially those which invest in financial products with federal guarantees such as Plaintiff's note investments have, have enjoyed strong investor support, with industry reports showing they have enjoyed above market returns as compared to many investment indexes, since the period of approximately 2009 through this date.

93. From neglect of Boudreau, Plaintiffs were deprived of similar benefits as their peer group, or close peer group.

94. Plaintiff's had interrupted reasonably expected continued growth of their businesses, based on their past history of revenue growth, employment of skilled employees, their high levels of cash on hand for new loan fundings, and many loans which were being processed at time of seizure.

---

[8] See "Lecture Notes on Forensic Accounting Investigations" Jagdish S. Gangolly, Department of Accounting and Law, State University of New York at Albany

1
2
3
4
5
6
7

95. At the time of their surprise seizure, Plaintiffs held substantial likelihood of approval of a

Wells Fargo line of credit in excess of $25 Million to Plaintiff's business entities, and as evidenced

by correspondence to Plaintiff's indicating such. This credit facility was to allow growth to

approximately 100% in Plaintiff's loan servicing portfolio, from $100 Million to $200 Million.

Plaintiffs were deprived of the opportunity for continued growth in their businesses due to

Boudreau's negligence.

8
9
10
11

96. A widely disseminated industry publication demonstrated the following impressive

financial performance of a peer to Plaintiff in Plaintiff's industry, which Plaintiffs verifiably

appeared also on a similar path to achieving before their seizure, based on their operating history:

Read More

12
13
14
15
16
17
18
19
20

**Newtek Extends its Capital One Credit Facility**

Newtek Business Services aka The Small Business Authority,
announced it has entered into a $20 million credit agreement with
Capital One, N.A., which consists of a $10 million term loan and a $10 million
revolving credit facility. This is in addition to the current $27 million financing line from

Capital One which Newtek uses exclusively for its small business lending business
and brings the Company's total financing through Capital One to $47 million.

Barry Sloane, Newtek's Chairman, President and Chief Executive Officer says, "We are
extremely pleased to enter into this new agreement, expanding our existing
relationship with Capital One, as well as reducing our overall cost of capital. That said,
we are also grateful for the capital that Summit provided to us in April 2012, which
played an integral role in the Company's growth. Specifically, it significantly contributed
to the 83% growth in our lending platform from $97.1 million in loan originations in
2011 to $177.9 million in loan originations in 2013. Furthermore, it enabled us to
increase our consolidated pretax income practically fivefold from $2.0 million in 2011
to $11.1 million in 2013. In 2014, we anticipate continuing this upward trajectory of
growth in both loan originations and pretax income."

21
22
23
24
25
26
27
28

97. Damage inflicted to Plaintiffs is measurable. It may be redressed with a favorable

decision to Plaintiffs. Plaintiffs respectfully request the Court award them compensatory damages

in the amount of their economic losses due to the seizure of their assets. This seizure due to

Boudreau providing objectively false financial illustrations about Plaintiff's distributions within

SEC's pleadings. Plaintiffs look for revenues that were to have accrued to them, award for loss of

the value of their assets after proper determination by the court, plus reasonable fees, costs, and

1  such further relief as the Court deems just and proper.

2

3  **IX.   DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

4  98. Feathers brings a direct and a derivative claim for other shareholder(s) as Small

5  Business Capital Corp's majority and controlling shareholder before injunction, pursuant to Rule

6  23.1. Feathers brings this action directly and derivatively in the right and for the benefit of SBCC

7  to redress injuries suffered, and to be suffered, by SBCC as a direct result of Boudreau's violations

8  described herein, which impacted SBCC as the manager of Plaintiff's investment funds.

9  Feathers will adequately and fairly represent the interests of SBCC and its shareholders in

10  enforcing and prosecuting its rights. Feathers was a shareholder of SBCC at the time of the actions

11

12  complained of herein and remains a shareholder. Feathers has not made a demand on other

13  shareholders to bring this lawsuit, as he is the majority shareholder. No other shareholder has

14  voiced opposition to the lawsuit.

15

16  **COUNT 1 – NEGLIGENCE (PROFESSIONAL NEGLIGENCE)**

17  99. Plaintiffs incorporate paragraphs 1 through 98 as if fully set forth herein.

18  100.      Under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671-2680, the United

19  States is liable in tort where a private party, such as Boudreau, would be liable under applicable

20  state law. The elements of a cause of action for Boudreau's professional negligence are: (1) his

21  duty as a professional to use the skills, prudence, and diligence as other members of his profession

22  and comply with applicable mandatory professional standards; (2) Boudreau's breach of that duty;

23  (3) the proximate causal connection between Boudreau's conduct and Plaintiff's resulting injury;

24  and (4) actual loss or damage to Plaintiffs resulting Boudreau's negligence.

25

26  101.      There is no evidence offered by SEC that it adequately supervised Boudreau.

27  Boudreau postulated professional negligent conclusions regarding Plaintiff's fund distributions.

28

SEC incorporated Boudreau's defective and unfounded findings into its lawsuit pleadings. Because Boudreau provided unfounded conclusions, SEC formed a wrongful basis to ask for, and obtain, seizure of Plaintiff's assets. Feathers has suffered $1 Million damages and other Plaintiff's $15,500,000 damage due to this. Plaintiffs are entitled under the FTCA to recover $16.5 million as money damages caused by Boudreau's negligence.

102.    Boudreau's negligence is indicated by his violations of common law, California Civil Codes 1710, 1710(2), & 1714, California Business and Professions Code 5051 and 5100(c), California Code of Regulations 5100 § 5, 5100 § 99, Section 522 *Restatement (Second) of Torts*. Any, or all, of these created duties of Boudreau which he breached by making objectively false distribution illustrations of Plaintiff's investment distributions used by SEC. Boudreau's analysis did not comply with requisite professional standards. Plaintiffs were harmed by Boudreau's negligence.

103.    Plaintiff's injuries are of the natural, probable, and foreseeable, type that may come about from SEC pleadings, sealed *ex parte prima facie* pleadings in particular, which are built on a foundation of negligence of an SEC Enforcement CPA who has engaged in a substantial departure from acceptable accounting and auditing practices.

104.    To the extent the proof at, or prior to, trial shows that Boudreau acted with Professional negligence, this will determine that the government's taking of the property and property rights of Plaintiffs without was without proper due process. Plaintiffs merit compensation for harm to them.

105.    Plaintiffs suffered injury as a direct and proximate result of takings of their property, including but not limited to monetary damage. As a result of the conduct alleged herein, Defendant is liable to Plaintiffs and Plaintiffs are entitled to relief.

**COUNT 2 – NEGLIGENCE OF SEC WHICH CAUSED CUMULATIVE ERROR**

106.     Plaintiffs incorporate paragraphs 1 through 105 as if fully set forth herein.

107.     In that SEC falsely represented their recommended receiver as a "licensed CPA", SEC in appearance further interfered with Plaintiff's due process rights as outlined by the 14th Amendment, through this instance of negligence, as well as due to the cumulative error which this professional (or other) negligence of SEC caused.

108.     SEC and its employees held a duty to use the skills, prudence, and diligence as other members of their profession, and comply with applicable mandatory professional standards; they breached that duty; this established a proximate causal connection between the negligent conduct and the resulting injury; and there was loss or damage resulting from due process interferences caused by their negligence.

109.     State law basis to these claims fall under common laws and California Civil Codes.

110.     To the extent the proof at or prior to trial shows SEC did in fact act in negligence, the cumulative error here has contributed to Plaintiffs suffering injury. As a result of the conduct alleged herein, Defendant is liable to Plaintiffs and Plaintiffs are entitled to relief.

**COUNT 3 – VIOLATION OF PLAINTIFF'S CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

111.     Plaintiffs incorporate paragraphs 1 through 110 as if fully set forth herein.

112.     Plaintiffs were deprived of Constitutional liberty and property interest without due process when Boudreau, and SEC, failed to meet specific laws, codes, and statutes, as well as the umbrella standard of due professional care for Boudreau's employment description and for his licensing. Boudreau failed to employ proper procedures and to achieve standards, did not employ proper examination planning, insufficiently reviewed Plaintiff's records, and never discussed his distribution analysis methodology at any point with Plaintiff. SEC provided no prior meaningful indication or guidance to Plaintiff's or their counsel at that time, or reason to believe, that Boudreau

1
2    was analyzing fund distributions in the improper methods he chose,  and what his initial negligent

3    work product conclusions might be.

4        113.        Every person or agency, including Boudreau and SEC, who, under color of any

5    statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or caused to be

6    subjected, any citizen of the United States or other person within the jurisdiction thereof to the

7    deprivation of any rights, privilege, or immunities secured by the Constitution and laws, including

8    the Equal Protection Clause, shall be liable to the party injured in an action of law, suit in equity, or

9
10   other proper proceeding for redress.  Wrongful seizure and due process violations are both

11   actionable under California State laws and the California Constitution.

12

13           **COUNT 4 – FAILURE TO DISCLOSE, OR, ALTERNATIVELY, TO INTERCEDE**

14       114.        Plaintiffs incorporate paragraphs 1 through 113 as if fully set forth herein.

15       115.        Plaintiff Feathers is the party who brought to the Court's attention the facts that (a)

16   Boudreau violated accepted accounting practices which SEC relied upon throughout its civil

17   lawsuit pleadings, and (b) that SEC falsely represented their recommended receiver a CPA.

18       116.        Defendant knew, or should have known, prior to Plaintiff bringing these matters to

19   the Court's attention that they could, and did, interfere with due process. Due to defendant not

20   disclosing these matters to Plaintiff's or the Court's attention, or interceding their own wrongful

21   representations which went on for many months of motion filings, hearings, consents, discovery,

22   etc., time passed by, to Plaintiff's detriment for that time was wasted which may have been

23
24   beneficial to Plaintiff's.  During these period, Plaintiff held protracted reliance and belief that a

25   licensed CPA was the custodian and fiduciary of their property, which was not the case

26   whatsoever. These negligent lapses in judgement of SEC are traceable to SEC employees Boudreau

27   and Bulgozdy.  Under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, the United

28

1  States is liable in tort where a private party would be liable under applicable state law.

2  117.  As a result of Defendants failure to disclose these matters, Plaintiffs were deprived

3  of due process and had takings of their property which should not have occurred except for the

4  negligence of these employees of SEC, and which is traceable to $16.5M in damages to Plaintiffs.

5

6  **COUNT 5 – CLAIM FOR SUPERVISORY LIABILITY REGARDING ALL OF THE**

7  **ABOVE MENTIONED VIOLATIONS OF PLAINTIFF'S CONSTITUTIONAL RIGHTS**

8  118.  Plaintiffs incorporate paragraphs 1 through 117 as if fully set forth herein.

9  119.  SEC holds a duty to Plaintiffs within its Enforcement Division to retain competent

10  accountants to conduct examinations and searches of those parties it names in Enforcement actions.

11  Based on the policies and customs of SEC and management in its Regional Offices, Boudreau had

12  supervisors who were involved in each of the decisions involving employment of Boudreau's

13

14  negligent work product in SEC's sealed civil lawsuit pleadings against Plaintiffs.  These

15  supervisors of Boudreau share vicarious liability, due to their negligence for his acts of negligence.

16  These supervisors allowed Boudreau to act with negligence, which infers negligence on their part.

17  120.  As a direct and proximate result of the failures in supervision of Boudreau's work in

18  the Western Regional Office of SEC, Plaintiffs have suffered direct and proximate harm, and have

19

20  suffered substantial and continuing injuries and damages as set forth above.

21

22  **COUNT 5 – TORTITIOUS INTERFERENCE WITH BUSINESS RELATIONS**

23  121.  Plaintiffs incorporate paragraphs 1 through 120 as if fully set forth herein.

24  122.  As a result of the wrongful seizure of Small Business Capital Corp's assets and

25  sources of income, and interferences with due process, brought about by way of Boudreau's

26  tortious negligence, it has not been able to make contractually agreed upon payments of $5 million,

27  or greater, in commitments to third parties it had obligations to, including Investors Prime Fund,

28

LLC, and SBC Portfolio Fund, LLC.

123.     California law allows such claims to be actionable, such as here, and if a plaintiff must have been forced to "expend financial and emotional resources to defend against a baseless claim". SEC's litigation alleged member distributions based on Boudreau's negligence. That litigation may be concluded in Plaintiff's favor subject to appeals under review with the 9th Circuit.

124.     SEC had awareness of Small Business Capital Corp's contractual obligations, which SEC frequently made reference to in its civil lawsuit. These obligations were evidenced by signed and dated promissory notes between the parties.

125.     By way of asking for a seizure, SEC did cause Small Business Capital Corp. to not be able to meet its commitments, even though SEC's actions were based upon its reliance on Boudreau's objectively false financial analysis prepared in his negligence.

126.     As a direct and proximate result of SEC's request for an injunction and seizure based upon Boudreau's negligent work, Plaintiffs have suffered direct and proximate harm, and have suffered substantial and continuing injuries and damages as set forth above.

## COUNT 6 – PRIVACY ACT – FAILURE TO MAKE REASONABLE EFFORTS TO ASSURE RECORDS ARE ACCURATE, COMPLETE AND RELEVANT

127.     Plaintiffs incorporate paragraphs 1 through 126 as if fully set forth herein.

128.     Defendant SEC released substantial amounts of personal information about Plaintiff Feathers in its civil lawsuit pleadings. Absent probable cause which was alleged by way of Boudreau's objectively false and unsupportable reporting on "distributions", SEC would not have had cause to release substantial amounts of information about Feathers' personal salaries, wages, benefits, etc., into the public record.

129.     5 U.S. Code § 552a prohibits agency release of private information which is not relevant; SEC released irrelevant information for its cause it alleged from Boudreau's negligence.

130.     As a direct and proximate result of Boudreau's negligence, Feathers has  suffered substantial and continuing injuries and damages.

## COUNT 7 – FALSE LIGHT

131.     Plaintiffs incorporate paragraphs 1 through 130 as if fully set forth herein.

132.     Upon information and belief, SEC published, publicized or otherwise gave publicity to false statements, representations or imputations of or concerning Plaintiff(s).

133.     Plaintiffs did not consent to the publication of such false statements,

134.     The publication of such false statements, representations or imputations placed Plaintiffs in a false light that would be offensive to an ordinary, reasonable person.

135.     As a direct and proximate result of SEC placing Plaintiffs in a false light, Plaintiffs have suffered grave injury, including but not limited to emotional trauma, loss of reputation, loss of assets and the revenues from those assets, and loss of current, and, or, jeopardized future financial opportunities, and public relations.

## COUNT 8 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

136.     Plaintiffs incorporate paragraphs 1 through 135 as if fully set forth herein.

137.     Cnduct of SEC, through its employees Boudreau and Bulgozdy, was negligent, evidenced want of care and attention to duty, with indifference to Plaintiff's rights, with such disregard of Plaintiff's rights that Defendant's conduct is equivalent to conscious indifference. Plaintiffs suffered, and suffer, severe and substantial emotional distress and mental anguish.

138.     Plaintiffs who lost all, or most of the investment, suffered and continue to suffer mental anguish and stress as a natural and foreseeable consequence of Defendant's negligence.

139.     Defendants caused Plaintiffs to suffer damages as set forth herein.

## X.   DAMAGES

140.     Plaintiffs incorporate paragraphs 1 through 139 as if fully set forth herein.

141.     Feathers lost his entire net investment into Small Business Capital Corp. of approximately $495,000.

142.     Feathers lost possession of a legal settlement that was the sole property of Feathers ("ECI/Cline" lawsuit) of approximately $250,000 which the Receiver has collected into the Receivership Estate and not distributed to Feathers.

143.     Feathers has suffered lost wages since injunction of approximately $500,000.  He has suffered and continues to suffer mental anguish and other non-economic losses of $500,000 minimum, and reputation harm which is irreparable.

144.     Other Plaintiffs have suffered losses of $15,500,000 due to loss of enterprise ("going concern") value of approximately $5,000,000, discounts on value of assets sold resulting from their liquidation, approximately $3,500,000 in fees paid to the Receiver and his professionals that were not necessary, net income losses of approximately $10,000,000, losses of interest income from notes receivable from Small Business Capital Corp. of approximately $1,000,000, loss of note principal from notes receivable from Small Business Capital Corp. of approximately $6,000,000, and suffered and continue to suffer mental anguish and other non-economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgement from the Court:

    a) certifying this action as a class action

    b) Finding that Feathers has met the requirements of a class representative and may maintain this action as a representative of the Class;

    c) Certifying a Class of all individuals who were registered and beneficial owners of all entities seized by way of SEC's complaint;

d) Allowing legal fees to be awarded to Plaintiff's as necessary and per the allowances of the offering documents of Plaintiff's investment funds.

e) Upon certification of a Class, the Court to stipulate the receiver who controls Plaintiff's assets to reserve reasonable fees for legal representation, expert witness fees, and other reasonable fees related to Plaintiff's legal action.

f) determining and awarding compensatory damages in an amount to be proven at trial, together with interest thereupon, but in no event less than $16.5 million with a finding that Boudreau acted with negligence and which brought about Due Process, Equal Protection, and Takings Clauses of the United States Constitution;

g) Awarding reasonable attorneys' and expert fees, expenses, and costs incurred in connection with the institution and prosecution of this action;

h) and awarding such other and further relief as the Court deems just and appropriate under the circumstances.

Dated:  5-15-15

Mark Feathers, *pro se*