Mark Feathers, *Pro Se*, Defendant
markfeathers@sbcglobal.net
1520 Grant Rd.
Los Altos, CA 94024
Telephone: (650) 575-7881

Filed

JUN 23 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV12-03237-EJD |
| Plaintiff, | |
| vs. | **MARK FEATHERS' REPLY TO COMMISSION'S OPPOSITION (DOCKET 1064) TO MARK FEATHERS' REQUEST FOR LEAVE OF THE COURT (DOCKET 1056) UNDER LOCAL RULE 7-9 TO FILE A MOTION TO MODIFY PRELIMINARY INJUNCTION** |
| SMALL BUSINESS CAPITAL CORP.; MARK FEATHERS; INVESTORS PRIME FUND, LLC; and SBC PORTFOLIO FUND, LLC, | |
| Defendants. | |

**Tentative Hearing:**
**Date:** September 10, 2015
**Time:** 9:00 a.m.
**Place:** Courtoom 4, 5th Floor
(Hon. Edward J. Davila)

**SCANNED**

## I      INTRODUCTION

1

2     The Commission opposes Feathers' request for Leave of the Court to consider fees for an

3  FTCA lawsuit against the United States.  That the Commission prior acknowledged (see Docket

4  160, page 1, lines 18 – 19) their own Enforcement Division CPA added capital going into the funds

5  ("investments") to capital going out of the funds ("distributions") "… to arrive at the total

6  distributions alleged in the Complaint" (*id*, pg.1, lines 19 – 20), *prima facie* in violation of GAAP,

7  and, or GAAS, and state and federal laws outlining competency requirements of licensed CPAs,

8  would appear to make this a colorable claim[1].  The Commission suggests this Court ignore *prima*

9  *facie*, if not incontrovertible evidence, of overt acts of professional negligence of its accountant

10  who provided scores of false financial illustrations in the Commission's complaint and related

11  pleadings.  The Commission's opposition is nonsensical given their own prior admission.  The

12  Court should disregard the Commission's self-serving "arguments" in its opposition, and consider

13  the following rebuttal facts to the Commission's pleading when considering the expected costs to

14  the Receivership Estate against those rightful benefits it should be able to gain from its own capital:

15     1.  The Commission states, wrongfully and misleadingly, that Feathers' request for fees is

16  for his "defense".  Feathers asks not for a penny from the Receivership Estate.  He seeks relief from

17  this Court for qualified counsel and expert witness fees as plaintiff for a separate lawsuit.  No

18  investor, nor the Receiver, has opposed Feathers' motion, only the Commission.  Feathers seeks

19  qualified counsel to demonstrate professional negligence of the Commission's accountant, not to

20  "get an attorney" (Opposition Docket 1064, pg. 7, line 7) to "fund the defendant's defense" as the

21  Commission transparently and wrongfully asserts (*id*, pg. 6, line 7), for a 25% fee contingency.

22     2.  The word "Ponzi" appears in the Commission's opposition pleading some ten times.

23  Prior to that, the word Ponzi appeared in the Commission's complaint and related declarations

24  which accompanied the complaint, in scores of instances.  The Commission continues to populate

25  every pleading submitted to this Court with the word "Ponzi" transparently for prejudicial effect of

26  _____

27  [1]An over-distribution of capital is the classic hallmark of a Ponzi scheme.  Here, it was the

28  Commission artificially overstating distributions by an astonishing 54% (see Dockets 126 & 187).

1   that word.  Yet, the Commission ironically acknowledges falsity to scores of financial illustrations

2   shown by Feathers to be in the Complaint and related Commission pleadings (see Docket 187).

3       3.  Despite that the Commission brought about a seizure based in part, or in full, on their

4   sealed *ex-parte prima facie* false financial illustrations, the Commission still continues to rely upon

5   its prejudicial term "Ponzi", and on the phrase "Ponzi-like", for which there is no legal definition.

6   The continued abusive and bullying actions of Commission against a *pro se* defendant who has

7   held almost no benefit of counsel or expert witnesses throughout this lawsuit, and who showed it to

8   be a fact that the Commission used false financial illustrations of the defendant's distributions,  and

9   the inability of the Commission to see the hypocrisy of its own actions (even if its accountant

10  produced his professionally negligent work "in good faith" (see Docket 160, page 9, line 2)) should

11  be of utmost alarm to all.  The Commission's actions and stance are repugnant.

12      4.  An evidentiary basis to Feathers' argument here of the Commission's accountant's

13  professional negligence, and the harm which qualified counsel and experts witnesses will properly

14  determine has been caused to the Receivership Estate, is based on the Commission's own

15  admission of how they produced false financial illustrations about the defendant investment funds.

16  An exhibit to Feathers' Request for Leave is a copy of the complaint for *Mark Feathers v. United*

17  *States*.  The exhibits show that the elements of professional negligence appear to have been

18  demonstrated by Feathers.  The exhibits points directly to state and federal laws and California civil

19  codes which the Commission's accountants appear to have violated.

20      5.  The use of assets of a Receivership Estate for legal fees in an action which will benefit

21  the Receivership Estate is not uncommon, does not appear to violate legal principles, and has

22  substantial legal precedent.  In fact, in this lawsuit the Receivership Estate is already paying

23  substantial fees to the Receiver and his Counsel for a lawsuit against California Business Bank for

24  an expected recovery which might be less than ten percent of the amounts to be recovered by

25  Feathers and other class members' FTCA complaint against the United States.

26      6.  The Commission argues that Feathers FTCA lawsuit complaint against the United

27  States is "…based upon the same facts and theories" (see opposition, Docket 1064, page 1, lines 8

28  – 10).  This is a false statement by the Commission.  Feathers' FTCA lawsuit is based upon

1 │ professional negligence of a Commission Enforcement Division accountant. That theory has never

2 │ been argued prior by Feathers. The Commission is clearly incapable of objectively reviewing

3 │ Feathers' prior motions and this motion to distinguish between legal principles and theories. The

4 │ Commission fails to point to a single pleading of Feathers arguing their accountant's professional

5 │ negligence to support its statement "the same…theories" are at issue.

6 │     7.  Not satisfied, perhaps, that the word "Ponzi" alone will provide all the impact it desires,

7 │ the Commission also employs the word or phrase "fraud or defraud" in a half dozen instances in its

8 │ pleading. Combined with a score of references to "Ponzi" or "fraud" in its ten page opposition

9 │ pleadings, the Commission shows its belief that the best defense is a good offense.

10 │     8.  Feathers respectfully asks the Court take note that the Commission does not argue the

11 │ standing of Feathers, on his own behalf and on behalf of affected fund investors, to file suit against

12 │ the United States for its common and tort law violations of accounting negligence.

13 │     9.  As the professional negligence of the Commission's accountant is evident, the movant

14 │ respectfully asks the Court to consider if the Receiver has failed his fiduciary responsibilities to the

15 │ Receivership Estate by not filing a lawsuit against the United States on behalf of the entities of the

16 │ Receivership Estate and Feathers for their assertable rights. On appearance, with many SEC

17 │ lawsuits for which he has been requested by the Commission as a Receiver, and in which he has

18 │ earned many millions of dollars in fees, the Receiver demonstrates conflicts of interest here.

19 │     10. In its opposition filing, the Commission admits that its *ex parte* motion was supported

20 │ with declarations of their accountant, who is the Commission's in-house expert witness and is a

21 │ licensed CPA (see Docket 1064, page 2, lines 9 & 10). The Commission therefore admits reliance

22 │ on their Enforcement accountant's declarations, including his false analysis of the defendants'

23 │ distributions, to meet (falsely, as it were) the formal particularity requirements of the Federal Rules

24 │ of Civil Procedure which are required within a securities lawsuit complaint. The Commission's

25 │ reliance on their accountant's work, and their many references to the word "Ponzi" based upon his

26 │ work, clearly points to the materiality the Commission desired the Court give their accountant's

27 │ illustrations. The United States must now be held responsible for the Commission's negligence.

28 │     11. The Commission argues "Feathers claim could also be dismissed under discretionary-

1  function exception to the waiver of sovereign immunity in the FTCA" (*id,* page 5, lines 21 – 22).

2  That argument is wrong, and it also has no bearing here to Feathers' Motion for Leave. At the

3  proper time and before Hon. Magistrate Grewal, or a jury, the United States may raise the issue of

4  "discretionary-function exception" to Feathers' FTCA lawsuit. The Commission's accountant, a

5  licensed CPA, was bound by Generally Accepted Accounting Principles (GAAP) and, or,

6  Generally Accepted Audit Standards (GAAS) to properly analyze the distributions of the defendant

7  investment funds. A licensed CPA does not have "discretion" in following GAAP or GAAS.

8  Supporting this fact, in Berkovitz v. United States, 486 U.S. 531 (1988), the Supreme Court stated:

9

10   a court must first consider whether the action is a matter of choice for the acting
     employee. . . . [C]onduct cannot be discretionary unless it involves an element
     of judgment or choice. . . . Thus, the discretionary function exception will not
11   apply when a federal statute, regulation, or policy specifically prescribes a course
     of action for an employee to follow. In this event, the employee has no rightful
12   option but to adhere to the directive. . . . The [discretionary function] exception
     . . . protects only governmental actions and decisions based on considerations of
13   public policy.

14

15      12. Licensed CPAs enjoy limited immunity from negligence-based claims; *see Ultramares*

16  *Corp. v. Touche.* The basis of the FTCA is to hold the federal government accountable for the

17  actions of employees, such as their Enforcement Division accountant, who would similarly be held

    liable if employed in private practice when violating GAAP or GAAS by providing false financial

18  illustrations under oath (his "good faith" notwithstanding here). The Commission's accountant

19  held knowledge, or should have, that his financial representations would be relied upon by the

20  Court as accurate, and truthfully portray the crucial matter of distributions of the defendant

21  investment funds. While the Commission argues about numerous other issues, the fact is that in its

22  opposition filing the Commission has failed to show their accountant's conduct is not linked to the

23  seizure of Feathers' and others' assets, and Feathers' subsequent inability to have counsel due to

    that. Harm to Feathers' and others is the second element of consideration, only after it has first

24  been properly determined if the Commission's accountant acted with professional negligence.

25      13. The Court is aware that Feathers' and others' interests will be more adequately

26  represented by qualified counsel and expert witnesses. The Commission fails to reasonably argue

27  that Feathers and fund members should not be able to use the Receivership Estate's capital to

28  demonstrate professional negligence of the Commission's accountant, nor to assist in determining

1    damages thereafter.  In fact, until an expert witness who is a licensed CPA attests to professional

2    negligence, Feathers has less likelihood of success in his FTCA lawsuit.  In most cases the Plaintiff

3    must establish the standard of care and its breach through the testimony of an expert witness

4    specially retained for litigation, and the use of experts is required to establish departures from

     GAAS and GAAP; *see Danis v. USN Communications*, 121 F. Supp.2d 1183 (N.D. Ill. 2000).

5
          14. The Commission tries to impress that attorneys should be jumping at the opportunity to

6    represent Feathers and fund investors in this lawsuit on the basis of a contingency fee of 25%.

7    Here the professional negligence of the Commission's accountant is apparent, so the Commission

     should rest assured that if the Court approves the request for legal fees, well qualified counsel and

8    expert witnesses will be available and present themselves to Feathers and other class action

9    members in their class action lawsuit against the United States.

10         15. The Commission refuses to acknowledge the validity of the basis to Feathers' request,

11   which is that the Commission's sworn declarations, including financial illustrations provided and

12   sworn on by a licensed CPA, were likely an influential factor of consideration of this Court in

13   approving a seizure of Feathers' and other class members assets.  The Commission has failed to

     acknowledge in its opposition pleading that their accountant's financial illustrations, in retrospect,

14   provided false information about the defendant's distributions.   The interests of justice indicate

15   that Feathers' and others should now be afforded the opportunity for legal fees from their own

16   capital which is held in the Receivership Estate to pursue remedies for the tort(s) of the

17   Commissions' accountants, by presenting sound legal arguments to protect their assertable rights.

18         16. The Commission argues Feathers "did not dispute that he made Ponzi-like payments"

19   (Docket 1064, page 7, lines $1 - 2$).  This matter is about the *prima facie* appearance of professional

20   negligence of the Commission's accountants, who vastly (and falsely) misrepresented the

     distributions of the defendant investment funds.  The Court and the Commission are well aware of

21   thousands of pages of Feathers' pleadings arguing that he did not operate a "Ponzi-like scheme".

22   The Commission's argument here is absurd, nonsensical, and not warranted.

23         17. The Commission has taken pain to avoid the word "negligence" appearing anywhere

24   within in its opposition pleading, while never in its opposition pleading does the Commission deny

25   professional negligence of its Enforcement Division accountant.

          18. As a whole, the Commission's opposition pleadings present irrelevant theories of
26
     contribution or comparative fault of Feathers, which are transparently red herrings proffered to the

27   Court by the Commission.  A trier of fact, at the right time and in the right court, can make a

28

1    determination of contribution or comparative fault of Feathers, if either of those issues has merit,

     and, or, should be considered in the future as valid considerations[2].

2

3        19. Feathers' discovered through his own efforts what appears, *prima facie*, evidence of the

     Commission's accountant's professional negligence.  It is not reasonable that the Commission

4    argue now, in so many words, that Feathers "had his day in court".  Feathers is not an accountant or

5    an attorney.  A team of those professionals would have properly identified professional negligence

     of the Commission's accountant, and on a more timely basis.  Lack of counsel may be pointed to

6    here as a causal factor in Feathers' belated discovery of the legal theory of professional negligence.

7        20. Feathers herein and in his FTCA complaint have demonstrated a theory of liability of

8    the United States for professional negligence, as well as developed a theory of damages caused to

9    Feathers and to other members of his proposed class.  The Commission cannot rightfully argue, as

10   it has, that Feathers has "imagined" a tort (*id*, page 2, line 3).  This is a hypocritical stance for the

11   Commission to take, as the Commission has admitted what appear major GAAP/GAAS departures.

12   This Court is well aware, also, of prior scores, if not hundreds, of investor letters and sworn

     declarations of defendant investment fund members from these small investment funds voicing

13   opinions and sentiment mirroring Feathers assertion of tortious conduct by the Commission.

14       21. The Commission impeaches its standing to oppose Feathers motion now with its prior

15   disingenuous statement "The Commission's staff reasonably believed that the total amount of

16   distributions was reached by adding these two items" (See Docket 160, Page 8, lines 1 – 2).

17       22. By admitting their Enforcement Division accountant added capital going out of the

18   funds to capital coming into the funds the Commission has effectively admitted that their

19   accountant engaged in an act, or failed to exercise that degree of professional care and skill,

     appropriate to the circumstance of the case, which was expected of a licensed certified public

20   accountant or auditor, to not add violate GAAP and, or, GAAS by adding distributions to

21   investments.  The Commission's opposition pleading fails to (a) show that there was no negligence,

22   or (b) fails to show their accountant had no duty of care owed to Feathers or proposed class

23   members, (c) fails in its reasoning that material financial losses were not suffered by Feathers or

24   the proposed class members.  The Commission has not argued these defenses, because it cannot.

25       23. In allowing their Enforcement Division's accountant's declarations to be used, the

     Commission reveals their belief that his CPA licensing, combined with his employment by the

26

27   ───────────────

     [2]The Commission ignores that Feathers has numerous appeals now before the 9th Circuit for a

28   reversal of all findings against him, including an appeal of the summary judgment against him.

nation's foremost accounting regulatory agency, would impress upon the Court qualifications their accountant held to assert truthfulness and accuracy to his financial illustrations. By law, statutes, and codes of conduct for his licensing, the Commission's accountant was obligated to adhere to acceptable methods to analyze distributions. He failed to do that. The Commission has failed to provide any evidentiary showing, such as attestation by another licensed CPA employed by either the Commission or in private industry, their accountant did not engage in professional negligence.

24. The Commission's accountant had a duty to use reasonable care in constructing his financial representations of the funds distributions. He breached that duty, as indirectly admitted to by the Commission. Feathers and others proposed class members, it will be shown, have suffered damages of the loss of their assets and their income from those assets. It should be left up to a trier of fact to agree or to disagree with Feathers' assertion of a causal nexus between the Commission's accountant's professional negligence and Feathers' and others' harm.

25. The Commission, in its opposition pleading, has avoided reference to the "False Light" allegation in Feathers' FTCA filing. The Commission, and its accountant, employed the word "Ponzi" or derivations of it many times over in pleadings, all while it appears there was professional negligence in depictions of the vital issue of determining a "Ponzi" scheme, which is its "distributions". Yet, the Commission admits their accountant employed a methodology which could only create false financial illustrations. Charging Feathers' with running a Ponzi scheme has caused great and irreparable harm to Feathers and the defendant funds, which the Commission did while their accountant severely departed from GAAP or GAAS with his professional negligence.

26. There is more than irony here, there is hypocrisy by the Commission. This accounting gatekeeper federal agency continues its defense of the professional negligence of its Enforcement Division accountant(s) while not backing down from its continued severe attacks on Feathers. By continuing with its attacks on Feathers, there is valid legal argument here that the Commission, in particular the Commission's senior trial prosecutor, John Bulgozdy, Esq., holds secondary liability for other tort(s) by aiding and abetting an on-going false light "Ponzi" depiction.

27. The Commission asserts no privity defense of its accountant's work in their opposition pleading. By not claiming such a defense the Court should infer that the Commission admits that it caused others (including the Court itself) to reasonably hold reliance on the financial illustrations of the Commission's accountant in authorizing a seizure of Feathers' and others assets.

28. Feathers' held authority to initiate lawsuits on behalf of the funds while his company, SB Capital, was their manager and he was the CEO. A receiver now stands in Feathers' shoes. That Receiver has failed as a fiduciary to the Receivership Estate to protect its interests.

29. The Commission was formed for the benefit of the public at its genesis. The Court must consider here the public's interest in seeing that the federal gatekeeper agency of the accounting profession in the United States is held liable for acts of professional negligence of its own accountants. How is the public to maintain its trust in a federal agency that regulates accountants and the accounting profession, and that maintains direct oversight and enforcement of the GAAP and GAAS accuracy of financial representations of domestic public and private companies worth trillions of dollars, if accountants employed by that agency are allowed to act with impunity for their professional negligence in their accounting and audit work? If the Commission and its accountants know that they will be held liable to public and private enterprises for their negligent acts, certainly they may be more diligent in conducting their audit work then they have been here, and they will be more careful to not present false information within the financial illustrations they include in their court declarations, especially in complaints which have concurrent requests for seizing assets by way of sealed *ex parte prima facie* financial illustrations. Feathers' and others' tort claim filing against the United States will send a loud and clear message that GAAP and GAAS are equally applicable to federal agency licensed CPAs as they are to private industry CPAs.

30. That not even a single investor or the Receiver has presented any direct opposition to this Court or as declarations with the Commission's opposition pleading, for what is likely to be only a small percentage of the Receivership Estate's assets[3] (approximately 2% of tangible assets identified by the Receiver at the outset of this lawsuit) be used (1) sends a message of their belief in the responsibility of the Commission for the tortious actions of their accountants, (2) shows that investors do not hold disbelief of the merit of the FTCA complaint against the United States[3].

31. The Commission has failed to demonstrate that payment of legal fees[4] contradicts the intended purpose of the injunction. In fact, the loan assets of the funds, all of which Feathers and SB Capital's efforts allowed the funds to place into their portfolios, appear to have generated approximately $5,000,000 or more in revenues over the past three years into the Receivership Estate. And, Feathers and the funds and their investors may be able to recover up to $17,500,000 due to the professional negligence of the Commission. "The award of fees in a receivership is entrusted to the district court." Commodities Futures Trading Comm'n. v. Am. Metals Exch. Corp., 991 F.2d 71, 79 (3rd Cir. 1993)(citing Capital Counsellors, 512 F.2d at 658). In determining whether restrained receivership funds should be used to pay attorney fees, the court must balance

---

[3]The fees requested represents approximately 2% of tangible assets identified by the Receiver at the outset of this lawsuit, and less than 25% of the total billings of the Receiver and his counsel to-date.

1   the "government's justification for restraining property with the defendant's legal interest in a full

2   and fair hearing on the merits."  <u>United States v. Payment Processing Ctr., LLC</u>, 439 F. Supp. 2d

3   435, 441 (E.D. Pa. 2006).

4                                      **CONCLUSION**

5          The Commission here desires that public accountants and public and private companies

6   abide by GAAP and GAAS, under possible severe penalty of civil and criminal laws for violating

7   GAAP and GAAS.  Then, the Commission asks the Court to look the other way while its own

8   Enforcement Division accountants, *prima facie*, have violated GAAP, GAAS, and likely the

    Agency's own additional developed audit methods which discovery may determine.  So, the

9   Commission desires to have its' cake and to eat it too.  The Commission fails to see the hypocrisy

10  that it was false financial information of its own Enforcement Division accountants that formed the

11  basis in part, or in full, of a seizure of defendant's business entities, while it expects all others to

12  abide by GAAP and GAAS.

13         The Commission cannot rightfully expect that its Enforcement Division accountants should

    be able to violate federal and state laws, and California Civil Codes and Business and Professions

14  Codes, in the manner in which they prepared *ex parte prima facie* illustrations of defendant's

15  "distributions", which are a vital consideration in using the prejudicial word "Ponzi", and in to

16  asking for a receivership and asset seizure for any so-called "Ponzi scheme"[4].

17         An additional fact which should not be overlooked is that, with a successful lawsuit against

18  the United States, the Receivership Estate will likely qualify for full reimbursement of legal fees

    incurred.

19         Since Feathers and many others have suffered from the professional negligence of the

20  Commission's accountants and does not have the assets or the income to employ qualified counsel

21  and expert witnesses, and no parties other than the Commission have opposed Feathers' motion,

22  _____

23  [4]The Commission's opposition is replete with nonsensical statements which have nothing to do

24  with the merit of Feathers' motion, do not provide legal theories to support the Commission's

25  opposition, and misstate or misrepresent facts.  For example, on page 7, lines 1 – 3, of the

    Commissions' pleading (Docket 1064), the Commission writes "At summary judgement, Feathers

26  did not dispute that he made Ponzi-like payments…".  Of course, that is because, Feathers did not

27  ever write or state "I did not ever make Ponzi-like payments".  The Court is fully aware that

28  Feathers has provided thousands of pages of pleadings to this Court to rebut such an allegation.

1  Feathers and other proposed class members should rightfully be able to have Receivership Estates
2  assets to their benefit to demonstrate to a trier of fact that the Commission's accountants engaged in
   professional negligence, and if so determined, to assist in determining damages caused by such.

3       Feathers' claim here is that the Commission's accountant engaged in professional
4  negligence. Feathers supports this allegation with facts sufficient to support a conclusion there was
5  professional negligence of the Commission's accountant. In fact, the Commission has admitted
6  that their accountant employed a method of describing the financial operations of the funds which
   produced false information, and which could never have provided accurate information. The Court
7  and the public are better served if qualified counsel and expert witnesses now take this matter to its
8  lawful conclusion, which is to (1) have the proper trier of fact in the complaint *Mark Feathers v.*
9  *United States* (CV15-02194-PSG) determine if there was professional negligence on the part of the
10 Commission's accountants, and (2) if harm from that was caused to Feathers and to others.

11      Prior to its seizure, if the Commission believed the defendant investment funds were
12 making the out-sized and unsustainable distributions the Commission's own accountant falsely
13 illustrated by way of professional negligence and departures from GAAP, and, or GAAS, Feathers
   should have been informed of the Commission's suspicions, and then on a timely basis and before
14 his companies and assets were seized and caused him to not be able to employ counsel, enjoyed the
15 Fifth Amendment rights he has for the opportunity for due process to understand and to contest the
16 Commission's conclusions and the basis for its seizure request. By the Commission' admission
17 Feathers has shown their basis for a seizure relied in part, or in full, on their own false information.
18 The Commission acts "as a statutory guardian charged with safeguarding the public interest in
19 enforcing securities laws." *SEC v. Management Dynamics, Inc.*  515 F.2d 801, 808 (2d Cir. 1975).
   Certainly the public is not served when the Commission provides false financial illustrations by
20 way of unacceptable departures of its own accountants from GAAP, and, or, GAAS to produce
21 falsely and grossly overstated distributions of a defendant investment fund that the Commission has
22 accused of operating a Ponzi scheme. "…a district court in an enforcement action has the authority
23 to fashion virtually any appropriate remedy"; *SEC v Manor Nursing Centers, Inc.*, 458 F.2d 1082,
24 1103 (2d Cir. 1973). On that basis, the Court should approve Feathers' Motion for Leave, and
25 ultimately as well approve his motion to be allowed legal fees from the Receivership Estate to
26 prosecute his claim on his behalf and other proposed class members.

27                                        Respectfully,

28 Dated: 6-23-15                         Mark Feathers, *pro se*